

FILED

JUN 28 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

Jamie Osuna, CDCR #BD0868
Plaintiff,

against

J. Burnes, K. Kyle-Maytubby,
W. Lewis, A. Loza,
A. Encinas, J. Garcia,
M. Rodriguez, V. Pena
C. Morelock, E. Leija,
S. Gonzalez, L. Vasquez,
A. Navarro, S. Gates,
S. Babb, A. Guerrero,
R. Rubio, E. Garza,
C. Love, A. Cid,
T. Brazelton, J. Cerda,
J. Fugate, E. Sanchez,
C. Navarro, I. Salcedo,
L. Pena, P. Ricablanca, et al
Defendants.

Docket No.: 2:24-CV-1820 DMC (PC)

**CIVIL RIGHTS COMPLAINT UNDER**
42 U.S.C. § 1983
State Prisoner

**IMMINENT DANGER OF SERIOUS PHYSICAL INJURY/DEATH**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES**

1. Violation of **U.S. Const. Amend. VIII, § 1,** Cruel and Unusual Punishment Clause; Excessive Use of Force
2. Violation of **U.S. Const. Amend. XIV, § 1,** Due Process Clause
3. Violation of **U.S. Const. Amend. VIII, § 1,** Cruel and Unusual Punishment Clause; Deliberate Indifference and Willful Neglect

## I. JURISDICTION & VENUE

1. This is a civil rights action arising under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights, privileges, and immunities guaranteed under the Eighth and Fourteenth Amendments to the U.S. Constitution, secured by acts of Congress, provided by equal right of persons within jurisdiction of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 (a), (3). This Court has jurisdiction over Plaintiff's action to grant declaratory relief pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure and is empowered to grant injunctive relief pursuant to Federal Rules of Civil Procedure, Rule 65.

2.   Venue is proper pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of events and omissions giving rise to Plaintiff's claims occurred at CSP-Corcoran, Corcoran, CA, Kings County, which is within this Court's judicial district.

## VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

## II.   INTRODUCTION

3.   This is a civil rights action brought forth by Jamie Osuna, a state prisoner, for damages, declaratory relief, punitive, and injunctive reliefs under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution, including claims of: interference with access to courts, interference with due process, use of force, falsification of official documents, evidence tampering/concealing, false charges, assaults and batteries/violence, deliberate indifference and willful neglect, and retaliation.

4.   Defendants' uses of force and other misconduct began and continued throughout 2018 in retaliation for Plaintiff having filed 602s[1] against Defendants/CSP-Corcoran's employees, which culminated in Plaintiff filing § 1983 1:19-cv-00554-AWI-EPG (*Asuna v. Brown, et al*), February 20, 2019, in the Northern (transferred to the Eastern) District of California.

---

[1] *CDCR 602 Inmate/Parolee Appeal Form* is the internal CDCR form for administrative remedies, also referred to as an "inmate complaint," "602," or "grievance."

5.  Defendants, who Plaintiff was grieving and suing, then retaliated on Plaintiff for his filing 1:19-cv-00554-AWI-EPG via putting Plaintiff in situations where Defendants had actual knowledge that Plaintiff would be in imminent danger. Defendants Sgt. J. Burnes, A. Loza, and others, conspired with several inmates to cell up with Plaintiff, giving inmates information regarding Plaintiff's conviction case and had threatened those inmates that if they refused the cell assignment, Defendants would write the inmates up. Defendants found a known violent, predatory inmate, L. (Luis Gilberto) Romero H56733, who two months prior had attacked two inmates and who had been found with a manufactured inmate weapon (two razor blades on a razor handle) to cell up with Plaintiff. Some Defendants were listed on L. Romero H56733's past Rules Violations Reports (RVRs) for assaults on inmates, in which Defendants/staff unusually favored L. Romero H56733, unusually dropped L. Romero H56733's RVR and unusually shipped L. Romero H56733 out for intensive mental health treatment. Some Defendants incited violence by telling L. Romero H56733, "You're letting me down." After the incident of Plaintiff's 19CM-1882 case (March 2019), Defendants had stated to Plaintiff, "We told you your lawsuit [1:19-cv-00554-AWI-EPG] wasn't going to go nowhere."

6.  Defendants, who Plaintiff was grieving and suing, and who had expressed extreme ill will and hostility towards Plaintiff, had then double cell cleared Plaintiff and placed a violent inmate in Plaintiff's cell. Defendant K. Kyle-Maytubby, CSP-Corcoran's Mental Health Supervisor at that time, also had worked in the same prison as Danielle Peña Gonzales— sister to Yvette Peña from Plaintiff's first conviction. Defendant K. Kyle-Maytubby mentioned Peña sister Yvette several times to Plaintiff and expressed her dislike towards Plaintiff because of Yvette/his original conviction. Upon Plaintiff's passive research

investigation for the complaint, Defendant K. Kyle-Maytubby has been found on various social media platforms expressing no remorse for what happened in 19CM-1882 but showing sympathy, liking/reacting, following stories about Yvette Peña. The retaliatory and other actions of this Defendant, and others, had been in violation of Plaintiff's constitutional rights to petition the government for redress of grievances, free from retaliation and Plaintiff's right to not be deprived of life, liberty, property without due process and equal protection of the laws while under her/Defendants' care and custody.

7. This Defendant, and others, including A. Loza (Peace Officer), who were named in Plaintiff's § 1983, should never have been allowed to double cell clear and then choose an inmate to go into Plaintiff's cell. Defendants' ill intentions were/are shown in their violating CDCR and state policies and falsifying documents in order to commit their unlawful, illegal actions. It has even been shown that Defendant K. Clark (while acting as CSP-Corcoran's Warden) lied to the Office of Inspector General (OIG) during/for an investigation. Plaintiff continues to be retaliated on—Defendants Sgt. J. Burnes, A. Loza are now assigned to R&R[2] and thus control what legal documents/properties Plaintiff is allowed to have, and Defendants ISU Officers also control Plaintiff's legal materials/access.

8. Aside from legal interference and retaliation, Plaintiff also experienced/experiences retaliation with mental health care. Before Plaintiff's incident of 19CM-1882, Defendant K. Kyle-Maytubby called CHCF and asked the psychologist/psychiatrist to PC 2602 Plaintiff (a forced psychotropic medication order) when Plaintiff was not due to be transferred to CHCF and nothing had yet transpired. The CHCF psychologist/psychiatrist reviewed

---

[2] Reception and Receiving (R&R) -- where inmates' property is logged, stored.

Plaintiff's letters on CDCR file from Rosen, Bien, Galvan and Grunfeld, LLC (RBGG) (law firm of the ongoing *Coleman* class action/Coleman Project Team), and Plaintiff's records showing Plaintiff was seeking help, but that Defendant K. Kyle-Maytubby had been refusing Plaintiff constitutionally adequate mental health treatment and maintained Plaintiff at CCC, the lowest level of mental health care; therefore, the psychologist/psychiatrist declined to simply PC 2602 Plaintiff because it seemed an order that was retaliatory in nature and that no alternatives had been in good faith offered to Plaintiff as required by state code. (See California Code of Regulations § 3999.345 *Involuntary Medication Definitions and Criteria*.) Defendant K. Kyle-Maytubby had also previously in anger complained to Plaintiff that one of Plaintiff's grievances against Defendant was being added to her permanent record and told him he should just "get it over with" and "cut his wrists and kill [himself]."

9. Defendants have been further interfering in 19CM-1882—a potential death penalty case—via tampering with/confiscating materials/evidence, threatening and intimidating Plaintiff, witnesses, and other actions, as further detailed in section V.

10. Plaintiff takes all threats and intimidation by Defendants as credible and serious, and that Plaintiff is in **imminent danger** via events described in section V and the following historical pattern:

11. From the years 2017 (Plaintiff's sentencing year) through 2019 (year of 19CM-1882), around sixty 42 U.S.C. § 1983 civil rights lawsuits and 28 U.S.C. § 2254 Writ of Habeas Corpus were filed by CSP-Corcoran inmates against most respondents/Parties from Plaintiff's § 1983 1:19-cv-00554-AWI-EPG, which had also named most Defendants of

this current matter, for same/similar situations (e.g. use of force, retaliation, threats, document falsification, and more.)

12. The majority of those at least sixty complaints were filed by inmates similar to Plaintiff on points of being housed in yard 4A, under SHU/RHU[3] restrictions, are minorities, and were/are mentally ill offenders and participants in CDCR's *Coleman* (mental health) program.

13. Plaintiff respectfully requests the Court to consider the unusually high volume of inmates who brought actions with same/similar allegations against same respondents/Defendants over years as a <u>clear and present pattern</u> of willful misconduct and intentional constitutional violations by Defendant CSP-Corcoran through its employees and management/supervisors.

14. Plaintiff is currently an inmate at CSP-Corcoran and participant of CDCR's *Coleman* mental health program with CDCR-tested and diagnosed schizophrenic-type mental illnesses and PTSD.

15. September 16, 2016, testing at UCI Neurocognitive Imaging Clinic (Irvine, CA) found Plaintiff had physical brain abnormalities. [Ex. A1.]

16. In California Health Care Facility (CHCF) (Stockton, CA), CDCR testing found Plaintiff is not malingering. [Ex. A2.]

17. In CHCF, CDCR testing found Plaintiff's intellectual ability was "descriptively classified as borderline" in severity, and Plaintiff has a TABE score of 2.6. [Ex. A2.]

---

[3] SHU/RHU - Security/Restrictive Housing Unit.

18. Inmates with mental health diagnoses—referred to as "*Coleman*" inmates—are automatically participants of CDCR's Mental Health Services Delivery System, which was created in response to a CA court order. (See *Coleman, et al v. Newsom, et al* (1995); document number 7333-1; filed on September 29, 2021.)

19. Clinical Care Case (CCC, also referred to as "CCCMS" or "Triple C") is CDCR's lowest outpatient mental health care level. The Enhanced Outpatient Program (EOP) is CDCR's highest level of outpatient mental health care.

20. *Coleman, et al vs Newsom, et al*; document number 5988-1; filed October 31, 2018; "Golding Report;" cites schizophrenics as often being in the EOP level of care.

21. After around May 2017, Plaintiff has been housed the majority of the time in/under Defendant CSP-Corcoran, at CCC, the lowest level of mental health care.

22. At the time of this filing, Plaintiff is still held at the CCC, the lowest level of mental health care, in CSP-Corcoran's non-disciplinary SHU/RHU.

23. Plaintiff has been under continual PC 2602 spanning over multiple years, from around 2020, renewed in 2021, 2022, 2023, 2024, in administrative courts of law. [Ex. A3.]

24. Plaintiff requests tolling/similar considerations for all matters herein to be granted due to:

25. Plaintiff's intellectual hardship of being under a continual PC 2602 order and schizophrenic-type mental illness; Plaintiff was an inpatient of acute mental health care unit in 2019; Plaintiff has been court/doctor-declared incompetent from around/throughout 2020 through to most of 2022, Plaintiff has the hardship of acting while under high restrictions as a SHU/RHU-housed inmate; Plaintiff is under the hardship of ongoing interference, credible/acted on threats, intimidation by Defendants as further described in section V.

26. Due to mental illnesses/problems, Plaintiff requested and received help in the transcribing/writing of this complaint.

### III.   PARTIES

27. Plaintiff Jamie Osuna was/is a prisoner incarcerated at CSP-Corcoran, Corcoran, CA.

28. Defendant J. (Joseph A.) Burnes, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Sergent to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. Among other responsibilities, J. Burnes was a 4A unit sergeant maintaining authority with the directing/supervising of correctional officers/other staff assigned to the unit, acted as a final decisionmaker for inmates' unit grievances, and now manages and processes legal/regular properties for inmates in R&R. J. Burnes is being sued in his individual and official capacities. PERN # 18566.

29. Defendant K. (Kristin) Kyle-Maytubby, at all times relevant to this complaint, is a psychologist licensed in California state and was employed as CSP-Corcoran's Mental Health Supervisor to ensure the responsibilities of overseeing the treatments and care of mentally ill inmates. Among other responsibilities, K. Kyle-Maytubby chaired/participated in IDTT[4] committee meetings to double/single-cell clear inmates and housing/yard/cellmate choices for inmates, ensured adequate/appropriate mental health

---

[4] Interdisciplinary treatment team (IDTT) -- committee to decide an inmate's mental health level of care, housing/cell assignments, assessments, treatment planning, and the similar.

treatment plans/care for inmate patients, ensured inmate patients were kept in safe custody, addressed/cleared any inmates suspected of self-harming/being a danger to self/others, addressed *Coleman* Project Team inquiries regarding inmate patients at CSP-Corcoran. K. Kyle-Maytubby is being sued in her individual and official capacities. Defendant is presumed now working as a faculty member at Bakersfield College, Bakersfield, CA; and as co-owner/operator of Tranquility Valley Wellness, Bakersfield, CA. CA license # 26467; CA Board of Behavioral Sciences.

30. W. (Walter) Lewis, at all times relevant to this complaint, is a psychiatric technician licensed in California state and employed as a CSP-Corcoran Psychiatric Technician, to ensure the responsibilities of maintaining inmate patients' safety. Among other responsibilities, W. Lewis provided inmates' medications, documented inmates' mental/physical status and inmate complaints/concerns, monitored for decompensation behaviors and reported concerns/issues to clinicians, collaborated with custody and staff to provide inmate patients with effective, compassionate care and protection from harm. W. Lewis is being sued in his individual and official capacities. CA license # 31438; Board of Vocational Nursing and Psychiatric Technicians.

31. Defendant A. (Arnoldo) Loza, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. A. Loza is being sued in his individual and official capacities.

32. Defendant A. (Arturo) Encinas, at all times relevant to this complaint, is a correctional law enforcement officer, sworn in California state and employed as a CSP-Corcoran Sergent, to

ensure the responsibilities of maintaining order, enforcing law, supervising/training officers assigned under him, completing incident and performance reporting, and providing security within the prison system. A. Encinas is being sued in his individual and official capacities.

33. Defendant J. (Joseph) Garcia, at all times relevant to this complaint, is a correctional law enforcement officer, sworn in California state, employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. Among other responsibilities, J. Garcia acts as the 4A tower officer to monitor activities within the unit and to inspect, review and forward outgoing inmate 4A mail. J. Garcia is being sued in his individual and official capacities. Badge # 60476.

34. Defendant M. (Anthony Miguel) Rodriquez, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. M. Rodriquez is being sued in his individual and official capacities.

35. Defendant V. (Vicente R.) Pena, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans, provides inmate court transportation services. V. Pena is being sued in his individual and official capacities. Badge # 84731.

36. Defendant C. (Charles) Morelock, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Correctional Sergeant, to ensure the responsibilities maintaining of order, enforcing law, and providing security in the prison facility. Among other responsibilities, C. Morelock investigates prison crimes/incidents, investigates various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, is responsible for conducting/verifying inmate safety plans, supervises/trains officers assigned under him, completes incident and performance reporting. C. Morelock is being sued in his individual and official capacities. Badge # 75809.

37. Defendant E. (Elias J.) Leija, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. E. Leija is being sued in his individual and official capacities. Badge # 85350.

38. Defendant S. (Stephanie) Gonzalez, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. Among other responsibilities, S.

Gonzalez provides inmate court transportation. S. Gonzalez is being sued in her individual and official capacities.

39. Defendant L. (Laura) Vasquez, at all times relevant to this complaint, is a registered nurse licensed in California state and employed as a CSP-Corcoran Registered Nurse to ensure the responsibilities of providing basic medical treatments/services and medical referrals for inmate/staff with injuries/sicknesses. Among other responsibilities, L. Vasquez provides medical assessments and opinions for incident reports and records and determines outcomes for health care requests/issues. L. Vasquez is being sued in her individual and official capacities. CA license # 523785; California Board of Registered Nursing.

40. Defendant A. (Alejandro) Navarro, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Sergent, to ensure the responsibility of maintaining order, enforcing law, and providing security within the prison system, supervising/training officers assigned under him, incident and performance reporting. A. Navarro is being sued in his individual and official capacities.

41. Defendant S. (Sara) Gates, at all times relevant to this complaint, is employed as CDCR's Chief of the Health Care Correspondence and Appeals Branch to ensure the responsibilities of quality assurance, compliance with legal regulations, policy development. Among other responsibilities, S. Gates investigates and issues final decisions at Headquarters' level on inmates' mental health/health care grievances/appeals, provides oversight and guidance to facilities regarding health care/mental health matters, is involved in the hiring/training services of health care/mental health employees. S. Gates is being sued in her individual and official capacities.

42. Defendant S. (Stephen) Babb, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and was employed as CSP-Corcoran's 4A Associate Warden, to ensure the responsibilities of overseeing the operations for his unit/area, acting for the Chief Deputy Warden/Warden in their absences, serving on Institution Classification Committees, overseeing hiring and training of prison personnel. Among other responsibilities, S. Babb reviewed/processed inmate appeals about staff misconduct and other complaints. S. Babb is being sued in his individual and official capacities. Defendant is presumed now employed as a CSP-Corcoran Captain.

43. Defendant A. (Albert) Guerrero, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. Among other responsibilities, A. Guerrero provides inmate court transportation. A. Guerrero is being sued in his individual and official capacities.

44. Defendant R. (Richard H.) Rubio, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. R. Rubio is being sued in his individual and official capacities. Badge # 77258.

45. Defendant E. (Elaine M.) Garza, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and was employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. E. Garza is now presumed to be working as a CSP-Corcoran correctional counselor. E. Garza is being sued in her individual and official capacities.

46. Defendant C. (Che) Love, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Lieutenant, to ensure the responsibilities maintaining of order, enforcing law, and providing security in the prison facility. Among other responsibilities, C. Love investigates prison crimes/incidents, investigates various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, is responsible for conducting/verifying inmate safety plans, supervises/trains officers assigned under him, completes incident and performance reporting, provides inmate court transportation services. C. Love is being sued in his individual and official capacities. Badge # 61611.

47. Defendant A. (Arnulfo) Cid, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. A. Cid is being sued in his individual and official capacities.

48. Defendant T. (Trevor) Brazelton, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans T. Brazelton is being sued in his individual and official capacities. T. Brazelton is presumed now working at Avenal State Prison, Avenal, CA. Badge # 82859.

49. Defendant J. (Jose) Cerda, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. J. Cerda is being sued in his individual and official capacities.

50. Defendant J. (John D.) Fugate, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. J. Fugate is being sued in his individual and official capacities. Badge # 85103.

51. Defendant E. (Eric C.) Sanchez is, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. E. Sanchez is being sued in his individual and official capacities.

52. Defendant C. (Carlos) Navarro, at all times relevant to this complaint, is a correctional law enforcement officer, sworn in California state, employed as an Investigative Services and or Investigator Gang Unit Correctional Sergeant at CSP-Corcoran, responsible to ensure maintaining of order, enforcing law, and providing security in the prison facility. Among other responsibilities, C. Navarro processes crimes scene investigations, investigates various types of allegations and gangs' activities, supervises/trains officers assigned under him, completes incident and performance reporting, provides inmate court transportation services. C. Navarro is being sued in his individual and official capacities. Badge # 80707.

53. Defendant I. (Issac V.) Salcedo, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. I. Salcedo is being sued in his individual and official capacities.

54. Defendant L. (Leonel) Pena, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing

security within the prison system. L. Pena is being sued in his individual and official capacities. Badge # 91106.

55. P. (Pasciencia) Ricablanca, at all times relevant to this complaint, was a Psychiatric Technician licensed in California state and employed as a CSP-Corcoran Psychiatric Technician to ensure the responsibilities of inmate patient safety, providing first aid, monitoring inmate patients' conditions, administering medications/treatments. Among other responsibilities, P. Ricablanca evaluates and documents inmates' injuries, monitors inmate patients for decompensation behaviors and reported concerns/issues to clinicians, collaborates with custody and staff to provide inmate patients with effective, compassionate care and protection from harm. P. Ricablanca is being sued in their individual and official capacities. CA license # 35684; Board of Vocational Nursing and Psychiatric Technicians. P. Ricablanca is presumed now retired.

56. Defendant K. (Ken A.) Clark, at all times relevant to this complaint, was a correctional law enforcement officer sworn in California state and employed as Warden of CSP-Corcoran to ensure the responsibilities of overseeing all aspects of institutional operations, program coordination—including medical services, business management, and policy development. Among other responsibilities, K. Clark was acting as chief supervisor, giving assignments/schedules, ensuring training, disciplining of correctional peace officers and personnel under his charge, and ensuring the safe custody and care of inmates under his charge. K. Clark is being sued in his individual and official capacities. K. Clark is presumed now retired.

57. Defendant T. (Tammy L.) Campbell, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as Warden of

CSP-Corcoran to ensure the responsibilities of overseeing all aspects of institutional operations, program coordination—including medical services, business management, and policy development. Among other responsibilities, T. Campbell acts as chief supervisor, gives assignments/schedules, ensures training and disciplining of correctional peace officers and personnel under her charge, and ensures the safe custody and care of inmates under her charge. T. Campbell is being sued in her individual and official capacities.

58. Defendant J. (Joshua) Guiterrez, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans, provides inmate court transportation services. J. Guiterrez is being sued in his individual and official capacities. Badge # 95153.

59. Defendant F. (Francisco) Munoz, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Lieutenant to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system, staff and inmate management, ensuring security standards are met. F. Munoz is being sued in his individual and official capacities.

60. Defendant E. (Elizabeth) Cantu, at all times relevant to this complaint, is employed as a CSP-Corcoran Correctional Counselor, to ensure the responsibilities of assessing inmates for double/single cell clearances, inmate classification and program placement and

counseling, program recommendations. E. Cantu is being sued in her individual and official capacities.

61. Defendant T. (Thomas C.) Dunn, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and was employed as CSP-Corcoran correctional staff. Among other responsibilities, T. Dunn participated in evaluating/assessments of inmates for double/single cell status, classification, and programs. T. Dunn is being sued in his individual and official capacities. T. Dunn is presumed now working as Associate Warden for California Training Facility, Soledad, CA.

62. Defendant M. (Mary A.) Kimbrell, at all times relevant to this complaint, is employed as a CSP-Corcoran Correctional Counselor II, to ensure the responsibilities of assessing inmates for double/single cell clearances, inmate classification and program placement and counseling. Among other responsibilities, M. Kimbrell evaluates and provides decisions for inmate administrative remedies/appeals. M. Kimbrell is being sued in her individual and official capacities.

63. Defendant D. (Duane) Goree Jr., at all times relevant to this complaint, was employed as a CSP-Corcoran Correctional Counselor, to ensure the responsibilities of reviewing and deciding inmate administrative remedies appeals and disciplinary/Rules Violations hearings. D. Goree Jr. is being sued in his individual and official capacities. D. Goree is presumed now working at Kern Valley State Prison, Delano, CA.

64. Defendant M. (Michelle) Oliveira, at all times relevant to this complaint, was employed as a CSP-Corcoran Correctional Counselor, to ensure the responsibilities of assessing inmates for classification and program placement and counseling. Among other responsibilities, M. Oliveira reviewed and made decisions regarding inmate administrative remedies/appeals.

M. Oliveira is being sued in her individual and official capacities. M. Oliveira is presumed now working at Pleasant Valley State Prison, Coalinga, CA.

65. Defendant J. (James) Paison, at all times relevant to this complaint, was employed as a CSP-Corcoran Correctional Counselor, to ensure the responsibilities of assessing inmates for double/single cell clearances, inmate classification and program placement and counseling. J. Paison is being sued in his individual and official capacities. J. Paison is presumed now working at North Kern State Prison, Delano, CA.

66. Defendant L. (Lisa) Pickering, at all times relevant to this complaint, was employed as CSP-Corcoran's Executive Assistant. Among other responsibilities, L. Pickering provided research and information handling and administrative support, including for inmate requests/issues. L. Pickering is being sued in her individual and official capacities. L. Pickering is presumed now working as CSP-Corcoran's Staff Services Analyst.

67. Defendant R. (Ryan) Silva, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Lieutenant to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system, staff and inmate management, ensuring security standards are met. Among other responsibilities, R. Silva reviews/makes decisions for inmate RVRs. R. Silva is being sued in his individual and official capacities.

68. J. (Jasminka) Depovic(-Palmer), at all times relevant to this complaint, is psychiatrist licensed in California state employed as CSP-Corcoran's Staff Correctional & Rehabilitative Psychiatrist to ensure the responsibilities of clinical assessments and diagnosis, treatment administration, supervision and training, safety and security. Among other responsibilities, J. Depovic prescribes changes in inmate patients' treatments when

necessary. J. Depovic is being sued in her individual and official capacities. CA license # A 43848; Medical Board of California.

69. A. (Alicia) Boyd, at all times relevant to this complaint, is a psychologist (PsyD) licensed in California state and was employed as CSP-Corcoran's psychologist to ensure the responsibilities of clinical assessments and treatment, program development and evaluation, training and consultation. A. Boyd is being sued in her individual and official capacities. A. Boyd is presumed now working in private group practice at 2012 E ST Bakersfield, CA 93301-4223. CA license # 31696; Board of Psychology.

70. M. (Meredith) Casares, at all times relevant to this complaint, is a social worker licensed under California state and employed as a CSP-Corcoran Licensed Clinical Social Worker to ensure the responsibilities of clinical management services, work with inmates on behavioral health issues, and maintain patient/facility safety. M. Casares is being sued in her individual and official capacities. CA license # 29722.

71. Defendant E. Romero, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system E. Romero is being sued in his individual and official capacities.

72. Defendant A. Cole, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system A. Cole is being sued in his individual and official capacities.

73. Defendant A. Corona, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system A. Corona is being sued in his individual and official capacities.

74. Defendant A. Luna, at all times relevant to this complaint, is a correctional law enforcement officer sworn under California state and employed as a CSP-Corcoran Peace Officer to ensure the responsibilities of maintaining order, enforcing law, and providing security within the prison system. A. Luna is being sued in his individual and official capacities.

75. Defendant J. (Janet) Wilson, at all times relevant to this complaint, is a psychiatric technician licensed in California state and employed as a CSP-Corcoran Psychiatric Technician to ensure the responsibilities of inmate patient safety, providing inmate patient wellness checks and referring suspected cases of self-harm/decompensation or other issues to clinicians. J. Wilson is being sued in her individual and official capacities. CA license # 31562; Board of Vocational Nursing and Psychiatric Technicians.

76. Defendant S. (Scott) Harris, at all times relevant to this complaint, is a psychologist licensed in California state and employed as CSP-Corcoran's Chief of Mental Health to ensure the responsibilities of 24/7 accountability for mental health care services provided within the institution, provide leadership to the Mental Health Clinical Program, act as a policy advisor, oversee all of CSP-Corcoran's mental health services. Among other responsibilities, S. Harris issues final institutional level decisions on inmate mental health

administrative remedies. S. Harris is being sued in his individual and official capacities. CA license # 22416; Board of Psychology.

77. Defendant A. (Anthony) Arisco, at all times relevant to this complaint, is a correctional law enforcement officer sworn in California state and employed as a CSP-Corcoran Investigative Services Unit and or Investigator Gang Unit Officer, to ensure the responsibilities of investigating prison crimes/incidents, investigating various types of allegations and gangs' activities, acts as an investigative agent for court prosecution, and is responsible for conducting/verifying inmate safety plans. A. Arisco is being sued in his individual and official capacities. Badge # 86002.

78. Defendants John/Jane Does (1-TBD), all times relevant to this complaint, were/are employed by CSP-Corcoran as peace officers and other prison personnel. John/Jane Does (1-TBD) are being sued in their individual and official capacities.

79. Defendant Office of Internal Affairs (OIA) John/Jane Does (1-TBD), at all times relevant to this complaint, were/are employed as CDCR investigative agents, headquartered in Sacramento, CA, to ensure the responsibilities of conducting internal affairs investigations and enforcing department policies and state/federal laws. OIA John/Jane Does (1-TBD) are being sued in their individual and official capacities.

80. Defendant CSP-Corcoran is a state prison based in Corcoran, CA. CSP-Corcoran is a level IV maximum security facility offering psychiatric unit services for incarcerated mentally ill male individuals in the state of California. CSP-Corcoran is being sued in an official and individual capacity as the agency branch that is employer of and the vehicle through which identified and unidentified Defendants and other parties acted while under the color of law.

## IV.   ADMINISTRATIVE REMEDIES

81.   Grievance log number report and additional information, <u>315792</u>: this administrative remedy is hereby **exhausted** at all levels in the California Department of Corrections and Rehabilitation (CDCR.) [Ex. H1.]

82.   Grievance log number report and additional information, <u>CSPC-5-18-05371</u>: this administrative remedy was **partially granted upon investigation/interviews** conducted by Lt. D. Lopez with Defendants K. Clark, R. Silva, J. Burnes, A. Encinas, C. Morelock, J. [E.] Leija, S. Gonzalez, J. Wilson, L. Pickering. This administrative remedy is hereby exhausted at all levels in CDCR. [Ex. H2.]

83.   Grievance log number report and additional information, <u>COR-04A-18-09-0940</u>: this administrative remedy was **partially granted upon investigation/interviews** conducted by Lt. D. Lopez. This administrative remedy is hereby exhausted at all levels in CDCR. [Ex. H2.]

84.   Plaintiff filed his grievances to report excessive use of force, assaults and batteries on Plaintiff by Defendants on around three separate occasions. Defendant. Sgt. J. Burnes was found to have unlawfully stood behind the camera for one use of force video interview preventing the camera recoding of Plaintiff's injuries--CSP-Corcoran, while acknowledging Defendant Sgt. J. Burnes had done this, had not provided Plaintiff a second use of force video interview, affecting the outcome of the administrative remedy.

85.   Plaintiff, in this same grievance, for his fourth allegation, reported that every time Plaintiff is housed in CSP-Corcoran, he continually suffers a consistent pattern of physical abuses and denial of his due process procedural rights, whether regarding his § 1983 1:19-

cv-00554-AWI-EPG, CDCR appeals/grievances, other cases. Plaintiff experiences tampering with his legal mail/properties, interference with court access—which has even resulted in the Eastern District, on or around August 23 2019, dismissing Plaintiff's § 1983 1:19-cv-00554-AWI-EPG for failure to prosecute. Defendants had been threatening and abusing Plaintiff, had prevented his responding to the Court, had been stealing/tampering with Plaintiff's outgoing legal mail. These Defendants who Plaintiff had been suing and grieving were the same individuals who setup Plaintiff via pairing him violence, predatory inmate, nicknamed Rocky. The same Defendants from Plaintiff's § 1983 1:19-cv-00554-AWI-EPG were the same Defendants who in January 2019 had double cell cleared Plaintiff/ Rocky, and this after Rocky was CDCR-documented/known to have recently attacked inmates/cellmates and who had then recently been caught by custody to be in possession of two razors affixed on a handle. [Ex. J10.]

86.   Plaintiff's fifth allegation in the grievance was that the Wardens, Associate Wardens (AWs), and other supervisors, should have removed Plaintiff from CSP-Corcoran and enacted/enforced a keep away order between Plaintiff and Defendants. Plaintiff, before the double cell clearance, had filed his complaint alleging Defendants were committing assaults and batteries, sexual groping/assault, making threats, and harassing him, but Defendants were allowed to continue to be around Plaintiff. The Wardens, AWs, other supervisors, allowed the Defendants to assign themselves provide court transportations for Plaintiff to court, to be around Plaintiff in the unit, to make decisions in Plaintiff's double cell clearance and in/for other care and custody procedures. As Plaintiff had/has active litigation/complaints on Defendants, they also continue to interfere with the court proceedings and grievances processes. Plaintiff's first counsel had filed a formal complaint

due to Defendants' unlawful, illegal actions. Plaintiff's claims involve Defendants falsifying documents and submitting false statements for case number 19CM-1882, other cases, and which were/are being used in Plaintiff's due process, in disciplinary procedure hearings—as a consequence of which, Plaintiff has suffered severe deprivations of liberty, property, privileges, an extended term over multiple years punitive segregation, and all this even after it was later found by the California Office of Inspector General (OIG) that a CSP-Corcoran RN had falsified related, official paperwork—which Defendant K. Clark (Warden) denied before going into retirement.

87.    In this complaint, Plaintiff detailed how Plaintiff's former Private Investigator (for Plaintiff's potential death penalty case) had attempted to do routine investigations and pull out inmates to interview, but which inmates had refused to come out. Later, these inmates had written to Private Investigator that they (the inmates) were being threatened by CSP-Corcoran custody staff to not speak with Plaintiff's Private Investigator. So, Plaintiff is unable to adequately fight his criminal, civil, administrative cases and bring grievances without reprisal and being in fear of being again setup or killed.

## V.  FACTUAL ALLEGATIONS

88.  **How/why current CSP-Corcoran retaliation and interference began:**

89.  Plaintiff arrived at CSP-Corcoran in or around mid-September 2018.

90.  Plaintiff transferred to CSP-Corcoran from Psychiatric Services Unit (PSU) CSP-Sacramento (Represa, CA), via a retaliatory transfer.

91. Plaintiff, at the beginning of September 2018, had been placed on a management status at A facility, PSU Bldg. 2, cell 107, and this management status permitted Plaintiff to only have access to his mattress, boxers, shirt, socks.

92. Around that time, Plaintiff was decompensating, self-mutilating, exhibiting symptoms of mental health issues everyday.

93. On or around September 7, 2018, Sgt. J. Brajas pulled Plaintiff out of his cell, and then searched Plaintiff's cell that had blood from Plaintiff's self-injuries, bloody clothing, rotten food, garbage everywhere.

94. Pictures were taken and a CDC 128-B form was filled out on September 7, 2018—but Plaintiff was not treated for injuries or mental health symptoms and just thrown back into his cell at that time.

95. Plaintiff at that time had various grievances submitted against CSP-Sacramento staff.

96. Plaintiff's then clinician made recommendations for a higher level of mental health care for Plaintiff, which recommendation Dr. Renata Pleshchuk-Kowalski (former CSP-Sacramento Mental Health Supervisor) ignored and instead sent Plaintiff to CSP-Corcoran.

97. Upon Plaintiff's arrival at CSP-Corcoran, in R&R, Plaintiff was placed in a holding restroom.

98. Peace Officers John Does opened the door and told Plaintiff, "Do you know where you're at? We're not like PSU Sacramento."

99. Plaintiff then stood up and responded, "Well, I'm not like the inmates here in Corcoran."

100. Peace Officers John Does told Plaintiff to cuff up, which Plaintiff did, and Peace Officers John Does had opened the door, rushed in, forcing plaintiff against the wall and dragged him to the floor.

101. Plaintiff since that time has received ongoing retaliation, threats from CSP-Corcoran staff.

102. Plaintiff had been sentenced/signed a plea bargain upon it being promised/agreed upon that Plaintiff would continue on specific antipsychotic prescriptions while in prison.

103. Post signing the plea bargain, upon Plaintiff's transfer to PSU/CSP-Sacramento, Dr. Stevenson had cut Plaintiff off cold turkey from these prescriptions.

104. By mid-September 2018, while in CSP-Corcoran, Plaintiff continued to have withdrawals/side effects from this cold turkey cut off of medications.

105. Due to the actions above, Plaintiff was unstable, and on September 18, 2018, Plaintiff notified a CSP-Corcoran unit psychiatric technician (PT) of Plaintiff having side effects and that he needed to see a doctor—but Plaintiff received no response.

106. Plaintiff then filed out a CDCR *7363 Health Care Services Request* form requesting/stating on the form that he needed to "see a psychiatrist, it's urgent" and Plaintiff ripped off a carbon copy for himself and turned the form in to/for an RN—Plaintiff received no response.

107. On or around September 24, 2018, around 7:00 am, Plaintiff experienced mental health symptoms due to abuse, threats, physical pain, and was self-mutilating in his cell.

108. Plaintiff had seen the person who abused him, and due to Plaintiff's PTSD, Plaintiff disassociated, an incident occurred while Plaintiff had the food port open with Plaintiff's blood from self-injury everywhere.

109. Defendant Peace Officer A. Cid saw this through Plaintiff's cell window/open food port and told Plaintiff, "I hope you fucking die."

110. Defendant Sgt. J. Burnes then ordered all PTs/clinicians that were on the top/bottom tier to leave the unit.

111. Plaintiff then noticed the mental health staff exiting Plaintiff's section.

112. Defendant PT W. Lewis then approached Defendant Sgt. J. Burnes and stated something to Sgt. J. Burnes like W. Lewis would "keep them over there/we'll be in C section," and then Defendant W. Lewis smiled at and gave a thumbs up to Defendant Sgt. J. Burnes and Defendant W. Lewis also exited the unit.

113. Defendant Sgt. J. Burnes then approached Plaintiff's cell, asking Plaintiff "to cuff up" to be pulled out; so, against policy/procedure (See *Coleman, et al v. Newsom, et al* (1995); document number 7333-1; filed on September 29, 2021), Plaintiff received no medical/mental health attention at his cell at that time.

114. Plaintiff questioned himself about cuffing up because of what Defendant PT W. Lewis stated to Defendant Sgt. J. Burnes with a smile and thumbs up, and for what Defendant A. Cid stated to Plaintiff— "I hope you fucking die"—after Defendant A. Cid had seen a lot of Plaintiff's blood everywhere and assumed because of that enormous amount of blood that Plaintiff would die by bleeding out.

115. Plaintiff decided to cuff up and responded to Defendant Sgt. J. Burnes, "Ok."

116. Plaintiff was handcuffed by Defendant Sgt. J. Burnes, and J. Garcia (4A tower peace officer) opened the door at Defendant Sgt. J. Burnes' instruction.

117. Plaintiff was escorted to the 4A1R rotunda by Defendants (Peace Officers) A. Cid, M. Rodriguez, and Sgt. J. Burnes to Plaintiff's right and Defendant Sgt. A. Encinas to Plaintiff's left.

118. Plaintiff thought when he entered the 4A rotunda that CSP-Corcoran medical providers would be waiting for him to see to his injuries, as medical/mental health service during self-injuring is dictated by policy/procedure.

119. When Plaintiff first entered the 4A rotunda, he noticed no one was present and the 4A1R office doors were shut.

120. Then out of nowhere, spontaneously and unprovoked, Defendant Sgt. J. Burnes slammed Plaintiff to the floor.

121. Defendant had then grabbed with his hands Plaintiff's hair that was wrapped in a bun.

122. Defendant then began slamming Plaintiff's head up and down onto the floor, and every time Plaintiff's head smashed into the floor, Defendant yelled, "Not on my staff, not on my staff," meaning Plaintiff was not allowed to file grievances on Sgt. J. Burnes' staff/colleagues.

123. Defendant Sgt. J. Burnes then placed a spit mask on Plaintiff.

124. Defendants A. Cid and Sgt. A. Encinas placed shackles on Plaintiff.

125. Defendant Sgt. J. Burnes then yelled to Defendants (ISU Officers) S. Gonzales and E. Garza, who were in the 4A1R office hiding, and to Defendants J. Garcia and ISU Lts. C. Love, C. Morelock, who were in the 4A1R tower, to hit their alarms.

126. Defendants who were with Plaintiff then dragged Plaintiff to a chair.

127. Defendant Sgt. A. Encinas grabbed Plaintiff by the back of Plaintiff's hair and shoved Plaintiff's head downward into Plaintiff's lap in a manner so that Plaintiff could not see anyone.

128. Plaintiff then heard the door open and Defendants John/Jane Does (peace officers), and ISU Officer J. Luis, who were responding to the alarm, entered.

129. Defendants John/Jane Does, J. Luis, and the other Defendants already present began punching/hitting Plaintiff.

130. Defendant Sgt. A. Encinas kept his right hand shoving Plaintiff's head downward and with his left hand he bent Plaintiff's wrist and he was kneeing the Plaintiff.

131. Defendant Sgt. J. Burnes was on Plaintiff's left side punching and kneeing Plaintiff.

132. Defendant Sgt. A. Encinas then rotated his hold of Plaintiff's wrist to bending Plaintiff's fingers in a manner as if to break it/them.

133. At this same time, yard was being run and most other 4A inmates were at yard, but some had remained in the unit and Plaintiff knew they would hear Defendants' shouting, cursing.

134. Defendants, including Sgts. J. Burnes, A. Encinas, who were in front of Plaintiff, continued to punch Plaintiff.

135. Defendant Sgt. A. Encinas forced his thumb into Plaintiff's right eye, forcing down against/into it.

136. Defendants then took a break after Defendant Sgt. J. Burnes' second pair of gloves broke.

137. Defendant ISU Officer J. Luis then asked Defendant Sgt. J. Burnes, "Do you need another glove, sergeant?"

138. Defendant Sgt. J. Burnes stated, "Ya, I do."

139. Defendant J. Luis then threw Defendant Sgt. J. Burnes a pair of latex gloves, and Defendant. Sgt. J. Burnes then put on the latex gloves.

140. Defendant Sgt. A. Encinas stated to Plaintiff, "Why did you do what you did."

141. Plaintiff responded, "I was assaulted by you guys when I arrived and threatened, and I've been having medical issues. When you guys beat on me, it makes my symptoms worse."

142. Defendant J. Burnes stated, "You're not going to do it again, are you, answer me?"

143. Plaintiff stated, "No."

144. Defendant stated, "I thought so—you know you got off easy this time."

145. Plaintiff's head was forced back down, and Plaintiff was beaten again.

146. Plaintiff could hear that someone was at the outside door and Plaintiff then heard PT carts coming in, and Defendants John Does were leaving,

147. Plaintiff tried to lift his head and was forcing his eyes upward so that he could see Defendant Jane Doe # 1 (RN) and Defendant J. Wilson (PT), who had been there all day, on his right.

148. At that time the 4A1R office door opened, and Defendants S. Gonzales, E. Garza popped their heads out of the opened door.

149. Plaintiff then noticed Defendant ISU Officer E. Leija, who was holding a camera, filming Plaintiff and blocking the back window's view into B section.

150. Defendant J. Wilson, laughing, asked Defendant Sgt. J. Burnes, "So you want us to check him out?"

151. Only Plaintiff's mask was lifted, and Defendants J. Wilson/Jane Doe # 1 only looked inside of Plaintiff's mouth, which had blood in it, and Defendants had not looked at rest of Plaintiff's head/face, which had blood/injuries.

152. Defendants J. Wilson and Jane Doe # 1 asked Defendant Sgt. J. Burnes, "Is [Plaintiff] going to CTC or TTA;" meaning whether Plaintiff should be sent to the Correctional Treatment Center or the Triage and Treatment Area, where medical treatment would have been provided to Plaintiff.

153. Defendant Sgt. J. Burnes stated, "No," and Defendant J. Wilson stated, "Ok, you got it;" and Plaintiff was not provided with medical or crisis intervention by a qualified clinician for the above assault or for his self-mutilation right before that assault.

154. Defendant J. Wilson later told Plaintiff that Defendant gave him crisis support for the above incident, which is in violation of the Mental Health Delivery System Guidelines/state law—only the clinician is credential and authorized to clear an inmate patient.

155. Defendant Sgt. A. Encinas pulled off Plaintiff's white Nike shoes and Defendant Sgt. J. Burnes walked to the door and smashed Plaintiff's prescription eyeglasses.

156. Plaintiff was then picked up, and Plaintiff noticed Defendant C. Morelock walking down to the right side of the hallway.

157. Plaintiff was then escorted back to his cell, where Defendant Sgt. J. Burnes then instructed Defendant J. Garcia (4A Tower Officer) to open Plaintiff's cell door.

158. Defendants Sgts. J. Burnes, A. Encinas instructed Plaintiff to stand against the wall, where Plaintiff's shackles were taken off.

159. Defendant M. Rodriguez had squatted down outside of the cell, keeping watch.

160. Defendant Sgts. J. Burnes, A. Encinas escorted Plaintiff into his cell and choked Plaintiff, Sgt. J. Burnes stating loudly, "Don' bite me," so that anyone who overheard/saw would think this was being done in defense for Plaintiff trying to bite Defendant.

161. Later, Defendant Sgt. J. Burnes falsified an allegation/charge against Plaintiff that Plaintiff had lunged and tried to bite Defendant to cover up the incident.

162. After Defendants were done, Plaintiff was then uncuffed and Defendant Sgt. J. Burnes had 4A1R tower close Plaintiff's cell door.

163. Plaintiff, in or around 2018, received an RVR over the above incident, in which Plaintiff was granted the opportunity to review the incident photographs that Defendants ISU Officers had taken of Plaintiff after the peace-officer-group assault and battery of Plaintiff. For that photo, Plaintiff was still in the chair and still under the spit hood mask, with two

sergeants visible on either side of Plaintiff and other officers nearby; however, the photographer had unusually cut off/excluded from the photograph all faces/heads and nametags of present sergeants/peace officers, in protecting the identities of staff who had committed the unlawful, illegal, vicious group assault upon Plaintiff—a mental health inmate who had been in restraints the entire time.

164. The related incident report was then falsified by Defendants including Defendants ISU Officers E. Leija, A. Arisco, and A. Cid, J. Garcia, others.

165. Defendant Registered Nurse (RN) L. Vasquez covered up for these Defendants via notating the erythema (redness) on Defendants' knees, knuckles, etc., which is consistent with kneeing/assault, but she had not specified/presented this as such in related paperwork; and the photographs from the incident also show extreme, deep, and broad redness that not possible from only kneeling or pressing on the ground.

166. From the dates of around September 24, 2018, through around September 27, 2018, Defendant Sgt. J. Burnes ordered his direct reports Defendants Peace Officers A. Cole, A. Luna, A. Corona to withhold food/beverages from Plaintiff for a period of at least three full days, and Plaintiff had no food, or beverages given to him for at least three full days.

167. From the peace-officer-group assault and battery incident on September 24, 2018, until around September 30, 2018, Defendants had removed the mattress/bedding/everything from Plaintiff's cell, so that Plaintiff was sleeping/living in a cold, bare concrete cell with extensive, untreated injuries.

168. Defendant Sgt. J. Burnes had around this time ordered PT L. Lewis and Social Worker T. Vue to falsify documents to prevent Plaintiff from receiving medical help.

169. On or around September 25, 2018, Defendant W. Lewis was completing his PT his rounds in 4A1R, and Defendant asked Plaintiff how Plaintiff was doing.

170. Plaintiff stated, "You know. Look at me. What do you think?"

171. Plaintiff's right eye was blood shot with conjunctival hemorrhaging, and he had a swollen face/bruising.

172. Plaintiff then told Defendant W. Lewis what had transpired, and Defendant stated, "Man, that's messed up," and then told Plaintiff to "have a nice day."

173. Later, upon Plaintiff receiving his Progress Notes records, Plaintiff noticed Defendant W. Lewis had not recorded/enter the statements Plaintiff made to Defendant, which, by policy, Defendant was required to record/enter.

174. On or around September 26, 2018, while Defendant W. Lewis was completing 4A1R PT rounds, Plaintiff told Defendant W. Lewis that Plaintiff needed Defendant to put in a medical request as an emergency due to Plaintiff's ribs had been broken and that it was hard to breathe. Plaintiff also stated he did not have a mattress and was sleeping on concrete.

175. Defendant W. Lewis stated, "I'll see what I can do."

176. On or around September 26, 2018, Defendant W. Lewis had not summoned/referred for medical, nor had he documented Plaintiff's injuries on the Progress Notes/PT rounds log for Plaintiff's daily well being.

177. On or around September 26, 2018, Defendant Sgt. J. Burnes and his direct reports Defendants I. Salcedo, A. Corona ordered Plaintiff to cuff up.

178. Defendants brought Plaintiff to the 4A1R foyer, where they assaulted Plaintiff by unprovoked slamming Plaintiff's head against the concrete wall and lifting/slamming Plaintiff head/chest first into the concrete floor.

179. At around that time, Plaintiff verbally informed Defendant K. Kyle-Maytubby (Mental Health Supervisor) of the peace-officer-group assaults during her CDCR-logged, twice weekly, cell-to-cell rounds.

180. Defendant K. Kyle-Maytubby is by her professional license a mandated reporter, pursuant to California Welfare and Institutions Code § 15630 *Mandated Reporters*.

181. Against state/institutional codes and polices, Defendant K. Kyle-Maytubby had not reported Plaintiff's statements and had neither summoned nor referred Plaintiff to medical treatment despite Plaintiff having visible trauma (extensive facial/body bruising, subconjunctival hemorrhage, deep lacerations, swelling) by that time.

182. Pursuant to CDCR Department of Operations Manual (DOM) 33030.3.1, all CDCR employees are to *"Comply with all applicable laws and regulations; Report misconduct or any unethical or illegal activity and cooperate fully with any investigation."*

183. And under CA Title 15 § 3268.1 *Reporting and Investigating the Use of Force for Institution or Facility Staff "(c) Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive use of force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible;"* yet, Defendants, bystanders, others failed to intervene and protect Plaintiff—and Defendants, bystanders, others failed to report during/after the above-described staff assaults.

184. After the peace-officer-group assault and battery on September 24, 2018, none of Plaintiff's clinicians were willing to discuss with Plaintiff what happened, none were willing to provide Plaintiff treatment in dealing with the resulting physical/emotional trauma.

185. On or around September 26, 2018, around 12:00 pm, Plaintiff had a one-on-on with CSP-Corcoran's psychologist Dr. J. Depovic. [Ex. K1.]

186. Plaintiff told Defendant Dr. J Depovic everything that transpired during a therapy session, without treatment for it.

187. Defendant Dr. Jasminka Depovic had stated, "Ya, you have to watch out here. There's some really bad people here."

188. Plaintiff sat while swollen, bruised, with his right eye red from a conjunctival hemorrhage, when Defendant asked Plaintiff how he felt.

189. Plaintiff responded that he was having trouble breathing and had no mattress.

190. Defendant had not responded.

191. Plaintiff then told Defendant he would like his antipsychotics back, that he was on Seroquel and Wellbutrin, Klonopin, other medications, and he explained that CSP-Sacramento/Dr. Stevenson, upon Plaintiff's arrival after being sentenced, told Plaintiff his first day at R&R, "You're not going to give us problems, are you?"

192. Plaintiff had asked Dr. Stevenson, "No, why?"

193. Dr. Stevenson stated, "Well, those medications are not allowed."

194. Plaintiff stated to Dr. Stevenson that Plaintiff had been promised by his attorney and the courts that he would be allowed to continue on those specific medications as a part of his plea bargain.

195. Dr. Stevenson had stated, "Well, we're cutting you off," and when Plaintiff stated, "You can't just cut me off, you have to [titrate] me off little by little, by lowering the milligrams," Plaintiff was threatened that they (CSP-Sacramento/CDCR) would send Plaintiff to Kern Valley State Prison (as a retaliatory level of care drop/transfer) if Plaintiff "gave them any problems."

196. After explaining the above to Defendant Dr. Depovic, Plaintiff, asked for those old medications back.

197. Defendant Dr. Depovic stated, "No," and that Plaintiff would have to file an appeal for it; so Plaintiff's mediations have been multiple times switched around causing painful side effects and without adequately helping/treating his mental health symptoms.

198. Defendant Dr. Depovic hat not summoned medical attention for Plaintiff and had not reported Plaintiff's allegations.

199. On or around September 30, 2019, around 8:00 am, during PT rounds for inmate patients' wellness checks, Defendant J. Wilson approached Plaintiff's cell.

200. Plaintiff told Defendant what happened to him and showed her that his right eye was damaged/red.

201. Defendant stated, "I thought you had pink eye."

202. Plaintiff said "No, while I was in the chair being punched and kneed, Sgt. Encinas forced his thumb in my right eye, pressing down."

203. Defendant then stated to Plaintiff "Oh, I knew something was going on," and "they kept me locked in the other section and I couldn't leave. I asked the Tower, but he said, 'They're busy.'"

204. Plaintiff told Defendant J. Wilson that Plaintiff was filing a complaint over the peace-officer-group assault and battery, and that Defendant W. Lewis was part of the complaint because, before leaving 4A section, Defendant W. Lewis had approached Defendant Sgt. J. Burnes and told Defendant Sgt. J. Burnes that he/Defendant W. Lewis would keep the mental health care workers in the other section, and had given Defendant Sgt. J. Burnes a smile and thumbs up as he also left the unit.

205. Plaintiff then told Defendant J. Wilson when he was escorted to rotunda for that group-peace-officer assault and battery, no medical worker was out there for evaluation or help, when it had been known that Plaintiff was seriously bleeding from self-mutilation prior to the assault.

206. Defendant responded, "Really?"

207. On or around September 27, 2018, Plaintiff was called to his door by Defendant W. Lewis who, for his daily PT welfare check, asked Plaintiff how Plaintiff was doing.

208. Plaintiff took the opportunity to see how Defendant W. Lewis reacted/responded to being questioned/confronted on what had happened because Plaintiff was not sure on the extent of Defendant's knowledge about what was going to and what had actually happened with the peace-officer-group assault and battery.

209. Plaintiff then informed Defendant W. Lewis what happened during the peace-officer-group assault and that Defendants had also taken Plaintiff's mattress, so that Plaintiff was still sleeping on concrete with his extensive injuries.

210. Defendant W. Lewis only responded with, "Really? OK. Well, how are you?"

211. Plaintiff then responded that his ribs were fractured, that it hurt when he breathed, and he had been self-mutilating; Plaintiff had a bowl of blood on the floor and bloody rags visible behind him.

212. Defendant W. Lewis responded, "OK," and Plaintiff asked Defendant, "You're not even going to put what I'm saying the in the Progress Notes, are you?"

213. Defendant W. Lewis only smiled and said, "Have a good day."

214. As Defendant was walking away, Plaintiff told him, "I'm going to get the Progress Notes out of the medical records and I'm filing a complaint."

215. Defendant W. Lewis stated, "Good Luck," and "Have a nice day."

216. Defendant W. Lewis had not reported Plaintiff's allegations and had not summoned qualified medical providers to treat Plaintiff's visible injuries, despite state/institutional policies that require Defendant per his role to do so.

217. From around September 26, 2018, through until around October 14, 2018, Defendants (Sgts/Peace Officers) warned Plaintiff verbally multiple times that Plaintiff was "doomed," and every time Plaintiff filed a complaint, Plaintiff was going to be assaulted/beaten and given the "Green Wall"[5] treatment.

218. Around September 2018, a Peace Officer [name redacted for Peace Officer's safety/security] uninvolved with/uncorrupted by Defendants, smuggled Plaintiff's 602 out of 4A to submit on Plaintiff's behalf because some Defendants had been tearing up

---

[5] Green Wall is a gang of correction guards formed in 1999 after a Thanksgiving Day inmate riot.

Plaintiff's 602s at his cell door; thus, Plaintiff was able to exhaust the administrative remedies process for the above events.

219. Plaintiff, verbally and in writing grievances, continued to put supervisors/management (i.e. Warden, et al) on notice of the above/similar events despite Defendants' credible and serious threats and intimidation against Plaintiff for doing so.

220. **Defendants/CSP-Corcoran through its employees obstructed Plaintiff's due process in some of the following manners:**

221. On or around October 10, 2018, Plaintiff filed another grievance and called to unit peace officer L. Xiong.

222. Plaintiff had filled out a CDCR *Form 22 Request for Interview* that had four pages and copies that a peace officer reads, signs, dates, gives the copies back, and then either forwards the documents through the mail or delivers it directly to the addressed staff.

223. Plaintiff asked L. Xiong to turn in Plaintiff's grievance/602 and L. Xiong agreed—by policy, inmates are able turn in grievances either through the mail addressed to the grievance office or to place it in the Appeals box/to the addresses, and for this form, Plaintiff had marked it to go through the mail.

224. Plaintiff stated on the *Form 22,* addressed to the Appeals Coordinator, "I'm sending out tonight with this a 602-A appeal to the Appeals Coordinator. The service I need is that you have received it, or them, basically a trace. This appeal is very important, thank you. It is dated 10/10/18 for staff misconduct for the record." [Ex. C1.]

225. Unit peace officer L Xiong then signed and dated the form and turned it in for Plaintiff.

226. A few or several weeks later, Plaintiff received response to one of his staff complaint grievances, where Defendants (Appeals Coordinators/Correctional Counselors) M. Olivera,

D. Goree, others, stated Plaintiff's handwriting was too small, despite it being 12-sized font or larger.

227. On or around October 28, 2018, Plaintiff turned in the same grievance with a CDCR *Form 22*, addressed to the Chief Deputy Warden, stating on the form, "Today, I'm sending or resubmitting a 602-A. I first filed it on 10/10/18. M. Olivera, a coordinator, said [she] couldn't read it, so I wrote it bigger on the line. I submitted it again and [she] said the same. I've contacted an agency and sent a copy with details of the 602 incident. I received a response through a family member. They said they read it clearly. The nature of the 602 should have never went [to that Appeals coordinator] anyways. Clearly, [she] was buying time and using tricks, but I have reasons to exhaust appeals remedies even if its rejected. Log # CSPC-5-18-05371. [Ex. C2.]

228. Plaintiff then called unit peace officer Rivera to Plaintiff's cell and asked Rivera to read, sign, date Plaintiff's above CDCR *Form 22*; Plaintiff retained a carbon copy and Rivera forwarded the complaint to the Warden.

229. Plaintiff later received two refusals to process Plaintiff's staff misconduct complaint with the reviewer's reasoning that CDCR policy dictates staff misconduct complaints need to be processed by those particular appeals coordinators—but staff had not categorized/processed Plaintiff's complaints correctly in order for these to be forwarded to the appropriately designated appeals coordinators.

230. That same day, on or around October 28, 2018, Plaintiff was not feeling well because his grievances were not being processed, and as a result, his health care and custody issues could not be/had not been resolved, and Plaintiff asked the unit PT if Plaintiff could get a CDCR form *7362 Health Care Services Reque*st.

231. The unit PT provided the *7362* form to Plaintiff, which Plaintiff filled out, writing on the form, "I'm requesting an x-ray evaluation on my upper left ribs. An incident happened to me on 9/24/18. I thought my ribs shooting pain would go away. I can't breathe all the way or use my inhaler effectively without my ribs shooting pain. I think they're broken or fractured. Also, my jaws since September 24, 2018. It's over one month and being hit there over forty times will do that, I guess. Well, hope to see you soon. Thank you;" and Plaintiff submitted that *7362* form the same day.

232. Upon Plaintiff later receiving the medical record for that *7362* form, an RN Jane Doe had notated on it that she had called Plaintiff's unit to have a PT talk to Plaintiff, which no PT had not actually done, and the RN noted that the unit PT had stated Plaintiff told the PT that the *7362* is old and all Plaintiff "wants is xrays for evidence reasons [sic]. [Plaintiff] is not in distress and is talking/standing." [Ex. D1.]

233. Plaintiff further expected this was due to Defendant L. Vasquez, who was/is the main RN, who was/is a part of Plaintiff's complaints and first § 1983 lawsuit 1:19-cv-00554-AWI-EPG, and who was/is always there when inmates get beat up—so, due to her history of complicity/cover-up for the same assaultive staff, Plaintiff had thus not expected to receive medical attention, if that Defendant was on duty and or the service request decisionmaker.

234. Around this same month/time, two Defendants John Does # 1, 2 (Sergeants) had approached Plaintiff's cell and asked him to come to the door.

235. Plaintiff asked Defendant John Doe # 1/sergeant, "Ya?" and Plaintiff then noticed Defendant Sgt. J. Burnes was also there with Defendants John Does # 1, 2/sergeants.

236. Plaintiff looked at Defendant Sgt. J. Burnes, who then told Plaintiff, "You better not say nothing," and Plaintiff noticed Defendants John Doe # 2/sergeant had a video camera in his hand.

237. The John Doe # 1/sergeant stated to Plaintiff, "You filed a use of force 602?"

238. Plaintiff said, "Ya."

239. John Doe # 1/sergeant had then asked Plaintiff, "You want to come out and do an interview?"

240. Plaintiff stated "Yes," but that Defendant Sgt. J. Burnes—for being named by Plaintiff in the use of force complaint—couldn't be there per CDCR policy; Plaintiff read CDCR's Department of Operations Manual, section 51020.17.3, which states "*Any visible or alleged injuries shall be video recorded. The video recording shall be conducted by custodial supervisors (sergeants or lieutenants) who did not use, or observe the force used, in the incident,*" and *"The custody supervisor shall not inhibit the inmate being interviewed from providing relevant information;*" which policy is intended to prevent the alleged/accused predator from intimidating their victim.

241. John Doe # 1/sergeant then looked at Defendant and stated, "Well, that's a refusal," and Defendant Sgt. J. Burnes continued his threats against Plaintiff.

242. John Doe # 2/sergeant had then turned his camera on and interviewed John Doe # 1/sergeant at Plaintiff's door stating, "I'm here in front of Osuna's house," and explained why.

243. Plaintiff began yelling but behind the door so that the camera could only record audio of Plaintiff shouting that Defendant Sgt. J. Burnes was behind the camera, and what had happened, and that Defendant was threatening him.

244. Defendants then left.

245. Defendant Sgt. J. Burnes and his medical provider staff had been worried that Plaintiff's injuries would be on video, and Plaintiff tried after this to get a new use of force video allegations report, but Plaintiff's request was denied.

246. On or around December 15, 2018, Plaintiff wrote a letter to Defendant S. Gates (Chief of CDCR's Health Care Correspondence and Appeals Branch), requesting Defendant S. Gates' assistance to process a medical/mental health care grievance/602 that Defendant CSP-Corcoran through its employees had repeatedly refused. [Exhibit F1, F3.]

247. Plaintiff stated in the letter, "Hello Gates, this is Jamie Osuna, I need some assistance. Can you please process my 602 (HC) at its proper level. I tried to turn it in in three ways. They don't want to and I'm being retaliated on. I'm not asking for no special treatment. This is my last resort to get it processed. Thank you, Gates. Have a good day."

248. On or around December 16, 2018, Plaintiff filled out another CDCR *Form 22 Inmate Request for Interview, Item or Service* and addressed to the Associate (assistant) Warden/AW. In section A on the form, Plaintiff requested, "AW, I'm sending you a 602 staff complaint since the mail room is rejecting it, saying to put it in the rotunda box. I put four so far and received no responses in the past month and half. This 602 is again on Sgt. [J.] Burnes. He violated operations manual section 51020.173. He was behind the camera, came back to my cell and we had words. It's 602(A). Since then, my cell gets tore up by him, and other things. I made two more handwritten copies to send to the OIA, OIG. I've been "out the way" since September 24. He's also getting self-mutilation information from my clinician Dr. A. Boyd PsyD, hitting my cell without cell search [receipts]. Can you send this 602 to appeals? Thank you." [Ex. C3.]

249. Plaintiff than called unit peace officer W. Cervantes to his cell and asked if W. Cervantes would read and sign the document and hand Plaintiff back the copies.

250. Unit peace officer W. Cervantes signed and dated the form on December 16, 2018, gave the copies back to Plaintiff, and then forwarded the form specifically to the staff AW, as the AW was the addressed-to party on the form.

251. Plaintiff asked W. Cervantes at that time to please make sure Plaintiff's 602/grievance made it to its addressee because none of Plaintiff's other grievances were making it—the AW, Warden, Appeals Coordinator, had never responded to Plaintiff's *Form 22s*; regardless of what Plaintiff put, Plaintiff had been ignored by them.

252. Plaintiff told W. Cervantes that Plaintiff had given Plaintiff's outgoing legal mail to certain second watch officers and that those legal letters never made it out of the prison; and then Plaintiff gave W. Cervantes Plaintiff's letter to Defendant OIA, at which time, W. Cervantes stated to Plaintiff that W. Cervantes would make sure Plaintiff's form and letter make it out to the addressees.

253. On or around January 6, 2019, Defendant J. Wilson hand wrote a *7362 Health Care Services Request Form* for Plaintiff to request an x-ray on Plaintiff's upper left ribs and upper left head for ongoing pain from assaults and batteries, and Defendant did this at Plaintiff's request due to Plaintiff's own requests being consistently denied; Defendant's handwriting and not Plaintiff's is shown on the *7362* form. [Exhibit D2.]

254. Defendant had also stated to Plaintiff that she would act as his witness to the peace-officer-group assault and batteries, to Plaintiff's knowledge, Defendant had never reported the assault and battery and misconduct.

255. On or around January 18, 2019, Defendants Sgt. J. Burnes, E. Romero (Peace Officer) and K. Kyle-Maytubby (Mental Health Supervisor) falsified/signed a 128-G Chrono/STG gang threat denunciation to incorrectly list/assign Plaintiff as an active gang member of the Southerners/Sureños; prior to this, Sgt. Brajas had already completed a 128-G Chrono/STG form, and which was on Plaintiff's file, so that another STG form was not due/needed.

256. Plaintiff's other court/CDCR documents from around the same time will show Plaintiff was not then a member of Southerners/Sureños.

257. These Defendants would have been aware of these other documents and Plaintiff's true background due to basic review requirements of inmate case factors, and more, for placement/housing pursuant to California Code of Regulations Title 15 § 3269.1 *Integrated Housing*; and CA Title 15 § 3269 *Inmate Housing Assignments.*

258. These Defendants also had personal knowledge that this was not Plaintiff's gang affiliation due to their frequent personal interactions with Plaintiff as Plaintiff's unit officers and Plaintiff's mental health clinician.

259. Defendants Sgt. J. Burnes, E. Romero, K. Kyle-Maytubby falsified/signed off on Plaintiff's paperwork/specific gang association like this because the Southerners/Sureños gang association enabled Defendants and others to cell Plaintiff with specific inmates that otherwise would not be possible pursuant to CDCR/state policies.

260. Defendant Sgt. J. Burnes had also recommended for Plaintiff to be sent to a "270" yard, which was inappropriate placement for Plaintiff based on case factors, other considerations, and not allowed pursuant to the above cited CDCR/state policies.

261. Defendants Sgt. J. Burnes, K. Kyle-Maytubby, others, due to their CDCR training and experience from working at CSP-Corcoran/other facilities, would have been aware of such

CDCR policies and inmate gang politics—therefore, it was clear that Defendants' intentions were to set Plaintiff up to be attacked and injured or killed.

262. On or around January 18, 2019, an IDTT committee was held without Plaintiff present when committee meetings usually include the affected inmate patient pursuant to *Mental Health Services Delivery System Program Guide, Chapter 3 Correctional Clinical Case Management System*. (See *Coleman, et al v. Newsom, et al*; document 7333-1; filed September 29, 2021.)

263. The committee summary report shows IDTT participants included Defendants K. Kyle-Maytubby, Correctional Counselor II M. Kimbrell, Staff Assistant J. Paison, recorder E. Cantu, Chairperson T. Dunn.

264. The IDTT committee endorsed Plaintiff to have a cellmate.

265. Defendant K. Clark and or Defendant S. Babb, as a normal course of duty as then Warden/Associate Warden, signed off on the IDTT/report.

266. Defendant K. Kyle-Maytubby via her mental health management/supervisory role had the ability/authority to draft/submit reporting and recommend/advocate for single cell status, etc., choices during the IDTT cellmate/housing decision meeting for Plaintiff, but Defendant K. Kyle-Maytubby willfully chose to not do so.

267. Around the same time that Defendant K. Kyle-Maytubby had agreed with Plaintiff's double cell clearance during the IDTT committee, Defendant K. Kyle-Maytubby also had placed Plaintiff on extreme restrictions—Plaintiff was not allowed to have razors, containers, due to his known and ongoing self-mutilations, and Defendant had Plaintiff on restrictions to not be around other inmates, even for/in work or educational settings.

268. Plaintiff disagreed with the decision to double cell clear him and Plaintiff requested that CSP-Corcoran have other staff make housing decisions for Plaintiff due to Plaintiff's open grievances/complaints against and ongoing retaliation/issues with Defendants K. Kyle-Maytubby, Sgt. J. Burnes, others, who were deciding to double cell clear Plaintiff and recommending/deciding to what yards to send Plaintiff to—as Defendants' involvement in these decisions was a clear conflict of interest.

269. Additionally, due to these Defendants being under investigation for Plaintiff's grievances against them, there should have been a separation of staff/inmate enacted and enforced.

270. Defendant CSP-Corcoran through its employees denied Plaintiff another decision-making team/housing decision and threatened Plaintiff with disciplinary action if Plaintiff were to refuse any cellmate.

271. Plaintiff had been sending letters to the OIG, Rosen Bien Galvan & Grunfeld, LLC (RBGG) (*Coleman* Project Team), and Defendant OIA asking for help with Plaintiff's mental health symptoms and also to put these agencies on notice about the abuse that all *Coleman* inmates/mentally ill offenders were being subjected to in CSP-Corcoran 4A, including violent staff assaults and batteries on restrained inmates and setups.

272. On or around January 20, 2019, CSP-Corcoran's then SHU/4A Associate Warden Defendant S. Babb sent Plaintiff a letter in response to Plaintiff's above-mentioned letter to the OIA that had been dated December 16, 2018, and in which Plaintiff had detailed CSP-Corcoran's supervisors/management being aware of and acting in deliberate indifference to misconduct (e.g. staff violence against *Coleman* inmates.)

273. Defendant OIA John/Jane Does had forwarded Plaintiff's correspondence to Defendant CSP-Corcoran/Defendant S. Babb despite the fact that Plaintiff had requested in the letter that Defendant OIA not do so due to likely serious retaliation.

274. In his letter, Plaintiff had also requested Defendant OIA to investigate misconduct/4A staff violence at CSP-Corcoran due to Defendants ISU/IGI officers being involved in these situations, and that there was a clear conflict of interest of the investigatory unit investigating itself.

275. Defendant S. Babb's Institutional Response to Plaintiff's statements/report (log # *COR-2140-18-344*) was, "All information pertaining to the allegation has been reviewed and all issues were adequately addressed;" Defendant S. Babb had ruled CSP-Corcoran-based Defendants were "not in violation" of CDCR policies. [Ex. G1.]

276. On or around January 24, 2019, Plaintiff filed 602 on the same/similar issues as above described.

277. On or around January 27, 2019, Plaintiff filed a 602 against Defendant K. Kyle-Maytubby and Sgt. Burnes for ongoing misconduct. [Exhibit H3, H4.]

278. On or around January 27, 2019, during 4A's breakfast pass, peace officers Sean and J. Valencia and their manager Defendant Sgt. J. Burnes were at cell # 64.

279. Plaintiff was at his cell door window eating and watching the tier.

280. Defendant Sgt. J. Burnes then left cell # 64, and headed to cell # 46, where Plaintiff was celled at that time.

281. Defendant Sgt. J. Burnes said to Plaintiff, "So, you're writing 602s again?"

282. Plaintiff replied, "Look, it's too early for this shit. Imma eat and go to sleep."

283. Defendant Sgt. J. Burnes replied, "Well, that's the word. I got ears everywhere."

284. Plaintiff asked, "Is that what Kyle [Defendant K. Kyle-Maytubby] told you after my one-on-one? 'Cause she's the only one I told."

285. Defendant Sgt. J. Burnes replied, "Do you think your clinician's going to believe anything you have to say, huh? She knows you're a long-hair, faggot, son of a bitch. You don't want to get fucked up like last time." [Ex. H4.]

286. On or around January 30, 2019, Plaintiff submitted grievance/602 log # *COR-19-01003* to complain about ongoing retaliation for Plaintiff submitting grievances/602s and Defendants' violence against *Coleman* yard 4A inmates, "Warden Ken Clark has known or should know of the malicious atrocities of battery, sexual abuse, harassment, and SBI assaults committing upon me and other *Coleman* class mental health inmates housed in the 4A1R SHU and refused to correct the harm."

287. January 30, 2019, Defendants Sgt. J. Burnes and Peace Officer A. Loza conducted yet another retaliatory search of Plaintiff's cell, and this time, as malicious compliance to Plaintiff's previous grievance/602 regarding Defendants hitting (searching/seizing) Plaintiff's cell without proper procedure/no cell search receipt, Defendants gave Plaintiff a *CSP-Corcoran Cell/Locker Search* receipt.

288. On the receipt, Defendants had falsely marked each item as "altered" as a pretense to remove all items from Plaintiff's cell, including Plaintiff's mattress, blanket/bedding. [Ex. I1.]

289. Plaintiff again was living in/on cold, bare concrete due to this theft.

290. On or around February 5, 2019, Plaintiff received notification for log # *CSPC-5-19-01003*, in which Plaintiff had detailed retaliation and the September 24, 2018, peace-officer-group

assault, but which 602 was rejected/denied because Plaintiff had made "a general allegation but fails to state facts or specify an act or decision consistent with allegation." [Ex. G2.]

291. Plaintiff provided his response on the form in the appropriate section, "On 9/24/18, I was assaulted in a chair for 45 min by Burnes, Encinas, ISU. I put the log # on [the] 602 for reference # CSP-5-18-05371. The 602(A) is a staff complaint. [The] AW/W [Associate Warden/Warden] know about me being assaulted by ISU and sgts. I've also filed 4 other 602(A) and sent W/AW [CDCR *Form 22s*] with no response. I made a paper trail on 17 Defendants." [Ex. G2.]

292. Around this time former inmate A. (Anthony) Turner G27511 was celled near Plaintiff and had mentioned to Plaintiff his witnessing misconduct/assaults against Plaintiff by Defendants.

293. At that time, Plaintiff then opened up to A. Turner G27511 and mentioned Plaintiff's issues with getting complaints/requests out of 4A to the addresses, that Plaintiff was being ignored and the misconduct was continuing without intervention.

294. A. Turner G27511 helped Plaintiff write out Plaintiff's § 1983 case 1:19-cv-00554-AWI-EPG, and A. Turner G27511 then sent the filing to the court under his own return addressed envelope, and with the name "Osuna" misspelled as "Asuna" on/in the complaint in order to get it out of CSP-Corcoran. [Exs. B1, B2.]

295. 1:19-cv-00554-AWI-EPG was first sent to the wrong district—California's Northern District.

296. A. Turner G27511 had also recommended that Plaintiff contact Defendant S. Gates and informed Plaintiff that Defendant headed/was over CSP-Corcoran's mental health/medical staff.

297. A. Turner G27511 offered at that time to send whatever documents Plaintiff wanted to send to Defendant S. Gates under an envelope addressed from A. Turner G2751—to ensure the envelope/documents would get out of CSP-Corcoran/circumnavigate around other Defendants who had been actively blocking Plaintiff's communications.

298. Plaintiff then provided to A. Turner G27511 the documents Plaintiff wanted to send to Defendant S. Gates, which A. Turner G27511 then sent out under his own addressed envelope. [Ex. F2.]

299. On or around February 11, 2019, Plaintiff addressed a *CDCR Form 22* to Defendant S. Gates to put her on notice of the following:

300. First, Plaintiff had a credible party [former inmate A. Turner G27511] send Defendant S. Gates documents on Plaintiff's behalf due to CSP-Corcoran blocking Plaintiff's grievances/due process, and secondly, Plaintiff wanted to discuss with Defendant S. Gates Plaintiff's serious allegations and evidence paper trail against Defendants K. Kyle-Maytubby and Sgt. J. Burnes over misconduct/abuse of Plaintiff and yard 4A *Coleman* inmates, stating on the form, "Sara Gates, my name is Jamie Osuna. I had a credible friend send you documents to Sacramento due to so much going on and my mail being tampered with. I have made serious allegations against [Defendants K. Kyle-Maytubby] and Sgt. J. Burnes, 2nd watch, in which I've made a paper trail, have evidence. I wish to correspond with you to show you [K. Kyle-Maytubby's] involvement in what's going on;" unit peace officer Hernandez signed, dated, forwarded the form. [Exs. C4, F2.]

301. On or around February 18, 2019, Plaintiff stated on a *CDCR Form 22 Request For Interview, Item Or Service*, section C, that he could not come out to a mental health appointment due to staff assaulting him, that "based on retaliation every time I do [come

out.] I can't even make it past the rotunda. I have submitted a [*7562 Health Care Services Form*] to see if an RN can look at my [injuries] on my head not done by myself. A 602 is submitted on [the] incident. I told [Defendant K. Kyle-Maytubby], my clinician. She's done nothing." [Ex. C4.]

302. On or around February 18, 2019, Plaintiff submitted two CDCR *Form 22s,* and a CDCR *7362 Health Care Services Form* ("*7362*") requesting to see medical staff but "only" at Plaintiff's cell-side due "to the physical retaliation every time" Plaintiff had come out of his cell, and that on January 23, 2019, when Plaintiff was escorted from his cell for a one-on-one mental health clinical session, Defendant A. Loza (Peace Officer) and his manager Defendant Sgt. J. Burnes had unprovoked bashed Plaintiff's head into the 4A1R rotunda wall leaving Plaintiff with a swelling/bump that would not heal, and that due to these rotunda assaults, Plaintiff was unable/unwilling to go to any other appointments. [Ex. D3.]

303. On or around February 20, 2019, Plaintiff's § 1983 civil rights action 1:19-cv-00554-AWI-EPG was filed/processed by the court/court clerk.

304. **Retaliation and cover-up in response to Plaintiff's filing a § 1983 civil rights action:**

305. Defendant CSP-Corcoran through its employes made attempts to cell inmates with Plaintiff who were not compatible with Plaintiff under CDCR/state policy/guidance:

306. Inmates who were of enemy STG validation (gang validation) to Plaintiff refused to cell with Plaintiff based on STG incompatibility, and two inmates received Rules Violation Reports (RVRs) for that refusal.

307. Plaintiff was unable to refuse any cellmate at that time because Plaintiff would then have been in violation of California Code of Regulations Title 15 § 3005(b) and since Plaintiff was already on restrictions, Plaintiff would have received a RVR for a cellmate refusal—an

RVR would have meant that all of Plaintiff's properties/legal materials/efforts for 1:19-cv-00554-AWI-EPG would be confiscated/blocked.

308. Plaintiff discussed and then formally agreed to cell up with one man he was on friendly terms with; Plaintiff and this man were case-factors-wise deemed compatible under CDCR/state policies and had planned to complete each other's facial tattoos.

309. Via the falsification actions by Defendants Sgt. J. Burnes, K. Kyle-Maytubby, E. Romero on the 128-G Chrono, in addition to the cellmate chrono signing of Defendants A. Loza and Lt. F. Munoz, Plaintiff was instead celled with inmate L. (Luis Gilberto) Romero H56733—against CDCR/state policies.

310. L. Romero H56733 had a CDCR-documented and then recent history of volatile mental health issues and unprovoked, violent assaults upon his cellmates/other inmates.

311. L. Romero H56733 was physically taller than Plaintiff by four or five inches, and around thirty or forty pounds heavier than Plaintiff.

312. L. Romero H56733 was not on restrictions—unlike Plaintiff.

313. Defendants, against CDCR/state policies, paired Plaintiff with aggressive/violent L. Romero H56733, in malicious retaliation for Plaintiff's 602s and § 1983 lawsuit that exposed Defendants' crimes and misconduct.

314. Defendants maliciously intended for Plaintiff to be assaulted, seriously injured or killed via their cell-pairing decision.

315. L. Romero H56733's background of violence/unprovoked attacks on inmates would have been known to Defendants Sgt. J. Burnes, K. Kyle-Maytubby, A. Loza, others, via the paperwork maintained/reviewed on/for all CDCR inmates.

316. L. Romero H56733 was a *Coleman* inmate and had previously been housed in CSP-Corcoran at EOP, the highest level of CDCR outpatient mental health care—Defendant K. Kyle-Maytubby, as CSP-Corcoran's mental health supervisor, had awareness of/direct access to L. Romero H56733's mental health records/history.

317. Other Defendants had also previously signed off on and favored L. Romero H56733 in L. Romero H56733's write ups/RVRs.

318. L. Romero H56733 was involved in the following incidents at CSP-Corcoran or other facilities (an example, inexhausted list):

319. June 14, 2005, *CDC 114-A1 Inmate Segregation Profile* noted L. Romero H56733 had a battery on staff in November 2004, inmate batteries in March 2022, October 1998, and in 2005; L. Romero H56733 "introduced contraband" into Ad-Seg, had "obstructed" a peace officer, and his nickname was "Rocky" (known among the inmates for L. Romero H56733's resorting to fist fighting to resolve issues/dislikes.) [Ex. J1.]

320. January 21, 2006, L. Romero H56733 refused to return to a cell when he didn't like the cellmate, refused to comply with officer's orders to return his cell, led custody on a chase until staff tackled L. Romero H56733 to the ground, where L. Romero H56733 then resisted and continued to ignore officers' orders. CSP-LAC log # *C06-01-0020*. [Ex. J2.]

321. August 17, 2007, L. Romero H56733 completed CDCR's *Creative Conflict Resolution Course*. [Ex. J3.]

322. July 23, 2013, L. Romero H56733 received CDC 114-D Administrative Segregation Unit Placement Notice; officers observed L. Romero H56733 "battering" an inmate and that H56733's "presence on Facility 'C' presents a threat to the safety and security of the institution, its staff and inmates." [Ex. J4.]

323. January 6, 2014, CDC 114-A1 Inmate Segregation Profile noted L. Romero H56733's prior housing at CSP-Corcoran, and L. Romero H56733's battery on inmate incidents from December 2014 and July 2013. [Ex. J5.]

324. December 10, 2014, CSP-Corcoran, EOP unit, a peace officer saw L. Romero H56733 "commit an act of battery on inmate;" L. Romero H56733 had approached his victim from behind, threw a cup, and L. Romero H56733 hit his victim. L. Romero H56733 refused an officer's order to prone out; L. Romero H56733 then kicked his victim who was already down; L. Romero H56733 again refused an officer's orders to get down; L. Romero H56733 picked up a water cooler and the officer then sprayed L. Romero H56733 in the facial area, which L. Romero H56733 deflected with the water cooler; L. Romero H56733 again refused orders to get down and the officer sprayed him a second time; L. Romero H56733 ran from staff and later proned out in front of the showers after custody chased him. [Ex. J6, J7.]

325. RVR log # *3B-14-12-026* also notated that L. Romero H56733 "presents an immediate threat to the safety of self or others" and "endangers institutional security."

326. December 10, 2014, L. Romero H56733 went into Ad-Seg placement/received a SHU term for H56733's unprovoked inmate assault, and staff "deemed [L. Romero H56733] a threat to the safety and security of the institution, its staff, and inmates." RVR log # *3B-14-12-026/COR-03B-14-12-072B.* [Ex. J8.]

327. January 06, 2015, Ad-Seg, Staff reported L. Romero H56733 "presents an immediate threat to the safety of self or others," "endangers institutional security" due to his battery on inmate. Log # *COR-03B-14-12-0728.* [Ex. J9.]

328. January 06, 2015, H56733's CHCF pre-Ad-Seg admission *7219* Form noted L. Romero H56733 was in PMU (patient management unit)—a specialized CDCR unit for inmate patients with acute mental health needs. [Ex. J10.]

329. March 18, 2015, after a staff review, L. Romero H56733 was still retained in Ad-Seg/SNY. [Ex. J11.]

330. April 10, 2015, Kings County Superior Court (Hanford, CA), heard case 15cm-7121 against L. Romero H56733 for felony assault. [Ex. J12.]

331. May 20, 2015, CDCR *128-MH3 Mental Health Placement Chrono* notates L. Romero H56733's "history of fighting," "batteries on inmates," and "making pruno" (prison moonshine), and a prior *Mental Health Placement Chrono* show L. Romero H56733 was in CDCR's mental health program from around 1997. [Ex. J13.]

332. June 04, 2015, in/under Defendant CSP-Corcoran, H56733 told a peace officer, "I just can't live with a Black guy" and received a RVR over refusing a cellmate due to that man's race. CSP-Corcoran RVR log # *FC-15-05-023*. [Ex. J14.]

333. July 9, 2015, L. Romero H56733's parole was denied because of the following: H56733 was "still acting violently;" was a "continued threat to public safety;" L. Romero H56733's then most recent RVRs were related to violence; the Parole Board considered L. Romero H56733 "an extreme risk to the community, and therefore [he was] not suitable for parole," with the next hearing not for at least a decade; the Parole Board noted L. Romero H56733 was impulsive, unstable, was the product of a bad childhood with an "abusive mother;" and L. Romero H56733 had to provide the Parole Board with information for potential job/location if he were to be deported at that/or any future parole opportunities. [Ex. J15.]

334. January 28, 2016, L. Romero H56733 completed CDCR's *Beyond Anger,* an anger management course. [Ex. J16.]

335. October 01, 2016, L. Romero H56733 received an RVR for attacking his cell mate/fighting over an argument; L. Romero H56733's victim stated L. Romero H56733 gets "crazy when [H56733] takes his medication."  RVR # *994525*, Kern Valley State Prison. [Ex. J17.]

336. December 08, 2018, a peace officer responded when he overheard L. Romero H56733 fist fighting/hitting his cellmate and L. Romero H56733 would not stop his attack at the peace officer's commands to stop; L. Romero H56733 had to be chemically sprayed in the facial area to stop.  [Ex J18.]

337. January 18, 2019, H56733 came behind another inmate in an "aggressive manner;" L. Romero H56733 struck his victim with fist in head/facial area; during a body search, peace officers found L. Romero H56733 had a BIC razor handle with cloth and tape around holding two separated razor blades tips, four inches in length, and the blade was an inch in length. Incident log # *MCSP-AYD-19-01-0029*; and Administrative Segregation Unit Placement Notice. [Ex. J19.]

338. On or around the first week of March 2019, circumstances for Plaintiff's current open felony case 19CM-1882 occurred.

339. Immediately after that incident, Plaintiff was in and out of consciousness.

340. When Defendant Peace Officer L. Pena came to Plaintiff's cell door around 7:30 am, Plaintiff told Defendant that Plaintiff was in a crisis situation and asked Defendant for help.

341. Defendant L. Pena stated he was leaving to get a sergeant.

342. Plaintiff was later escorted from his cell.

343. Plaintiff was put into a rotunda holding cage, where Plaintiff again asked for help, but no care was provided.

344. A group of management-level John Does were nearby discussing how they had to get an interview Plaintiff before anything else, for staff to do whatever has to be done to get an interview with Plaintiff, and that Plaintiff was not to be given anything (medical care, food, etc.) until an interview was completed.

345. Lt. Randolph and Defendants M. Rodriguez and Sgt. A. Navarro came to Plaintiff's cage.

346. Defendant Sgt. A. Navarro informed Plaintiff that Defendants were going to do a video-recorded interview with Plaintiff over the incident, and that Plaintiff was going to cooperate for the interview.

347. Defendant Sgt. A. Navarro at that time reminded Plaintiff what had happened to Plaintiff before (i.e. the peace-officer-group assault and battery) and told Plaintiff that this was "nothing compared" to what they could do if Plaintiff were to refuse to do the interview/cooperate with Defendants for the interview.

348. Plaintiff again asked for medical treatment/clinician; no treatment/help was given to Plaintiff at that time.

349. Around six to seven ISU Officers, including Defendants/others R. Rubio, V. Pena, J. Fugate, C. Navarro, T. Brazelton, J. Guiterrez, E Sanchez, A. Arisco entered the area.

350. Defendant T. Brazelton then informed Plaintiff that Plaintiff better cooperate with an interview.

351. At this time, there were medical personnel present in the area in Plaintiff's view, but no medical help/assessment was provided to Plaintiff despite Plaintiff again asking for it.

352. Plaintiff believes Defendants' refusal to give Plaintiff medical attention was due to their threats for Plaintiff to cooperate for a video interview and that Defendants had not wanted Plaintiff's physical status documented if Defendants would have to afterward use force/brutality to coerce wanted actions/statements from Plaintiff.

353. Defendants conducted an unclothed body search of Plaintiff, and Defendants gave Plaintiff boxers/t-shirt to now wear; and Plaintiff remained in the rotunda holding cage.

354. Plaintiff again verbally informed Defendants that he had not wanted to do the interview and had not wanted to be recorded.

355. Plaintiff was intimidated to do the interview and Defendants made it clear that Plaintiff could not receive any medical attention, water/food, etc., until Plaintiff completed their interview.

356. Plaintiff was taken out of the rotunda cage to a room with a camera; Plaintiff again expressed that he had not wanted to do a recorded interview.

357. Under unlawful coercion, Plaintiff completed the interview.

358. After the forced interview, Plaintiff was put back into the rotunda cage, and it was maybe around 4 pm at that time.

359. Plaintiff had been given a blanket and he laid down on it/on the ground until around 11 pm or midnight.

360. Around midnight, Lt. Randolph came to Plaintiff's rotunda cage and informed Plaintiff that Defendant CSP-Corcoran was holding an emergency mental health hearing with crisis supervisors.

361. Plaintiff was escorted from the rotunda cage into the 4A1R committee room, where Psychiatrist Diane and others were located, and Plaintiff was locked into a holding cage.

362. Psychologist Diane began asking Plaintiff questions about the keloids, scars, etc., that were then visible upon Plaintiff's legs and arms, and she then asked questions Plaintiff about his self-mutilation, self-harm.

363. Plaintiff described to her his PTSD, the issues in 4A, how CSP-Corcoran's mental health employees refused Plaintiff help, and that Plaintiff was allowed to self-mutilate, mentioned his contact with RGBB and that Defendant K. Kyle-Maytubby was refusing him help/denying a level of care change, which Defendant S. Harris (CSP-Corcoran Chief of Mental Health) was also denying via the closing of Plaintiff's health care/mental health grievances without intervention.

364. Psychologist Diane informed Plaintiff that she had read his letters to RBGG/*Coleman* Project Team, believed Plaintiff needed to be held in Crisis Watch/CTC, have CHCF testing and treatment, and that Psychologist Diane believed Plaintiff was suffering from severe mental health symptoms and needed to be hospitalized.

365. Psychologist Diane's decision to order Plaintiff to an inpatient psychiatric hospital overrode Defendant K. Kyle-Maytubby's decision to maintain Plaintiff in/under CSP-Corcoran at CCC, the lowest level of mental health care.

366. Plaintiff was escorted out of the holding cage.

367. Plaintiff so far had not had any medical attention, water, or food since around the previous day and it was after around midnight when Defendants P. Ricablanca (PT) and E. Romero (Peace Officer) approached Plaintiff.

368. Defendant P. Ricablanca only took Plaintiff's blood pressure and had not checked Plaintiff for injuries and had not done any other basic medical assessment procedures.

369. Defendant P. Ricablanca then falsified a CDCR *Form 7219 Medical Report of Injury* on Plaintiff as if Defendant had checked Plaintiff for injuries/completed a physical evaluation, when Defendant had not actually done so, and Defendant notated statements for Plaintiff that Plaintiff had not actually made to Defendant, and then Defendant further falsified the date/time to March 09, 2019; 0732 to 0735.

370. **Since that time, Defendants interfered with Plaintiff's due process/access to courts for 1:19-cv-00554-AWI-EPG and 19CM-1882—a potential death penalty case—in the following manners:**

371. On or around/after March 09, 2019, Defendant ISU Officers during removed all of Plaintiff's related case legal materials/protective bagging for 1:19-cv-00554-AWI-EPG from Plaintiff's cell, but never logged or accounted for and never returned these materials.

372. Plaintiff was not allowed to respond to the Court for 1:19-cv-00554-AWI-EPG.

373. On or around August 23, 2019, Judge Ishii, Eastern District, dismissed 1:19-cv-00554-AWI-EPG due to no response from Plaintiff.

374. Falsified assault-on-staff claims/charges were filed against Plaintiff: 19CM-1275, March 21, 2019; and 21CM-4750 on September 24, 2021—even after these false charges were brought against Plaintiff, there was no separation between Defendants and Plaintiff enacted/enforced.

375. Around 2019, 2020, 2021, while Plaintiff was housed at CSP-Corcoran, he was escorted to see his former legal team's Private Investigator (PI) for 19CM-1882, 19CM-3928, 19CM-1275, 21CM-4750—cases related to Plaintiff's grievances and civil complaint case 1:19-cv-00554-AWI-EPG.

376. During visitation, Plaintiff's former PI told Plaintiff his former counsel had to file a complaint against CSP-Corcoran officers.

377. Plaintiff asked, "Why?" and asked whether CSP-Corcoran's ISU Officers/unit were investigating the complaint.

378. Plaintiff's former PI stated, "No, because it's a conflict of interest. An outside department is investigating."

379. Plaintiff asked what the complaint was about, whether it involved the courts or CDCR.

380. Plaintiff's former PI stated that PI had scheduled legal visits with several CSP-Corcoran inmates to interview them/speak with them about Plaintiff's case, and that every time PI had come down to CSP-Corcoran none of the scheduled inmates would come out, and that after one of the many missed appointments, when PI went to PI's office, there were letters for him there from the same inmates who had scheduled visits but had not come out.

381. Plaintiff's former PI stated the inmates had written in the letters that they wanted to come out to the legal visits, but they had been approached and threatened by CSP-Corcoran officers to not cooperate or talk with Plaintiff's former PI.

382. Plaintiff at that time informed his former PI that Plaintiff was also being threatened—that Defendant Sgt. A. Encinas would come to the unit on occasion and threaten Plaintiff.

383. Plaintiff also told his former PI that Defendant Sgt. J. Burnes moved from 4A to R&R, and that Plaintiff is escorted through R&R every court date, that the same appointed Defendants/ISU officers would drive up to the back fence of R&R, roll down the back window/Plaintiff's window and Defendant Sgt. J. Burnes would state to Plaintiff, "So, you're fighting your case, huh?" Plaintiff would nod his head up and down and Defendant

Sgt. J. Burnes would respond, "We'll see. You think you're going to win? We'll see about that. You're not going to make it that far—remember what happened last time."

384. Plaintiff had later verbally complained about this to the ISU Officers transporting him and had asked Defendant S. Gonzalez what the problem was with Defendant Sgt. J. Burnes.

385. Defendant S. Gonzalez stated to Plaintiff, "Oh, I don't know," and that she would "talk to [Defendant Sgt. J. Burnes]."

386. Instead of investigating Plaintiff's complaints of ongoing intimidation and retaliation, Defendants ISU Officers tried to make a deal with Plaintiff to please guilty in exchange for the retaliation and abuse to stop.

387. On or around May 13, 2020, Plaintiff had announced during his hearing at Kings County Superior Court that he wanted to plead guilty and waive a preliminary hearing due to this, which was ignored/overridden in the court, and the retaliation had not stopped at that time.

388. Plaintiff had additionally contacted/informed his former counsels on multiple dates, including March 24, 2022, April, 29, 2022; June 20, 2022, September 05, 2022, other dates, to inform them that Plaintiff was being threatened and that his legal materials for the case were being tampered with/stolen, and that Plaintiff had a witness list to provide for his criminal case, Plaintiff had no response from those counsels—Plaintiff was not even allowed to know who counsels were submitting as witnesses in his case.

389. Plaintiff's efforts through CSP-Corcoran's management channels, as well as through his local counsels to extricate himself from irreparable harm were unsuccessful/ignored.

390. Without intervention from CSP-Corcoran management/supervisors, other supervisory agents, and without intervention via Plaintiff's counsels/Kings County Superior Court/external agents, Plaintiff continued to receive consistent retaliation and interference

from/by Defendants Sgt. J. Burnes, V. Pena, C. Navarro, A. Guerrero, others, who Plaintiff was grieving, and who were part of Plaintiff's criminal, civil, administrative cases.

391. Plaintiff complained to CA State Bar about his complaints being ignored over multiple dates, including August 08, 2022.

392. Plaintiff also verbally complained to Defendants S. Gonzales and the other ISU Officers during court transportation about how Plaintiff is missing his legal properties, legal paperwork, which goes through R&R after Sgt. J. Burnes, A. Encinas, others go through that legal paperwork/property.

393. The only response Plaintiff received to his many complaints to Defendants ISU Officers is how Plaintiff should just plead guilty.

394. Plaintiff explained to Plaintiff's former PI that Defendant S. Gonzales and the same Defendant ISU Officers who are named in Plaintiff's grievances and § 1983 civil rights action to escort Plaintiff to Kings County Superior Court, that these Defendants, others, had been interfering in Plaintiff's due process/legal process, and have been in the unit threatening Plaintiff to not fight his cases, for Plaintiff to plead guilty, that Defendants Sgt. A. Encinas, E. Garza, M. Rodriguez, and other Defendants, and staff A. Johnson (4A unit captain), E. Moreno (peace officer) stated to Plaintiff that he will never win his grievances.

395. Plaintiff expressed to his former PI the impossibility of remaining housed at CSP-Corcoran and effectively communicating with his former PI/legal team and fighting Plaintiff's case, filing legal paperwork with the threats against himself/witnesses with Defendants' willful, intentional interference and that every aspect of Plaintiff's daily life is managed by the same Defendants—thus, Plaintiff needed keep away orders and a transfer.

396. Plaintiff explained to his former PI that Defendants A. Loza and Sgt. J. Burnes were now/had been working in R&R, which is where Plaintiff's legal work (which has also come in big box packaging.) processes through and from where Plaintiff's legal property has been stolen—even though its mail, it is not processed through the mailroom for inspections—it goes through where Defendants Sgt. J. Burnes and A. Loza work.

397. Plaintiff explained to his former PI that Plaintiff had been programming and that in spite of this Defendants were still interfering and physically abusing him, that the retaliation was based on his criminal case and not just because Plaintiff had been/was filing grievances.

398. Plaintiff's former PI only stated "Oh," and implied via attitude that Plaintiff was somehow eliciting Defendants' criminal behavior (retaliation, legal property/theft, threats/intimidation.)

399. Plaintiff stated, "Really?" and then Plaintiff's former PI smirked.

400. Plaintiff expressed he was not comfortable talking where PI and Plaintiff were then currently and had been holding all of their legal visits—in CSP-Corcoran's committee room, or in the unit sergeant's office, and Plaintiff stated to PI that this was neither the legal visiting room nor a confidential setting.

401. PI then responded that his "friends are here today," and had on previous occasions expressed to Plaintiff PI's personal friendship with Defendant D. Goree (Correctional Counselor who reviewed/decided some of Plaintiff's grievances/appeals decisions, finding in these CSP-Corcoran's favor), and Plaintiff's ex-counsel's husband had also been a CSP-Corcoran custody employee.

402. Plaintiff could only shake his head at PI's response about his friends working that day for that being the reason why Plaintiff and PI were in a non-confidential setting for a legal visit.

403. Plaintiff requested alternate/non-CSP-Corcoran housing where Plaintiff could fight his case free from retaliation, reprisal, abuse, and threats.

404. Plaintiff laid out his legal, civil, federal, and constitutional rights to not be deprived of life, liberty, property without due process and his right to equal protection of the laws, while in their jurisdiction, including the right to grieve and petition the government for redress of grievances without retaliation.

405. Plaintiff told his former counsel/PI the rules of rights governing the business code of conduct for defense counsel that must be respected and followed, and as well as California criminal law rules and procedure/practice.

406. M. (Melina) Benninghoff and B. (Bryan) Pinto (former counsel/PI) expressed to Plaintiff how they personally disliked Plaintiff, and after that they continued to work against Plaintiff, to undermine Plaintiff's case.

407. In/throughout 2019-2023, Plaintiff was transferred back and forth between CHCF, CSP-Sacramento (Represa, CA), Salinas Valley State Prison (Soledad, CA), and Defendant CSP-Corcoran.

408. Each return of Plaintiff to housing in/under Defendant CSP-Corcoran entailed his property being logged in R&R.

409. Defendant A. Loza (Peace Officer) since around February 2020 had been moved from yard 4A duties to R&R; Defendant Sgt. J. Burnes also has been moved from yard 4A to R&R duties, as above described, and since that time most properties/paperwork regarding Defendants Sgt. J. Burnes, A. Loza, K. Kyle-Maytubby, has gone missing from Plaintiff's property.

410. On or around August 3, 2020, Kings County Superior Court heard Plaintiff's former counsel M. Benninghoff state she had sent Plaintiff "about a dozen boxes" filled with legal materials for 19CM-1882; Defendant CSP-Corcoran through its employees kept these legal materials from Plaintiff and Plaintiff stated this in Court at that time.

411. Plaintiff's former counsel M. Benninghoff had sent a confidential letter to Plaintiff stating that she had mailed a copy of Plaintiff's C-File to Plaintiff on July 20, 2020, at 4:09 pm and that, "I have tracked the C-File, and it shows it was delivered to [Corcoran State Prison] on July 22, 2020, at 8:06 am," which was a signed and verified letter.

412. Defendant ISU Officer J. Cerda and Defendant Sgt. A. Encinas became involved with the eventual delivery of this paperwork, which was had been opened/gone through, with documents missing, without proper signature/process in the handling of this confidential mail and which had just been thrown into Plaintiff's cell opened. The contents were upturned, ripped, messed up, and only a then recent complaint Plaintiff had filed against Defendant K. Kyle-Maytubby was intact and neatly on top of the other shuffled/disordered papers.

413. On or around September 09, 2020, when plaintiff was still celed in cell 8, Defendant Sgt. C. Navarro approached Plaintiff's cell and asked Plaintiff, "You know why we're not getting on you? Because you have a lot of attention on you right now. I'm not doing too much. I'm under investigation. I'll talk to you later, there's something I want to talk to you about."

414. Defendant Sgt. C. Navarro, Defendant Sgt. J. Burnes, peace officers I. Ceballos, N. Vera, and I. Medina, while in R&R, continued to intervene so that Plaintiff's then counsel filed a complaint with legal affairs.

415. Defendants Sgt. C. Navarro and Lt. C. Love came with a recorder to interview Plaintiff about the matter, and threatened Plaintiff not to say anything, so that Plaintiff during the recorded interview had to deny what was happening in fear of retaliation and could not make any statements in that interview.

416. Plaintiff then wrote Defendant OIA John/Jane Does, informing Defendant, and Plaintiff's counsel, what had transpired and told them that it was a conflict of interest of Defendant ISU Officers—the same ones named as respondents in Plaintiff's § 1983 and various grievances—investigating themselves.

417. No subsequent or follow up action was taken, and Plaintiff continued to experience interference in his legal cases and retaliation from these very same individuals continued.

418. Plaintiff was placed in his cell, after peace officers N. Vera, D. Allison, E. Moreno, F. Camacho, I. Ceballos, I. Medina, and Sgt. A. Navarro beat an African American in the 4A1R rotunda, and afterward they made this inmate walk back to his cell with hands in the air and bleeding/blood on his head; this inmate wrote a 602/grievance for the assault and battery.

419. Plaintiff's neighbors Greyson, an African American inmate from the Rollins' 60s LA gang, and Greyson's celly, OKC, a Blood from Inglewood, called to their homeboy Slim from Rollins' 60, who was in the very corner cell, as to whether Slim wanted to be a witness for what he had seen, and Slim stated, "Yes."

420. D. Allison (peace officer) then came to their cell with cheese, throwing it in front of their cell door, calling them snitches, and then E. Moreno (peace officer) approached Plaintiff's cell, pulling out a beeper stick and smashed the door window.

421. The following day, L. Lulow (licensed clinical social worker) approached cell 8 and had spoken with Plaintiff's neighbor who informed L. Lulow what had happened, showed L. Lulow that there was still blood on the floor from the incident and told L. Lulow the inmate was choked out in the rotunda and made to walk with hands in air back to his cell and there was still blood on floor of the tier. L. Lulow then looked at the blood/seen it, marked it down, and reported it.

422. Plaintiff was then threatened by Defendants to not testify as a witness for this incident.

423. Around the following month, a lieutenant approached Plaintiff about the matter, for which Plaintiff could not make a statement due to the threats/retaliation.

424. In or around that September, Plaintiff was pulled out of his cell by Sgt. C. Navarro and placed in the first cell and then escorted by Medina, I. Ceballos to 4A1R front office and Plaintiff was then placed in a chair and Defendant Sgt. C. Navarro stood behind desk, pulled out mace can, placed it in front of Plaintiff towards him.

425. E. Moreno, I. Ceballos, I. Medina, (peace officers), and Defendant J. Fugate (ISU Officer) then came into the room and closed the door. Defendant Sgt. C. Navarro then bragged to Plaintiff about the reason on why Sgt. C. Navarro was placed in his role/unit was because the warden and captain Gallagher had called him there to put out fires and in 2018 and 2019 because Defendant Sgt. J. Burnes, who had been in the same unit at that time, the inmates weren't stopping had continued to go at it with staff, light fires, file lawsuits and grievances. Sgt. C. Navarro then stated that he came from the GP yard, him and his crew.

426. Defendant Sgt. C. Navarro then stated that it had taken him a long time to get the respect he has now—it took him to break a lot of ribs to get where it/he is now.

427. Defendant Sgt. C. Navarro then stated Plaintiff was to stay out the way—meaning Plaintiff was to not file grievances against any of the Defendants involved in Plaintiff's criminal case.

428. Defendant Sgt. C. Navarro then began to ramble on, had told officers present to leave the office.

429. When the officers left the office, Defendant Sgt. C. Navarro then asked Plaintiff whether Plaintiff remember that day—meaning March 09, 2019, and Plaintiff asked "Why?"

430. Defendant Sgt. C. Navarro then stated "Remember when you were out in the rotunda? I was there that day, do you remember? What did you say to [Lt. A.] Randoph?"

431. Plaintiff stated to Defendant Sgt. C. Navarro that Plaintiff stated, because [Lt. A.] Randolph looked surprised, that [Lt. A. Randolph] wasn't the Lt. that had signed off, to look at the 22 forms, the paperwork.

432. Defendant Sgt. C. Navarro then stated, "Oh, really? That's what you said?" and Plaintiff responded, "Yes."

433. Defendant Sgt. C. Navarro in this conversation had been referring to the false allegation/statement Defendant Sgt. C. Navarro made to the DA's Office—that Plaintiff had made a statement that was unfavorable to Lt. A. Randolph, but which statement Plaintiff had not actually made.

434. Plaintiff was then escorted back to his cell, where Plaintiff talked with his neighbors Greyson and OKC, who at that time informed Plaintiff that after they had been pulled out to the same office over their own situation/issue, Defendant Sgt. C. Navarro had pulled out a knife on them and set it on the table as a threat/intimidation of false charges from planted weapons, etc.

435. On or around July 30, 2020, Plaintiff continued to be threatened by Defendants ISU Officers and Sgt. C. Navarro when Defendants was being brought to Kings County Superior Court; other prison staff continued to threaten Plaintiff and the mental health team continue to retaliate on Plaintiff.

436. Plaintiff on or around August 11, 2020, put in sick call slip to supervisor K. Thompson stating on or around July 20, 2020, Plaintiff was pulled out of his cell for a one-on-one with Defendant K. Kyle-Maytubby who told Plaintiff that she can't work with certain inmates and certain charges and that's why she became a supervisor. She asked Plaintiff if he had any remorse for "what he did to his first victim" and expressed her dislike for his first conviction.

437. Plaintiff asked Defendant what if the law were to come after her (regarding the circumventing of CDCR/state policies via falsifying records in order to arrange for Plaintiff's cellmate) and Defendant rolled her eyes and stated, "I'll just say I raised my hand and opposed, while the captain said if [Plaintiff] doesn't like being double cell cleared, he can 602 it."

438. Plaintiff then told Defendant, "Yeah, but policy states that you're mandated to write a report and recommend a single cell status. I was on no sharps, no razors, no containers, and almost all of my privileges were taken away—on your orders, and the counselor orders. You guys have me on modified program with a box on my door. How am I compatible when I'm on all those restrictions, my current history of self-mutilation before the incident. You just counted on your own Progress Notes and not documenting that you and committee were being sued by me and at that time. It wasn't dismissed—so you guys should have never been authorized to double cell clear me. You guys did it out of retaliation. After Greywell [prison

psychiatrist] told me that you called Stocken prison Dr. Blackwell [prison psychiatrist] telling him to force medication on me, but he notified me that he didn't do it because you called up there early before the incident happened. So, you were anticipating something was going to happen and in committee he read all of my letters to the *Coleman* Project Team, stating how I was asking for help and treatment, and he seen how Rosen Bien [RBGG] February and March requesting that I get a higher level of care and their concerns. And you specifically stated, and I have the letters to prove it, you stated that I'm 'at the proper level of care, he's ok.'

439. Defendant K. Kyle-Maytubby then stated, "It is what it is."

440. Defendant K. Kyle-Maytubby then later quit her job.

441. On or around June 6, 2021, Plaintiff transferred back to Defendant CSP-Corcoran from temporary placement for court-declared incompetency in Salinas Valley State Prison.

442. The transportation team were Defendants ISU Officers/Sgts. V. Pena; J. Fugate; C. Morelock (or C. Love); C. Navarro.

443. Defendants stated to Plaintiff that R&R was "closed," so Defendants stated they would hold Plaintiff's property in the meantime.

444. Unit/area footage will show Plaintiff/Defendants driving to the building, and Defendants then unloading around five boxes of Plaintiff's property.

445. Plaintiff's property was returned to him and legal documents for 19CM-1882, and other important matters, were missing and never accounted for, never returned.

446. In or around 2021, Plaintiff's former Public Defender (Melina Benninghoff) had asked Plaintiff in court what had "happened" or was he "alright" because the escorting Defendant

ISU Officers had lied to her in stating that Plaintiff had acted out or the similar when nothing had actually happened.

447. On or around the court date of June 2, 2022, Defendant ISU Officers again lied to Plaintiff's Public Defender who then announced to the Court prior to Plaintiff being brought out that Plaintiff had been "wreaking havoc," and that Plaintiff had come to the court "unauthorized," and that Plaintiff "intended to hold a Marsden motion against her;" Plaintiff had been seated quietly prior to being brought into the courtroom without issue and had not actually met with/had not told this to Public Defender. Plaintiff had an individual sitting in the court who heard/acted as witness to the above statements—Plaintiff had the witness in attendant with copies of paperwork he sought to present that day to the judge in case Defendants ISU Officers again confiscated his documents or otherwise interfered.

448. This, and other issues, later led to Plaintiff filing complaints with the CA State Bar: May 05, 2022, 22-0-05821; July 06, 2022, 22-0-07128; June 30, 2022, 22-0-05821; August 08, 2022, 22-0-07128; March 26, 2021; and other dates.

449. Defendants Sgt. C. Navarro, K. Kyle-Maytubby, A. Loza, other Defendants as herein mentioned, were allowed to continue intervening, interfering, and retaliating against Plaintiff, so that Plaintiff's former counsel/PI (M. Benninghoff/B. Pinto) were ultimately fired/removed from Plaintiff's cases.

450. H. (Hugo) Gomez-Vidal was next appointed Plaintiff's counsel, but the same issues continued—Defendants J. Fugate, T. Brazelton, E. Sanchez, J. Gutierrez, C. Navarro, A. Guerrero,  Lt. C. Morelock, Lt. C. Love, ISU Officers John/Jane Does continued to escort Plaintiff to court, intervene with Plaintiff's attorney-client privilege and continued to keep

Plaintiff in the transportation vehicle, while telling the court that Plaintiff was a problem, influencing the court, judge, others to become displeased with Plaintiff for assuming he was disrespecting the court room and proceedings.

451. H. Gomez-Vidal, after or in spite of Plaintiff explaining to him the issues regarding CSP-Corcoran through its employees tampering with Plaintiff's legal mail/properties, had informed Plaintiff that he would discuss 19CM-1882 with Plaintiff—including defense strategies—*only* through the USPS mail (no visits or in person meetings/no calls.)

452. H. Gomez-Vidal had declared to Plaintiff, via letter, that he would not address the legal interference by Defendants/that he was not considering it an issue or related to 19CM-1882—a potential death penalty case.

453. Neither of Plaintiff's (two) court-appointed counsels visited Plaintiff—only the above-mentioned PI had visited Plaintiff on several occasions.

454. Plaintiff was next temporarily transferred to CSP-Sacramento for elevated mental health treatment.

455. Around September 2022, Plaintiff again wrote Defendant OIA with extensive evidence of CSP-Corcoran-based Defendants' well-orchestrated abuse of mentally ill offenders, for which serious letters Plaintiff received no response.

456. Due to the many times over years that Plaintiff, and others, had reached out to CSP-Corcoran management/supervisors, OIA, others, without results/resolution, Plaintiff reached out to another external agency which is currently conducting an investigation into Plaintiff's claims and witnesses, and who had informed Plaintiff's current counsel that Plaintiff was telling the truth regarding these matters of staff setting up inmates, violence, etc.

457. In or around September 28, 2022, in/under CSP-Sacramento, Plaintiff was informed at his cell door that CSP-Sacramento would hold an IDTT committee meeting for Plaintiff around the following week and that the IDTT had already endorsed/intended to return Plaintiff to Defendant CSP-Corcoran's authority.

458. Plaintiff filed an emergency grievance log # 315792 to halt his transfer, in which grievance, Plaintiff summarized the issues with Defendants from 1:19-cv-00554-AWI-EPG (e.g. ongoing threats/intimidation; court interference from those same Defendants regarding 19CM-1882, other cases, that the same Defendants provided Plaintiff's transportation to/from Court and were present at all judicial events with Plaintiff, and had obvious, unfair access to Plaintiff's legal materials/information.) [Def. Ex. H1.]

459. On or around October 25, 2022, Office of Grievances Decision reassigned 315792 to Defendant CSP-Corcoran's jurisdiction with a response deadline on or before December 12, 2022. [Ex. G3.]

460. In or around mid-December 2022, Plaintiff was transferred back to CSP-Corcoran/4A.

461. On or around January 16, 2023, Plaintiff filed a 602 putting supervisors/management on notice that Plaintiff had not received any acknowledgement/decision for Plaintiff's emergency keep away request/315792.

462. On or around January 17, 2023, Plaintiff submitted another grievance putting supervisors/management on notice of Plaintiff's December 2022 transfer back to Defendant CSP-Corcoran/Defendants despite Defendants' interference with Plaintiff's due process/access to courts for/in the manners above described.

463. On or around date April 20, 2023, Defendant Warden T. Campbell signed off on the institutional memorandum regarding Plaintiff's use of force claims against Defendants Sgts. J. Burnes, A. Encinas, S. Gonzales, A. Cid as "not sustained." [Def. Ex. G3.]

464. Throughout 2023, Plaintiff experienced various misconduct/retaliation by Defendant CSP-Corcoran through its employees, which Plaintiff reported via the grievance process and which CSP-Corcoran through its employees denied/rejected the grievances.

465. Plaintiff then appealed all rejections through/at CDCR headquarters level.

466. CDCR headquarters overrode CSP-Corcoran and granted some grievance appeals in Plaintiff's favor, including:

467. In 2023, Plaintiff's grievance against CSP-Corcoran, where employees' body camera footage showed that one of Plaintiff's grievances with appended evidence documents had been singled out from the mail bag, placed on a desk without the other mail pieces, and then taken/stolen and never accounted for/found.

468. In 2023, CDCR headquarters granted Plaintiff's grievance against CSP-Corcoran through its employees for their improper/not following CDCR policies/procedures for the handling of Plaintiff's incoming mail.

469. In 2023, CDCR headquarters granted Plaintiff's grievance against CSP-Corcoran through its employees in R&R not forwarding to Plaintiff a publication that had been purchased/sent to Plaintiff in accordance with CDCR policies and staff then lied about it—first, staff stated the publication had never arrived at the facility until shipment tracking evidence proved delivery, then staff stated the publication had been returned to sender/vendor when it actually had not been returned, and then staff stated that the publication was "lost" in R&R.

470. On or around July 14, 2023, and December 4, 2023, Defendant Warden T. Campbell signed off on institutional memos regarding Plaintiff's use of force/other issues complaints and found Plaintiff's allegations as "not sustained" and Defendants (e.g. J. Fugate, et al) were not in violation of policies.

471. February 13, 2024, Defendants ISU Officers to/after court transportation for a 19CM-1882 hearing in Kings County Superior Court held Plaintiff's legal paperwork that Plaintiff had taken with him for 19CM-1882, including Plaintiff's correspondence from the CA Bar and new information Plaintiff had then recently come in possession of and wanted to give to his counsel at the courthouse.

472. Plaintiff's counsel had remotely appeared that day and had not received the materials Plaintiff brought with him, and then afterward Defendants and had not given the materials back to Plaintiff upon returning to CSP-Corcoran.

473. In or around late February, Defendant J. Cerda (ISU Officer) came to Plaintiff's cell door with a stack of miscellaneous papers.

474. Defendant told Plaintiff this stack of papers was legal mail for Plaintiff, and Defendant put the legal papers down on the opened food tray slot in front of Plaintiff.

475. Plaintiff noticed that the legal documents lacked a cover, were not secured/boxed.

476. Plaintiff looked Defendant and Plaintiff asked, "What's this?"

477. Defendant stated, "You know me, I didn't do it," and Defendant then insinuated that Defendant Sgt. A. Encinas had tampered with Plaintiff's legal documents.

478. Plaintiff asked Defendant J. Cerda what had happened to Plaintiff's legal documents—who had searched/went through the documents.

479. Defendant replied, "It wasn't me."

480. Plaintiff stated to Defendant, "You know these are legal documents. You can't go through them without me present."

481. Defendant J. Cerda dramatically thew his hands up in the air and stated to Plaintiff, "Believe me, I know."

482. Plaintiff took the documents from the tray slot and went through them.

483. Plaintiff noticed numbers on pages were mismatched/out of order and missing; unit/body camera footage will show this exchange between Defendant and Plaintiff.

484. On April 23, 2024, Kings County Superior Court heard how Defendant CSP-Corcoran through its employees hosted Plaintiff's private legal visit in a regular visiting room (section 4B) that had live monitoring and audio/video recording capabilities, and that this was *in spite of* Plaintiff's Counsel having requested via the proper procedure a private legal meeting area for counsel/Plaintiff's visit.

485. **Via the clear and present pattern over years of intentional, willful interference and retaliation above described—without this Court's intervention, Defendants will continue to threaten, intimidate, and get in the way of 19CM-1882, other matters/cases, and Plaintiff <u>is in imminent danger from Defendants</u>.**

486. CDCR provides required training for all duties staff regarding policy/procedures, so that ignorance is not a reasonable excuse per California Code of Regulations Title 15 *§ 3435 In-Service Training* *"All new employees will be given prescribed orientation training upon the commencement of their employment. All employees are required to participate in the in-service training program as directed."*

487. **Plaintiff respectfully requests that this Court does not grant any Defendant qualified immunity for the following reasons:**

488. Defendants' misconduct, and the failure to protect/report, has been repeated over years, and persisted despite complaints and litigations from scores of various parties.

489. Supervisors/management were put on notice over years by various parties/outreach, including legal advocacy groups and state agencies, scores of inmates via complaints and litigation.

490. **Same/similar actions of same/similarly ranked defendants as those herein listed have been found unlawful in the following prisoner cases:**

491. **On interference with court access/due process:**

492. *See Cody v. Weber, 256 F.3d 764, 768-69 (8th Cir. 2001); plaintiff stated a claim from allegation that Defendants obtained an unfair advantage in defending themselves against his claims by reading his legal papers.*

493. *See Ramirez v. Yates, 471 F.3d 993, 998 (9th Cir. 2009); depriving prisoner his legal file in segregation for four-months might warrant equitable tolling if it made filing impossible and he pursued his rights diligently.*

494. *See Carter v. Hutto, 781 F.2d 1028, 1032 (4th Cir. 1986); and see Patterson v. Mintzes 717 F.2d 284, 288 (6th Cir. 1983); and see Tyler v. Woodson, 597 F.2d 643, 644 (8th Cir. 1979); and see Purkey v. CCA Detention Center, 339 F. Supp. 2d 1145, 1151-52 (D.Kan. 2004); and see Williams v. ICC Committee, 812 F. Supp. 1029, 1032-33 (N.D.Cal. 1992); and see Gallipeau v. Berard, 734 F.Supp, 48, 53 (D.R.I. 1990); and see Balabin v. Scully, 606 F. Supp. 176 183-84 (D.D.N.Y. 1985); and see Stringer v. Thopson, 537 F. Supp. 133, 137 \*N.D.Ill. 1982); and see Slie v. Bordenkircher, 526 F. Supp. 1264, 1265 (N.DW.Va. 1981); when individual acts of interference do not represent regulations/practices may also*

*violate the right of court access—e.g. the confiscation or destruction of a prisoner's legal papers/books and which had not been pursuant to a valid rule.*

495. *See Christopher v. Harbury, 536 U.S. 403, 414, 416 n.13, 122 S. Ct. 2179 (2002); and see Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam); which case states "...interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights."*

496. *See Crawford-El v. Britton, 523 U.S. 574, 588 n.10, 118 S. Ct. 1584 (1998); an unconstitutional condition is a demand that you give up a constitutional right in return or some benefit; "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right...Retaliation is thus akin to an 'unconstitutional condition' demanded for the receipt of a government-provided benefit."*

497. *See Simkins v. Bruce, 406 F.3d 1239, 1243 (10th Cir. 2005); "The principle that unimpeded transmission of inmate legal mail is the 'most obvious and formal manifestation' of the right of access to the courts...has been clearly established for some time now."*

498. **On lawyer confidentiality:**

499. *See Johnson-El v. Schoemehl, 878 F.2d 1043, 1051-52 (8th Cir. 1989); and see v. Estelle, 679 F.2d 1115, 1154-55 (5th Cir. 1982); and see Dawson v. Kendrick, 527 F. Supp. 1252, 1314 (S.D.W.Va. 1981)); and see Nicholson v. Choctaw County, Ala., 498 F.Supp. 60, 64 (N.D. Ohio 1977); attorney consultation facilities ordered soundproofed.*

500. *See Moore v. Janing, 427 F.Supp. 567, 575-76 (d. Neb 1976); and see Mitchell v. Untreiner, 421 F.Supp. 886, 902 (N.D.Fla. 1976): and see People v. Torres, 218 Cal. App.3d 700, 219 Cal.App.3d 2324C, 267 Cal.Rptr. 213, 217-18 (Call App. 1990); attorney-client privacy was required even when prison officials had confidential information that the*

*attorney might be involved in an escape attempt; see also Sturm V. Clark, 835 F.2d 1009, 1015 n.13 (3d Cir. 1987); issues of attorney-client privilege and the attorney's First Amendment rights raised from officers' reading of confidential correspondence in visiting attorney's briefcase.*

501. *See Denius v. Dulap, 209 F.3d 944,954 (7th Cir. 2000); "because the maintenance of confidentiality in attorney-client communications is vital to the ability of an attorney to effectively counsel her client, interference this confidentiality impedes the client's First Amendment, [sic] right to obtain legal advice;" and see Williams v. Price, 25F. Supp.2d 623, 629-30 (W.D.Pa. 1998); held lack of confidentiality in attorney-client consultation violated the first amendment; and see Sturm v. Clark 835 F.2d 1009, 1015n.13 (3d Cir. 1987); prison officials reading of prisoner's legal correspondence in attorney's briefcase raised a First Amendment issue.*

502. *See Gomez v. Vernon, 255 F.3d 1118, 1131-34 (9th Cir. 2001); attorney-client privilege considered a matter of federal common law; the Court imposes sanctions on prison officials' counsel for reading prisoners' legal privileged correspondence.*

503. *See U.S. v. DeFonte, 441 F.3d 92, 94-95 (2d Cir. 2006) (per curiam); and see Cody v. Weber, 256 F.3d 764, 768-69 (8th Cir. 2001); held allegation that prison officials read plaintiff's legal papers during searches stated a constitutional claim; and see Bayron v. Trudeau, 702.2d 43, 45 (2d Cir. 1983); same.*

504. **On legal mail:**

505. *See Wolff v. McDonnell  418 U.S. 539, 577 (1974) [94 S.Ct. 2963; 41 L.Ed.2d 935]; upholding a Nebraska regulation that allowed prison officials to open and inspect—but not read—legal mail; and see Nordstrom v. Ryan 856 F.3d 1265 (9th Cir. 2017); Arizona*

*policy and practice of scanning each page of outgoing legal mail violated right to counsel;*
*and see Mangiaracina v. Penzone 849 F.3d 1191 (9th Cir. 2017); allowing person in jail to*
*proceed with claim that staff unlawfully opened legal mail outside his presence; and see*
*Nordstrom v. Ryan 762 F.3d 903 (9th Cir. 2014); allowing person in Arizona prison to*
*proceed with Sixth Amendment claim alleging that prison staff read confidential*
*communication to attorney; and see Gomez v. Vernon 255 F.3d 1118, 1133 (9th Cir. 2001);*
*sanctioning Idaho government attorneys for reading, and using confidential*
*communication between people in prison and their attorney.*

506. *In re Poe 65 Cal.2d 25, 32, fn.5 (1966); [51 Cal.Rptr. 896]; confidential communication*
*essential to right to counsel; and see People v. Torres 218 Cal.App.3d 700 (1990) [267*
*Cal.Rptr. 213]; same.*

507. *See In re Short 55 Cal.App.3d 268 (1976) [127 Cal.Rptr. 498]; ordering CDCR to adopt*
*regulation requiring presence of person in prison when opening court mail; and see Cruz*
*v. Beto 405 U.S. 319, 321 (1972) [92 S.Ct. 1079; 31 L.Ed.2d 263]; rules allowing people in*
*prison to have confidential correspondence with government officials protect the right to*
*petition government for redress of grievances; and see Hayes v. Idaho Correctional Center*
*849 F.3d 1204 (9th Cir. 2017); people have First Amendment interest in having properly*
*marked legal mail, including civil legal mail, opened only in their presence.*

508. **On use of force and restraints:**

509. *See Hoptowit v. Ray, 682 F.2d 1237, 1249-51 (9th Cir. 1982); and see Finney v. Arkansas*
*Bd. of Correction, 505 F.2d 194, 205 (8th Cir. 1974); and see Inmates of Attica v.*
*Rockerfeller, 453 F.2d 12, 22-23 )2d Cir.1971); and see Von Colln v. County of Ventura,*
*189 F.R.D. 583, 597-99 (C.D.Cal. 1999); preliminary injunction was granted against use*

of restraint chairs; and <u>see</u> Madrid v. Gomez, 889 F. Supp. 1146, 1280-82 (N.D.Cal. 1995); and <u>see</u> Fisher v. Koehler, 692 F. Supp. 1519, 1562-65 (S.D.N.Y. 1988); injunction entered, 718 F. Supp. 1111 (S.D.N.Y. 1989), aff'd, 902 F.2d (2ᵈ Cir. 1990); and <u>see</u> Ruiz v. Estelle, 503 F.Supp. 1265, 1299-1307 (S.D.Tex. 1980), aff'd in pertinent part, 679 F.2d 1115 (5ᵗʰ Cir.1982.)

510. <u>See</u>, e.g., U.S. v. LaVallee, 439 F.3 670 (10ᵗʰ Cir. 2006); affirmed convictions of officers who beat prisoners and had fabricated reports and self-inflicted injuries to cover-up; and <u>see</u> U.S. v. Serrata, 425 F.3d 886 (10ᵗʰ Cir. 2005); affirmed convictions of officers and a lieutenant for beating a prisoner and falsified reports and an assault charge; noted that an officer's work boots were properly classified as a dangerous weapon for sentencing; and <u>see</u> U.S. v. Donnelly, 370F.3d 87 (1ˢᵗ Cir. 2004); affirmed sentence of officer for conspiracy, violation of civil rights for unwritten agreement to use excessive force on prisoners who had "disrespected" staff in order "to teach the inmates a lesson;" and <u>see</u> U.S. v. Strange, 370 F. Supp.2d 644, 651 (N.D.Ohio 2005); sentenced former sheriff's deputy for retaliatory jail beating, and that such beatings "were apparently condoned and even ordered by superior officers;" and <u>see</u> U.S. v. Clayton, 172 F.3d 347, 351 n.4 (5ᵗʰ Cir. 1999); affirmed conviction for kicking an arrestee in the head as she lay unresisting in handcuffs.

511. <u>See</u> Walker v. Bowersox, 526 F.3d 1186, 1188 (8ᵗʰ Cir. 2008); and <u>see</u> Williams v. Benjamin, 77 F.3d 756, 761-65 (4ᵗʰ Cir. 1996); and <u>see</u> Sadler v. Young, 325 F.Supp.2d 689, 700-01 (W.D.Va. 2004); rev'd and remanded on other grounds, 118 FedAppx.762 (4ᵗʰ Cir. 2006) (unpublished); and <u>see</u> Casaburro v. Giuliani, 986 F. Supp.176, 180-81 (S.D.N.Y. 1997); where Supreme Court described restraint as a form of use of force; and

_see_ _Muehler v. Mena, 544 U.S. 93, 99, 125 SCt. 1465 (2005); courts have some different approaches in that some have treated restraints as a form of use of force and have applied the Hudson v. McMillian "malicious and sadistic" standard that governs prisoner use of force claims._

512. _See_ _e.g., Bozeman v. Orum, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005); "threatening language as part of a totality of circumstances can be relevant to what is constitutionally reasonable or, as in this case, to the determination of reasonable inferences about the Officers' subjective state of mind" and _see_ _Kerman v. City of New York, 261 F.3d 229, 239-40 (2d Cir. 2001); where verbal abuse and or other factors might support a claim of objectively unreasonable force; and _see_ _Williams v. Bramer, 180 F.3d 699, 706 (5th Cir 1999); where use of racial epithets is a "strong evidence that a comment or action is racially motivated" clarified, 186 F.3d 633 (5th Cir. 1999); and _see_ _Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997); where officer's taunting and threatening the plaintiff after a use of force incident could support/prove malicious intent in using force; and _see_ _Albritten v. Doughtery County, GA., 973 F.Supp. 1455, 1465 (M.D.Ga. 1997); where racial epithets could help show use of force had been based on racial animus/therefore, unreasonable._

513. **On transfers:**

514. _See_ _Fitzharris v. Wolff, 702 F.2d 836, 839 (9th Cir. 1983); and _see_ _Gullatte v. Ports, 654 F.2d 1007, 1012-13 (5th Cir. 1981); and _see_ _Roba v. U.S., 604 F.2d 215, 218-19 (2d Cir. 1979); transfers done in retaliation for brining litigation or for exercising other constitutional rights are unlawful, as are transfers that seriously threaten life or safety of a prisoner._

515. **On property removal:**

516. *See* Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S. Ct. 1148 (1982); and *see* accord, Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004); the confiscation of property under authority of a prison administrative directive was not random and was unauthorized and Parratt did not apply ; and *see* Farid v. Smith, 850 F.2d 917, 925 (2[d] Cir. 1988); and *see* Caldwell v. Miller, 790 F.2d 589, 608 (7th Cir. 1986); and *see* Piatt v. MacDougall, 773 F.2d 1032, 1035 (9th Cir. 1985) (en banc); and *see* Chavers v. Abrahamson, 803 F.Supp. 1512, 1515 (E.D. Wis. 1992); and *see* Harper v. Scheidemantel, 671 F.Supp. 330, 334 (D.N.J. 1987); the deprivation of property that is "authorized" and or results from "established procedures" may deny due process regardless of whether there is a post-deprivation remedy.

517. *See* Hudson v. Palmer, 468 U.S. 517, 530, 104 S. Ct. 3194 (1984); under extreme circumstances, a prisoner's property deprivation might constitute cruel and unusual punishment.

518. **On inmate danger:**

519. *See* Farmer v. Brennan, 511 U.S. at 828, 834-47, 114 S. Ct. 1970 (1994); and *see* accord, Goka v. Bobbitt, 862 F.2d 646, 651 (7th Cir. 1988); the U.S. Constitution is violated "where Defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet the Defendants fail to embrace a policy or take other reasonable steps which may have prevented the harm."

520. *See* Redman v. City of San Diego, 942 F.2d 1435, 1444 (9th Cir. 1991) (en banc); double-celling an "aggressive homosexual" with another inmate; and *see* Frett v. Government of Virgin Islands, 839 F.2d 968, 978 (3[d] Cir. 1988);  and *see* Saunders v. Chatham County Bd.

*of Comm'rs, 728 F.2d 1367, 1368 (11th Cir. 1984); failing to segregate an inmate who displayed a "violent pattern of behavior;" and see Wade v. Haynes, 663 F.2d 778, 780-82 (8th Cir. 1981); putting a violent inmate in a segregation cell with a younger and smaller inmate.*

521. **On bystander liability:**

522. *See Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997); noting that failure to report can be evidence of deliberate indifference; and see Buckner v. Hollins, 983 F.2d 119, 121-23 (8th Cir. 193); and see Jackson v. Austin, 241 F.Supp. 2d 1313, 1322-23 (D.Kan. 2003); the deliberate indifference standard is used for claims against bystanders.*

523. **On deliberate indifference:**

524. *See Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000); staff had been acting when they were no longer required to make split-second, life-and-death decisions, showing an Eighth Amendment violation of deliberate indifference.*

525. *See Jacques v. State, 127 Misc.2d 769, 487 N.Y.S.2d 463, 466 (N.Y.Ct.Cl. 1984); and see District of Columbia v. Anderson, 597 A.2d 1295, 1298 (D.C.App. 1991); failure to give necessary medication was considered malpractice.*

526. *See Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); letters from an inmate about his medical condition put the prison's warden and medical doctor on notice.*

527. *See Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999); an inmate's three letters of complaint put officials on notice of a medical problem.*

528. *See* Hemmings v. Gorcayk, 134 F.3d 104, 109 (2$^d$ Cir. 1998); prison officials had willfully disregarded an inmate's condition, which was easily observable, and which he complained about for almost two months.

529. *See* Archer v. Dutcher, 733 F.2d 14, 17 (2$^d$ Cir. 1984); and *see* Flowers v. Bennett, 123 F.Supp.2d 595, 600-01 (N.D. Ala. 2000.); prison staff cannot deny an inmate medical care in order to punish them.

530. *See* Sealock v. Colorado, 218 F.3d 1205, 1210 n.5 (10th Cir. 2000); factual evidence that the delay occasioned by prison staff's inaction unnecessarily prolonged the inmate's pain/suffering.

531. *See* Williams v. Griffin, 952 F.2d 820, 826 (4th Cir. 1991); once prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem and must take corrective action.

532. *See* Vinning-El v. Long, 482 F.3d 923, 924-25 (7th Cir.2007); jury could infer prison staff working in the area were aware of grossly filthy cell conditions.

533. *See* Murphy v. Walker, 51 F.3d 714 ,719 (7th Cir. 1995); the prison waiting two months to get a prisoner with a head injury to a doctor stated a claim.

534. *See* Spruill V. Gillis, 372 F.3d 218, 237 (3$^d$ Cir. 2004); allegations of prison medical personnel refusing to examine an inmate on multiple occasions, accusing him of "playing games" supported deliberate indifference claim.

535. **On supervisory liability:**

536. *See* Danley v. Allen, 540 F.3d 1298, 1315 (11th Cir. 2008); allegations that Defendants through various reports and documents knew of staff misconduct and actions without legitimate reasons had adequately stated supervisory liability claim.

537. *See Miller v. King*, 384 F.3d 1248, 1263 (11th Cir. 2004); *a prison supervisor can be liable when they are aware prison medical/other staff, or other prison officials are unlawfully denying or delaying an inmate's medical care and the prison supervisor fails to correct such unlawful activities.*

538. *See Gallardo v. DiCarlo*, 203 F. Supp.2d 1160, 1166 (C.D. Cal. 2002); *warden's failure to discipline or otherwise deal with known misconduct, refusal to investigate complaints, etc., is an act of encouragement via inaction and cover-up, etc.*

539. *See Danley v. Allen*, 540 f.3d 1298, 1315 (11th Cir. 2008); *allegations that Defendants via force reports and similar documents, inmate and attorney complaints, etc., and personal observations knew that jailers "regularly used pepper spray excessively as a means of punishment and not for legitimate reasons" had adequately stated supervisory liability claim; and see Valdes Crosby*, 450 F.3d 1231, 1237-44 (11th Cir. 2006); *the warden could be held liable for prisoner's beating death based on evidence that he was on notice of a pattern of excessive force and did not act to curb it; cert. dismissed*, 549, U.S. 1249 (2007); *and see Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir.2001); *supervisors could be liable for an assault by racist officer via their knowledge of his employment record, its implications and the statements by other staff about his conduct and attitude; and see Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1396 (8th Cir. 1997); *where the superintendent was held liable based on the evidence he knew of the main officer's propensity to use excessive force; and see Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989); *damages were awarded against Commissioner who had been aware of the risk of beatings but did nothing; and see Bolin v. Black*, 875 F.2d at 1347-48; *an associate warden was liable on facts similar to Meriwether; and see Parker v. Williams*, 862 F.2d 1471, 1477 (11th Cir.

*1989); a sheriff could be held liable for beating by a deputy who had a known history of criminal behavior, mental problems, drug abuse; and see Murray v. Koehler, 734 F.Supp. 605, 607 (S.D.N.Y. 1990); warden could be held liable via officers' history of retaliatory beatings.*

540. *See Musgrove v. Broglin, 651 F.Supp. 769, 774-76 (N.D.Ind. 1986); a superintendent could be liable where an officer had not been disciplined for his prior misconduct.*

541. *See Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); and see King v. Higgins, 702 F.2d 18, 21 (1st Cir. 1983); the prison supervisors designated to hear inmate disciplinary appeals had a job duty to conduct at least a "minimal investigation" and thus could be held liable for failure to do so upon receiving notice of a due process violation.*

542. *See Randall v. Prince Georges County, 302 F.3d 188, 207 (4th Cir. 2002); where actual or constructive knowledge may support prison supervisory liability.*

543. *See Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998); it is not required to show that prison supervisor had actual knowledge of the offending behavior and they "may be liable for the foreseeable consequences of such conduct if he would have known of it but his deliberate indifference or willful blindness. "No good faith efforts were made to investigate the problem and fix it." (see Vance v Peters, 97 F.3d 987, 993 (7th Cir. 1996.)*

544. *Mahan v. Plymouth County of House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995); Kosilek v. Malone, 221 F.Supp.2 156, 181 (D. Mass 2002); and see Monmouth County Correctional Institution Inmates v. Lanzaro, 834 (f.2d 326, 347 (3d Cir. 1987); and see Gutierrez v. Peters, 111 F. 3dat 1373) and see Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Circ. 1995); a medical need was so serious that even lay person could easily recognize it.*

545. *See Lancaster v. Monroe Count, 116 F.3d at 1425; clearly establishes that an official acts with deliberate indifference when he knows an inmate in serious need of medical care but fails/refuses to help.*

546. *See Gallardo v. DiCarlo, 203 F. Supp.2dd 1160, 1166 (C.D. Cal. 2002); warden's failure to discipline or otherwise deal with known misconduct, refusal to investigate complaints, etc., is an act of encouragement via inaction and cover-up, etc.*

547. *See Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); and see King v. Higgins, 702 F.2d 18, 21 (1st Cir. 1983); prison supervisors who were designated to hear inmate disciplinary appeals had a job duty to conduct at least a "minimal investigation" and could be held liable for failure to do so upon receiving notice of a due process violation.*

548. *See Randall v. Prince Georges County, 302 F.3d 188, 207 (4th Cir. 2002); actual or constructive knowledge may support prison supervisory liability.*

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(42 U.S.C. § 1983; XIV Amendment to the U.S. Constitution, § 1)**

**Violations of Due Process**

**(Plaintiff against Defendants)**

549. The allegations contained in paragraphs 1 through 548, inclusive, are here incorporated by reference.

**550. On false charges:**

551. Defendants Correctional Peace Officers: A. Cid, M. Rodriguez, J. Garcia, Sgts. A. Encinas, J Burnes owed Plaintiff a duty to not deprive Plaintiff of liberty or property without due process of law, nor denying the providing Plaintiff, within their jurisdiction, the equal protection of the laws.

552. Defendants A. Cid, M. Rodriguez, Sgt. A. Encinas, Sgt. J. Burnes breached that duty by providing false statements and allegations on disciplinary action report log # *COR-04A-18-09-0940A1*. Defendants provided the Kings County Superior Court District Attorney's Office with the same falsified statements/allegations against Plaintiff, which Defendants had signed, dated, and sworn under the Peace Officers' Oath to secure a felony prosecution against Plaintiff. The allegations were thought to be true and an indictment against Plaintiff was secured and issued.

553. Plaintiff filed a grievance regarding what actually transpired during September 24, 2018, log # CSPC-5-18-05371. Plaintiff hoped to receive a fact-based, fair, and impartial disciplinary hearing for the disposition of the charges on or around September 27, 2019. Defendant M. Rodriquez was assigned as Plaintiff's staff assistant for the matter. Plaintiff was provided Defendant John Doe as the I.E./investigative employee for the matter, on or around October 09, 2019. Plaintiff explained to the I.E./Defendant that Plaintiff filed multiple grievances regarding what transpired, and that Defendants and other agents were intervening in the grievance process. The I.E. asked Plaintiff what happened. Plaintiff explained Defendants and others were abusing, threatening Plaintiff since the time of Plaintiff's arrival at CSP-Corcoran, that Plaintiff suffers from serious mental illness, takes multiple antipsychotic medications, suffers from bipolar and mood disorder and PTSD, has flashbacks, psychotic episodes, and suffers from symptoms induced by medication, self-

mutilates. When Plaintiff is physically abused, harassed, threatened, Plaintiff's symptoms

worsen. Plaintiff explained to the I.E./Defendant and Defendant M. Rodriguez, "You guys

in Corcoran jump on inmates when they come off the bus if they have a past of filing

grievances on officers or if we have any battery assaults on staff." Defendant M. Rodriguez

laughed and stated, "If you can dish it out, you should be able to take it." Plaintiff stated,

"Ya, you guys make sure we're in handcuffs." Defendants stated, "What do you want to

say for the disciplinary charge against you?" Plaintiff replied, "[Defendants] and you [M.

Rodriguez] falsified documents on the report." Plaintiff stated that Plaintiff had not lunged

at Defendant Sgt. J. Burnes as he entered the rotunda in Plaintiff's housing unit 4A.

554. Plaintiff explained to Defendant M. Rodriguez and the I.E/Defendant the following:

555. That on that day (September 24, 2018), Plaintiff experienced mental health symptoms due

to abuse, threats, physical pain, and was self-mutilating in his cell. Plaintiff had seen the

person who abused him, due to Plaintiff's PTSD, Plaintiff disassociated, an incident

occurred while Plaintiff had the food port open with Plaintiff's blood from self-injury

everywhere. Defendant A. Cid, seeing this, stated to Plaintiff, "I hope you fucking die!"

Defendants Sgts. A. Encinas and J. Burnes approached Plaintiff's cell. Defendant Sgt. J.

Burnes stated to Plaintiff, "Can you cuff up and come out." Prior to that statement,

Defendant had instructed several medical providers to leave the unit, and Defendant W.

Lewis (PT) had told Defendant Sgt J. Burnes that Defendant W. Lewis would keep them in

the other section. Defendant W. Lewis then smiled at and gave Defendant Sgt J. Burnes a

thumbs up and left. Due to this, Plaintiff had not wished to comply with Defendant Sgt. J.

Burnes. Disregarding Plaintiff's instinct, Plaintiff complied and was handcuffed and

escorted to the rotunda. Plaintiff noticed there was no medical staff. Without

reason/provocation, Defendant Sgt. J. Burnes slammed Plaintiff onto the floor. Defendant then grabbed the back of Plaintiff's hair bun and began slamming Plaintiff's head up and down over and over, and every time Plaintiff's head hit the floor, Defendant J. Burnes stated, "Not on my officers! Not on my officers!" After Defendant Sgt. J. Burnes was done, Defendants Sgt. A. Encinas and A. Cid placed leg shackles on Plaintiff and Defendant Sgt. J. Burnes placed a spit mask on Plaintiff's face. Defendant Sgt. J. Burnes then told Defendants ISU Officers E. Garza and S. Gonzales, who were in rotunda office with the door closed, to hit their alarm. At that time, Plaintiff was dragged to the chair and assaulted by Defendants and other Defendants who arrived upon the alarm. Defendants ISU Lts. C. Morelock, C. Love, and J. Garcia (Peace Officer) were in the tower the entire time from the beginning of the incident. Plaintiff also explained to the I.E./Defendant about the other agents who became involved during/over the incident, including Defendant M. Rodriguez who was now acting as Plaintiff's staff assistant for this matter/incident.

556. The I.E./Defendant and Defendant M. Rodriguez were later called upon, and it was concluded in the final disposition document for guilt/innocence and disciplinary action that Plaintiff received loss of privileges and reduced quality of life under prison-living conditions, received the loss of limited liberty enjoyed by prisoners, which all was directly resulting from Plaintiff being found guilty. The I.E./Defendant falsely stated Plaintiff made no statement. Plaintiff's relevant grievances had also not been taken into consideration. Defendants' failure to provide the true facts, and the false allegations made against Plaintiff made by Defendants A. Cid, M. Rodriguez, Sgts. J. Burnes and A. Encinas were a key determination taken into consideration by Defendant D. Goree (AOD/signed for Defendant Warden K. Clark for the RVR report) and by Defendant Lt. R. Silva (reporting officer for

the RVR.) The falsification and allegations by Defendants contributed to the finding of Plaintiff guilty of the charges against him, while Defendants were found appropriate/had conducted proper use of force. Defendants K. Clark, Lt. R. Silva, D. Goree, and other supervising officers/employees, upheld the disciplinary decisions and denied Plaintiff due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

557. If Defendants had not made false statements and allegations against Plaintiff, these false statements and allegations would not have been considered in Plaintiff's due process disciplinary disposition hearing; therefore, there is the existing possibility that the charges against Plaintiff could have been dismissed, or the charges/outcome for a guilty verdict with loss of privileges could have been less severe than what Plaintiff has actually suffered, is still suffering, and will continue to suffer as irreparable harm.

558. Defendants acted while under the color of state law.

559. Defendants knew or reasonably should have known that their conduct, attitudes, and actions contributed to depriving Plaintiff of life, liberty and property without due process of law, and have denied Plaintiff, within their jurisdiction, the equal protection of law.

560. The actions and conduct of Defendants demonstrate they acted deliberately indifferent to Plaintiff's Fourteenth Amendment rights.

561. As proximate result of Defendants' violation of Plaintiff's right to due process regarding life, liberty, property, and the right to equal protections of the law while Plaintiff was/is under the jurisdiction, care, and custody of Department of Corrections CSP-Corcoran, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm.

562. As a direct and foreseeable result of Defendants' violation of the Fourteenth Amendment Plaintiff has suffered, is suffering, and will continue to suffer loss of privileges and quality

of life in his prison living conditions, and loss of the limited liberty enjoyed by prisoners directly resulting from Plaintiff's extended punitive segregated confinement. Plaintiff is confined for most hours in his cell or a small cage and deprived of most of his personal property, and deprived of his ability to work, deprived of his ability to attend educational and vocational programs. Plaintiff is limited to two (2) hours each week, further based on space availability, for conducting legal research, in a small cage, with limited quality research/materials access, extensive waits on legal research requests behind other prisoners. Plaintiff's visits with family, friends, loved ones are limited to one (1) hour in duration per day on visiting days, only by appointment. Visits are only behind glass/no physical contact with family, friends, loved ones. The quality of Plaintiff's legal visits is affected because they are held only behind glass and are not confidential. Plaintiff's legal visits are conducted through the same unsecured Ad-Seg/SHU phones behind glass as the phone lines used by inmates visiting family/friends. Plaintiff's legal visits with his current attorney are institution-limited to one (1) hour in duration per visit. Plaintiff has limited access to medical care, including mental health services, and reduced quality of care due to being considered as a current danger to medical staff. This "danger" status is due to Plaintiff/other inmates being in/under "punitive segregation housing," thus Plaintiff is categorized as a danger to the security of others/institution. This means that Plaintiff must be in handcuffs when receiving medical attention, even in life-threatening emergencies, whether found unconscious or placed on stretcher. Handcuffs for punitive segregation inmates go behind backs, which limits access/quality of medical care in an emergency. There is limited access to resolving legal mail/other problems. There is limited access to unit supervisors while housed in punitive segregation housing, and unit supervisors

otherwise help/are active in resolving inmate issues. There is an increased likelihood of getting into trouble when attempting to resolve complaints or to receive basic necessities as a punitive segregation housing inmate. There is less access to personal-use telephone, with calls limited to fifteen minutes. Legal phone calls are limited to one (1) hour. Plaintiff does not have the ability in segregation to attend religious services and Plaintiff is still currently around all Defendants who have been involved in Plaintiff's civil and criminal cases.

563. During legal research for this case, Plaintiff became aware of OIA investigation C-COR-083-20-A, which also included current matter's same Defendants Sgt. J. Burnes, A. Loza, M. Rodriguez, L. Vasquez (RN), which had occurred March 04, 2019. This OIA investigative report found that Defendant Sgt. J. Burnes had reported an inmate had a concealed weapon in his mouth and had lunged for/attempted to attack Defendant Sgt. J. Burnes, that Defendant had to subdue the inmate who was then injured during that incident. The OIA found other officers had not collaborated Sgt. J. Burnes' account—that this supposed weapon was not notated/recorded in the incident reports/interviews. The inmate reported being choked, had a shattered facial bone. When questioned, L. Vasquez stated she determined the shattered facial bone was because the inmate had fallen/stumbled into a stone pillar rather than the inmate being struck in the face over 20 times. Sgt. J. Burnes had also been reported as delivering a hammer strike to the inmate's face, which type of strike Lt. Randolph had been quoted as stating was "unusual." On or around March 4, CSP-Corcoran had reported the incident to CDCR, which issued the news release on their website as that an inmate had made an attempt on an officer's life.

564. Defendant W. Lewis (PT) also had false charges filed against Plaintiff in Kings County Superior Court. Defendant W. Lewis had ignored/skipped Plaintiff during his medication

passes for 4A. Plaintiff confronted Defendant W. Lewis, stating, "You skipped me—why? Because I filed complaints?" and then, in referring to the September 24 group-peace-officer assault, which Defendant W. Lewis had aided and abetted, Plaintiff stated to Defendant W. Lewis, "That's fucked up what you did." Defendant replied, "I wasn't there." Log rounds from that date show Defendant W. Lewis was on duty and in 4A on September 24, 2018. [Ex. K2.]

565. Plaintiff later received a write-up in which Defendant W. Lewis had falsified allegations regarding the above exchange. Defendant E. Cantu (Correctional Counselor) later informed Plaintiff that in this write up and charge, Plaintiff was accused/found to have threatened Defendant W. Lewis that Plaintiff would cut Defendant's stomach open and rip out his guts. Plaintiff received medical progress notes report ID 18475359 showing a pattern of Defendant W. Lewis being present in 4A during staff assaultive incidents/other misconduct on September 23 and 24, and 29, at around 707 hours PDT. And Progress Notes, report ID 18475359, from March 6, 2019, and March 07, 2019, again show Defendant W. Lewis on duty in 4A. Defendant never reported any of the incidents that occurred while he was on duty and present in 4A. [Ex. K3.]

566. On or around June 28, 2021, for a threat assessment in the matter, conducted under the warden and Defendant Lt. C. Love, Defendant W. Lewis signed an acknowledgement of Plaintiff's supposed threat and Defendant had voluntarily elected to remain on Defendant's then current post/to continue treating Plaintiff, demonstrating that it was a fake write up, that Defendant W. Lewis felt no real threat from Plaintiff. Defendant W. Lewis elected to stay at his post when knowing he had animosity toward Plaintiff and that Plaintiff was being charged with punitive consequences directly due to Defendant's false allegation.

567. Defendant W. Lewis' breach and dereliction of duty via the false allegation/charge caused irreparable harm to Plaintiff.

568. Plaintiff, due to Defendant's false allegation suffered a punitive loss of privileges, reduced/limited access to the law library, reduced freedom/time of outside of his cell, reduced phone privileges and legal visits. Defendant's action of remaining on his post when being and acting in clear malicious animosity toward Plaintiff, deprived Plaintiff the opportunity of being treated by an employee willing/able to provide constitutionally adequate mental health care/treatment to Plaintiff.

569. Defendant's actions, while under the color of law, proximately caused those injuries and damages.

**570. On interference:**

571. In supporting the XIV Amendment, § 1, California Code of Civil Procedure § 1732 defines due process as that it *"includes, but is not limited to, the right to be represented by legal counsel, receive reasonable notice and an opportunity for a hearing, call and cross-examine witnesses, and present evidence and arguments to an impartial decision-maker*."

572. And, in support of XIV Amendment, § 1, California Code of Regulations Title 15 § 3160 states, *"Inmate access to the courts shall not be obstructed."*

573. It is crime under 18 U.S.C. § 1512 *Tampering with a witness, victim, or an informant* to destroy, change, or hide evidence that could be used in an official proceeding.

574. Under § 3160, Plaintiff had a right for his § 1983 civil rights action 1:19-cv-00554-AWI-EPG to be heard by judge/jury, to call and cross examine witnesses, to present evidence and arguments, and to be represented by legal counsel.

575. On or around March 09, 2019, Defendants ISU Officers had without logging/documentation removed/confiscated the protective bag with all legal materials related to 1:19-cv-00554-AWI-EPG from Plaintiff's possession and Plaintiff never recovered these legal materials; Defendants later reminded Plaintiff that Defendants had told Plaintiff he "wasn't going to get anywhere" with his lawsuit.

576. Defendant CSP-Corcoran through its employees had also not allowed Plaintiff to respond to the Court's correspondence/service regarding 1:19-cv-00554-AWI-EPG and Plaintiff's case was dismissed on or around August 23, 2019, due to Plaintiff not being allowed to respond.

577. Plaintiff was thus deprived of his rights to be heard, to petition the government for redress of grievances, to call and cross-examine witnesses for that case. There was reasonable chance that the Court would have ruled in Plaintiff's favor, fully restoring at that time Plaintiff's constitutional rights upon a judgement and enforcing/ensuring safe custody of plaintiff (and all 4A *Coleman* inmates.)

578. Defendants' actions violated Plaintiff's constitutional guarantee of due process and proximately caused the case dismissal and corresponding judicial loses/injuries.

579. On or around August 3, 2020, Kings County Superior Court heard how Plaintiff's Public Defender had sent Plaintiff "about a dozen boxes" of legal discovery files for Plaintiff's potential death penalty case 19CM-1882 and then that court heard when Plaintiff stated in response that Defendant CSP-Corcoran through its employees had never provided those "dozen boxes" to Plaintiff, in violation of Plaintiff's due process and in violation of California Code of Regulations Title 15 § 3160, the materials were later presented to Plaintiff by Defendants Sgt. A. Encinas and J. Cerda, with the paperwork

disordered/messed up, save for the grievance Plaintiff had then recently filed against Defendant K. Kyle-Maytubby laid neatly on top.

580. Plaintiff has the right to review all of his legal discovery files related to the charges brought against him in a court of law and Plaintiff has the right under Title 15 § 3143 *Processing Incoming Confidential Mail*, to restrict prison officials' access/review of the contents of Plaintiff's legal mail/materials.

581. Due to Defendants' willful actions, intended to and which had actually deprived Plaintiff of Plaintiff's legal discoveries, Defendants took an unfair advantage for themselves in confiscating/reviewing such legal discoveries, and had violated Plaintiff's attorney-client privilege, all of which caused/causes irreparable harm to Plaintiff's defense regarding 19CM-1882—a potential death penalty case.

582. Such irreparable harm was/is proximately caused by Defendants' willful, intentional actions, while under the color of law.

583. And on or around June 06, 2021, CSP-Corcoran unit/area footage will show Defendants ISU Officers V. Pena, J. Fugate, Sgts. C. Morelock (or C. Love), C. Navarro taking Plaintiff's legal discoveries/evidence upon Plaintiff being returned to CSP-Corcoran from Salinas Valley State Prison, against proper CDCR procedure in the logging/processing of Plaintiff's property, and in willful violation of California Code of Regulations Title 15 § 3160.

584. Defendants again took for themselves an unfair advantage in 19CM-1882, 21CM-4750, 19CM-3928, 19CM-1275 by withholding Plaintiff's legal discoveries and had willfully, intentionally hindered Plaintiff's ability to fully participate in the charges against him for a potential death penalty case.

585. Defendants' actions in taking an unfair legal advantage and hindering Plaintiff from receiving/reviewing Plaintiff's legal discoveries/materials caused irreparable harm to and has a high potential to jeopardize Plaintiff's defense.

586. Defendants' actions, while under the color of law, proximately caused this irreparable harm, damages/injuries.

587. On or around February 13, 2024, Defendant ISU Officers S. Gonzalez, A. Guerrero, others, took Plaintiff's legal paperwork from him during court transportation.

588. In or around late February 2024, Defendant J. Cerda (ISU Officer) came to Plaintiff's cell to return the paperwork without the proper legal covering. Defendant at that time had verbally insinuated to Plaintiff that Defendant Sgt. A. Encinas had tampered with Plaintiff's legal/court paperwork, which had included correspondence between a CA Bar investigator and Plaintiff; yet Defendant J. Cerda—an ISU Officer/investigator for CSP-Corcoran—had failed to report/act on this crime. Instead, Defendant simply stated to Plaintiff that it "wasn't [Defendant J. Cerda]" who had done it, while also acknowledging to Plaintiff this Defendant's actual knowledge that such tampering with legal paperwork was a crime. This tampering/theft was in direct violation of Plaintiff's due process, 18 U.S.C. § 1512, California Code of Civil Procedure § 1732 and California Code of Regulations Title 15 § 3160. By this failure to report, Defendant J. Cerda was additionally in direct violation of CDCR DOM 33030.3.1 Code of Conduct *"Report misconduct or any unethical or illegal activity and cooperate fully with any investigation."*

589. Defendants ISU Officers, by repeatedly taking the legal paperwork, deprived Plaintiff of his right to legal discovery and hindered Plaintiff from being able to present new/recently gathered material to his attorney at the courthouse, had hindered Plaintiff's ability to fully,

freely participate in the legal proceedings against himself and which caused irreparable harm to Plaintiff's case/defense via the loss/stealing of evidence. By Defendant J. Cerda not reporting/investigating the loss/stealing of Plaintiff's legal materials, while verbally expressing actual knowledge of the crime/tampering, Defendant J. Cerda thereby condoned/enabled such theft/tampering to continue without consequences or formal CDCR documentation.

590. These willful, intentional actions by these Defendants caused irreparable harm to Plaintiff regarding Plaintiff's potential death penalty case with the intentional removal/destruction of evidence/legal materials and subsequent cover-up via the failure to investigate/report.

591. That irreparable harm was proximately caused by Defendants who had been acting while under the color of law.

592. By the above Defendants taking, reviewing, and removing legal documents from Plaintiff's possession on multiple dates, as described herein, Defendants willfully, intentionally violated Plaintiff's rights to confidential mail, attorney-client privilege, right to counsel/right to fully participate in the charges against him, and were in violation of 18 U.S.C. § 1512. These Defendants' actions have caused irreparable harm to the Plaintiff in the form of evidence tampering and loss/destruction, had taken for themselves and unfair advantage in Plaintiff's 19CM-1882 in a manner/by parties that may jeopardize Plaintiff's defense.

593. Defendants' willful actions, while acting under the color of law, proximately caused such irreparable harm, loss, and damages.

594. In supporting incarcerated individuals' right to due process, 28 CFR Part 543 provides that an inmate shall be afforded *"reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents."*

595. Defendant ISU Officers S. Gonzalez, A. Guerrero, Sgts. C. Morelock, C. Navarro, others, denied/deny Plaintiff the reasonable opportunity to prepare/review legal documents when escorting Plaintiff to Kings County Superior Court for 19CM-1882, 21CM-4750, 19CM-3928, 19CM-1275 by handcuffing Plaintiff into a box lock, so that Plaintiff's hands face on top of one another/flat horizontally and twisted, versus the common forward-facing handcuffing that other inmates are put into for court, and this was/is done so that Plaintiff is unable to go through/turn pages of paperwork for/with Plaintiff's counsel. Plaintiff is also kept in the transportation vehicle as long as possible, restricting, reducing or eliminating Plaintiff's time to meet with his counsel before Plaintiff is called into the courtroom.

596. The above Defendants at Plaintiff's 19CM-1882 hearings stand between Plaintiff and his counsel, so there is no confidential or only difficult, brief confidential interaction and use the false pretense of Plaintiff "wreaking havoc" as a security excuse to do it.

597. Defendants at Plaintiff's 19CM-1882 during all of Plaintiff's court proceedings, including Marsden Motion hearings and or other closed chamber sessions.

598. These same Defendant ISU Officers were under investigation/named in Plaintiff's grievances and 1:19-cv-00554-AWI-EPG; therefore, by policy, there should have been an enforced separation of Defendants and Plaintiff, and separation, if/when not imposed by CSP-Corcoran management pursuant to policy, should be self-initiated/self-imposed.

599. By Defendants handcuffing Plaintiff differently than other inmates in a manner that prevents Plaintiff from handling/preparing his legal materials, and by Defendants retaining

Plaintiff in the vehicle longer than other inmates when there has been no security reason to do so, further limiting reasonable access between Plaintiff and his counsel, and to physically situate themselves between Plaintiff and his counsel, also violates Plaintiff's right to equal protection, within their jurisdiction, under the law guaranteed to Plaintiff under the Fourteenth Amendment.

600. Defendants' actions have caused irreparable harm to Plaintiff's case with the hindering of Plaintiff from having reasonable access to his legal materials and his counsel, and inhibited Plaintiff's full and free participation in the legal proceedings against him.

601. Defendants' willful actions while under the color of law have proximately caused this harm and damages.

**602. On threats/intimidation:**

603. California Penal Code § 136.1 *Preventing or Dissuading Witness or Victim* makes it a crime to knowingly, maliciously intimidate and or threaten, with or without action, or actual intention for action, any witness, victim, third party, or property.

604. And it is a crime under 18 U.S.C. § 1512 *Tampering with a witness, victim, or an informant* for any individual to harm, threaten, delay, or otherwise influence a witness to an official proceeding, punishable by up to 30 years imprisonment.

605. California Penal Code § 422 *Unlawful Threat To Commit Crime* provides that *"(a) Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing...is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of*

*purpose and an immediate prospect of execution of the threat, and thereby causes that*

*person reasonably to be in sustained fear for his or her own safety or for his or her*

*immediate family's safety, shall be punished by imprisonment in the county jail not to*

*exceed one year, or by imprisonment in the state prison."*

606. 4A CSP-Corcoran inmates reported to Plaintiff's former legal team/Private Investigator that they (the inmates) had been credibly threatened with harm/death by Defendant CSP-Corcoran through its employees to not speak with Plaintiff's legal team/to not speak on the matter of 19CM-1882, when Plaintiff has an express right under the definition of § 1732 to call witnesses, to be (adequately/fully) represented by legal counsel, has the constitutional guarantee to due process, and for all this without obstruction pursuant to California Code of Regulations Title 15 § 3160. Defendants via their threats/intimidation were in violation of California Penal Code § 136.1, California Penal Code § 422, and 18 U.S.C. § 1512. As described herein, Defendants have repeatedly threatened and harassed Plaintiff to not speak up in any of his civil/criminal matters, which threats and intimidation were also in violation of § 3160, California Penal Code § 136.1, California Penal Code § 422, and 18 U.S.C. § 1512; Plaintiff, as described herein, was also threatened to not act as a witness for the unprovoked assault of his neighbor—as such threats is a clear pattern/tactic in 4A.

607. Defendants thus willfully deprived Plaintiff of his rights to call witnesses, to be adequately/fully represented by legal counsel, deprived Plaintiff of his due process, his right to access to courts without obstruction, his right to be heard, and his right to live/be in safe custody—which entails being in an environment free of threats, intimidation, and fear.

608. This deprivation caused irreparable harm to Plaintiff's defense, caused physical harm to Plaintiff via assaults and batteries, and caused Plaintiff severe emotional distress.

609. Defendants, acting while under the color of law, proximately caused these injuries and harm.

610. The failure of Defendants K. Clark, AW, other supervisors/investigators, to provide Plaintiff with a new use of force video recording for Plaintiff's allegations against Defendant Sgt. J. Burnes, when they had been put on notice regarding Defendant Sgt. J. Burnes being present behind the camera and intimidating and threatening Plaintiff, which Plaintiff could be heard yelling about this in the background of the video, meant that Plaintiff was unable have an authentic interview free of intimidation and retaliation, was unable to officially CDCR-document his injuries and was not allowed to be heard regarding the incident, all which violated Plaintiff's right to due process and procedure guaranteed to Plaintiff under the Fourteenth Amendment to the U.S. Constitution, and which violated the Eight Amendment to the U.S. Constitution, and which was against institutional policies regarding use of force interviews.

611. After Plaintiff filed a grievance upon Defendant Sgt. J. Burnes' intimidation during the use of force video, Defendants K. Clark, the Administrative Officer of the Day (AOD) John/Jane Doe, OIA John/Jane Does failed to conduct adequate investigation, failed to enact disciplinary or other actions to curb the known pattern of Defendant Sgt. J. Burnes' physical abuse, threats, and intimidation, which inaction/omissions constituted deliberate indifference to Plaintiff's personal safety and his due process procedural rights.

612. Defendants' actions/omissions were malicious and sadistic and constituted deprivation of Plaintiff's liberty without due process, and as a directly result, Plaintiff's grievance/video interview was not reviewed with all available evidence, and Defendant Sgt. J. Burnes was allowed to continue acting in unlawful, illegal manners without accountability or

consequences and Plaintiff's injuries were not properly documented—causing irreparable harm to Plaintiff with continued abuse and inaccurate records..

613. Defendants, acting while under the color of law, proximately caused those injuries and harm.

614. By violating XIV Amendment, § 1, Due Process clause, Defendants, while acting under the color of law, were also in violation of California Constitution, Article I, §7, as that *"A person may not be deprived of life, liberty, or property without due process of law."*

## SECOND CAUSE OF ACTION

## (42 U.S.C. § 1983, EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

### Right to be free of cruel and unusual punishment

#### (Excessive Use of Force)

#### (Plaintiff against Defendants)

615. The allegations contained in paragraphs 1 through 614, inclusive, are hereby incorporated by reference.

616. The failure of Defendants Sgts. J. Burnes, A. Encinas, ISU/IGI Peace Officers E. Leija, S. Gonzales, J. Luis, and Peace Officers M. Rodriguez, I. Salcedo, A. Loza, responding officers John Does 1-9, John/Jane Does second watch officers violated Plaintiff's right to be free from cruel and unusual punishment, which is guaranteed to Plaintiff under the Eighth Amendment to the U.S. Constitution by their actions of abuse, intimidation, harassment, and other violations of law against Plaintiff.

517. Defendants' wrongful actions, alleged herein, are in violation of 42 U.S.C. § 1983 because Defendants owed Plaintiff a duty of reasonable care to protect Plaintiff from assaults and ensure the safe custody of Plaintiff. Defendants have deprived Plaintiff of the rights, benefits, and privileges secured by the U. S. Constitution, including the right to be free from deliberate indifference to Plaintiff's health/safety.

518. Defendants breached that duty by viciously beating Plaintiff while he was restrained in a chair and denied Plaintiff medical/mental health attention. This continued after Plaintiff filed multiple grievances: CSPC-5-18-05371, CSPC-5-19-01003, CSPC-5-19-01003, CSPC-5-19-00645, COR-2140-19-021, which was partially granted March 27, 2019, and which had named Defendants K. Clark, Lt. R. Silva, Sgt. J. Burnes, Sgt. A. Encinas, C. Morelock, [E.] Leija, S. Gonzales, J. Wilson, L. Pickering. Defendants continued to assign their work shift hours around Plaintiff, when by policy/procedure, there should have been a staff separation enacted/enforced. Defendants instead willfully disregarded Plaintiffs administrative complaints against them, and Plaintiff's many requests for all Defendants to stay away from Plaintiff. Defendants continued to wrongfully intimidate, abuse, threaten, and harass Plaintiff, ordering Plaintiff to withdraw Plaintiff's grievances and continued to deter Plaintiff from filing future grievances.

519. The refusal of Defendants to stop their unlawful, illegal acts against Plaintiff after Plaintiff's lawsuit was sent out on or around February 10, 2019/filed on date February 20, 2019, case 1:19-cv-00554-AWI-EPG, which had been brought against CSP-Corcoran staff, medical providers, and Defendants (above mentioned), constituted retaliation. Defendants, in retaliation, continued to abuse Plaintiff, had falsified allegations/charges against Plaintiff and when given the opportunity/choice to stay around Plaintiff at their then current post or

remove to another post, Defendants signed to remain around Plaintiff in order to then

retaliate on Plaintiff. Defendants withheld a much-needed transfer from Plaintiff, which was

also/all in retaliation for Plaintiff's exercising his right to due process and petitioning

government for the redress of grievances; therefore, Defendants violated Plaintiff's rights

under the First and Eighth Amendments and Fourteenth Amendments to the U.S.

Constitution.

620. Defendants' wrongful actions alleged herein are in violation of 42 U.S.C. § 1983 because

they deprived Plaintiff of rights, benefits, and privileges secured by the United States

Constitution.

621. Defendants acted while under the color of state law.

622. Defendants knew or reasonably should have known that their conduct, attitudes, and actions

created an unreasonable risk of serious harm to Plaintiff.

623. Defendants' actions and conduct, and breaches of duty violated Plaintiff's right to be free

from cruel and unusual punishment while Plaintiff was in CSP-Corcoran—Plaintiff has as a

direct result suffered, is suffering, and will continue to suffer irreparable harm.

624. As a direct and foreseeable result of Defendant's violations of the Eighth Amendment,

Plaintiff has suffered, is suffering and will continue to suffer physical injuries in the form of

sustained concussions, continued pain in right/left thumb/wrist right/left ribs, head injury

with subsequent sensitivity to light, blackouts, memory problems, migraines. Plaintiff was

suing Defendants in case 1:19-cv-00554-AWI-EPG, filed February 20, 2019, including

Warden K. Clark; 4A Associate Warden S. Babb; Jane Doe/T. Campbell, Mental Health

Supervisor K. Kyle-Maytubby; Peace Officers Sgt. A. Encinas, A. Loza, Lt. F. Munoz; John

Doe Correctional Counselor; ISU Officers E. Leija, S. Gonzles, J. Luis, E. Sanchez, A. Guerrero, V. Pena, others, for:

    i.    Conspiracy retaliation with staged assaults

    ii.    Intentional tort illegal use of force

    iii.    Criminal negligence, failure to protect against cruel and unusual punishment.

    iv.    Deliberate indifference to safety of Plaintiff and others

    v.    Defendants were successful in preventing Plaintiff from responding/prosecuting § 1983 case 1:19-cv-00554-AWI-EPG, *Jamie Asuna v. Edmund Brown, Kathleen Allison, Et Al.*

625. Defendants A. Loza, Sgt. J. Burnes, etc., for their placing/housing, conspiring with known violent inmates to be placed/housed in Plaintiff's cell to assault Plaintiff was in clear retaliation for Plaintiff's complaints and lawsuit against Defendants. Defendant A. Loza, others, who signed off on Plaintiff's chrono and or Plaintiff's double cell clearance, had done so out of clear retaliation for Plaintiff submitting complaints and a lawsuit against Defendant/others. Defendants, out of retaliation over Plaintiff's complaints to CSP-Corcoran supervisors/management, OIA, OIG, others, and his § 1983, found a known violent inmate, L. Romero H56733, to be housed with Plaintiff. Defendants knew of L. Romero H56733's past and recent history of assaults upon cellmates—Defendants had full access to L. Romero H56733's C-File and case factors when reviewing L. Romero H56733's housing assignment. These documents showed L. Romero H56733's incident log *MCSP-AYD-19-01-0029* [Ex. J19], incident date January 18, 2019, at 0717 hours. On Friday, January 18, peace officer G. Perez, after gaining control of the incident, reached into

L. Romero H56733's pocket and retrieved a weapon of two razors tied to a razor handle. L. Romero H56733 was found guilty of a rule violation for this incident. On Saturday, December 08, 2018, at approximately 2000 hours, peace officer J. Cranford observed H56733 fighting L. Romero H56733's cellmate, incident log number *MCSP-A01-18-12-0593*. [Ex. J18.] CDCR documented another of L. Romero H56733's cell fight, dated June 14, 2005, at CSP-Lancaster, with L. Romero H56733 stating on the medical report injury document, "We don't get along. We had to fight to get a bed move." [Ex. J1.] Defendants had access to this documented history and at least seven more incidents of L. Romero H56733's in-cell and outside of cell violence towards non-threatening inmates. CDCR documents show L. Romero H56733's history of physical violence. And CDCR documents show that L. Romero H56733 was racist, while Plaintiff is not. On Friday, May 22, 2015, at Kern Valley State Prison, L. Romero H56733 approached a peace officer to say that "[H56733] could not live with cellmate." The peace officer asked what the problem with the cellmate was. L. Romero H56733's stated, "My only problem with him is that we are two different types of people," and stated, "I just can't live with a black guy." The other inmate proclaimed, "I am short to the house, man. I've got like thirty days to the house," meaning he was soon to be released in around thirty days, and then stated of L. Romero H56733, "That dude just has a problem with anybody," from report log *FC-15-05-23*. [Ex. J15.]

526. Defendants should have waited until inmate L. Romero H56733 went to committee to decide/determine his housing to be sure of the sure of the safe custody of Plaintiff. Plaintiff has had no in-cell violence in over fourteen years and suffers from serious mental illness, as well as a brain injury and intellectual disability, making him a target. Defendants placed L. Romero H56733 in Plaintiff's cell on March 07, 2019. Plaintiff tried to refuse, and the

captain reportedly stated at committee, "If [Plaintiff] doesn't like it, [Plaintiff] can file a [602]." CDCR policy states inmates shall not refuse assigned housing unless case factors prove otherwise. If an inmate refuses, that inmate shall be issued a rules violation report and disciplinary action will be taken, resulting in loss of privileges. As plaintiff predicted in his lawsuit—as retaliation, Defendants placed a violent inmate in Plaintiff's cell when that the inmate had two recent prior assault and batteries on inmates and had been in possession of inmate manufactured weapon only two months prior. An incident occurred and Plaintiff was put in harm's way. Plaintiff is now charged with a felony in Kings County, case 19CM-1882. Plaintiff is currently in court proceedings for this.

627. Defendants should have never been given the authority to double cell clear Plaintiff and chose Plaintiff's cellmate because CSP-Corcoran prison board members/those involved in these decisions Defendants K. Kyle-Maytubby, K. Clark, A. Loza, and others were being sued by Plaintiff in 1:19-cv-005-54-AWI-EPG, and who were listed/under investigation in Plaintiff's administrative remedies grievances: CSPC-5-18-05371, CSPC-5-19-01003, CSPC-5-19-00645, COR-2140-19-021, with two partially granted. Plaintiff had at that time also identified Defendants in his letters to the OIA, others. Defendants should have therefore stayed away from Plaintiff via a staff separation; especially, as these grievances claims covered from physical abuse to sexual groping by Defendant Sgt. J Burnes, and staff misconduct claims against Defendant K. Clark, other supervisors/agents for condoning Defendant Sgt. J Burnes/his partners to be allowed to work around Plaintiff/*Coleman* class member inmate patients being housed in a mental health facility/4A, and for allowing others Defendants to abuse, torture, harass and threaten Plaintiff and *Coleman* inmates in Plaintiff's/their housing unit.

528. Defendants K. Clark, K. Kyle-Maytubby, S. Gates, S. Harris, S. Babb were/are aware of Sgt. J. Burnes and other Defendants' history of complaints/issues, and or of his being sued and losing/settling out of civil court cases going back years. Defendants' who are/were supervisors thus knew of the substantial risk, danger, and harm these Defendants posed to Plaintiff, others; therefore, these supervisor-level Defendants should have removed other Defendants away from Plaintiff's housing unit for the safe custody of Plaintiff and others. All Defendants' failure to remove themselves from managing every aspect of Plaintiff's life at CSP-Corcoran, and their continued retaliation, resulted in Plaintiff suing and grieving Defendants. Defendants A. Loza, Lt. F. Munoz failed to not allow inmate L. Romero H56733, upon L. Romero H56733's arrival at CSP-Corcoran, on or around March 07, 2019, to be authorized to be housed with Plaintiff. Defendants failed to consider L. Romero H56733's initial housing review history when, via training and proper procedures, Defendants should have followed courses of action pursuant to California Code of Regulations Title 15 § 3269 Inmate Housing Assignments that *"upon arrival at an institution, facility or program reception center, a designated custody supervisor shall be mandated to screen an inmate for appropriate housing assignment. The screen authority involved in the review and approval an inmate's housing assigned must evaluate all factors to be considered when completing the initial housing review, including but not limited to enemies and victimization history, previous housing status, history of in-cell assaults and/or violence, involved in race-based incident(s), nature of commitment offense, security threat group affiliation, reason for prior separation, receiving institution, documented reports from prior cellmate(s) that the inmate intimidated threatened force and or harassed him or her for sex, abuse and prior reports of refusal reasons why inmate refused cellmate."*

629. Defendants were aware of L. Romero H56733's history of violence and attacking cellmates/inmates to get himself removed from his assigned housing or because he had not otherwise liked that inmate. Defendants had access to the CDCR history/documents and information due to L. Romero H56733 being found guilty of these offenses. [Exs. J1-J19.]

630. If Defendants, as was their express duty to do, would have taken into consideration L. Romero H56733's documented violent history and predatory behavior, Plaintiff Jamie Osuna would not have been harm's way, facing a felony conviction and death of an inmate. Plaintiff was not given the opportunity to refuse—Defendants had threatened Plaintiff, that CDCR (Title 15 § 3269 *Inmate Housing Assignment*) policy states, "*Inmates shall accept inmate housing assignment (IHAs) as directed by staff. It is the expectation that all inmates double cell if staff determines an inmate is suitable for double celling based on the criteria as set forth.*" When Plaintiff tried refusing, Defendants stated that Plaintiff, by policy, shall accept assigned housing or Plaintiff will be subjected to disciplinary action for refusing.

631. Defendants' wrongful actions alleged herein are in violation of 42 U.S.C. § 1983 because they have deprived Plaintiff of rights, benefits, and privileges secured by the acts of congress and protected by the U.S. Constitution.

632. Defendants acted while under the color of state law.

633. Defendants knew or it is reasonable that Defendants should have known that his/her conduct, attitude, and actions/omissions created an unreasonable risk of serious harm to Plaintiff.

634. Despite this knowledge, Defendants failed to take reasonable steps to protect Plaintiff and to ensure his constitutional right to be free from cruel and unusual punishment while Plaintiff was under Defendants' care and custody in CSP-Corcoran.

635. The actions and conduct of Defendants demonstrate deliberate indifferent to Plaintiff's health/safety, violating Plaintiff's Eighth Amendment rights.

636. As a proximate result of the Defendants' failure to ensure Plaintiff's right to be free from cruel and unusual punishment while he was at CSP-Corcoran, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm.

637. As a direct and foreseeable result of Defendants' violations of Plaintiff's rights under the Eighth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer serious physical injuries, as herein described, and which also includes long-term isolation in punitive segregation in CSP-Corcoran's SHU; limited access to legal privileges; Defendants are still around Plaintiff and dictating every aspect of Plaintiff's care, custody, and housing—thus, Plaintiff continues to be in imminent danger. Plaintiff is not allowed to use the administrative remedies grievance process or the civil complaint § 1983 process without being retaliated on, threatened, or Plaintiff's legal due process interfered with by Defendants. Defendants are now attempting to choose and authorize another (inappropriate/dangerous) assigned housing for Plaintiff. Plaintiff still suffers physical pain in both hands/wrists/fingers, and migraines, and the other physical manifestations, as herein described. Plaintiff's serious mental illness and PTSD have worsened in the form of physical symptoms and self-mutilation, PTSD flashbacks where Plaintiff harms self—due to Defendant Sgt. J. Burnes' sexual groping of Plaintiff, Defendant Sgt. J. Burnes and other Defendants' physical abuse of Plaintiff, as covered in grievances and herein described.

638. Plaintiff continues to suffer isolation housing with Defendants attempting to keep Plaintiff at CSP-Corcoran in order to interfere with Plaintiff's statute time limitations, and to have direct, personal access to Plaintiff's legal discoveries/materials. Defendants deter Plaintiff

from cooperating with law enforcement and investigators on Plaintiff's current cases, as herein described, via abuse, harassment, interference in all legal matters, deliberate indifference to Plaintiff's care and custody. Plaintiff has/is suffering physical abuse. Plaintiff suffered irreparable harm in not being able to respond to the Eastern District Court regarding 1:19-cv-005-54-AWI-EPG, which case the Court dismissed on August 23, 2019, after receiving no response from Plaintiff. This directly resulted from Defendants' interference/not allowing Plaintiff to respond to the Court. There exists the possibility that the Court could have fully restored Plaintiff's constitutional rights through that case if Defendants had allowed Plaintiff to proceed with his civil action. Instead, Defendants physically abused and threatened Plaintiff, assigned a violent inmate to Plaintiff's cell, and afterward Defendants confiscated and never returned Plaintiff's legal material for 1:19-cv-005-54-AWI-EPG when it was wrapped in clear bags/uncontaminated. Plaintiff thus suffered damages by not being able to petition the government for redress of grievances, when it was his constitutional guarantee to be able to do so, and this was directly because of Defendants' actions, decisions who continued to abuse, threaten, and harass Plaintiff.

639. As a direct and foreseeable result of the failure of Defendants K. Clark, S. Babb, other supervisory Defendants/agents, including OIA John/Jane Does, to take disciplinary or other actions to curb the known pattern of Defendants' physical abuse of Plaintiff and other *Coleman* prisoners—Plaintiff's safety was jeopardized. Defendants' failure contributed to and proximately caused this via condoning/allowing the above-described violations of Plaintiff's Eight Amendment rights and condoned/allowed serious physical injuries from assaults and batteries.

640. As a direct foreseeable result of Defendant OIA John/Jane Does' failure to conduct an adequate/proper investigation after being in receipt of Plaintiff's letter/documents detailing staff misconduct, assaults and batteries—including by CSP-Corcoran's ISU/IGI Officers—against Plaintiff and other *Coleman* inmates, the OIA had the option and obligation to conduct an investigation, which would have precluded ISU/IGI Officers investigating themselves—a clear conflict of interest, when these officers were also listed/named as respondents in Plaintiff's case 1:19-cv-00554-AWI-EPG, filed/accepted February 20, 2019. Defendant OIA John/Jane Does ignored Plaintiff's request that Plaintiff's letter not be forwarded to CSP-Corcoran due to Plaintiff's reasonable fear of and the high likelihood of his being retaliated on. Defendant OIA John/Jane Does failed their duty when on December 16, 2019, Defendant forwarded Plaintiff's letter to Defendant CSP-Corcoran/4A Associate Warden S. Babb. Defendant S. Babb had then on January 20, 2019, around two days after the 128-G Chrono was falsified for Plaintiff's STG denunciations/affiliation, sent Plaintiff a letter explaining Defendant OIA had forwarded Plaintiff's letter, and that Defendant S. Babb was addressing Plaintiff's allegations instead of the OIA. [Ex. G1.] Thereafter, Defendants Sgt. J. Burnes, others, assaulted Plaintiff in the 4A rotunda, over which Plaintiff submitted a CDCR *Form 22 Inmate Request* on February 11, 2019, addressed to Defendant S. Gates, putting her on notice that Defendants Sgt. J. Burnes and K. Kyle-Maytubby continued to retaliate on Plaintiff. [Ex. C4.] Just prior to this, or around February 07, 2019, Plaintiff had also informed S. Gates of what was transpiring and if she could process Plaintiff's grievance at headquarters' level. On over thirty occasions, Plaintiff reached out to Defendant S. Gates and others for help, as documents will show.

641. As a direct, foreseeable result Defendant OIA John/Jane Does' deliberate indifference to violations of Plaintiff's Eight Amendment rights, and Defendants OIA John/Jane Does' failure to take disciplinary or other action in order to curb the known pattern of Defendants' physical abuse of Plaintiff, Plaintiff's safety continued to be jeopardized and breached, so that Defendant's failure thus constituted deliberate indifference to Plaintiff's life and safety.

642. Defendants OIA John/Jane Does' deliberate indifference thus contributed to and proximately caused the above-described violations of Plaintiff's Eighth Amendment rights, had allowed/condoned future assaults and batteries, and had put Plaintiff at substantial risk of harm from Defendants and other prisoners.

### THIRD CAUSE OF ACTION

**(42 U.S.C. § 1983; VIII Amendment to the U.S. Constitution, § 1)**

**Violations of the Cruel and Unusual Punishment Clause**

**Deliberate indifference and willful negligence**

**(Plaintiff against all Defendants)**

643. Plaintiff incorporates by reference the allegations in the preceding paragraphs 1-642 as though they were fully stated herein.

644. In the landmark case of *Estelle v. Gamble* (1976) (citations omitted), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners constitutes cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

645. In supporting the VIII Amendment, § 1, Cruel and Unusual Punishment Clause, § 673 of the California Penal Code provides that *"It shall be unlawful to use in...institutions, jails,*

*state hospitals or any other state, county, or city institution any cruel, corporal or unusual*

*punishment or to inflict any treatment or allow any lack of care whatever which would*

*injure or impair the health of the prisoner, inmate, or person confined,"* and *"Any person*

*who violates the provisions of this section or who aids, abets, or attempts in any way to*

*contribute to the violation of this section shall be guilty of a misdemeanor."*

646. In the case of *Hancock v. Avery* (citations omitted), the court found that an empty concrete "dry cell" violated the Eighth Amendment.

647. Plaintiff, in retaliation for his submitting grievances on staff, was on multiple dates left in a cold, empty, cement cell, especially on the dates of around September 24 through September 30, 2018, when Plaintiff was also seriously injured from multiple peace-officer-group assaults with untreated fractures; visible, extensive bruising, swelling; lacerations and bleeding; and head trauma.

648. During this time Plaintiff was repeatedly threatened by Defendants Sgt. J. Burnes, Sgt. A. Encinas, Sgt. A. Navarro, and others, that Plaintiff was "doomed" and was not to file grievances on staff.

649. For around three full days after the September 24 peace-officer-group assault and battery, Defendant Sgt. J. Burnes had ordered his subordinates, Defendants A. Cole, A. Luna, A. Corona to withhold Plaintiff's food and beverages.

650. Plaintiff was seriously injured with extensive bruising, blood loss, untreated fractures, pain, and then Plaintiff also had no food or beverages given to him for three full days, and Plaintiff slept on cold, bare concrete.

651. Case law has established that withholding food for two days or longer is in violation of the Eighth Amendment. (See *Williams v. Coughlin*, 875 F. Supp. 1004 (WD NY 1995); and see

*Hodge v. Ruperto*, 739 F. Supp. 873 (SD NY 1990); and see *Dearman v. Woodson*, 429 F.2d 1288 (10th Cir. 1970); and see *Robles v. Coughlin*, 725 F.2d 12 (2nd Cir.1983); and see *Cooper v. Sheriff, Lubbock County, TX*, 929 F.2d 1078 (5th Cir. 1991.)

552. Defendants' actions in leaving Plaintiff in a cold, bare cell after multiple assaults with actual knowledge of his serious, visible injuries delayed Plaintiff's healing, left Plaintiff with pain in thumbs/hands/wrist, vision problems, and migraines. Plaintiff suffered extreme emotional distress. These damages/injuries had been done by Defendants in retaliation for Plaintiff filing complaints on staff misconduct, and for reaching out to the OIA, OIG, other agencies, putting these agencies on notice of such misconduct, staff unlawful and illegal activities.

553. Defendants' above actions, while under the color of law, amounted to deliberate indifference, with Defendants Sgt. J. Burnes and A. Loza removing/confiscating Plaintiff's belongings/mattress on multiple occasions, other Defendants K. Kyle-Maytubby, J. Wilson, W. Lewis, Dr. A. Boyd, others being verbally informed by Plaintiff about his physical injuries, the assaults, and or the unlawful removal of his belongings, and or these Defendants being able to visually see Plaintiff's injuries and or emptied cell during one-on-one sessions and cell-to-cell CDCR-logged rounds.

554. Directly due to Defendants' deliberate indifference, Plaintiff's injuries went untreated, delaying his healing, and additional assaults/injuries took place. Plaintiff now has permanent pain and physical problems related to the repeated staff assaults and batteries.

555. Defendants' deliberate indifference and actions/inactions proximately caused those injuries and damages.

**656. On willful neglect:**

657. On or around October 28, 2018, and other dates, Plaintiff submitted a CDCR Form *7362* to request x-rays on his ribs, which requests were denied.

658. On or around October 28, 2018, Defendant CSP-Corcoran through its employees had notated in writing on the *7362* form that Defendant was refusing Plaintiff x-rays so that Plaintiff could not use the x-rays as "evidence," clearly showing Defendants' awareness of the severity of Plaintiff's untreated injuries/condition, and therefore Defendant CSP-Corcoran through its medical staff was in gross dereliction of duty, acting in deliberate indifference and willful neglect, in violation of the Eighth Amendment and had deprived Plaintiff of his constitutional rights to receive adequate medical care and to be free of cruel and unusual punishment, and which had also been in willful violation of California Penal Code § 673. [Ex. D1.]

659. As a direct result of Defendants' failure to provide constitutionally adequate medical care/attention to Plaintiff, his injuries went untreated, with unnecessary delayed healing and pain/suffering.

660. Defendants' actions, while under the color of law, proximately caused that pain/suffering.

661. In supporting the VIII Amendment, § 1, Cruel and Unusual Punishment clause, regulation GOV § 845.6 provides that *"a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity*

*from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."*

662. In support of the VIII Amendment, California Welfare and Institutions Code § 15630 *Mandated Reporters* specifies that *"(a) A person who has assumed full or intermittent responsibility for the care or custody of an elder or dependent adult...including administrators, supervisors, and any licensed staff of a public or private facility that provides care or services...dependent adults...or dependent adult care custodian, health practitioner... or employee of a county adult protective services agency or a local law enforcement agency, is a mandated reporter...who, in their professional capacity, or within the scope of their employment, has observed or has knowledge of an incident... reasonably suspects that abuse, shall report the known, suspected, or alleged instance of abuse...immediately or as soon as practicably possible."*

663. California Code of Regulations Title 16 § 1881 *Unprofessional Conduct* supports the VIII Amendment via prohibiting state licensees who *"(d) Intentionally or recklessly causes physical or emotional harm to a client. (e) Commits any dishonest, corrupt, or fraudulent act which is substantially related to the qualifications, functions or duties of a licensee. (m) Commits an act or omission which falls sufficiently below that standard of conduct of the profession as to constitute an act of gross negligence. (p) Fails to comply with the elder and dependent adult abuse requirements of Welfare and Institutions Code Section 15630."*

664. **On actual knowledge and conspiracy:**

665. Defendant K. Kyle-Maytubby, due to her supervisory role as CSP-Corcoran's mental health supervisor, had a duty to protect *Coleman* inmate-patients—Plaintiff—and to keep Plaintiff

in safe custody, free from staff and inmate assault, threats, intimidation; and to provide him with constitutionally adequate mental health/medical treatment.

666. Defendant had a duty to summon medical care for Plaintiff when aware of his injuries and was/is by state and institutional codes a mandated reporter.

667. On or around January 24/27, 2019, when Plaintiff told Defendant K. Kyle-Maytubby during a confidential mental health session that Plaintiff had filed a grievance on Defendant on Sgt. J. Burnes, Defendant K. Kyle-Maytubby then informed Defendant Sgt. J. Burnes of this, knowingly putting Plaintiff in harm's way and which led Defendant Sgt. J. Burnes to then credibly threaten and intimidate Plaintiff.

668. Plaintiff verbally informed Defendant K. Kyle-Maytubby during other one-on-ones, and cell-to-cell rounds (sessions/rounds which are CDCR-logged) that Plaintiff had been/was being assaulted, threatened, harassed by Sgt. J. Burnes, others herein named, in retaliation for Plaintiff having filed grievances/complaints.

669. Defendant K. Kyle-Maytubby in dereliction and breach of her duty had not summoned medical care upon any of Plaintiff's complaints/reporting by Plaintiff—even when Plaintiff presented with visually obvious injuries such as extensive facial/body bruising, conjunctival hemorrhaging, lacerations, swelling; therefore, Defendant K. Kyle-Maytubby had willfully, intentionally, knowingly chosen to not fulfil her job/license requirement of being a mandated reporter via CDCR and California Welfare and Institutions Code § 15630, Title 16 § 1881, GOV § 845.6 and CDCR DOM 33030.3.1.

670. Such actions show a clear malicious pattern and intention by Defendant K. Kyle-Maytubby. Defendant further demonstrated this by verbally stating to Plaintiff her personal dislike of Plaintiff and most inmates, in addition to verbally expressing her partiality to the Peña

family from Plaintiff's first conviction, the sister of which case is a CDCR worker/her

colleague. Defendant K. Kyle-Maytubby had also expressed harboring anger towards

Plaintiff for one of his complaints on Defendant being added to her permanent record.

671. Defendants who were/are trained and state-licensed medical professionals—CSP-Corcoran

John/Jane Does, J. Lewis, W. Lewis P. Ricablanca, L. Vasquez, Dr. A. Boyd, others, and

who had one-on-one interactions with Plaintiff via cell-to-cell rounds, appointments, the

similar, were unrefutably firsthand aware of Plaintiff's condition through visibly obvious

physical damage/trauma (i.e. extensive facial/body bruising, lacerations, conjunctival

hemorrhage, bleeding, swelling) and or by Plaintiff's verbal complaints of his injuries and

pain, and or by the multiple CDCR care/attention request forms Plaintiff submitted.

672. Defendants failed to summon/provide medical attention, had not reported incidents/abuses

or suspected incidents/abuses when Defendants had the opportunities to do so; therefore,

these Defendants acted in gross deliberate indifference, willful neglect, and were in

malicious violation of California Welfare and Institutions Code § 15630 Mandated

Reporters, Title 16 § 1881, GOV § 845.6 and or CDCR DOM 33030.3.1.

673. Defendant K. Clark, as CSP-Cocoran Warden, had unrefutably been put on notice via

Plaintiff's and other 4A inmates' history of grievances regarding Defendant Sgt. J.

Burnes—that Sgt. J. Burnes was violent with and harassing mentally ill inmates, had nearly

killed an inmate during one such attack/beating, and other allegations of other unlawful,

illegal activities while this Defendant was acting under the color of law and through the

authority of CSP-Corcoran.

674. These *Coleman* inmate complaints/lawsuits also established that K. Kyle-Maytubby had

firsthand awareness of *Coleman* inmate assaults, with her allegedly even cleaning blood

splatter off 4A walls from a rotunda/office area chair beating from when one unidentified 4A inmate had been in a chair, in restraints and hood spit mask, around late April 2019. (See 2:20-cv-00884-TLN-DMC; *Hammler v. State of California, et al*; 2020.)

675. Defendant K. Clark breached his duty by failing to keep his inmates and Plaintiff in safe custody free from violence and retaliation.

676. Plaintiff sent letters, appeals, other CDCR forms to Defendant S. Gates, and had a third party (former inmate A. Turner G27511) send documents/information on Plaintiff's behalf, as herein described. Defendant S. Gates was thus put on notice multiple times via multiple sources/methods about the severe abuse of 4A *Coleman* inmates, the assaults and batteries upon Plaintiff, as well as the lack of medical care to treat the lacerations, fractures, etc., from those assaults and batteries, and the ensuing cover-ups by Defendant CSP-Corcoran through its employees—specifically by Defendant K. Kyle-Maytubby, in addition to Plaintiff providing evidence, information regarding the other unlawful, illegal actions of other Defendants.

677. Defendant S. Gates acted in dereliction and breach of her duty as Chief of CDCR's Health Care Correspondence and Appeals Branch when she repeatedly failed to adequately investigate or enact intervention or corrective actions over Plaintiff's allegations.

678. Defendant's breach of duty constituted deliberate indifference, and thus Defendant allowed/condoned the continued CSP-Corcoran staff violence and retaliation, cover-up, and abuse against Plaintiff (and other 4A *Coleman* inmates.)

679. Directly due to Defendant's deliberate indifference, Plaintiff experienced serious physical injuries, PTSD, worsening mental health symptoms and was deprived of constitutionally adequate mental health/medical care.

680. Defendant's actions, while under the color of law, proximately caused that harm.

681. Defendant S. Harris, Chief of CSP-Corcoran's Mental Health, had a duty to adequately investigate Plaintiff's allegations against CSP-Corcoran mental health staff for willful negligence, deliberate indifference, misconduct. Defendant's failure to perform adequate investigation and enact any intervention or corrective actions constituted deliberate indifference to Plaintiff's health and safety.

682. Defendant's deliberate indifference had allowed/condoned the continued assaults/abuse of Plaintiff (and other 4A *Coleman* inmates.)

683. As a direct result of that breach of duty and deliberate indifference, Plaintiff suffered serious physical injuries, PTSD, emotional distress, and continued to be deprived of constitutionally adequate mental health/medical care.

684. Defendant's actions, while under the color of law, proximately caused that harm.

**685. On failure to protect:**

686. Defendants Wardens K. Clark, T. Campbell, Associate Warden S. Babb, management/supervisor John/Jane Does, Chief S. Gates, Chief of CSP-Corcoran Mental Health S. Harris, CEO C. Bell, OIA John/Jane Does had been put on notice over years by Plaintiff's grievances/documents, other *Coleman* inmates' grievances/documents, outreach by RBGG, other agencies. All of these listed Defendants failed to act on his/her knowledge of substantial risk of serious harm to Plaintiff, in violation of Plaintiff's Eighth Amendment guarantee to be free from deliberate indifference to Plaintiff's health and safety.

687. As a result, Plaintiff continued to be viciously assaulted, threatened, intimidated and suffered serious physical injuries, including permanent damages such as migraines, light sensitivity/blurred vision, memory problems, PTSD.

688. The failure of these listed Defendants to intervene, enact disciplinary and or any other similar actions to curb the known and documented pattern of physical abuse and assaults and batteries/violence against Plaintiff constituted deliberate indifferent to Plaintiff's health and safety, and which contributed to/proximately caused the above-described violations of the rights guaranteed to all individuals under the Eighth Amendment to the U.S. Constitution.

**689. On willful neglect/deliberate indifference to medical needs:**

690. Defendants J. Wilson, W. Lewis, L. Pickering, P. Ricablanca, L. Vasquez, Dr. A. Boyd, K. Kyle-Maytubby, Dr. J. Depovic, M. Casares, John/Jane Does mental health/medica providers, on or around September 24, 2019, January 16, 2019, March 08/09, 2019, and other dates, failed to provide medical attention to Plaintiff after Plaintiff's was clearly swollen/bruised, with conjunctival hemorrhaging, and lacerations, and Plaintiff verbally and in writing had reported fractured ribs, other physical injuries to Defendants.

691. Defendants J. Wilson, W. Lewis, John/Jane Doe medical/mental health providers, other Defendants, had failed to report staff misconduct and assault and batteries via being firsthand witnesses and or being informed by Plaintiff (and or other 4A *Coleman* inmates), constituting deliberate indifference to Plaintiff's serious and visually obvious medical needs and was in gross violation of the Eighth Amendment.

692. These listed Defendants failed to be present in rotunda on September 24, 2018, to provide Plaintiff with medical attention when there was actual knowledge prior to the peace-officer-group assault and battery of Plaintiff self-injuring in his cell with heavy bleeding and Defendants not knowing the extent of Plaintiff's self-injuries, whether such injuries were life-threatening.

693. Plaintiff was then viciously assaulted/beaten while in restraints by a group of peace officers, threatened, choked, his prescription eyeglasses smashed, and his belongings stolen/confiscated.

694. Instead of being provided medical attention at that time, these Defendants, upon returning to/being again in unit 4A, on or around September 24, 2018, and other dates, had the opportunity to summon medical attention and or send Plaintiff to the TTA or CTC for injuries and examination/mental-health watch for observations over Plaintiff's self-mutilation, as required by policy/procedure—but they failed to do so. These Defendants also failed to summon a mental health clinical care provider who was qualified to complete a psychological evaluation of Plaintiff pursuant to CDCR/state policy/procedure, thus Defendants failed to ensure Plaintiff's safety and others' safety.

695. Defendants who were/are professional medical providers willfully, intentionally, knowingly failed to take steps to ensure Plaintiff received treatment in spite of their firsthand actual knowledge of Plaintiff's serious medical/mental health needs, constituting gross deliberate indifference and willful neglect.

696. As a result of these listed Defendants failures, Plaintiff suffered further injuries, untreated injuries with delayed healing, physical pain/suffering, PTSD/emotional distress.

697. Defendants' actions/inactions proximately caused those injuries/damages.

**698. On retaliation:**

699. Upon Plaintiff filing 1:19-cv-00554-AWI-EPG, and different grievances, and his outreach to the OIA, the refusal of Defendants K. Clark, S. Babb, T. Campbell, other management-level agents to provide safety/protection to Plaintiff constituted retaliation for Plaintiff

exercising Plaintiff's right to petition the government for redress of grievances; therefore, violated Defendants willfully violated the First and Eighth Amendments.

700. As a result of that refusal, Plaintiff was viciously assaulted multiple times and needlessly suffered serious physical/emotional injuries.

701. Defendant T. Campbell owed Plaintiff a duty of reasonable care to protect him from assaults and batteries from staff and other inmates. Defendant owed Plaintiff a duty to adequately investigate and address his complaints of sexual groping/assault and physical abuse, retaliation upon Plaintiff by Defendant Sgt. J. Burnes, others. This breach of duty constituted deliberate indifference to Plaintiff's health and safety.

702. Defendant T. Campbell breached her duty and failed to protect Plaintiff when Plaintiff filed a civil action and grievance requesting a keep away from Defendants W. Lewis, Sgt. J. Burnes, Sgt. A. Encinas, others, when Defendant T. Campbell had been informed Plaintiff's counsel had filed a formal complaint on Defendants for threatening inmates to not come out to talk with Plaintiff's former Private investigator and Defendant had been provided at that time with supporting documents. Some of Plaintiff's prior grievances describing these situations were partially granted; log # COR-04A-18-09-0940; CSPC-5-18-05371.

703. Defendant's breach of duty resulted diminished representation by counsel of Plaintiff, prevented/dissuaded witnesses from speaking up to Plaintiff's then defense team, violating Plaintiff's due process and right to a fair trial, his right to call and cross examine witnesses, in violation of the Fourteenth Amendment to the U.S. Constitution, and constituted deliberate indifference.

704. Directly due to Defendant's deliberate indifference, Plaintiff suffered irreparable harm over losing witnesses for his potential death penalty case 19CM-1882, continued to be himself threatened, intimidated, and harassed, and experienced assaults and batteries, interference.

705. Defendant's actions/omissions while under the color of law proximately caused these damages.

**706. On negligent failure to protect:**

707. Defendants K. Clark, S. Babb, OIA John/Jane Does, other supervisory agents, owed/owe Plaintiff a duty of reasonable care to protect Plaintiff from assaults by staff and other prisoners.

708. These listed Defendants breached that duty by failing to provide protection when Plaintiff put them on notice of incidents herein described/omitted, and Plaintiff's fear of being assaulted again and retaliated upon, and Plaintiff had additionally provided documents/evidence supporting Plaintiff's allegations.

709. The breach of duty by these listed Defendants resulted in serious physical injuries/damage.

710. And that breach of duty proximately caused those injuries/damages.

711. By violating the VIII Amendment, § 1, Cruel and Unusual Punishment Clause, Defendants also were in violation of California Constitution, Article I, § 17, *"cruel or unusual punishment may not be inflicted."*

# VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

712. Plaintiff incorporates by reference the allegations in the preceding paragraphs 1-711 as
though fully herein stated.

**A. Plaintiff respectfully requests that the Court GRANT Plaintiff the following
compensatory damages:**

i. $ 250,000, separately and severally, against Defendants Sgt. J. Burnes, A. Loza, Sgt.
A. Encinas, J. Garcia, A. Cid, E. Leija, M. Rodriquez, W. Lewis, John Does, I.E. John
Doe, L. Vasquez, any other Defendants who reviewed/signed/are listed in related
investigative reports/documents, CSP-Corcoran as the employment agency through
which these Defendants were authorized to act, for violating Plaintiff's due process
rights under the Fourteenth Amendment to the U.S. Constitution via providing, signing
falsified statements, false reports that were then used to be bring charges and or RVRs
against Plaintiff, for which Plaintiff was then found guilty of such falsified
statements/charges and suffered as a result a loss of privileges, over four years in
punitive segregation, his access to the law library reduced/limited to two hours weekly,
reduced telephone access for legal/personal purposes, reduced visitation time to one-
hour and non-contact, limited property, and other punitive measures, as herein
described. Defendants, in providing such false statements, and which statements were
provided in administrative, civil, and or criminal proceedings, acted in violation of 18
USC § 1001 Statements or Entries Generally, and or any other regulation/law here
applicable.

ii. $ 500,000, separately and severally, against Defendants K. Clark, T. Campbell, OIA
John/Jane Does, K. Kyle-Maytubby, S. Harris, S. Gates, C. Bell, S. Babb, and CSP-
Corcoran as the employment agency through which these Defendants were authorized

to act, for recklessly allowing the abuse and violence against Plaintiff to continue, when there was documentation over years from multiple inmates and Plaintiff about the abuse of mentally ill offenders by several staff (e.g. Sgt. J. Burnes, A. Loza, A. Navarro, others), and due to outreach by RBGG, OIG, others. These supervisors had the duty, means, and opportunities to enact/enforce a safe environment for Plaintiff and all mentally ill offenders under Defendants' care, custody, and jurisdiction. Defendants failed to enact intervention or corrective actions even upon multiple grievances being granted in part or in whole regarding such abuses, and unlawful, illegal actions by Defendants of this complaint, who answered to/report to these supervisor Defendants herein listed.

iii. $ 250,000, separately and severally, against Defendants ISU Officers, and Sgt. J. Burnes, J. Cerda and Sgt. A. Encinas, and CSP-Corcoran as the employment agency through which these Defendants were authorized to act, for legal mail-properties theft, including when on August 03, 2020, Kings County Superior Court heard that Defendant's counsel had mailed Plaintiff around a "dozen boxes" of materials related to his case, which mailing she had tracked and verified as delivered to CSP-Corcoran but which was not provided to Plaintiff until later with documents stolen/missing; and for when upon Plaintiff's return from Salinas Valley State Prison to CSP-Corcoran with Defendants ISU Officers had taken Plaintiff's property and which was later returned with legal documents missing/unaccounted for; and for on February 2024 when Defendants J. Cerda/ISU Officers returned Plaintiff's legal paperwork that Defendants ISU Officers had taken from Plaintiff during court transportation and from which paperwork all of Plaintiff's correspondence with the CA State Bar and other

materials has been stolen/removed. Defendants acted in violation of under <u>18 U.S.C. §</u> <u>1708 Theft or Receipt of Stolen Mail Matter Generally,</u> and or any other regulation/law that is here applicable.

iv.   $10,000, separately and severally, against Defendants A. Cid, W. Lewis, Sgt. J. Burnes, Sgt. A. Encinas, A. Loza, M. Rodriguez, J. Garcia, C. Morelock, E. Leija, others, and CSP-Corcoran as the employment agency through which these Defendants were authorized to act, for not summoning a mental health clinician/personnel as required by policy/Mental Health Delivery system guidelines, and instead had cleared the tier of mental health/medical staff, during known episode of Plaintiff self-harming.

v.   $50,000, separately and severally, against Defendants Sgt. J. Burnes, Sgt. A. Encinas, A. Loza, M. Rodriguez, E. Leija, John/Jane Does, E. Luis, A. Corona, A. Cole, A. Luna, A. Navarro, C. Navarro, W. Lewis, J. Garcia, and CSP-Corcoran as the employment agency through which these Defendants were authorized to act for worsening Plaintiff's PTSD and mental health symptoms for their repeated abuses and harassment of Plaintiff, and regularly terrorizing the 4A tier, as herein described.

vi.   $ 250,000, separately and severally, against ISU Officers, and Sgt. C. Navarro, Sgt. J. Burnes, Sgt. C. Morelock, A. Encinas, John/Jane Does, CSP-Corcoran as the agency through which these Defendants were authorized to act, for willfully hindering, delaying, preventing witnesses from talking with Plaintiff's former Private Investigator regarding Plaintiff's potential death penalty case 19CM-1882 and which inmates had then contacted via letters the Private Investigator to report these threats; and for Defendant Sgt. J. Burnes threatening Plaintiff to not participate in a use of force video interview; and for Plaintiff not being able to report incidents during Defendants C.

Morelock's and Lt. love's recorded interview after CDCR/legal affairs became

involved in a complaint; and for Sgt. J. Burnes, A. Loza, Sgt. A. Encinas, Sgt. C.

Navarro, Sgt. A. Navarro, others, for threatening Plaintiff to not litigate 19CM-1882;

and for trying to dissuade Plaintiff from speaking up and or participating in 19CM-

1882; and for ISU Officers attempting to broker/elicit a "guilty" plea from Plaintiff in

exchange for retaliation and abuses against Plaintiff to stop, which actions/omissions

were in violation of 18 U.S.C. § 1512 Tampering with a witness, victim, or an

informant, and California Penal Code § 136.1, California Penal Code § 422 *Unlawful*

*Threat To Commit Crime,* and or any other regulation/law that is here applicable.

vii.    $ 1,000, separately and severally, against Defendants K. Kyle-Maytubby, Dr. A. Boyd,

Dr. J. Depovic, M. Casares, J. Wilson, W. Lewis, Jane Doe # 1 (RN), L. Vasquez,

CSP-Corcoran as the agency through which these Defendants were authorized to act,

and John/Jane Does in mental health/medical roles—which Defendants were/are

classified by the State of California as mandated reporters, and who were verbally and

or in writing and or by visual awareness had been informed of/aware of the physical

abuse and neglect of Plaintiff but had not intervened, had not summoned medical

attention, had not reported colleague misconduct/abuse, in violation of California

Welfare and Institutions Code § 15630 *Mandated Reporters* and or any other statute or

law that is here applicable.

viii.    $ 1,000, separately and severally, against Defendants K. Kyle-Maytubby, Dr. A. Boyd,

J. Dr. Depovic, M. Casares, J. Wilson, W. Lewis, Jane Doe # 1 (RN), L. Vasquez,

CSP-Corcoran as the agency through which these Defendants were authorized to act,

John/Jane Does in mental health/medical roles—who committed dishonest, corrupt

and or fraudulent acts related to their roles/functions, and or committed an act/omission that fell sufficiently below the standard of conduct of the profession as to constitute an act of gross negligence, and or had failed to report per requirements under California Welfare and Institutions Code § 15630 *Mandated Reporters,* in violation of Code of Regulations Title 16 § 1881 *Unprofessional Conduct,* and or any other regulation/law that is here applicable.

ix.    $ 1,000, separately and severally, against Defendants K. Kyle-Maytubby, Dr. A. Boyd, CSP-Corcoran as the agency through which these Defendants were authorized to act, for failing to maintain confidentiality, when not required/permitted by law to disclose confidential statements, during the course of their "treatment" of Plaintiff and had knowingly disclosed Plaintiff's confidential statements directly to Plaintiff's abusers (e.g. Defendants Sgt. J. Burnes, A. Loza, others) that Plaintiff was reporting those Defendants' unlawful, illegal abuse/violence and or that Plaintiff was filing grievances against those Defendants, for which loss of confidentiality directly resulted in these other Defendants threatening and assaulting Plaintiff. Defendants K. Kyle-Maytubby and Dr. A. Boyd also acted in gross dereliction of their duties for failing to otherwise appropriately report the unlawful, illegal abuse/violence to/through the proper channels, as guided by the state/institution codes/policies, in violation of Code of Regulations Title 16 § 1881 Unprofessional Conduct, and or any other regulation/law that is here applicable.

x.    $250,000, separately and severally, against Defendants Sgt. J. Burnes, M. Rodriguez, D. Goree, M. Olivera, T. Campbell, Lt. R. Silva, I.E./John Doe, S. Babb, K. Clark, S. Harris, S. Gates, L. Pickering, M. Kimbrell, CSP-Corcoran as the agency through

which these Defendants were authorized to act, John/Jane Does investigative agents who ruled against Plaintiff's many grievances/appeals/hearings when there had been an established, CDCR/legal-documented pattern and scores of § 1983/other civil actions with similar allegations of unlawful, illegal activities by the same Defendants against the mentally ill offenders of 4A for years, upon which Plaintiff needlessly suffered serious physical injuries, emotional distress, loss of properties, loss of credits, sustained excessive punitive measures, including the reduction of Plaintiff's access to the law library/legal materials to only two or less hours a week, no access to educational, vocational, or religious programs, reduced telephone legal/personal usage, limited freedom outside of the cell, reduced quality of life, limited contact with loved ones with only one hour, no-contact visits allowed, and only one hour legal visits allowed.

xi.    $750,00, separately and severally, against Defendants ISU Officers, S. Babb, Sgt. J. Burnes, K. Kyle-Maytubby, M. Kimbrell, E. Cantu, T. Dunn, J. Paison, E. Romero, John/Jane Does, A. Loza, Lt. F. Munoz, K. Clark, V. Pena, E. Sanchez, CSP-Corcoran as the agency through which Defendants were authorized to act, for the extensive interference in Plaintiff's first civil rights action § 1983 1:19-cv-00554-AWI-EPG, and retaliation for Plaintiff's grievances, lawsuit, contact with the OIA, OIG, others, in reporting these and or other Defendants' unlawful, illegal actions/omissions, where Defendants used a falsified chrono in order to circumvent CDCR/state policy to double cell clear and then cell Plaintiff with a known violent/assaultive inmate as retaliation. This had been done after failing multiple times to force only enemies into Plaintiff's cell and other failed attempts to incite enemy inmates against Plaintiff by making

incendiary false statements about Plaintiff to those inmates. And all of this had been done in spite of there having been alternative cellmate/housing options that would have been in accordance with CDCR/state policies. Plaintiff's materials/evidence for § 1983 1:19-cv-00554-AWI-EPG were then removed from Plaintiff's cell, and then lost/destroyed by Defendants ISU Officer/John/Jane Does. Plaintiff wasn't allowed to respond to the Court, resulting in the eventual dismissal of § 1983 1:19-cv-00554-AWI-EPG.

xii.  $ 100,000, separately and severally, against Defendants K. Kyle-Maytubby, Dr. A. Boyd, Dr. J. Depovic, W. Lewis, J. Wilson, John/Jane Does, C. Bell, S. Harris, S. Gates, L. Vasquez, CSP-Corcoran as the agency through which Defendants were authorized to act, for repeatedly failing over years to provide constitutionally adequate mental health/medical care to Plaintiff when by their license/role and oversight, these Defendants were required to do so, including maintaining Plaintiff at CCC, the lowest level of mental health care, despite staff-awareness of Plaintiff's ongoing, serious self injuries, psychotic mental health symptoms, and the repeated verbal and written complaints from Plaintiff and advocacy on Plaintiff's behalf by RBGG/*Coleman* Project Team, which was rebuffed/ignored.

xiii.  $100,000, separately and severally, against Defendants J. Garcia, E. Garza, Sgt. C. Morelock, S. Gozalez, E. Leija, L. Vasquez, John/Jane Does, W. Lewis, CSP-Corcoran as the agency through which these Defendants were authorized to act for being passive bystanders fully aware of Plaintiff being viciously, unprovoked assaulted with in shackles, handcuffs in a chair and under a mask and had not attempted to intervene and had not reported/contacted supervisors/management.

xiv.   $100,000, separately and severally, against Defendants Sgt. J. Burnes, Sgt. A. Encinas, Sgt. A. Navarro, Sgt. C. Navarro, T. Campbell, W. Lewis, A. Loza, K. Kyle-Maytubby, K. Clark, S. Babbs, other Defendants, CSP-Corcoran as the agency through which Defendants were authorized to act, for the continued pattern of retaliation and physical abuse from 2018-2022 against Plaintiff when Plaintiff had filed numerous complaints against those Defendants, and those Defendants were under investigation for those complaints, but refused to enact/enforce a keep away from Plaintiff, when policy requires a separation. Defendants had instead further involved themselves in Plaintiff's disciplinary processes, including deciding/signing to stay on their current posts in order to remain around Plaintiff and retaliated on him via issuing Plaintiff fake/false write ups and becoming involved in the ensuing the disciplinary/hearings process, and other misconduct, which led to various negative/harmful outcomes for Plaintiff including physical assaults/beatings, threats/intimidations, false charges with resulting loss of privileges, and reduced quality of life under prison living conditions, reduced of already restricted prison liberties outside of cell, reduction of properties and no access to education, religious, other programs, reduction of law library/legal materials access, reduction in time of and non-contact for visits, and other punitive restrictions and measures, as herein described.

xv.   $ 250,000, separately and severally, against Defendants ISU Officers, and S. Gonzalez, A. Guerrero, V. Pena, J. Guiterrez, Lt. C. Love, C. Morelock, others, CSP-Corcoran as the agency through which these Defendants were authorized to act, for falsely stating to Kings County Superior Court that Plaintiff was "wreaking havoc" or "causing chaos" and then using that as a security excuse to stand between Plaintiff and

his counsel in order to eavesdrop/overhear all private conversations, and for when, in 2023, Defendants hosted Plaintiff's legal visit in the regular visiting 4B room with recording/monitoring capabilities—and this after Plaintiff's counsel had requested a confidential room via the proper procedures; thus Defendants have been giving themselves an unfair advantage in Plaintiff's legal matters.

xvi.    $ 10,000, separately and severally, against Defendants P. Ricablanca and CSP-Corcoran as the employment agency through which Defendant was authorized to act, for falsifying a CDCR *Form 7219 Medical Report of Injury*, for Defendant falsely writing/recording on the document that Defendant had evaluated Plaintiff when Defendant had not, and had falsely written/recorded on the document that Plaintiff made statements to Defendant when Plaintiff had not, and for Defendant then falsifying the date/time on the document, and which document was/is submitted for Plaintiff's potential death penalty case 19CM-1882. Defendant was in violation of California Penal Code § 115, and or California Penal Code § 141 *Planting or Tampering with Evidence*, and or any other regulation/law here applicable.

**B. Plaintiff respectfully requests that the Court ISSUE injunctions ordering:**

i.    Plaintiff permanently removed from CSP-Corcoran immediately upon this Court ordering it, with Plaintiff transferring with all of his legal/regular properties to a prison of his choice—away from Kings County-based and Kern County-based prisons where Defendants work, and where Danielle Peña Gonzalez works and where her gang-affiliated family members/associates are/have been incarcerated.

ii.     Allow Plaintiff determining/final choice and decision in where he will be housed in any future transfers, so that transfers/housing cannot be maliciously used to retaliate against Plaintiff or for another setup.

iii.    Prohibit CSP-Corcoran, Kings County-based or Kern County-based prisons from housing Plaintiff again for any length/duration of time for any reason.

iv.     Permanent keep away from Defendants, to be valid if/when a Defendant transfers facilities or roles.

v.      False charges against Plaintiff to be withdrawn, and, within 30 days of this Court ordering it, any loss of credits restored, fines reimbursed, privileges reinstated, statuses to be restored; and for it to be documented in Plaintiff's C-File, any other relevant documents/files, that these were falsified charges now exonerated.

vi.     Falsified documents to be corrected, , and, within 30 days of this Court ordering it, any loss of credits, privileges, statuses from such documents, reports, materials to be restored to Plaintiff; and for it to be documented in Plaintiff's C-File, any other relevant documents/files, that these were falsified and have been updated; which updates are to be provided in annotation/writing to Plaintiff for confirmation/approval.

vii.    Revoke without stay the state licenses of Defendants K. Kyle-Maytubby, W. Lewis for their gross dereliction of duties, unethical behaviors, and active involvement with aiding and abetting staff assaults of *Coleman* mentally ill inmate patients.

viii.   Revoke without stay the state license of Defendant Dr. A. Boyd for gross dereliction of duty and willfully putting Plaintiff in harm's way by disclosing Plaintiff's statements to the known offenders rather than properly reporting the

misconduct/allegations to management, OIA, OIG, or similar proper agency, and Defendant having willfully breached patient-doctor confidentiality in doing so.

ix.    Open state investigations via an agency external to CSP-Corcoran/CDCR into 4A-based Defendants who have past incidences/reports involving *Coleman* inmates due to pattern of these Defendants working the same shifts when incidents occurred with repeated/many similar allegations of against them for threats, intimidation, falsified documents/charges/write ups, property theft/destruction, violence. Investigate any involved employees who served as reviewing personnel/bodies for those incidents/complaints but ran out time limitations on inmate appeals and found in favor of the same Defendants for the same offenses/allegations over years.

## C. Plaintiff respectfully requests that the Court DECLARE the following:

i.    The physical abuse of Plaintiff by Defendants M. Rodriguez, A. Cid, Sgt. A. Encinas, Sgt. J. Burnes, A. Navarro, J. Luis, E. Leija, I. Salcedo, A. Loza, A. Corona, A. Cole, A. Luna, John Does 1-8, and other John/Jane Does unable to currently identified, A. Arisco, violated Plaintiff's rights under the Eighth Amendment to the U.S. Constitution and constituted an assault and battery under state law.

ii.    Defendants Sgt. J. Burnes, Sgt. A. Encinas, A. Cid, J. Garcia, S. Gonzalez, E. Garza, C. Morelock, C. Love, John/Jane Does (1-TBD), J. Wilson, A. Arisco, J. Luis, E. Leija, others by restraining/allowing Plaintiff to be restrained in a hood spit mask, shackles for a group-assault was in violation of California Code of Regulations Title 15 § 3268.2 *Use of Restraints*, which provides that *"(c) Mechanical restraints shall not be: (1) Used as punishment."*

iii.    Defendants John/Jane Does, I.E./reviewing authorities, and M. Rodriguez—Peace Officer who acted as Plaintiff's staff assistant for that matter—for providing false statements and then making those false statements a part of Plaintiff's disciplinary procedural process, and which false statements were accepted/considered as true, violated Plaintiff's right to due process that is guaranteed to Plaintiff under the Fourteenth Amendment to the U. S. Constitution.

iv.    Defendant M. Rodriguez, as Plaintiff's assigned staff assistant, on or around September 27, 2019, failed to reassign himself—such reassignment was necessary due to Defendant being directly named/involved in the allegations Plaintiff made in complaint log # CSPC-5-18-05371, and being directly named/involved in Plaintiff's civil complaint case 1:91-cv-00554-AWI-EPG, sent to the courts around February 10, 2019, filed/processed by the court on February 20, 2019. Defendant thus violated state/administrative law and Plaintiff's constitutional right to due process, and which tainted the integrity of investigation of the charges against Plaintiff. Defendant exhibited questionable motives as to why Defendant would want to be assigned as Plaintiff's staff assistant and to be around Plaintiff. Defendant M. Rodriguez had not reported Plaintiff's allegations of abuse to Defendant's supervisors, as is required by CDCR policy, and Defendant controlled what would be documented for the investigation and allegations. The actions of Defendant M. Rodriguez constituted suppression of evidence and willfully, maliciously violated Plaintiff's right to due process guaranteed to Plaintiff by the Fourteenth Amendment to the U.S. Constitution.

v.    Defendants Wardens K. Clark, T. Campbell, Associate Warden S. Babb, Chief S. Gates, Correctional Counselors D. Goree, Lt. R. Silva, Mental Health Supervisor K.

Kyle Maytubby, OIA John/Jane Does 1- TBD, Chief of Mental Health S. Harris,

Health Care CEO C. Bell, ISU Lts. C. Love, C. Morelock, other

supervisory/investigative agents, failed to take action to curb the known physical

abuse of Plaintiff by Defendants, in which these supervisors by state/administrative

law are responsible for staff training, disciplinary actions, work assignments,

scheduling—especially when the other Defendants had a proven, documented,

consistent pattern of complaints made against them by prisoners with same/similar

allegations but which prisoners had never met—and especially when Defendants have

a documented history of losing civil complaints in federal court or settling such

lawsuits. The listed Defendants in supervisor/investigative roles violated Plaintiff's

rights under the Eighth Amendment to the U.S. Constitution to be free of cruel and

unusual punishment and constituted as condoning/allowing other Defendants to

continue unlawful, illegal activities.

vi.   Defendants Peace Officers A. Cid, M. Rodriguez, I.E. John Doe, Sgts. J. Burnes, Sgt.

A. Encinas actions/conduct in providing false allegations and statements in order to

issue Plaintiff disciplinary actions and then signing a sworn document under the

Peace Officers' Oath to the Kings County District Attorney's Office while knowing

this signed allegation/report was false, had been done in hopes of securing an

indictment against Plaintiff, and in hopes of securing the maximum administrative

disciplinary disposition for a guilty verdict, for which Plaintiff was and is still subject

to loss quality of life and living condition, minimum legal privileges. Defendants'

false allegations were part of Plaintiff's procedural disciplinary hearing and thus

violated Plaintiff's Fourteenth Amendment rights by depriving Plaintiff of life, liberty, property without due process and equal protection of the laws.

vii.   Defendant W. Lewis knowingly provided false allegations and statements against Plaintiff for a separate incident, which was signed and accepted by the Kings County District Attorney's Office, and which had been done in hopes of securing another indictment against Plaintiff, and in the hopes of securing the maximum disciplinary disposition for a guilty verdict against Plaintiff, and which had been done in clear retaliation for Plaintiff filing grievances and his § 1983 against Defendant. Defendant W. Lewis' false allegation and subsequent charge violated Plaintiff's Fourteenth Amendment rights by depriving Plaintiff of life, liberty, property without due process and equal protection of the laws.

viii.   Defendants John/Jane Does' actions in conducting Plaintiff's disciplinary hearings, and Defendants K. Clark's, Lt. R. Silva's, D. Goree's actions in sustaining the hearings' rulings, violated Plaintiff's due process rights under the Fourteenth Amendment to the U.S. Constitution.

ix.   Defendants ISU Officers E. Garza, E. Leija, S. Gonzales, ISU Lts. C. Morelock, C. Love, and J. Wilson, Jane Doe # 1 (RN), John/Jane Does, and Peace Officer J. Garcia made the decisions to not intervene when observing other Defendants assaulting Plaintiff who was restrained with shackles and handcuffs in a chair and under a mask—intervening would have meant Defendants could have stopped the assault and Plaintiff would have had less severe injuries, less pain, and proper medical attention and mental health help; therefore, Defendants' failure to protect Plaintiff by not intervening constitutes deliberate indifference and was in violation of Plaintiff right to

be free from cruel unusual punishment under the Eighth Amendment to the U.S. Constitution.

x. Defendants A. Cid, Sgt. J. Burnes, Sgt. A. Encinas, A. Loza, W. Lewis, M. Rodriguez, John/Jane Does, J. Garcia, J. Wilson, Jane Doe # 1 (RN), others, against institutional/state policies/code, failed to summon/provide Plaintiff with constitutionally adequate medical/mental health care, even after it was known he had been self-injuring in his cell, and then further injured by the peace-officer-group assault and battery while in restraints. Defendants failed to summon a qualified, appropriately credentialed clinician to evaluate Plaintiff for his self-mutilation behavior/being a danger to self, to evaluate/determine whether Plaintiff was safe to be placed back into his cell or determine that mental health crisis support in the form of suicide watch, or the similar, was instead necessitated, in violation of *Coleman, et al vs. Newsom, et al*, and in violation of Plaintiff's Eighth Amendment rights.

xi. Defendant J. Wilson failed to provide Plaintiff constitutionally adequate medical/mental health care by not meeting Plaintiff when Plaintiff was escorted to the rotunda that was emptied of health care providers after it being known of his serious self-mutilation with great bleeding, and Defendant had not made herself present until after the peace-officer-group assault while Plaintiff was restrained in a chair, in shackles and spit mask, and then afterward had lied about not seeing blood in Plaintiff's mouth. Defendant stated she had medically cleared Plaintiff, but she did not have the proper credentials to do so, in violation of *Coleman, et al vs. Newsom, et al*, and in violation of Plaintiff's Eighth Amendment rights.

xii.   Defendant P. Ricablanca on or around March 09, 2019, falsified Plaintiff's CDCR *Form 7219 Medical Report of Injury*. Defendant marked that Defendant had provided Plaintiff with a medical evaluation at 7:32-7:35 am, and that Plaintiff had stated to Defendant, "I need to see clinician," and marked that Plaintiff had "no injury." Plaintiff had not made this statement to Defendant, and Plaintiff had not received medical evaluation for injuries from Defendant. Defendant was later found during investigations to be lying in reporting that Plaintiff had given this statement to and received medical attention from Defendant, which deprived Plaintiff of proper medical/mental health evaluation, and which falsified document was/is being used in Plaintiff's case 19CM-1882. Defendant thus acted in violation of California Penal Code § 115 and violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

xiii.   Declare Defendants Investigative Services Unit/Investigative Gang Unit (ISU/IGI) Officers J. Fugate, V. Pena. Sgt. C. Navarro, A. Guerrero, Lt. C. Morelock, Lt. C. Love, E. Leija, J. Gutierrez, J. Luis, S. Gonzales, two ISU Jane Does, T. Brazelton, E. Sanchez, John Does 1 – TBD, violated Plaintiff's due process on various court dates, as herein described. Defendants failed to allow Plaintiff, while at court, to communicate with Plaintiff's counsel via Defendants keeping Plaintiff outside of the courtroom in their transportation vehicle as long as possible when there was no security or other reason to do so. Defendants had told Plaintiff this was because they wanted air, but really Defendants, without Plaintiff present, had falsely communicated to the Kings County Superior Court that Plaintiff was "wreaking havoc" and "causing chaos," when Plaintiff had been fully respectful to Kings County

Superior Court, its proceedings, and judges. Defendants violated 18 USC § 1001

*Statements or entries generally*, violated California Code of Regulations Title 15 §

3160 *Inmate Access to Courts*, and violated 28 CFR Part 543, and violated Plaintiff's

right to due process under the Fourteenth Amendment to the U.S. Constitution.

xiv.  Defendants Office of Internal Affairs OIA John/Jane Does failed to adequately

investigate Plaintiff's grievances submitted on or around November 18, 2018,

December 16, 2018, December 18, 2018, January 19, 2019, January 26, 2019,

January 27, 2019, February 19, 2019, and other dates, when Plaintiff put Defendants

OIA John/Jane Does on notice of Plaintiff's allegations of various Defendants'

misconduct, illegal and unlawful acts. Plaintiff provided Defendants OIA John/Jane

Does with a detailed letter dated around December 16, 2018, with copies of what was

later filed in the Eastern District as Plaintiff's § 1983 1:19-cv-00554-AWI-EPG;

therefore, Defendants OIA John/Jane Does knew of the substantial risk to Plaintiff's

safety and that Plaintiff was reasonably in fear of what was to come. Defendants OIA

John/Jane Does actions/omissions demonstrated deliberate indifference to Plaintiff's

safety and violated Plaintiff's rights under the Eighth Amendment to the U.S.

Constitution to be free of retaliation and free of cruel and unusual punishment.

xv.  Defendant K. Kyle-Maytubby, as the Mental Health Supervisor, had failed to

intervene at the January 2019 IDTT committee, had not submitted/drafted a

report/recommendation to protect Plaintiff/others from Plaintiff being double cell

cleared, even when Defendant around that same time had placed Plaintiff on extreme

restrictions, including no containers and to not be around others. Defendant had

signed off on the falsified 128-G Chrono with Defendants Sgt. J. Burnes and E.

Romero with actual knowledge that this was not Plaintiff's gang affiliation/correct information as based on existing documents from around and before that time, and this 128-G Chrono permitted choices for yards/housing for Plaintiff that would not otherwise be allowed by CDCR/state policies. Defendant K. Kyle-Maytubby failed to summon medical attention for Plaintiff after he informed her during one-on-one sessions and during her CDCR-logged cell-to-cell rounds about being assaulted by staff and had presented himself with visible physical injuries—including conjunctival hemorrhaging, bruising, swelling, his cell emptied of all belongings/mattress for days. Defendant K. Kyle-Maytubby rebuffed/ignored outreach (letters/emails on CDCR and RBGG files) by RBGG/*Coleman* Project Team sent to Defendant on behalf of Plaintiff not receiving constitutionally adequate mental health care under K. Kyle-Maytubby. Defendant K. Kyle-Maytubby reported Plaintiff's confidential statements made during one-on-one mental health sessions regarding staff assaults to Sgt. J. Burnes/other assaultive, known violent staff with the actual knowledge that such disclosure was putting Plaintiff in imminent danger. Defendant K. Kyle-Maytubby verbally expressed to Plaintiff her dislike of Plaintiff in favor/biasedness of the alleged victim of Plaintiff's first case—the sister of which alleged victim was Defendant's colleague/CDCR employee. Defendant expressed her anger at and complained to Plaintiff about his filing a grievance against Defendant that was then made a part of Defendant's permanent record. Defendant persisted in denying Plaintiff constitutionally adequate mental health care, and this in spite of *Coleman* Project Team advocating for Defendant to elevate Plaintiff's level of care on multiple occasions. Defendant's actions were in willful violation of California Code of

Regulations Title 16 § 1881 *Unprofessional Conduct,* California Welfare and

Institutions Code § 15630 *Mandated Reporters,* and in violation of Plaintiff's rights

to be free of cruel and unusual punishment under the Eighth Amendment to the U.S.

Constitution, and Defendant violated Plaintiff's right to constitutionally adequate

medical/mental health care, and violated various guidelines that have arisen from the

*Coleman, et al v. Newsom, et al* litigation.

xvi.    Defendant Dr. A. Boyd (PsyD clinician) failed to report Plaintiff's allegations of

assaults when Plaintiff told her about his experiences in a therapy session. When

Defendant asked Plaintiff "What do you want to talk about?" and Plaintiff stated, "I'm

dealing with injuries from being beaten and haven't slept due to I don't have a

mattress and my ribs are fractured and eye blood shot red from [Defendant] Sgt. A.

Encinas pressing [Plaintiff's] eye when [Plaintiff] was in the chair," and Dr. A. Boyd

said, "I don't want to talk about that, it's negative. It's not productive." Plaintiff

stated, "Really? You don't want to talk about it?" Defendant shook her head no,

stating, "Lets talk about something else." Defendant failed to summon medical

attention when Plaintiff stated he was in pain after the chair assault/staff assaults, that

his ribs hurt every time he breathed, his vision was foggy, had headaches and his

balance was off, and more. Defendant acted deliberately indifferent to Plaintiff's

injuries, pain, and was deliberately indifferent to Plaintiff being in danger from

CDCR-documented/known violent, assaultive staff. Defendant Dr. A. Boyd had

willfully failed to protect Plaintiff and willfully put Plaintiff in harm's way by

notifying two of the known violent Peace Officers/Defendants that Plaintiff had

reported on them during his confidential session with Dr. A. Boyd. These two other

Defendants stated to Plaintiff—as Plaintiff then reported the incident in a grievance—

"So, you're talking about what happened, huh?" Defendant Dr. A. Boyd breached her

patient-doctor confidentiality and had done so in manner that knowingly put Plaintiff

in imminent danger, had violated Plaintiff's rights under the Eighth Amendment to

the U.S. Constitution, had violated California Welfare and Institutions Code § 15630

*Mandated Reporters*, and had violated California Code of Regulations Title 16 §

1881 *Unprofessional Conduct.*

xvii.   Defendants K. Clark, S. Babb, T. Campbell, S. Gates, S. Harris, OIA John/Jane Does,

L. Pickering, C. Bell, John/Jane Does/other supervisory agents/agencies, M. Oliveria,

M. Kimbrell, Lt. R. Silva, D. Goree, John/Jane Doe reviewers/investigators acted in

gross deliberate indifference to Plaintiff's safety—and all 4A *Coleman* mental health

inmates' safety—in willful violation of the Eighth Amendment to the U.S.

Constitution. These Defendants had direct access to and or were actively reviewing

and deciding Plaintiff's and other *Coleman* inmates' complaints, many of which later

became lawsuits, including Plaintiff's case 1:19-cv-00554-AWI-EPG. It was the duty

of these Defendants to act, within their jurisdiction, on the clear pattern of other

Defendants' abuse, tactics, misconduct, unlawful, illegal actions/omissions. Instead,

there was/is a concerted effort to ignore Plaintiff's claims, delay grievances/appeals to

run out the time constraints, and to enact no consequences for the other Defendants'

unlawful, illegal misconduct. By these actions/omissions, and without providing

adequate investigations over Plaintiff's allegations, Defendants rendered the

grievance process—the only means for California state prisoners to address and seek

redress for wrongs within the prison complex—*meaningless*. By this rendering, and

in addition to Defendant John/Jane Does who miscategorized, lost, or otherwise

blocked Plaintiff's grievances, as herein described, these Defendants were in violation

of California Code of Regulations Title 15 § 3486 *Allegations of Staff Misconduct*

*Toward an Inmate or Parolee*, § 3999.226 *Right to Greive*. Plaintiff had put these

Defendants on notice via many grievances, and various CDCR forms, handwritten

letters, and via third party outreach (RBGG/*Coleman* Project Team, OIA, OIG, other

inmates) regarding the coordinated violence and unlawful, illegal activities of the

same staff against Plaintiff and other *Coleman* mentally ill offenders while housed in

4A, and these many notices were served to Defendants *over years*. In reviewing

Plaintiff's personal documents, Plaintiff noticed a pattern of the same Defendants

always on duty at the same times of misconduct and assault incidents. Usually,

Defendants J. Garcia, W. Lewis, Sgt. J. Burnes, L. Vasquez, et al, are on duty

together with the same investigators Defendants Sgts. C. Navarro, C. Morelock, et al,

together on duty/working together. There are not such assaults and batteries and other

criminal misconduct with falsified documents on those dates/shifts when other

employees are working those same roles/duties. Plaintiff further conducted passive

legal research of legal cases/database for this complaint, and Plaintiff found scores of

civil rights actions filed by 4A *Coleman* inmates—at least sixty separate lawsuits

from 2017 through 2019 alone, and around twenty lawsuits per year since 2019, and

that these other civil rights lawsuits filed by 4A *Coleman* inmates had been describing

the same/similar incidents as what Plaintiff has experienced/experiences and this

where those inmates didn't know each other. The majority of these lawsuits appended

the inmates' original complaints, medical documents showing broken bones from

staff assaults and setups, appeal responses with clear intention to delay the process and run out the inmates' statue of time limitations. An inexhausted, example list of these cases includes: 2:20-cv-00884-TLN-DMC (2020) *Hammler v. State of California, et al*, where Hammler/claimant arrived at CSP-Corcoran after a retaliatory level of care drop from CSP-Sacramento around August 25, 2018, and noticed "violent unnecessary treatment" of *Coleman* inmates by 4A staff. On April 29, 2019, Hammler/claimant alleged seeing an inmate restrained in a chair, hood spit mask by the 4A1R office, being assault by a group of peace officers, and he alleged that Defendant K. Kyle-Maytubby "had to clean blood splatter up with towels that flew some distance away from where the attack took place," and that other staff had been watching without intervening from the 4A1R office. Other allegations included document falsification, staff-on-inmate unprovoked assaults. Case 1:19-cv-01232-JLT-GSA Document (2019), *Boone v. CSP-Corcoran Warden, et al*, claimed unprovoked assaults/threats by Sgt. J. Burnes with Defendants M. Oliveira, D. Goree denying related appeals/complaints. Case 1:21-cv-00712-AWI-BAK (2021), *Jaramillo v. Burnes, et al* and case 2:22-cv-00300-AC (2022), *Jaramillo v. Burnes, et al*, in which the claimant/Jaramillo alleged being beaten in a rotunda chair, threatened over an excessive use of force video interview, cell searches for retaliatory purposes with destruction/confiscation of property without receipts, he was attacked by his cellmate—a retaliatory pairing/assault that was falsely portrayed by staff as due to gang politics but paperwork shows that Jaramillo/claimant had issues with the pairing/involved officers; Defendants J. Burnes, A. Loza and M. Rodriquez, others were named in Jaramillo's complaints. Some other cases: 1:19-cv-01001-DAD-SK0

(2019), *Artega vs. Neve, et al*, Artega/claimant received a retaliatory yard transfer, false battery on staff charge, staff-on-inmate assaults, and named J. Garcia as a Defendant. Case 1:19-cv-01232-ILT-GSA (2019) *Boone v. Warden, et al* named W. Lewis as a Defendant. In addition to legal documentation, there is personal awareness that Defendant Sgt J. Burnes had also been involved in the setting up of two inmates, with both of these inmates thrown into yards/situations to be outnumbered/attacked. Anthony Garcia (around December 2018), when was being escorted to yard for the setup, had been asked by the escorting officers whether Garcia would "bitch up like your homeboys?" Garcia had replied, "You'll find out," then when the gate opened began fighting, with his enemies from other side of the field running but not making it in time. The escorting officers then afterward stated to Garcia, "Oh you did that, you did that," complimenting Garcia having to fight for his life. Another Peter [Matuce]— who Plaintiff knew from YA—was similarly setup. Around that time, another inmate, Sanchez, the Defendants had setup to be attacked in the dayroom, where Sgt. K. Green had turned off his metal detector wand to allow inmates with weapons through to the dayroom where they attacked Sanchez. ISU Officers and Sgt. J. Burnes have multiple times similarly sought to setup Plaintiff by requesting/attempting to arrange that Plaintiff be sent like this to specific yards—even recently in 2023, 2024. Defendant V. Pena, prior to joining the ISU, had been a regular CSP-Corcoran officer, known for/relied on by inmates to bring in drugs and cellphones, who personally knew/had relationship with SNY gangs 2-5ers and Riders. Defendant V. Pena, and other Defendants ISU Officers, E. Sanchez, had used this personal relationship, to have Plaintiff credibly threatened/to put Plaintiff in harm's way via these inmates by

making inciting/inflammatory statements about Plaintiff to these inmates—falsely stating that Plaintiff had tried to attack those inmates' homeboys, and that Plaintiff was not to be trusted. These inmates had been shipped out of CSP-Corcoran to Kern Valley State Prison (Delano, CA), and SATF (Corcoran, CA), other Kern County prison facilities, who then shared such statements about Plaintiff to other inmates. Defendants K. Clark, S. Babb, T. Campbell, S. Gates, S. Harris, OIA John/Jane Does, John/Jane Does/other supervisory agents/agencies, M. Oliveria, D. Goree, John/Jane Doe reviewers/investigators, others acted in gross deliberate indifference to Plaintiff's safety—and all 4A *Coleman* mental health inmates' safety—in willful violation of the Eighth Amendment to the U.S. Constitution. These Defendants, by ignoring this clear pattern of evidence/history of other Defendants, constituted allowing/condoning setups, serious injures, and allowed act of violence and credible threats against Plaintiff, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

xviii.   Defendants W. Lewis, J. Wilson, L. Vasquez, John/Jane Does who were/are registered nurses and licensed psychiatric technicians, for their actions/omissions, as described herein, violated California Code of Regulations Title 15 § 3999.325 *Nursing Scope of Practice* with the failure to assume the responsibilities, duties, performance of care, delivery care within their scope of practice. These Defendants and Defendants John/Jane Does who were/are medical/mental health staff were in violation of California Code of Regulations Title 15 § 3999.111 *Statewide Patient Safety Program*, which states, *"(c) Department staff who observe or discover a health care incident, regardless of severity or absence of harm to a patient, shall report the*

*incident using the centralized electronic Health Care Incident Reporting system within 24 hours of occurrence or discovery.*" And these Defendants were in violation of California Code of Regulations Title 15 § 3999.303 *Scheduling and Access to Care*, which provides that "*(b)(1) All California Department of Corrections and Rehabilitation (CDCR) inmates shall have access to medically necessary health care services 7 days per week, 24 hours per day.*" And these Defendants were in violation of California Code of Regulations Title 15 § 3999.206 *Right to Health Care Services*, which provides that, "*(a) Patients shall be provided an opportunity to report an illness or any other health problem and receive an evaluation of the condition and medically necessary treatment and follow-up by health care staff.*" These Defendants and Defendants K. Kyle-Maytubby, Dr. A. Boyd, C. Bell, S. Harris, L. Pickering, by failing to refer safety concerns involving clinical performance and conduct to the attention of regional or headquarters leadership, acted in violation of California Code of Regulations Title 15 § 3999.138 *Safety Assessments*. By acting in violation of these codes/regulations, Defendants where thus in violation of the Eighth Amendment to the U.S. Constitution which is supported by those same codes/regulations.

xix.  Defendants S. Gonzalez, E. Garza, J. Wilson, W. Lewis, L. Vasquez, K. Kyle-Maytubby, Dr. A. Boyd, Dr. J. Depovic, E. Leija, J. Garcia, C. Morelock, John/Jane Does, others, acted in violation of California Title 15 § 3268 *Use of Force*, which provides that, "(5) *Employees shall render medical aid, consistent with their training, as soon as safe to do so after any use of force.*" These Defendants were also in violation of California Code of Regulations Title 15 § 3268.1 *Reporting and Investigating the Use of Force*, which provides that, "*(a) Use of Force-Reporting*

*Requirements. Every staff use of force is an incident that shall be reported. (1) Any employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and submit the appropriate documentation, prior to being relieved from duty. (c) Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive use of force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed by the submission of the appropriate documentation.*"

xx.  Defendants J. Cerda, Sgt. A. Encinas, A. Guerreo, S. Gonzalez, A. Guerrero, J. Gutierrez, Sgt. C. Morelock, Sgt. C. Navarro, C. Love, Defendants ISU Officers John/Jane Does, Defendant CSP-Corcoran employees John/Jane Does who confiscated, reviewed, removed Plaintiff's legal mail/properties, including the around six boxes sent to Plaintiff from his former counsel, as herein described, acted in violation of California Code of Regulations Title 15 § 3143 *Processing Incoming Confidential Mail*, which provides that, "(*a) Designated staff shall open the letter in the presence of the addressed inmate at a designated time and place. Staff shall not read any of the enclosed material. Staff shall remove the pages and shake them to ensure the absence of prohibited material.*" Defendants also acted in violation of 18 U.S.C. § 1708 *Theft or Receipt of Stolen Mail Matter Generally.*

xxi.  Defendants K. Kyle-Maytubby, Sgt. J. Burnes, E. Romero, M. Kimbrell, E. Cantu, J. Paison, T. Dunn, A. Loza, Lt. F. Munoz, K. Clark, John/Jane Does by either falsifying the 128-G Chrono showing known incorrect STG association, or by determining against the conflicting restrictions that Defendant K. Kyle-Maytubby had

placed Plaintiff under at the same time—which documentation Committee members/others should have reviewed during their decision-making process on whether Plaintiff should be double cell cleared, and then by only attempting to cell with Plaintiff enemies before sending a CDCR-documented violent, predatory inmate in Plaintiff's cell when there were CDCR/state-policy appropriate alternatives, acted in violation of California Code of Regulations Title 15 § 3269.1 *Integrated Housing*, which provides that, *"(a) An inmate's race shall not be used as a primary determining factor in housing an institution's inmate population. Inmate housing assignments shall be made on the basis of available documentation and individual case factors for appropriate housing placement. Individual case factors include but are not limited to: (1) History of racial violence. (2) Commitment offense or time to serve. (3) Classification score. (4) Custody level. (5) Education. (6) Disciplinary history. (b) Housing assignments shall be determined in a manner that ensures the safety, security, treatment, and rehabilitative needs of the inmate are considered, as well as the safety and security of the public, inmates, staff, and institutions. (d) The IHC shall be assigned based on a review of the inmate's individual case factors and a personal interview with the inmate."* By acting in violation of California Code of Regulations Title 15 § 3269.1, Defendants also acted in violation of the Eighth Amendment to the U.S. Constitution.

xxii.  Defendants Sgt. J. Burnes, Sgt. A. Encinas, Sgt. C. Navarro, Lt. C. Love, John/Jane Does, ISU Officers, A. Loza, others, by threatening Plaintiff and or his witnesses were in violation of California Penal Code § 422 *Unlawful Threat to Commit Crime* and California Penal Code § 136.1 *Preventing or Dissuading Witness or Victim.* 18

U.S.C. 1512 *Tampering with a witness, victim, or an informant.* These Defendants have threatened Plaintiff to not speak up regarding his criminal and civil cases, to not file complaints, to not leave his cell even for mental health appointments. Defendants' threats continued when Plaintiff was pulled out for a recorded interview after his former counsel had lodged a complaint regarding such threats, including when on another occasion Sgt. J. Burnes had stood behind the camera in intimidation, threatening Plaintiff for his use of force interview, for John/Jane Does threatening Plaintiff's potential witnesses to not come out and speak with Plaintiff's former private investigator. By acting in violation of these codes/regulations, Defendants were also in violation of the First, Eighth, Fourteenth Amendments to the U.S. Constitution.

xxiii.   Defendants S. Gonzalez, A. Guerrero, Sgts. C. Morelock, C. Navarro, Lt. Love, J. Gutierrez, V. Pena, ISU/IGI Officers, A. Encinas, Sgt. J. Burnes acted in violation 28 CFR Part 543, which provides that an inmate shall be afforded "reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents." Defendants had differently handcuffed Plaintiff so he could not prepare/review his paperwork while in court, had detained Plaintiff in the transportation vehicle prior to court longer than other inmates so as to limit/eliminate Plaintiff's time with his counsel prior to court, by taking Plaintiff's legal materials, which materials were returned to Plaintiff with tampered with/missing documents, withholding boxes/legal mail from Plaintiff, so that Plaintiff did not have reasonable access to those legal materials and counsel as herein described, were in violation of the First, Eighth and Fourteenth Amendments.

xxiv.  California Penal Code § 673 provides that, "*It shall be unlawful to use in…institutions,*

*jails, state hospitals or any other state, county, or city institution any cruel, corporal*

*or unusual punishment or to inflict any treatment or allow any lack of care whatever*

*which would injure or impair the health of the prisoner, inmate, or person confined,*"

and "*Any person who violates the provisions of this section or who aids, abets, or*

*attempts in any way to contribute to the violation…*" Defendants Sgt. J. Burnes, J.

Luis, A. Encinas, A. Cid, John/Jane Does, E. Leija, C. Morelock, S. Gonzlez, E.

Garza, J. Garcia, W. Lewis, J. Wilson, M. Rodriguez, A. Loza have violated § 673 by

their assaults and batteries upon Plaintiff, and or by the aiding and abetting of assaults

and batteries upon Plaintiff—whether by clearing the area, not intervening and not

reporting to supervisors, and by lying that Plaintiff was not injured or instead had

marked it down as "a battery on staff." Defendants K. Kyle-Maytubby, Dr. A. Boyd,

W. Lewis, J. Wilson, Jane Doe #1 (RN), Dr. J. Depovic, M. Casares, other mental

health/medical staff John/Jane Does acted in violation of § 673 via their not

summoning Plaintiff medical aid and not reporting Plaintiff's statements about his

being assaulted on multiple occasions, not having a mattress/laying on bare concrete

while having fractures/serious injuries. Defendants aided and abetted other

Defendants enact cruel, corporal, unusual punishment against Plaintiff, and had

allowed the inflicting of treatment and allowed the lack of care which further injured

and impaired Plaintiff's health.

**E. ORDER any/all punitive measures for Defendants to the fullest extent of applied laws.**

**F. GRANT any such other relief as it may appear that Plaintiff is entitled.**

**I declare under the penalty of perjury that the foregoing is true and correct,**

Respectfully submitted on June 27, 2024

p.p. Jamie Osuna, CDCR # BD0868

PO Box 3476/CSP-Corcoran

Corcoran, CA 93212

162
PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA**

Jamie Osuna, CDCR # BD0868
  Plaintiff,

                against

J. Burnes, K. Kyle-Maytubby,
W. Lewis, A. Loza,
A. Encinas, J. Garcia,
M. Rodriguez, V. Pena
C. Morelock, E. Leija,
S. Gonzalez, L. Vasquez,
A. Navarro, S. Gates,
S. Babb, A. Guerrero,
R. Rubio, E. Garza,
C. Love, A. Cid,
T. Brazelton, J. Cerda,
J. Fugate, E. Sanchez,
C. Navarro, I. Salcedo,
L. Pena, P. Ricablanca, et al
  Defendants.

Docket No.: _____

**EXHIBITS TOC**

| Exhibit | Material Title | Page |
|---------|---------------|------|
| A1 | UCI Neuroimaging | 1 |
| A2 | CHCF Testing | 2 |
| A3 | PC 2602 | 4 |
| B1 | Turner Envelope 1:19-cv-00554-AWI-EPG | 5 |
| B2 | 1:19-cv-00554-AWI-EPG | 7 |
| C1 | Form 22 | 28 |
| C2 | Form 22 | 29 |
| C3 | Form 22 | 30 |
| C4 | Form 22 | 31 |
| D1 | Form 7362 | 32 |
| D2 | Form 7362 | 33 |
| D3 | Form 7362 | 34 |
| E | Reserved/Redacted | — |
| F1 | Letter to Gates | 35 |
| F2 | Turner Envelope to Gates | 36 |

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL
**DOC: EXHIBITS TOC**

| Exhibit | Material Title | Page |
|---------|----------------|------|
| F3 | JO Envelope to Gates | 37 |
| G1 | Memo: S. Babb's letter | 38 |
| G2 | Memo: on CSPC-5-19-01003 | 39 |
| G3 | Memo: T. Campbell | 40 |
| H1 | 602: 315792 | 41 |
| H2 | Memo: Appeal | 42 |
| H3 | 602: Rights & Responsibility Statement | 45 |
| H4 | 602: unnumbered | 46 |
| I1 | Cell Search Receipt | 47 |
| J1 | CDC 114-A1 | 48 |
| J2 | C06-01-0020 | 49 |
| J3 | Creative Conflict Certificate | 51 |
| J4 | CDC 114-D | 52 |
| J5 | CDC 114-A1 | 53 |
| J6 | RVR 3B-14-12-026 | 54 |
| J7 | RVR for 3B-14-12-026 Contin. | 56 |
| J8 | Ad-Seg Placement | 58 |
| J9 | Ad-Seg Placement | 59 |
| J10 | CHCF 7219 | 61 |
| J11 | Ad-Seg Review | 62 |
| J12 | 15cm-7121 | 64 |
| J13 | 128-M H3 Mental Health Placement Chrono | 66 |
| J14 | FC-15-05-023 | 67 |
| J15 | Parole | 69 |
| J16 | Anger Management Certificate | 88 |
| J17 | KVSP 994525 | 89 |
| J18 | Ad-Seg Placement | 89 |
| J19 | MCSP-AYD-19-01-0029 | 91 |
| K1 | Logs: J. Depovic | 95 |
| K2 | Logs: W. Lewis | 96 |
| K3 | Logs: W. Lewis | 97 |

**EXHIBIT A1**

**UCI NEUROCOGNITIVE IMAGING**
**MRI Diffusion Tensor Imaging**
**Jaime Osuna**

AN DATE: 09/19/2016
03/8

_RRING DIAGNOSIS: R/o brain abnormality
.N DESCRIPTION: Diffusion tensor imaging (DTI) study

DTI study was performed and z-map was generated. Image is in anatomic orientation.

Scan finding:
The study is of good technical quality. There is abnormal decrease in fractional anisotropy in right temporal region. There are abnormal increases in fractional anisotropy (FA) in left inferior frontal, cingulate and in right posterior regions.

**PRELIMINARY IMPRESSION:** 1. Abnormal scan.

**PRELIMINARY CONCLUSION:** The pattern is consistent with brain abnormalities such as brain injury, ADHD or other neuropsychiatric disorder. Clinical correlation is recommended. Records can be forwarded to UCI BIC for clinical correlation of finding. See significant difference FA maps on page 2.

Joseph C. Wu, M.D.
Director
UCI Neurocognitive Imag    , Clinic
Irvine Hall, Room 109
Irvine, CA  92697

D000328

CHCF - California Health Care Facility - Stockton

Patient: **OSUNA, JAIME**
DOB/Age/Sex: ▓▓▓▓▓▓ ▓▓▓▓▓▓ / Male          CDCR: BD0868

*Mental Health Documentation*

In 2015 and 2016, at the request of his defense attorney, Mr. Osuna participated in neuropsychological testing with Dr. Cynthia Boyd. As part of that evaluation, Dr. Boyd administered both the Word Reading and Sentence Comprehension subtests of the WRAT-4. On that occasion, Mr. Osuna performed in the Borderline range, as reflected by a Word Reading score of 79 (8th percentile) and a Sentence Comprehension score of 75 (5th percentile). Together, his performance on these subtests yielded a Reading Composite of 62 (1st percentile). Although Dr. Boyd did not report a grade level equivalent for these scores, Mr. Osuna's performance on the WRAT-4 did not appear to have changed significantly since 2013, when he was tested at Patton State Hospital.

**Intellectual Ability:** In March 2016, Dr. Boyd administered an I.Q. test, the *Wechsler Adult Intelligence Scale, Third Edition* (WAIS-III), to Mr. Osuna. He achieved a Full Scale I.Q. of 78 (7th percentile), which is descriptively classified as Borderline. His verbal reasoning abilities, as assessed by the WAIS-III Verbal Comprehension Index, were also Borderline (VCI = 76; 5th percentile). His nonverbal reasoning abilities, as assessed by the WAIS-III Perceptual Organization Index, were Low Average (POI = 89; 23rd percentile). His ability to retain information in memory while mentally manipulating it, as measured by the Working Memory Index of the WAIS-III, was Borderline (WMI = 75; 5th percentile). Finally, the efficiency of his thinking and motor speed, as measured by the Processing Speed Index of the WAIS-III, was Extremely Low (PSI = 68; 2nd percentile).



Report Request ID:   25494472                              Print Date/Time:   1/9/2020 11:54 PST

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**CHCF - California Health Care Facility - Stockton**

Patient:          **OSUNA, JAIME**
DOB/Age/Sex:                            / Male          CDCR: BD0868

| *Mental Health Documentation* |
| --- |

3. Mr. Osuna is not malingering.

4. Mr. Osuna meets DSM-5 criteria for a diagnosis of Posttraumatic Stress Disorder, with Dissociative Symptoms.

5. In addition to PTSD, Mr. Osuna has a chronic mental disorder characterized by a combination of mood and psychotic symptoms.

Report Request ID:    25494472                              Print Date/Time:   1/9/2020 11:54 PST

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

EXHIBIT A3

STATE OF CALIFORNIA
**RENEWAL OF INVOLUNTARY MEDICATION PETITION (PENAL CODE 2602)**
CDCR MH-7368-1 (03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1
Instructions: Pa

| Renewal of Involuntary Medication Petition | | |
|---|---|---|
| Inmate Name (Last): OSUNA | (First): JAIME | CDCR #: BD0868  PID #: |
| Date: | Institution: CSP-COR | Bed/Cell/Dorm:04AA1LC1-044001 L |
| Age: 34 | Gender: ☒Male ☐Female   Interpreter: ☐Yes ☒No | Language: |

## NOTICE OF INTENT TO SEEK RENEWAL OF INVOLUNTARY MEDICATION

The clinical staff of the institution shown above allege that you continue to have a serious mental illness or disorder. As set forth in the attached declaratio your behaviors and symptoms meet the legal criteria for danger to self, danger to others, or grave disability. These symptoms are currently being moderat by court-ordered psychiatric medication. A judge has previously ordered you to take psychiatric medication for these condition(s). The clinical staff of t institution alleges that, without said medication, you would revert to your previously qualifying condition(s) and, as specified in the attachments, you have either your statements or behaviors shown a lack of sufficient insight to manage your illness without a PC 2602 order. You will therefore be brought in front an Administrative Law Judge, who will decide whether you should continue to be given psychiatric medication on an involuntary basis.

## PENAL CODE 2602 ORDERED MEDICATION STATUS

Your current order for involuntary psychiatric medication expires on: 04/05/2023

### RENEWAL HEARING

Hearing Date and Time: Thursday 03/16/2023 @ 0900 Hours        Hearing Institution: CSP-COR

Attorney Name:                                             Attorney Address

**Renewing Psychiatrist:**
Name and Title (Print): S. Jafarpour, D.O.

### RENEWAL BASIS

1. The basis for involuntary medication in the prior order is marked below.

2. Based on clinical judgment and observation, except for medication resulting from the current order, it is alleged that the above-entitled patient would b (mark all that apply)

☒Danger to self            ☒Danger to others            ☒Grave disability and lacks capacity to refuse treatment

### SERVICE

I declare under penalty of perjury that I delivered a copy of this notice, a copy of the form "CDCR MH-7366 Inmate Rights Notice - Involuntary Medication and any related paperwork such as exhibits or attachments, to the attorney listed in the "Renewal Hearing" section above. and to the patient on the da shown below.

**Person Delivering Petition:**
Name and Title (Print): J. Richardson, MCA        Signature:                Date:

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | CDCR #: | BD0868 | |
|---|---|---|---|---|---|
| ☐TABE score ≤ 4.0 | ☒Additional Time | ☒Patient asked questions | | | |
| ☐DPH ☐DPV ☐LD | ☐Equipment ☐SLI | ☒Patient summed information | Last Name: | OSUNA | |
| ☐DPS ☐DNH | ☐Louder ☐Slower | | | | |
| ☐DNS ☐DDP | ☒Basic ☐Transcribe | Please check one: | First Name | JAIME | MI: |
| ☒Not Applicable | ☐Other* | ☐Not Reached* ☒Reached | | | |
| | | *See chrono/notes | DOB | | |

4 **Comments:** TABE: Score Not Available  DDP: NCF

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws
DISTRIBUTION: Original: Health Records Copies: Patient, MCA, patient's attorney. OLA, OAH
eUHR SCANNING LOCATION: MH-Chrono/Misc-Legal/Other; 7363 Notice of Certification for Involuntary Medication
EHRS LOCATION: Mental Health Documentation/Other

**PC-CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

4



**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

Case 1:24-cv-00793-KES-SAB    Document 1    Filed 06/28/24    Page 170 of 261
EXHIBIT B1
Case 1:19-cv-00554-AWI-EPG    Document 1-1    Filed 02/20/19    Page 2 of 2



**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

6

*receive Cadiit Access please return filed and endorsed. Thank you Clerk*

JAMIE ASUNA
FULL NAME

P.O. Box 3476 (4A1K-46) (original)
COMMITTED NAME (If different)

(C.S.P-CORCORAN) (4001 KINGS AVE)
CORCOR AN, CALIF. 93212
FULL ADDRESS (Including Name of Institution)

BD0868
PRISON NUMBER (If applicable)

FILED
FEB 20 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
(NORTHERN) DISTRICT OF CALIFORNIA

Jamie Asuna
Plaintiff,

CV19-913
SVK
Case
(To be supplied by the Clerk)

vs.

Edmund G. Brown Jr. (et al.) (Gevenor) 2018
(Kathleen Allison (C.D.C.) Director) (Scott Kernan)
- Under Secre. Director) (Ken Clark N.J. Burnes #
A. Randolph, A.Encinia, S.Gonzales And Does #1-10
Defendants

(F.R.C.P.-811(6), 815(a), §17(6), & 45(c), 865(a))

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 USC § 1983, §1981- §1983 §1985 (2)(3)
1): Conspiracy Retaliation Stage Assaults
2): Intentional Tort-/Negligent waste
3): Criminal Negligence & Failure to Inp)-
- ect against Cruel And Unusual Punish-
- ment (8 th Amendment USC)
1) Deliberate Indifference to Safety
28 U.S.C. §1571(6), (c)(1)(2), §1331-§1343 & §2680(H)

A. JURISDICTION

This Complaint alleges that the civil rights of

plaintiff, (Jamie Asuna-#BD0868) (4A1K-46) SHU
(print Plaintiff's name)
who presently resides at P.O. Box 3476, 4001 Kings Ave Corcoran, CA,
(mailing address/place of confinement) 93018
were violated by the actions of the below-named

individuals, which actions were directed against plaintiff

at (Corcoran State Prison) , on (dates)
(institution/city where violation occurred)
(9/24/2018) , (9/23/2018 - 9/27/2018); 9/26/18 - 9/30/2018)
(Count 1) (Count II) (Count III)

1). Defendant (Edmund G. Brown Jr.) resides/works at the State Capitol of California as a (Governor) at STE #1173, Sacramento CA. 95814. is (sued) in official capacity.

2). Defendant Kathleen Allison) reside/works at (C.D.C.R-Agency) as (Adult Prison Director) at 1515 S' Street (RM321), Sacramento, CA. -95811 sued in her official capacity.

3). Defendant (Scott Kernan) reside's/works at (C.D.CR Agency) as a (Secretary Director) of (1515 S' Street, RM#321, Sacramento, CA. -95811. is sued in (His) official capacity.

4). Defendant (Ken Clark) resides/works for (CDC-R-Agency) as a Warden employed by the State Cat:fornia at (1515 S' Street (Rm#321) Sacram- -ento, CA. 95811. is sued in (His) personal and official capacities at C.S.P-(Corcoran-Assigned).

5). Defendant (J. Burnes) resides/works for (C.D.C.R-Agency) as a (Sergeant) (4A1R-SHU) at C.S.P-(Corcoran) and authorized service at (1515 S' Street, RM-321) Sacramento CA. -95811). is sued in (His) personal and official capacities. (F.R.C.P-811(C) §15(C), §17(b))

6). Defendant (A. Encinas) resides/works for C.D.C.R-Agency) as a (Sergeant) at (C.S.P -Corcoran), at authorized service (1515 S'St- -reet, (RM.#321), Sacramento, CA. 95811.). (He) is sued in (His) personal and official -capacities. (F.R.C.P-811(C) §15(C), §17(b)).

7). Defendant (J. Garcia) resides/works for C.D.C.R-Agency) as a (L. Solli-officer) Rogue Allowed to "abuse" (His) "power" at C.S.P.- -Corcoran) at authorized service (1515 S'St- -reet (RM. #321) Sacramento, CA. 95811.) F.R.C- -P.-811(C) §15(C), §17(b)). (He) is sued in (His) personal and official capacit- -ies as prison security officer.

8) Defendant (S. Gonzales) resides/work-s as a (I.Sell.- Officer) at C.S.P.-Corcor-an), at Authorized Service (1515-'S' Street, (Rm.-#321) Sacramento, CA. 95811) Is "Sued" in (His) Per-sonal and Official Capacities.

9). Defendant (E. Leija    ) resides/works as a (I.S.U.-Officer) at C.S.P.-(Corcoran) Allowed to be "Rogue" and Abuse(His) "Power", Authorized Service at (1515-'S' Street (Rm.-#321), Sacramento, CA-95811). Is "Sued" in (His) personal and official Capacities. F.R.C.P.-8(1),(2) & 15(a)(1)(b).

10). Defendant (M. Rodriguez) resides/works for (C.D.C.R.- Agency) at C.S.P.-Corcoran) as a (Guard), Authorized Service at (1515 S' Street - (Rm.#321) Sacramento, CA. 95811). Is "Sued" in (His) personal and Individual Capacities.

11). Defendant (Luna    ) resides/works as a (Guard) for (C.D.C.R.-Agency) at C.S.P.-Corcoran) Authorized Service at (1515 'S' Street, Rm-#321) Sacramento, CA. 95811). Is "Sued" in his (personal) and (individual) Capacities).

12). (Defendant) (R. Valier o   ) resides/works as a (Guard) for (C.D.C.R.-Agency) at C.S.P.-Corcora-(n) Authorized Service at (1515 S' Street, Rm-#321) Sacramento, Calif. 95811). Is "Sued" in (His) individual and personal Capacity).

13). Defendant (V. Cecliz) resides/works for (C.D.C.R.Agency) at a (Guard) at C.S.-Corcoran) and Authorized Service at (1515 S'Street, Rm-#321) Sacramento, CA 95811) Is Sued in (His) personal and Individ-ual Capacities.).

- 3 -

9

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

pg. 2  (continue page 6 — Defendants)

14). Defendant (A. Cole. ) resides/works for C.D.C.R.-Agency) as a (Guard) at C.S.P.- Corcorano) and Authorized service at (1515 S' Street, (Rm.-321) Sacramento, CA 95811) (He) is "Sued" in (his) "personal" and "Individ- -ual Capacities").

15). Defendant (A. Cid ) resides/works for (C.D.C.R.-Agency) as a (Guard) at C.S.P.- Corcorano) and Authorized Service at (1515 S'Street (Rm.#321) Sacramento CA 95811) Is "Sued" in (His) "Personal" and "Indivi- -idual Capacities."

16). Defendant (A. Corona) resides/works as a (Guard) for C.D.C.R.-Agency) Author- -ized Service at (1515 S' Street (Rm.# -321) Sacramento, CA 95811) and is A sign- -ed to C.S.P.-Corcorano). Is "Sued" in (His) Personal and Individual Capacities.)

17). Defendant (A. Loza ) resides/works for (C.D.C.R.-Agency) as a (Guard) at C.S.P.- Corcorano) and Authorized service at (1515 S'Street (Rm.#321) Sacramento, CA 95811) Is "Sued" in (His) Personal and Individ- -ual Capacities).

18). Defendant (I. Salcedo ) resides/works for (C.D.C.R.-Agency) as a (Guard) at C.S.P.- Corcorano) and Authorized Service at (1515 S'Street, Rm.-#321) Sacramento, Calif.- -95811). Is "Sued" (His) Personal and Indi- -ividual Capacities).

19). Defendant (Does #1-10 ) resides/works for C.D.C.R.-Agency) as (Doctors, Nur- -ses and Mental Health Service workers at C.S.P.-Corcorano) and Authorized Servi- -ce at (1515 8'Street (Rm.321) Sacramento, -Calif. 95811.). Is "Sued" in (his/her) Person- -al and individual Capacities.)

20) Each named (Defendant) Acted in the Course
And Scope of their Employement for the
State of California And C.D.C.R.-Agency).

21). "Each" named (Defendant) Does #1-70 Acted
in the Course And Scope of their Employ-
ment As Doctors, C.E.O.'s, Nurses, Prac-
-ionioner's, radiologist, Social Worker of
Mental Health Dept. For C.D.C.R.-Agency

23). "Each" named Defendant Continues to
Act And were Acting under color
of Law For the State of California
And C.D.C.R.-Agency) where the "Claims"
Herein Stated Gave-Rise to this Civil
Rights Complaint 81983, 81981, 81982, 81985(3), et.-
-Seq.) And (A.D.A.-Act) 42USC 812102-03, (A-h) (I-IV) et Seq.)

24). That the (Defendant(s) were Acting And Continu-
-es to Act under color of California State
Laws, As Governor, (C.D.C.R.-Agency) Directors,
Under Secretaries, Wardens, Associate Wardens,
Captains, Lieutenants, Sergeants, Guards,
Nurses, C.E.O.'s, C.M.O.'s, Practioners, Doctors,
Mental Health Dept. Doctors, Psychologists,
Social Workers, Psychiatrists, Psych. Techs.
And Representatives of one another And ev-
-ery other Officer, Who Conspired Jointly And
Severally to Deprive (Plaintiff) of (His) (1st, 4th,
8th, 13th And 14th Amend. U.S.C) Rights. And Rights
under Common Laws, (8 USC 82, 8150, 8211, 8243, 8314(3)
-84042-8408), et Seq.)

25) (Plaintiff) Does Request Arrest And Detention
of All defendants found in violations of
Civil Rights Act 81981, 81982, 81983, 81985 (3),
-812102-(03,(a-h), (I-IV) A.D.A.-Act And the Const-
-itutional Rights of (Plaintiff) to the 8th And
-14th Amends. U.S.C) standards And (Plaint-
-iff) Request (their) Indemnifications And
Permenant Discharge From C.D.C.R.-Ag-
-enecy), (Cal.Gov't. Codes.- 881-8890.8 e 8830-891-),

Case 1:24-cv-00793-KES-SAB   Document 1   Filed 06/28/24   Page 176 of 261
EXHIBIT B2
Case 1:19-cv-00554-AWI-EPG   Document 1   Filed 02/20/19   Page 6 of 21

- §995.6 - 9995.8, 8113.6 - 811370(d) et. Seq.)

26) That the (Defendants) All of them Named
were Acting under Color of Laws (or) purport-
-ing to Act under State law of California,
in the performance of (their) official duties
and as employees under State Customs, Polic-
ies, Underground Regulations of C.D.C.R-
-Agency), State (or) County Dept. illegal
Practices, Customs, Regulations, Policies
Ordinance, when (they) jointly and severally
Conspired to Deprive (Plaintiff) Rights, Prop-
-erty, Privileges, immunities, safety, prot-
-ection against staged (organized) Brutality,"
and assault (with (S.B.I.) and sexual abuse,
Harrassment."(U.S. V. Tines (6 Cir. 1995) 70 F.3d
-890(Hale V. Henkel (1905) 201 U.S. 43).

27) The Rights of (Plaintiff) is fundamentally
substantially and procedurally secured
and guaranteed by the Constitutions, of 4.
Laws of the united States, "shall" be liable
to the "Injured" Party. (Cooper V. Casey (7th Cir-
-1996) 97 F.3d 914, 919-20), (McCullough V. Cady,
- E.D. Mich. 1986) 640 F. Supp. 1012-1014)."

28) "Each" Named (Defendant) is Sued" Jointly
severally and individually in (their) person-
-al, individual Capacities as employees,
subordinates and officials herein named
for Restitutional Damages and Punitive,
Compensatory and exemplary Damages
for Fractured Cranpium, Ribs, facial
and skull Fractures Causing Brain Dam-
age permanently Irreparable warrants
A Jury's Award, additional Damages.
$1,000,000.°° Dollars.

II.

Jurisdictions & Venue

1). This is a Civil and Human Rights Action/
Authorized by 42 U.S.C. §1983 §1981-§1982 §1985(3)
-§1997 e(a), §12102-03, (2)-(6), (I-II) to Redress the
Deprivations, under Color of State Law)
of Rights Secured by the Constitution
of the United States of America And
State of California Constitutions. 42 U.S.C
-§1983, §1981, §1982, §1985(3) §1997e(a) - §12102-03(a-h)(I-III)

2). This Court's Jurisdiction is fully Conferred
purs. To 28 U.S.C. §1571(b)(2), (H&K), §1331-§1343,(e),(3),-
-§1367, §2412(b), §2671-§2680(h), et.seq.) And purs. to
The Arrest and Detentions Act; 18 U.S.C. §2, §150.
-§241-§242, §3145(c) §4042-§4081, et.seq.)

3) That (Plaintiff) Does Request Declaratory
Judgment "Decree" on Plaintiffs
(rights in Custody of (Defendants)
And (their) "Duties", Obligation "under
Color of Authority of State Law's
of California and the United
States. (28 U.S.C. §1571(b),(2)(H&K) §1657(2),-
-§2671-§2680(h), et seq.); (4 U.S.C §544(b) -§548;
-(18 U.S.C. §2, §150, §2411-§242, §3145(c), §4042.-
-§4081, et. seq.) is Herein "Involked"

III.
Venue III.

1) Venue is proper under (28 U.S.C. §1391(b),-
Because a Substantial part of the events
"given Rise" to (Plaintiffs) Constitutional
Rights Violations, Occurred within the
Northern District Court of California.

IV.
D). Background and Nature of This Action
Plaintiff (Jamie Asuna) is a Coleman
Class Stake Prisoner, Currently of Confin-

- lised At (C.S.P. - Corcoran Prison) (SATF-
- cell#46 SHU Unit, 4001 Kings Ave., Core-
- oran, CA. 93212)

2). (Plaintiff's) "First Amended Complaint" §1983
Alleges that while At Corcoran Prison SHU
4A Facility I Right, (I) suffered And contin-
-ue to Suffer "Physical" And "Mental Injuries"
of "Pain, Suffering", "Black-outs, Headaches",
"Blur Vision, Dizziness", "Fatigue" As A Resu-
-lt of A Excessive Use of Force And
Assault/Battery with (S.B.) Incidents.

3). By Named (Defendants, et. al.), which was
"Applied" Against (me) with "Malice" And - "
"Sadistically" to Cause harm, in A Cruel
Unusual Manner, Because there were "no"
legitimate Penal Justification to Require
"Any" Amount of "Force" used by the (Defendants).

4). That (Defendant Class, et al.) Named did
Knowingly "Conspire" in "Retaliation",
"Jointly And Severally to Deney (Plaintiff)
(His) Constitutional Rights, And "Retaliat-
-ed, Because (Plaintiff) "exercised (His) Fed-
-eral Protected Rights".

5). That Named Supervisory (Defendant-
-Class, et al.) Were in "Callous Disregard"
And "Acted "with Deliberate Indifference"
to the (Plaintiff) Health And Safety then
with "Reckless disregards" to the (Plaint-
-iff's) Medical Safety Concerns And
Medical Needs, And Refused to Enter-
-Vieney When They had A "State Legal"
"Duty" to do so under color of authority
And Failed "the opportunity to do it".

6). To "prevent" the unlawful (Beating)
(Excessive Use of Force) And Brutality
Employ

7). That the Defendant (Does 1-10) medic-
-AL Personnel Conspired to (Cover-up) the
Prisone guard "Assault Battery" And
"Brutality Beatings" upon plaintiff
by use of excessive force (724 Dos)

8). By not reporting it, and to
Further cover-up the Assault they
did not process any Medical 7219
- Medical report of Serious In-
-juries to the (plaintiff) prisoner
caused by C.D.C.R. Agent Defendants
At (SATF-Corcoran) A Green Wall
Haven of Rogue guards/officials.
(U.S. V. Bright (9th Cir. 2004) 353 F.3d 1114, 1120)
Lopez V. City of Los Angeles (9th Cir. 1991) 946 F.2d
-630, 639)V.

9). That the (Defendant Does 1-10) are
medical and psychiatric personnel
Valasquez, Ms. K. Kyle and (10) other
Unknown no (Does 1-10) Refused Effe-
-ct A Medical 7219-Report report-
-orting and Documenting the
Brutality/Serious Injuries that
(plaintiff) Sustained for (48-min
-utes) of being punched & kicked
by Named Defendant Clines et al.
in the head, face, jaw, back, ribs
Legs Sustaining Multiple Concussion
And Body Fractures in Violation of
(8th Amend) Rights.

10). The Failure to Document Severe ph-
-ysical head Trauma, Internal
external bleeding Injuries, Const-
-ituted Deliberate Indifference
to the plaintiff's Health and safety.
And Civil Rights complaint under 42 U.S.C. § 1983 (8th Amend.

- U.S.C.) And Cruel And Unusual Punish-
- ment Standard. (McCullough V. Cabal (E.-
- D. Mich. 1986) 640 F. Supp. 1012, 1014); (Rice,
- V. Correctional Medical Services (7th Cir. 2012)
- 675 F. 3d 650) (Cafe V. Calif. State Personnel
- Board. (Cal. App. 4th Dist. 2012) 204 Cal. App. 4th 270, 138
- Cal. Rptr. 3d 691).

11). (Plaintiff) Further Allege that the (Defendant)
Supervisory named Officials Herein
Failed to make (or) Enforce Policies (or)
to take Action to one/enot Predictable
Violations of Plaintiff's Rights by th-
-eir Subordinate Agents Within
their Area of Responsibilities.

12) Failure of Supervisory (Defenda-
-nts) named Herein to Monitor, Mana-
-ge, Take Control of Rogue Agents
Refusal to Train, Discipline, Setting
Motion a Series of Illegal Pract-
-ices And Condoned, Participat-
-ed in the illegal Acts, Which Cause
-d Serious Injuries to And on
(Plaintiff) by illegal use of Force
Causing "Irreparable Harm" And
"permanent Damage" to the (Plai-
-ntiff) in their Custodial Care. Supp-
-orted Supervisory Liability.

Case 1:24-cv-00793-KES-SAB  Document 1  Filed 06/28/24  Page 181 of 261
EXHIBIT 5
1983 Complaint (State Officials)
Case 1:19-cv-00554-AWI-EPG  Document 1  Filed 02/20/19  Page 11 of 21

## B. NATURE OF THE CASE

1) Briefly state the background of your case.

_This is a civil Rights action filed by (Jamie Ascuna) A Coleman Class (State Prisoner/Patient) of Mental Health whom was seriously Injured and By Brutally assaulted and Battered By (C.S.P. Corcor The Prison C.H. Facility) SHU Unit Guards/staff = cials and (I.S.U.) Prison Security Officers who Retaliated Against (Plaintiff) who was sexually Harassed and Aroused for Exercise of his (1st) Protect Conduct violations of the 1st, 4th, 5th, 8th and 14th mendmts. U.S.C.) his Rights._

### C. CAUSE OF ACTION

#### COUNT I

The following civil rights have been violated:

_That the (Defendants) named illegally used excessive force and Brutality, in the, The (Plaintiff) in them Custody without Provocat -ion violation of his 8th amend Right to safety and protect -ion. 18USC 82, 8150, 8241 82-3, 831495(?), 84999 - scnslued sea._

**Supporting Facts:** (Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each defendant (by name) did to violate your right.) _named Defendants (J. Burdos & Az Encinas, Sgts.) go - J. Gradrafts 3ers 3, Contreras (I.S.U.) - E. Lei(?); go Mo Kader gotez & go Acid R.N. - L. Valasquez By force Put (Plaintiff) into Hand cuff beste - Ainots are Both wrist Behind (his) Back and Put legirons one (his) Ankle? & so tight that (Plaintiff) wrist + hands and ankles went Nubm with severe Pain, (He) was then Dragged (30-yards) from (his) cell - to the front of a chair - office and placed in to a chair, a Spit Mask Hood was placed over (his) face and his Head force into his Lap By named Defendants who Punched and Kicked (him) in the Head, Face, Ribs, Back for (15-minutes) till Knocked one Conciouss._

#### COUNT II

The following civil rights have been violated.

_The Actions and omissions of Supervisory official Defendant(s) named who failed to Intervene and prevent Harm, constituted Deliberate Indifference, to the (Plaintiffs) welfare, Health and safety in violations of the (8th Amendment U.S.C.) as they Refused to protect (him) from Knowing Risk of Harm By Rogue Subordinate Defendant(s) named Herein._

Supporting Facts: (Include all facts you consider important. State
the facts clearly, in your own words, and without citing legal
authority or argument. Be certain you describe, in separately num-
bered paragraphs, exactly what each defendant (by name) did to
violate your right.) Supervisory Defendants named Allowed
and Conducted illegal practices. The Governor E.G Browno, K. Allison
Scott Kernan Director(s)(CDCR), unaided Ken Clark) who Authorized and
participated in a Known custom underground Green wall policed
to have organized violent incident to cause Injury and Death
to patients of Serramano Class in the SA-Facility SHU unit Alling
Staff misconduct compliant and participated in the illegal
Brutality of use of excessive force and plain off) without
provocation was donde to Cause Malicious and Sadistical Harm
and the Supervisory failed to prevent harm and protect plaintiff
- PP) after he filed a complaint giving them notice, violated
(his) 1st 8 and 14 amend rights)   COUNT III

The following civil rights have been violated:
The actions and omissions By the (Defendants) named
here in and Defendant (Does 1 - 10) mentions were
donde as a measure of Retaliation, Bias, Because
(plaintiff)'s exercising (his) Protected Conduct and
were donde in an act of Intimidation, measure to
Deter (Plaintiff's) 1st amend. Rights from Continuing Protected Conduct

Supporting Facts: (Include all facts you consider important. State
the facts clearly, in your own words, and without citing legal
authority or argument. Be certain you describe, in separately num-
bered paragraphs, exactly what each defendant (by name) did to
violate your right.) That the Concomacied Retaliatory Acts and
omissions By Medical personnel and Psychiatric Staff of
endancts (Does 1-10) to Devise a Cover up of the Brutali-
ty By not Documenting (plaintiff) Sustained Serious In-
juries on A# 7219 - medical Inquired record and Ms. Kul
and RN L. Valasquez refused to Process Referral
For Brando concussions, Rib Fractures and Facial Inju-
ries that Caused and Continues to Cause Serious
Pain that is enoxactable Constituted Deliberate Indiffer-
ence to (plaintiff's) Statutory Rights to medical Needs and
Safety violation of their amend. (Standards) P.C. §115,§118,§147,§182.5

2680-2653)   D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun any other lawsuit(s) in any state or federal
court dealing with the same or similar facts involved in this
action? [X] Yes ___ No. If your answer is "Yes," describe each
lawsuit.(If more than one, describe the others on an additional
page following this outline.)

Case 1:24-cv-00793-KES-SAB   Document B2   Filed 06/28/24   Page 183 of 261
EXHIBIT B
1983 Complaint (State Officials)
Case 1:19-cv-00554-AWI-EPG   Document 1   Filed 02/20/19   Page 13 of 21

a)   Parties to previous lawsuit:

Plaintiff(s): _____ N/A _____

Defendant(s): _____

b)   Name of Court and Docket No.: _____ N/A _____

c)   Disposition (for example, was the case dismissed,
appealed or still pending?):

_____ N/A _____

_____

d)   Issues raised: _____

e)   Approximate date it was filed: _____ N/A _____

f)   Approximate date of disposition: _____

2)  I have previously sought informal or formal relief
from the proper administrative officials regarding the
acts alleged in Part C. ✕ Yes ___ No. If your answer is
"Yes," briefly describe how relief was sought and the
results. If your answer is "No," briefly explain why
administrative relief was not sought.

that the Defendant's obstructed the
Plaintiff's Administrative process
one all 1st and 3rd and Levels While
(HA) Suppened and Conabsances to Scott
-so Irreparable Injuries and Harm.
With a Inmate abset of a friend)
I was able to get my email to the
right places for full exhaustion. tth 15ecp
83084.1 P.L.R.A. - Law 42usc 81997 e@,

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific
relief: Award Compensatory and Restitutional
Damages in the following amounts;

1).  $8,000,000.00 Dollars Joint/ly and Severally Against
each Named Defendants and Doe's - 100 who were
Named. Included in the (Brutality Beating)

2)  $500,000.1 Dollars Joint/ly and Severally Against
Defendants - (Edmund G. Brown Jr.) (Kathleen Allison)
Scott Kernan, (M.S. Kyle-mental Health Supervisor

Case 1:24-cv-00793-KES-SAB    Document 1    Filed 06/28/24    Page 184 of 261
EXHIBIT B2
Case 1:19-cv-00554-AWI-EPG    Document 1    Filed 02/20/19    Page 14 of 21

1983 Complaint (State Officials)

— med (BNA-L Valasquez) for acts and omissions to act was Deliberate Indifference to (plaintiffs) Health and Safety. Request Trial by Jury Demand.

3) $500,000⁰⁰ Dollars Damages Jointly and Severally Against Each (Defendants) named with consorship to deny (plain-tiff) Constitutional Rights to cover-up brutality (exc-essive force causing (plaintiff) physical and mental injuries.

4) $70,000,000⁰⁰ Dollars Against Defendants Jointly and Several-y for Restitutional Damages for permanant Brain Damage Rib Fractures and Facial, Shoulder and Back injuries.

(Next of Person)

_____

(Name of person who wrote this        (Signature of Plaintiff)
Complaint if not plaintiff)

                    2/10/2019
                          (Date)

(Additional space if needed; identify what paragraph
is being continued.) Statement of facts by Declarations
— Affidavit (8 U.S.C. §1007) (28 U.S.C. §1746, C.C.P. §446, §2015.5

1). Declarations of (Jamie Asuna)

2). That (I) (Jamie Asuna #BD 0868) is at all times a U.S. citizen and resident of California, currently in a Coleman class patient and have been a mental health dept patient with a Development Disorders for a few years and have deteriorated by trauma.

3) By Brain Damage caused by the brut-al Beating (I) sustained from the Defendants use of (excessive force) upone me while (I) was handcuffed and (in leg shackles) so tight (both) cut off my blood circulation while (Defendants): (A. Encinias) (J. Garcia) (S. Gonzales) (Leija) (M. Rodriguez) (Luna) (V. Cruz) (R. Vallero) by illegal force forced (my) head down in to (middle) while sitting in chair while named Defendant Punched kicked and beat (me) for approx: (more then) (45-minutes) of extreme torture till (I) was knocked on concious.

4) That (I) sustained fatal injuries of permanant Brain Damage from Blunt force Trauma to the Frontal left and right Frontal Lobe of (my) head with Brain hemerrage that caused Brain Damage loss of memory, slow learning disabi-lities.

Case 1:24-cv-00793-KES-SAB   Document 85   Filed 06/28/24   Page 185 of 261
EXHIBIT B
Case 1:19-cv-00554-AWI-EPG   Document 1   Filed 02/28/19   Page 15 of 24

5). (I) Would SUFFER : CONSTANT and SEVERE PAIN, PTSD; HEADACHES,
Black-outs, as a Result of Being "Punched
in the FACE, Head, neck while Held and
-er a Spit MASK Bleeding perfussive
-ly From (my) nose, mouth and EARS
From the "Blunt Force Trauma" to (my)
Head, caused From the "Beating," upon
(me) (By) Defendant(s) Named above.

6). That the Named Defendant(s) Punch-
-ed and Kicked (me) in (my) Sides and
Fractured (my) Left Rib; which the
Pain Felt Like (my) Lungs collapsed
As (I) was Constantly Knocked
one consciouss From the Beating.
(I) Sustained For 45 - minutes to
an hour. Violated (my) (8th Amend Rights)
to Safety and Protection under the
Custodi. and care of Warden Ken Clark
Named Supervisor Defendant. (U.S. v.
Tines 6th cir. 1998) 70 F.3d 891; (Cooper V. Ca-
sey (7th cir.1996) 97 F.3d 914, 919-920).

7) That the above Incident occurred on
(9/24/2018) From 6:30 - 7:00 am till
Approximately (9:00 Am) (I) was Tort-
-ured Chocking one (my) own Blood
in a Spit MASK Soaked with Blood.

8). As (I) Requested Medical Treatm-
-ent, the (Defendant(s)) Named above
Told (me) to Shut the "Fuck up," "You"!
Long hair Faggot," "You Devil Wor-
-ship Idiot, There was no (my)
Right to medical needs, For Serious
Injuries and Severe Pain.

9). That (I) was there Denied Access, to
I M M

(L. VALASQUEZ) And Mental Health Dept. (4-A Facility) Supervisor (Ms. K. Kyle) whom Cohedoned the Beating And Torture employed Upon (me) A Coleman Class Patient By Above named Defendants with-out provocation, and for Exercise of (my) (1st Amend.) Protected Cond-uct (for Filing A STAFF Complaint Against Defendant (Sgt. J. Brinನ)

10). That the Above named R.N. – L. VALASQUEZ And Psychiatric Supervisor (Ms. K. Kyle) were made Aware of (me) being Beaten by Custody (Defend-ants) And (ISU – Officer's)

11). Mental Health Supervisor (Ms. K. Kyle) And R.N. – L. VALASQUEZ Saw (my) Ser-ious Injuries, And Refused to Re-port the (Guards/Officer's) who Broke (my) Left Rib And Caused (me) Permanent Brain Damage And existing Severe Internal Injur-ies And Brain Hemerage.

12). That the Acts And omissions by R.N. – L. VALASQUEZ And Mental Health Supervisor (Ms. K. Kyle's) Failure to Re-port the Beating on (me) By the (Defendants), Constituted Deliber-ate Indifference to (my) Medical Needs, "Welfare" Health and Safety" As (they) Failed to Protect (me) A Coleman Class Patient, viol-ated (my) Statutory Rights (P.C. 841/S347)

And the (8th Amened U.S.C. STANdards).

13). That the Above NAMed Defendants
(R.N. L. VALASQUEZ) And (Ms. K. Kyle)
Both refused to Document And
report (my) injuries Sustained by
"illegal excessive use of force"
Who Actions Devised A Cover-up
for knowno Abuse, Assault/ Battery
With (S.B.I.) Torture And Sexual Harr-
assment, Violated (my) Rights. C.C.P.
-851, 852, 852.1(a), 852. q et, seq. (18 U.S.C. § 2,
3150, 3241-3242, 3141sf(c), et, seq).

14) That After (I) was Brutally (Beaten) by
the (Defendants) NAMed Above And
Denied Medical Health needs And
Safety, on (9/24/2018), (I) was then
Dragged back to (my) cell-' And
left on the Concrete Floor and Con-
-tinues Bleeding. in Violation of (my)
(8th Amend. Rights)

15) That (Defendants) reamed (C/o A.Cole)
(C/o Luna) (C/o A Coronia) were Instruct-
-ed by the (Defendants) Above who
Brutally Beat (me), not to provide;
No Food And no Beverages for
(3)-Days (they) STARved (me) And did
Not provide (me) (3) - Course Meals
And no Beverages As Additional
Cruel And Unusual Punishment
of Starvation And Dehydration to
Add to the physical (Beating) Injur-
-ies of Pain Already Suffered.

16) That the Acts And Omissions of
the (Defendants) constituted

Inexpeditional Tort And Torture inhuman
-ity of A (Coleman Class) Patient prisoner
ine (their) Custody Violated the cruel
And Usual Punishment Statute
uneder The (8th amenend. U.S.C.). And (18 U.S.C.
-§2.8150, 8241-8242, 8318 §(c), 84042-84081 et seq.)

17). That (I) was not Fed For Three days by
Rogue (Defendants) employed (by)
the Warden (Keno Clark) From (9/24/2018)
through (9/27/2018).

18). that While (I) Suffered Irreparable
physical Injuries denied medical
safety needs and Denied Rights
to eat and not Fed for (3) days, caus-
-ing Additional Injurees of weight
Loss, Stomache Pains, Dehydration,
mental and emotional Injuries on
Top of Brain Damage Fractures And
Faccial and Rib Fractures Violated
(my) Rights to the 8th amenedments
Cruel and Unusual Punishment Stan
-dards.

19). That (Defendants) there Ripped up
(my) Bedding and Mattress and Remov
-ed them From (my) Cell - #46   so
that (they) Can make Sure (I) Suffer
A Tantamount of Saddistical Pain
and inhumano Abuse From 9/24/
-2018 through till (9/30/2018) (I)
made to Sleep ine A Cold Cell-
Concrete And Subjected to Discrim
-Ation And ongoing torture by Def
-enedanots (C.o.A. Cole)(C.o.A. Caranea), (C.o. Luna

Ared (Sgt. J. Burales). Violation of the (8th Amend.) rights.

20). One (9/26/20018)(I) was again ordered to cuff-up and brought out of (my) cell-#46 in hand cuff restraints taken to the (HAIR. Tower) and assaulted with excessive use of force-e by Defendant(s) Sgt. J. Burnes; - (C.o J. Salcedo) (C.o Corona).

21).(Who)forcibly slammed (my) head against concrete wall then picked (me) up while restrained behind (my) back and slammed (me) face and chest first onto the concrete floor causing (me) severe pains and physical injuries to (my) head, face and chest and compounded injuries to rib fracture and BRAIN Damage coronial fractures of face. Violated (my) rights.

22). From (9/26/2018) threw till (01/14/2018) the (Defendants) named above told (me) (I) am "Doomed" and every time (I) file a complaint (I) am going to be (assaulted and beat-end and given the "Green Wall" treatment", for "exercise" of (my) protected conduct. "Violation of (my) "rights" under (Free Speech) to the (1st and -14th Amend.&U.S.C.). and Violation (8U8C §2.18 -180, §241-§242, §§145(a), et.Seq.).

23). That the named (Defendants) Psych. Tech.(L. Lewis) and Psych. Social Worker (Vue) was told to FALSE (Falsify) (my) medical-

records to Defer all my medical
request so I could not receive Im-
-mediate Medical care and Needs
For the Serious Irreparable Inju-
-ries of Known RiSK of Harm.

24). That these acts and omissions
By the (Defendants) violated (my)
Federal Protected Rights to
government Redress of griev-
-ences under the Act of Congress
-SS Freedom of Speech Clause,
Double Jeopardy Clause, and
equal Protection Clause to Due
Process to the 1st, 4th, 5th and 14th Amend.
-S. U.S.C.)

25). That the above Named Defendants
And Warden, Directors, Governor,
has Authorized And perpetuat-
-ed upon (me) the Irreparable
Injuries And Knows RiSK of
Serious Harm And Derminiant
Damages complained WARRANts
the Award of Compensatory
And Restitutional Damages of
$5,000,000.oo dollars and the
Indemnification of All Violators.
From (9-24-2018) through till (2/10/
-2019) And unoff'l Court's Response.

26). (I) Declare under Penalty of Per-
-jury under the Laws of the State
of California that the foregoing I have

__stated the only facts are true
and correct of my own knowledge
and as to matters one Information
(I) believe to be True, (18 USC§100)
(28 U.S.C. §1746); C.C.P. §446 §2015.5)

Dated: 2/10/2019    S/ _Jamie Asuna_
                    Declarant)

W/ Jamie Asures
In prose

## VI.

Verification

I, (Jamie Asuna) have read the fore-
-going civil complaint and "Alert"
and Declare Under Penalty of Per-
jury, that the foregoing is True,
correct, and verify that these
alleged incidents occurred at
Corcoran Prison) 4A-Facility SHU
Unit upon (me) and are of (my) own
Knowledge of injuries (I suffer
caused by the (Defendants) and
Will testify to each fact, if called
to do so. (18 U.S.§§100), 28 US C§1746)
Dated 2/10/2019    S/ Jamie Asuna
                    Declarant)

## EXHIBIT C1

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**          DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 22 (10/09)

### SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print) (LAST NAME) | (FIRST NAME) | CDC NUMBER | SIGNATURE |
|---|---|---|---|
| OSUNA | JAMIE | BD 0868 | |

| HOUSING/BED NUMBER | ASSIGNMENT | HOURS FROM ____ TO ____ | TOPIC (i.e. Visiting, Medical, Condition of Confinement, etc.) |
|---|---|---|---|
| 4A 1RC1 46 | | | MAIL |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW.                                                 I'm

Appealing the Appeals coordinator The Service I need is that you have ^602-A
recieved it or item transclly a trace that Appeal is very important thank you
10/10/15 I'd Star "MISC

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED**
☐ SENT THROUGH MAIL: ADDRESSED TO _____
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLD COPY TO INMATE/PAROLEE)

| | DATE | | |
|---|---|---|---|
| X10/15/ | 10 | | |

| IF FORWARDED | DATE RECEIVED/MAILED: | |
|---|---|---|

### SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME | DATE | SIGNATURE |
|---|---|---|

### SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR. INTERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE | | DATE RECEIVED: |
|---|---|---|

### SECTION D: SUPERVISOR'S REVIEW

| RESPONDING STAFF NAME | DATE | BADGE # | DATE RETURNED TO INMATE/PAROLEE |
|---|---|---|---|

Distribution: Original                    CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

EXHIBIT C2

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

SECTION A: INMATE/PAROLEE REQUEST [illegible] Deputy Warden

| NAME (Last) | (First Name) | CDC NUMBER | SIGNATURE |
|---|---|---|---|
| OSUNA | JAIME | BD0868 | [signature] |
| HOUSING: 4A [illegible] | ASSIGNMENT: | HOURS FROM ____ TO ____ | [illegible] |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: [illegible] Deputy Warden [illegible]

[illegible handwritten text, six lines] ... 18-00371

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED** DATE MAILED: 10/ /18

☐ SENT [illegible] ADDRESSED TO: [illegible] Deputy Warden

☑ [illegible] COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY | DATE | SIGNATURE | FORWARDED TO ANOTHER STAFF |
|---|---|---|---|
| [illegible] | [illegible] | [signature] | YES / NO |

| | DATE DELIVERED/MAILED | IN PERSON / BY US MAIL |
|---|---|---|
| | | |

SECTION B: [illegible]

| | DATE: | SIGNATURE: | |
|---|---|---|---|
| | | | |

SECTION C: REQUEST FOR SUPERVISOR REVIEW

[illegible] FORWARD TO RESPONDENT'S SUPERVISOR [illegible] COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

| SECTION D: [illegible] | | SIGNATURE: | |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (PRINT)   (LAST NAME) OSUNA JAIME | (FIRST NAME) | CDC NUMBER: BJ0555 | SIGNATURE: |
|---|---|---|---|
| HOUSING/BED NUMBER: 4A1LCI #46 | ASSIGNMENT: ccms | HOURS FROM____ TO____ | TO/FRO (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): Mail (COR/A)5 |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW: AW, I'm Sending you A BOX 22MS Complaint The Mail Room is Rejecting it saying to Put it in The Outside box I Put it Safe and Received No Response In the past Meaning it This Box is Again Can Sgt broke it he violated Operations Manual Sec 51020.17.5 He was bettind the Camera came back to my cell and we Had Words its on The beatin Sure there my evidence the copy by Him And other things I Made 2 More Hand Written Copys to Send to the (CCHC216) A Fr form out the Way since Sept 24 its Now Getting SNY Mail Not writing Information I Can My Chain Dr... D He Then My... Send His Box to Appeals thank you

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE ISSUED IF REQUEST IS MAILED**
☒ SENT THROUGH MAIL: ADDRESSED TO: Assistant Warden (AW)    DATE MAILED: 12/16/24
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: W Ccham RPN | DATE: 12/16/24 | SIGNATURE: | STAFF SIGNATURE/INITIAL STAFF  ☐ YES  ☐ NO |
|---|---|---|---|
| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: ☐ INMATE  ☐ MAIL  ☐ BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

IFORNIA
OLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CTION A: INMATE/PAROLEE REQUEST**

| NAME (Print)  (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| OSUNA | JAMIE | #BD0868 | _(signature)_ |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM_____ TO_____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| 4A-1R #46 | ccms   Mental Health | | Living Condition |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

Sara Gate My Name Is Jamie Osuna I Had A Credibal Friend Send You Documents To Sacramento Do To SeNd ur Going On And My Mail Being Tampeed WiTh I Have Made Serious Allegations AgainsT SR. K. Kyle And Sgt. J. barnes 2Nd WaTch In Wicv I've Made A paper trail Have evidence I Wish To CorresponD WiTh You To Show You Her INVOlvmenT IN WhaTs Going On, Let Me Know When You Get Some Of My STory Through The 3rd Party I Had him SeNd OuT Last Week He Knows Im Crednbale And What Im Saying Is true, Good DAy Her retaliating because I Meet My 6month dead line For Damage CLAIM (1983) Fresno DisTrict)

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

☒ SENT THROUGH MAIL:  ADDRESSED TO:  SARA GATES DEPARTMENT M H) SACRAMENTO _____ DATE MAILED: 2 /11 / 19

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE) ⓎⒺⓈ   NO |
|---|---|---|---|
| Hernandel | 2/11/19 | _(signature)_ | |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: (CIRCLE ONE)  IN PERSON / BY US MAIL |
|---|---|---|

**SECTION B:  STAFF RESPONSE**

| RESPONDING STAFF NAME: W. Doering, SRN II | DATE: 02-15-19 | SIGNATURE: _(signature)_ | DATE RETURNED: 02-15-19 |
|---|---|---|---|

This form was submitted to Health Care staff lease submit Form CDCR 7362 for Healthcare Requests.

You are scheduled for an upcoming clinic RN appointment.

**SECTION C:  REQUEST FOR SUPERVISOR REVIEW**

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

SupervisoR K Kyle FoR MHSOS) Has Recieved recently 2 Form 22 This Means 2 Things EiTHER You are blocking This Form To GeT To Her boss IN SAC oR K Kyle illegally Recieved Those 22 FoRm EiTHer way This Is ON 1 OE You And is evidence 2Nd I Will NoT Come OuT FoR No App. bAsed ON RETaliation Every Time I Do I CAN'T EVen Make it PasT The RoTuNdA I Have Summitted A 7362 To See iF A RN CAN look AT My INJuRy ON My Head NoT done by My Self. A GO2 Is Submitted ON INCIDENT I Told K. Kyle My Clinician. SHe's Done NoThiNg ThANk You foward To SAGa gate)

| SIGNATURE: _(signature)_ | DATE SUBMITTED: 2/18/19 |
|---|---|

**SECTION D:  SUPERVISOR'S REVIEW**

| RECEIVED BY SUPERVISOR(NAME): | DATE : | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

_(stamps:)_ RECEIVED COR APR 0 2 2020 HCGO

RECEIVE

DEC 3 0 2019

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

Patient Name: _____ JAIME
Date of Birth: _____ 00:00 PST

MRN: BD0868
FIN: 10000001011571905BD0868

* Auth (Verified) *

7475476

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

**PART I: TO BE COMPLETED BY THE PATIENT**

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☑ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

NAME: JAMIE OSUNA    CDC NUMBER: BD0868    HOUSING: 4A 2C1 #46

PATIENT SIGNATURE: _____    DATE: 10/18/18

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I'm requesting A X-Ray /evaluation on My Left upper Tibbs A incident happened To Me on Aug/24/18 I Thought The Sharp Pain would Go Away I Cant breath All The Way or use my inhaler Affectively without my Ribbs Shooting Pain I Think Their broke or fractured Also my Left Jaw Since Sept-24/18 Its over 1 Month Being Hit Their over 40 Times Will do That, I Guess Well Hope To See You Soon! Thank You

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM.*

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

| Date / Time Received: | Received by: |
|---|---|
| Date / Time Reviewed by RN: | Reviewed by: |

S:    Pain Scale:  1  2  3  4  5  6  7  8  9  10

also called MCKinley

1009- Pt called stated s/o spoke c
P. He stated the 7362 is old. And all he
wants is x-rays for evidence reasons.

| O: | T: | P: | R: | BP: | WEIGHT: He is not in distress |
|---|---|---|---|---|---|

4 is talking / standing
no distress
1/P told pt he has inhaler +

A:    that issue is resolved.

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY: | | NAME OF INSTITUTION: | |

CDC 7362 (Rev. 03/04)

Facility: COR

Patient Name: OSUNA, JAIME
Date of Birth:

MRN: BD0868
FIN: 17572

\* Auth (Verified) \*

6953449

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

**PART I: TO BE COMPLETED BY THE PATIENT**

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☑ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

NAME: Jaime Osuna
CDC NUMBER: BD0868
HOUSING: 4A-2, #4L

PATIENT SIGNATURE:
DATE: 1-6-19

REASON YOU ARE REQUESTING HEALTH CARE SERVICES, (Describe Your Health Problem And How Long You Have Had The Problem) • I need an xray on my left upper ribs and left side, inner part of head and Ja, Neck to on these areas also •

*NOTE   IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

| Date / Time Received: | Received by: |
|---|---|
| Date / Time Reviewed by RN: | Reviewed by: |

S:     Pain Scale: 1   2   3   4   5   6   7   8   9   10

O:   T:   P:   R:   BP:   WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|---|---|---|

CDC 7362 (Rev. 03/04)   Original-Unit Health Record   Yellow-Inmate if copayment applicable   Pink-Inmate Trust Office if copayment applicable   Gold-Inmate

Patient Name: OSUNA, JAIME
Date of Birth: [redacted] 00:00 PST

MRN: BD0868
FIN: 10000001011571905BD0868

**\* Auth (Verified) \***

6931460

**DEPARTMENT OF CORRECTIONS**

STATE OF CALIFORNIA
CDC 7342 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

| PART I:  TO BE COMPLETED BY THE PATIENT |
|---|
| *A fee of $5.00 may be charged to your trust account for each health care visit.* |
| **If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.** |

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|
| NAME  Mr Jamie Osuna | | CDC NUMBER  # BD0868 | | HOUSING  4A-1R-#46 |
| PATIENT SIGNATURE | | | | DATE  2/18/19 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your health Problem And How Long You Have Had The Problem) Would LiKE To SEE MEDICAL but Only AT Cell To To Physical Retaliation every time I Come OUT especially I-on-1 with Dr. Loyd And Current Clinician K. Kyle My Problem IS ON 1/23/19 Running OUT From A 1-on-1 my Head Was bash in IN Wall IN Rotunda The bumps ON The Right Side Don't Want To Go Away. I Cant Go Down Toilet An My APPOINTMENT AT You Make An ON That SH. SHIFT 2nd Watch So I REFUSE I Wish To Document And Get Treated Thank You I Mr Jamie Osuna L

*NOTE:  IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

| PART III:  TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|
| ☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.) |

| PART II:  TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE | | |
|---|---|---|
| Date / Time Received: | Received by: | |
| Date / Time Reviewed by RN:  2/20/19 @ 0751 | Reviewed by:  L. Hicl TRN | |
| **S:** | Pain Scale:  1  2  3  4  5  6  7  8  9  10 | |

**O:    T:        P:        R:        BP:            WEIGHT:**

**A:**

**P:**

☐ **See Nursing Encounter Form**

**E:**

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE-TIME COMPLETED |

CDC 7362 (Rev. 03/04)   Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

To: Sara Gates, Chief

Hello, Gates This Is Jamie Osuna, I Need
Some Assisstance Can You Please Proccess My 602 (HC)
At Its Proper level, I Tryed To Turn It In 3 Ways
They Dont Want To. And Im bieng Retaliated On
Im Not Asking For No Special Treatment, This Is
My Last Resort To Get It Proccessed Thank You
Gates Have Good Day.

† Mr. Jamie Osuna †

12/15/19

RECEIVED
HCCAP
DEC 3 0 2019

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

35

CORCORAN STATE PRISON

NAME *Anthony R. Turner*

CDCR NUMBER *G24751*

HOUSING *4A12-40*

PO BOX *3476, #001 Kings A12*
CORCORAN, CA 93212

## STATE PRISON
## GENERATED MAIL

(Confidential)
Mail

RECEIVED
HCCAP
FEB 11 2019

CORCORAN
STATE PRISON



U S POSTAGE >> PITNEY BOWES

ZIP 93212  $ 000.80°
02 1W
0001363 19FEB 07 2019

9575B888500 B900

*Formal Gentry (D.D.)*
*Mental Health Care Dept.*
*P.O. Box 388500*
*Elk Grove, CA 95758*

RECEIVED
HCCAP
DEC 3 0 2019

RECEIVED
COR
APR 0 2 2020
HCGO

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

JAMIE OSUNA # 1610808
California State Prison Corcoran
4A2L-Cell# 08
P.o. Box 8800
Corcoran, CA 93212-8309

HCGO
APR 02 2020
RECEIVED
COR

RECEIVED
DEC 3 0 2019
CORCORAN STATE PRISON

( Confidential Mail )

Sara Cortez (CEO) Chief
California Health Care Services Appeals
Branch.
P.o. Box 588500
Elk Grove CA 95758

RECEIVED
DEC 3 0 2019



**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

37

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                                              GAVIN NEWSOM, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**CALIFORNIA STATE PRISON - CORCORAN**
P. O. Box 8800
Corcoran, California 93212



January 20, 2019

Inmate Osuna, BD0868
Facility 4A1R-46
California State Prison - Corcoran

Inmate Osuna:

This letter is in response to your letter you sent to the Office of Internal Affairs (OIA) dated
December 16, 2018, and forwarded to California State Prison-Corcoran for review at the local level.

An allegation inquiry was completed in regards to Allegation Inquiry Log # COR-2140-18-344. All
information pertaining to the allegation has been reviewed and all issues were adequately addressed.

All staff personnel matters are confidential in nature. As such, the details of the inquiry will not be
shared with staff, members of the public or offender appellants. Allegations of staff misconduct do not
limit or restrict the availability of further relief via the inmate appeal process.

Sincerely,

**S. Babb**
Associate Warden- SHU (A)
California State Prison-Corcoran

cc: C-file



State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*Tuesday, February 5, 2019*

*OSUNA, BD0868*
*04A A1RC10460011L*

STAFF COMPLAINTS. . 01/31/2019
Log Number: CSPC-5-19-01003
(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.</u>)

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15,
Section (CCR) 3084.6(b)(6). Your appeal makes a general allegation, but fails to state facts or
specify an act or decision consistent with the allegation.*

*Your appeal was received on January 31, 2019. Prior to this appeal being processed, you must
be specific in regard to what occurred and when it occurred in order to substantiate your claim.*

V. Marmolejo, SCR LT
J. Ceballos. CCII Appeals Coordinator
D. Goree Jr. CCII Appeals Coordinator
Appeals Coordinator
Corcoran State Prison

NOTE: If you are required to respond/explain to this CDCR Form 695. use <u>only</u> the lines provided below.
ON 9/24/18 I WAS ASsuAlted In A CHAIR FoR 45Min bY buRnes FRienDs I S U I PuT The Log# ON 602
FoR OFFENSE # C.S.f C-5-18-05371 THE (602)A IS A STAFF Complaint (AnW iKnew About Me bienq AssuAlted
bY I.S.U And Sgb Ive Also Filed 4 other (602A)AnD Sent (N)(AN) FoRM 202 /FoRMS With No Cesponse Ive
MAde A PARlY trial ON 17 Defendents fur MY Money damage Claim And Warned Keni ciunl on All of Them
Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to
CCR 3084.6(c), once an appeal has been cancelled, that appeal may not be resubmitted. However, a
separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

**(EXHIBIT G)**

**(1.) For Grievence Log#'s**
**;320687 & 315792.**

State of California                                                    Department of Corrections and Rehabilitation

**Memorandum**

Date:   April 20, 2023

To:     OSUNA, BD0868
        04AA1LC1-044001L
        California State Prison, Corcoran

Subject: **ALLEGATION OF STAFF MISCONDUCT RESPONSE REGARDING**
         **ALLEGATIONS AGAINST STAFF TRACKING SYSTEM LOG NUMBER (AASTS**
         **#20026475)**

The California Department of Corrections and Rehabilitation (CDCR) received your
allegation of staff misconduct.  In your complaint, you made the following allegations:

- Allegation 1:  It is alleged on or about 9/24/2018 you were subjected to
  unnecessary/excessive force by Correctional Officers Gonzalez, Cid, Garza,
  and Sergeants Burnes and Encinas.

The allegation(s) was/were processed in accordance with the CDCR staff misconduct
regulations set forward in the California Code of Regulations (CCR), Title 15, Section
3486, Allegations of Staff Misconduct Towards an Incarcerated Person or Parolee.

The processes set forth in CCR, Title 15, Section 3486 have concluded and the Hiring
Authority has made the following determination regarding each allegation:

- Allegation 1: Not Sustained; the investigation failed to disclose a
  preponderance of evidence to prove the allegation made in this compliant.

No information related to any personnel action will be conveyed in this matter.

*T. L. Campbell*
*Warden*

**T. L. CAMPBELL**
Warden (A)
California State Prison, Corcoran

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

40

**EXHIBIT H1**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITAT

# GRIEVANCE
CDCR 602-1 (03/20)

315792

Page 1

CSP-SAC APPEALS

| | |
|---|---|
| Grievance #: | Date Received: Oct 12 '22 AM 10:47 |
| Date Due: | |
| Categories: | |

STAFF USE ONLY

*This is the process to ask for help with a complaint.*

Claimant Name: __JAMIE OSUNA__    CDCR #: __BD0868__    Current Housing/Parole Unit: __A-1-119__

Institution/Facility/Parole Region: __CALIFORNIA STATE PRISON-SACRAMENTO PSYCHIATRIC SERV__ ices UNIT-SECURITY HOUSING UNIT

In order for the Department to understand your complaint, make sure you have answered the following questions:

- *What is the nature of your complaint?* *Employee Misconduct.Code Of Reg.Title.§3391(A Emergency Staff Misconduct Complaint
- *When and where did the complaint occur?* Civil & Constitutional Right's Violation's C.S.P-CORCRAN/S.H.U/K&R/UNIT-4A1R#46,08,32
- *Who was involved?* Warden.K,Clark,(A)S.Babbs I.S.U;J.Leija,C.Morlock,S.Gonza
- *Which specific people can support your complaint?* C/O S.G.T,J.Burnes,A.Encinas,C/O,J.Gai
- *Did you try to informally resolve the complaint?* YES    & More Names In Re t.Involved.
- *What rule or policy are you relying on to make your complaint?* Title,15§3391
- *Are there documents that would be helpful to support your position? List the documents if you do not have them Please note that documents submitted with this form will not be returned.* Yes Over 45 Document's A
- *What specific action would resolve your complaint?* Keep-Away' From Corcran Prison & Named ployee's:Witnesses & Acussed(2.)Compensary Damages:Civil Right's Violate

This Is   mergency   a

cent Year's,Upon Three Seperate Distinctive Period's While I Was Housed At C

S-P Corcran S.H.U's Designated Mental Health Delivery System Program For The

Mentally Ill I Continually Suffer A Consistent Pattern Of Physical Abuses;Bea

ting's,Denial Of Due-Process Procedure's,;1983's,Appeal's,Interference With A

ccess To Current Court Case Process And Procedure's & Legal Mail Pertaining T

o King'sCounty Superior Court Cases No.19CM1882; 19CM1275; 19CM3928.& 1983,Ci

vil Right's Complaint Case:No.19-cv00913-SI,Case.1:19-cv-00554-AWI-EPG,Filed

Document 1 Of 20 2/20/2019,& Appeal's Log#'sCSPC-5-19-00645/COR-2140-19-021 &

Log#COR-2140-18-344,HC 21000917,CSPC-5-19-01003,CSPC-5-18-05371 Which In Rega

rd's To The Latter Complaint's,& Court Cases Since 9/24/18 The Same Corcran S

tate Prison Employee's Are Involved Such As But Not Limited To;Warden K.Clark

A.W-COR-SHU(A)-S.Babb,Correction's Lieutenant R.Silva,H.Gamboa,F.Munoz,Correc

tion's Sergeant's J.Burnes,A.Encinas,(I.S.U,C.Morlock,I.S.U Officer's J.Leija

S.Gonzales,A.Arisco,Sanchez,T.Brazlton,J.Gutierrez Correction's S.G.T C.Navar

ro,S.G.T A.Navarro,C/O's,J.Garcia,A.Loza A.Cid,M.Rodriguez,Psychiatric Technic

an's;Walter Lewis,J.Wilson,L.Pickering,P.Ricablanca Registered Nurse L.Vasque

se,Chief Executive Officer C.S.P-Corcran-C.Bell,Chief Mental Health;S.Harris,

Health Care Policy &Managment;Sarah Gates,C.S.P-Corcran Mental Health Unit S

uperviser:Kristen,Kyle;Liscence Psychiatric Social Worker,L.C.S.W But Not Limi

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

41

EXHIBIT H1

STATE OF CALIFORNIA
**GRIEVANCE**
CDCR 602-1 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

_ted To. In Any Event Regarding All These Incident's The Same Custody Staff F
or C.S.P-Corcran Are Involved And The Majority Has Expressed The Same Motiva
ting Factor to Elaborate I Will Provide A Brief Summary:On 9/24/18 I Was In M
y Cell cutting On Myself for Several Day's A Incident Occured Were As My Tray
Slot Was Open A.Cid Stated "I Hope You fuckin Die",S.G.T.J.Burnes Instructed
All Staff To Leave The tiers But Psych-Tech Lewis Walter Approached Burnes &
Stated He Will Keep Them In A-Section 4A1R-COR I Was Handcuffed & Escorted By
S.G.T's A.Encinas,J.Burnes,C/O A.Cid As I Entered the Routunda It Was Empty,
J.Garcia Was In The Above Tower With Few I.S.U Officer's I Noticed "No' Medi
cal Was Not Present I Was Slam Face First & My Head Was Bashed Up & Down Leg
Shackles.& Spit Mask Was Placed On Me I Was Placed In A Chair Face In Lap Be
aten While Fingers Were Bieng Forced Back To Break After Over 30 Min When Th
ey Finally Let Medical In My Head Was Raised To My Right C/O E.Garza & I.S.U
S.Gonzales Came Out After Medical Left The Beating Continued I Noticed I.S.U
J.Lejia Recording Standing Behind Me I noticed C.Morlock Down The Way Alot Of
Officer's Left When The Psych-Tech Wilson & R.N Came In Refference CSP-5-18-0
5371,COR-04A-18-09-0940,Also Refference [1983]Civil Right's Complaint Filed 2
/20/19 Case1:19-cv-00554-AWI-EPG Document's 1 Of 21 These Are The Same I.S.U,
Officer's Who Escort Me To Court & Interfer With Current Court Procedures & I
ntimidating Me A Witness Agian Around 10/19/19 S.G.T Encinas Escorts Me To Ya
rd & Threatening Me About Me Continuing My Caseses Upon Arrival From C.S.P Sa
c I.S.U States R&R Is Closed So They Will Hold My Property Cameras Will Show,
Us Driving Aside I.S.U's Office Unloading 5 Boxes Upon Recieving Property Leg
al Documents Were Missing Appeal's As WhenMy Att.Melina Sent Legal Doc.
Would Be Ran Through Without Me Present I Mentioned This To Melina & My Rece
nt Attorney Hugo Gomez Vidal Who Said That Stuff Dont Matter" I'm Requesting
A Keep Away From All Witnesses & Individuals Involved In Mentioned Cases & K
ing's County County Hugo Gomez Who Fails To Report These Crimes I'm Seeking
Compensary Damage's,For My Civil & Constitutional Right's bieng Violated *Emp
loyee Misconduct.(Code Of Reg.Title 15.§§391(A).D.O.M Articale 4.31040.3.4.3,
D.O.M Art.22 33030.3.3 & 33030.3.1 & deliberate Indifference To Saftey;Immin
ent Danger Deliberate Indiference To A Serious Mental Illness._

Reminder: Please attach all documents in your possession that support your claim(s).
Please note that this form and supporting documents will not be returned to you.

Claimant Signature: _____    Date Signed: 9/28/22
PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

State of California
CDC FORM 695
Screening For:
☐ CDCR 602 / HC / Staff Complaint / Appeal
☐ CDC IEA Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

Tuesday, February 5, 2019

OSUNA, BD0868
B4A1/ACT/04600/L

STAFF COMPLAINTS , 01/31/2019
Log Number CSPC-5-19-01003
(Note: Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies)

The enclosed documents seeking assistance are returned to you for the following reasons:

Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(6). Your appeal makes a general allegation, but fails to state/factor specify an act or decision consistent with the allegation.

Your appeal was received on January 31, 2019. Prior to this appeal being processed, you must be specific/ish regard to what occurred and when it occurred in order to substantiate your claim.

[handwritten notations]

NOTE: If you are required to respond/explain to this CDCR Form 695, use only the lines provided below.

[handwritten text]

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(a), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.
NOTE: THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED.

☐ V. Marandio, SER LT
☐ J. Ocholla, CCII Appeals Coordinator
☐ D. Goree Jr, CCII Appeals Coordinator
Appeals Coordinator
Corcoran State Prison

---

Template Date 4/4/2012

State of California                                   Attachment E-1
                                                     Department of Corrections and Rehabilitation

## Memorandum

Date : March 27, 2019

To : OSUNA BD0868
B3D4A1-124L
Correctional Health Care Facility

Subject: STAFF COMPLAINT RESPONSE - APPEAL # CSPC-5-19-00645 / COR-3140-19-021

APPEAL ISSUE: You allege Warden K. Clark condones Staff misconduct with regards to unnecessary / excessive force and sexual misconduct of inmates.

APPEAL RESPONSE: You allege Warden K. Clark condones Staff misconduct with regards to unnecessary / excessive force and sexual misconduct of inmates.

All issues unrelated to the allegation staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

DETERMINATION OF ISSUE: Your allegation of staff misconduct has been reviewed by the Hiring Authority. As a result of that review your appeal was referred for an appeal inquiry.

You were afforded an opportunity to participate in the interview process and provide additional information relevant to the alleged staff misconduct. You were interviewed on March 21, 2019 via a telephonic interview due to your current housing at CHCF by Lieutenant D. Lopez.

EFFECTIVE COMMUNICATION: A review of the Disability and Effective Communication System (DECS) reveals you have a documented Test of Adult Basic Education (TABE) score of 9. Effective communication was achieved using Simple English spoken clearly. During your interview with Lieutenant D. Lopez, you were afforded the opportunity to fully explain your appeal and provide any additional information. Your personal interaction with the interviewer indicated you understood the conversation, satisfying the interviewer that effective communication was achieved.

Your appeal is PARTIALLY GRANTED in that,

☑ An Appeal Inquiry has been conducted and reviewed by the hiring authority and all issues were adequately addressed.

The following individuals were interviewed: Warden K. Clark, Correctional Lieutenant R. Silva, Sergeants S. J. Burnes, A. Encinas, C. Morelock, Officers J. Leija, S. Gonzalez, Psychiatric Technician J. Wilson, and L. Pickering. The following documents were reviewed: COR-04A-18-09-0940, CSPC-5-18-05371.

Template Date 4/4/2012

Page 2

Attachment E-1

Staff: did ☐ did not ☒ violate CDCR policy with respect to one or more of the issues appealed.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.

- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.

- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: Lt. I. D. Lopez    Sign: _____ Date: 3/22/19
Interviewer

Print: L. Kibler    Sign: _____ Date: 3/26/19
Hiring Authority

STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

RIGHTS AND RESPONSIBILITY STATEMENT

The California Department of Corrections and Rehabilitation has adopted departmental regulations (above in this section) in non-technical form for clarification purposes.

Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmate/parolees'] COMPLAINTS. YOU HAVE THE RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

OSUNA, MARY                            P-22061    3/21/19
G-51 Log #                             #40764B    3/21/19

STATE OF CALIFORNIA                                     DEPARTMENT OF CORRECTIONS AND REHABILITATION
**RIGHTS AND RESPONSIBILITY STATEMENT**
CDCR 1858 (Rev. 10/06)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| Jamie Osuna | | | 1/27/19 |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| + Jamie Osuna + | | Bd0868 | |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

K. Kyle, SLCSW

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

45

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR-0602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded. **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OSUNA, JAMIE | Bd086? | 4A-1D #46 | |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** To Aggresive Retaliation Threats ! Intimadiation Verbal Sexual Harrasment And Race Disability Discrimination by Sgt J. Burnes Who Has Used My Mental Health Disability For Slander Calling Me A Faggot Idiot Violates My Rights (18 U.S.C§§ 281501-§-241-§242-§3145.(C)§ 40112-§40.42-§4081 et Seq.) AND PC'NS.(PC§115.§147 §182.1.§2600-§2601. §2650) CCP-§51, §52 "Now" ON 1/27/18 DURING BREAFAST PASS Once % Sean ! % Valencia, Were At Cell #64 Sgt Burnes Broke Away From C Section Door And Headed Towards My Cell I Was Standing At My door Eating Breakfast, He Made The Statment So You Writing 602's Again? I Said Look Its To Early For This Shit, Imma Eat And Go To Sleep, He Said Well Thats The Word I Got Ears Everywhere, I Said Is That What Kyle My Clinician told You Afte/My 1-1? Cause Shes The Only One I Told Sgt Burnes Said "Do You Think Your Clinicians Going To Believe Anything You Have To Say Hu? She Knows Your A Long Hair Faggot Son Of A Bitch, You Dont Want To Get Fucked Up Like Last Time, Su I Said When I Won't Make A Sound Like Last Time He Said You Can't Fuck With The Green Wall Thats Why You Stop Gassing With Blood We Did Our Job I Said Fuck You And I Su For That He Said Thats How We Put Out Fires I'll See You Again Hold Your Mule

Inmate/Parolee Signature: _____ Date Submitted: 1/27/19

**B. Continuation of CDCR 602, Section B only (Action requested):** I Request ~~Damages~~ ~~Of Fear and Dallas~~ ~~For Violating My Civil Rights In~~ Employment For (C.D.CR Agency) Violates My Rights To Health. Sarity And Protection Code Under The (8th Amendment U.S.C) Agianst Retaliation Threats Of Intimadation Assualt. Illegal Use OF Force And (Stalking) And Sexual Harrasment For exercise OF My Protected Rights Federal Conduct To File A Complaint. Aggreing UNSAFE Conditions title 15 CCR §3004.(c) §3143 §3391, I Also Request that He be indemified And ~~disho~~ Discharged Purs To Cai Gov. Code-2-§811-§844.6.(d)§910, §995.6-§995.8, §11340

Inmate/Parolee Signature: _____ Date Submitted: 1/27/8

EXHIBIT II

# CSP-CORCORAN
## CELL/LOCKER SEARCH

In accordance with California Code of Regulations, Title 15, Section 3287 (4), this notice is being issued to you due to an inspection/search having been conducted on your cell/locker.

Inmate Name: **OSUNA**    CDC#: **BD0868**    Housing: **4A1R  46**

### APPLIANCES

~~STATE ISSUED~~

X (RADIO) **SANGEAN - STATE ISSUED**

Make ____ Serial ____ Inmate **Osuna** CDC# **BD0868**

Upon entering the cell is the television/radio working? YES / NO
Upon exiting the cell is the television/radio working? YES / NO
Upon entering the cell is the appliance working? YES (NO)
Upon exiting the cell is the appliance working? YES / NO **Removed**

Make ____ Serial ____ Inmate ____ CDC# ____
2nd Appliance

If the appliance is not working, confiscate the appliance and give the inmate the following options (dispose, send home or donate).

### State issued property Confiscated: Example (Food/Linens/Clothing/etc.)

| Item removed | Reason for Removal | Item removed | Reason for Removal |
|---|---|---|---|
| 1 Blanket wool | Excess / (Altered) / Not allowable | Radio (state issue) | Excess / (Altered) / Not allowable |
| 1 Sheet | Excess / Altered / (Not allowable) | Headphone (state issue) | Excess / (Altered) / Not allowable |
| 1 Blanket cotton | Excess / Altered / Not allowable | mattress (state) Torn up | Excess / (Altered) / Not allowable |
| | Excess / Altered / Not allowable | | |

### Personal Property Confiscated: Example (TV/Radio/Personal Clothes/etc.)

| | Item removed | Description of reason for removal | Disposition |
|---|---|---|---|
| 1 | NONE | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 8 | | | |
| 9 | | | |

Trash removed (YES) NO    Other Items removed ____
Example (Cardboard/Paper    ____
bags/Wrappers/etc.)    ____

### Officers Inspecting:

**BURNES, J 18566**
Print Name/PERN#    Sign Name    **1·30·19**
Date of Inspection

**LOZA, A**
Print Name/PERN#    Sign Name    **1·30·2019**
Date of Inspection

requests to donate/dispose the above confiscated property/items per CCR 3191(c)(4)(5).

Inmate Name: ____    Inmate Signature: ____    Date: ____

47
Rev

EXHIBIT 11

**POOR ORIGINAL**

STATE OF CALIFORNIA
**INMATE SEGREGATION PROFILE**
CDC 114-A1 (10/98)

DEPARTMENT OF CORRECTIONS

Update information legibly and prepare a new CDC Form 114-A1 at least every **90 days** or as required to maintain current information.

| DATE INITIATED | CDC NUMBER | INMATE'S NAME | | ETHNICITY | CELL |
|---|---|---|---|---|---|
| 6-14-05 | H56733 | ROMERO | | MEX | ASU-197 |

| DATE OF BIRTH | COUNTY OF LAST LEGAL RESIDENCE | CONTROLLING COMMITMENT OFFENSE | PRIOR HOUSING |
|---|---|---|---|
| | LA | Murder 2"ᵈ | FRB5-224L |

| REASON FOR SEGREGATION | DATE OF ASU PLACEMENT | CS | PRISON RECE DATE | MERD |
|---|---|---|---|---|
| BATT. ON A I/M | 6-14-05 | 63 | 4-16-04 | LIPER |

## SPECIAL INFORMATION

COMMENT WHEN ADDITIONAL INFORMATION WOULD HELP CLARIFY AN ISSUE

MED / PSYCH ISSUE: ☐ EOP ☐ CCCMS ☐ DPP: ☐ HEARING ☐ SIGHT ☐ MOBILITY  CLEAR AS OF 3/04

| YES | NO | | | YES | NO | |
|---|---|---|---|---|---|---|
| ✓ | | STAFF THREATS / BATTERY | 11/04 | ✓ | | SAFETY CONCERNS (WHEN/WHERE) CSP-LAC "SNY" |
| ✓ | | INMATE THREATS / BATTERY | 3/02, 10/98  4/05 | ✓ | | PRIOR SUICIDE ATTEMPTS |
| | ✓ | SEX RELATED OFFENSES / DISCIPLINARIES: | | ✓ | | CELLING LIMITATION/RESTRICTIONS WITH LIKE NEEDS |
| | ✓ | IN PRISON WEAPON OFFENSES | | | ✓ | PRIOR CELL FIGHTS: |
| ✓ | | GANG STATUS: LOCOS TRECE | | ✓ | | DOUBLE CELL / AUTHORIZED BY: UCC 3/05 |
| ✓ | | NICKNAME OR MONIKER: ROCKY | | | ✓ | PRIOR SINGLE CELL STATUS (WHEN/WHERE/REASON): |
| ✓ | | ESCAPE RISK: LEVEL II / TERM | | | | |

COMMENTS / OBSERVATIONS   → SENSITIVE NEEDS =

RVR!S: BATT ON P/O, MUTUAL COMBAT, INTRO CONTRABAND TO Ad-SEG, OBSTRUCTING A P/O,

6-23 Release To Guard D/C

## ENEMIES / RIVAL GROUPS (LIST ALL ENEMIES HOUSED IN *THIS* INSTITUTION)

| DATE ADDED | NAME AND CDC NUMBER | HOUSING/LOCATION | GANG STATUS/COMMENTS |
|---|---|---|---|
| NONE NOTED | AT CSP-LAC | | |
| 6-16-05 | Nunez P-57967 | Asu-132 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

☐ ADDITIONAL ENEMIES NOTED ON ATTACHED INMATE SEGREGATION PROFILE

| YARD ASSIGNMENT: ICC DATE: | ☐ WALK ALONE | ☐ CONTROLLED/COMPATIBLE | ☐ REINTERGRATED/MIXED | |
|---|---|---|---|---|
| YARD ASSIGNMENT: ICC DATE | ☐ WALK ALONE | ☐ CONTROLLED/COMPATIBLE | ☐ REINTERGRATED/MIXED | Reason for Change |
| YARD ASSIGNMENT ICC DATE | ☐ WALK ALONE | ☐ CONTROLLED/CCMPATIBLE | ☐ REINTERGRATED/MIXED | Reason for Change |

YARD ASSIGNMENT RESTRICTIONS/COMMENTS:

| PRINTED NAME, TITLE AND SIGNATURE OF PERSON INITIATING FORM | DATE |
|---|---|
| C/O F. SPANN  C/o F Spann | 6/14/05 |

HIGHLIGHT "CONFIDENTIAL" ENEMIES AND REDACT PRIOR TO SENDING TO RECORDS OFFICE FOR SLOUGH FILING



STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
Page 2 of 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | HEARING DATE |
|---|---|---|---|---|
| H-56733 | ROMERO | C06-01-0020 | CSP-LAC | 1/21/06 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ CIRCUMSTANCES   ☒ HEARING   ☐ INVESTIGATIVE EMPLOYEE   ☐ STAFF ASSISTANT   ☐ OTHER:

1. The Reporting Employee's written report wherein Correctional Officer V. Rice states, "...Inmate ROMERO, H-56733, C4-246L, approached the receiving team for building four (4), requesting to speak to the floor officer. Inmate ROMERO was informed that the floor officers were not in the building at this time. Inmate ROMERO then stated "I have a problem with my cellie, we are not getting along. I am refusing to go back into my cell." After several attempts at verbally communicating with him, Inmate ROMERO began walking towards the doorway leading to the yard. I gave Inmate ROMERO a direct order to stop, turn around and go back to his cell until his floor staff return to handle this situation. Inmate ROMERO did not comply. Immediately, I began walking towards the door. Upon reaching the door, I once again ordered ROMERO back inside. Inmate ROMERO stated, "No, I am going to see the sergeant," and he suddenly ran out of the rotunda heading in the direction of building five(5). I immediately gave chase after ROMERO and caught up to him. I then used the momentum of my bodyweight to physically tackle him, utilizing my right shoulder and simultaneously wrapping both arms around his upper torso, forcing him to the ground. While on the ground Inmate ROMERO continued to resist me by pulling away from my grasp, twisting his body from his left side to his right side while simultaneously drawing his knees up towards his chest. Several staff continued to give direct orders to ROMERO to cease his actions, he did not comply. Subsequently, mechanical restraints were placed in his wrist.

2. Inmate ROMERO did not dispute any of the facts as contained in the Rules Violation Report and entered a plea of Guilty.

**DISPOSITION:** Assessed 90 days *LOSS OF BEHAVIOR/WORK CREDIT*, consistent with the provisions of CCR §3323, Disciplinary Forfeiture Schedule, for a Division "D" offense.

Assessed 60 day's *LOSS OF PRIVILEGES* effective 1/21/06 to 3/21/06. Specific loss of privileges to include:
* No Dayroom
* No Telephone (except verified emergencies)

Counseled warned and reprimanded regarding future behavioral expectations.

ROMERO was advised of his right to restoration of credits under CCR Section 3327 and 3328.

ROMERO has been apprised of the above findings and his right to appeal this decision per CCR §3084. ROMERO was further advised that the results of this hearing will not become final until an audit has been conducted by the Chief Disciplinary Officer. Upon completion of that audit he will receive his final copy of this Rules Violation Report.

| SIGNATURE OF WRITER | TITLE | DATE | |
|---|---|---|---|
| G. DE LOS SANTOS, Correctional Lieutenant | Senior Hearing Officer (SHO) | 1/21/06 | |
| ☐ COPY OF CDC 115 GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE 2·16·86 | TIME 2015 |

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

49

EXHIBIT J2

16

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| H-56733 | ROMERO | 3005(c) | 1/12/2006 | CSP-LAC | C06-01-0020 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|

| ☐ I REVOKE my request for postponement. | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | | |
| ☐ ASSIGNED | DATE | NAME OF STAFF |
| ☒ NOT ASSIGNED | REASON Per CCR 3315 (d)(2) | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | | |
| ☐ ASSIGNED | DATE | NAME OF STAFF |
| ☒ NOT ASSIGNED | REASON Per CCR 3315 (d)(1) | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE  ☐ STAFF ASSISTANT  ☐ INVESTIGATIVE EMPLOYEE  ☐ OTHER  ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| N/A | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME 1905 | DATE 1·16·06 |
|---|---|---|---|

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

50

POOR ORIGINAL



Friends Outside

Awards this certificate to

*Luis Romero*

in recognition of completion of

*Creative Conflict Resolutions*

A comprehensive, three-day training in anger management and conflict resolution.

Gonzalez, Lead Facilitator

Newby, Executive Director

Moreno, Co-Facilitator

Date 8/17/07

*This certificate is printed in black ink on parchment paper with blue and gold border, and only the original is valid as proof of completion of the program. Friends Outside, PO Box 4085, Stockton, CA 95204*

2007

STATE OF CALIFORNIA                                                          6.131'                  DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MANAGER |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| ROMERO, L. | H-56733 |

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY       [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT: On Tuesday, July 23, 2013, you, Inmate ROMERO (H-56733, FC-15-115U), are being placed in the Administrative Segregation Unit for the following reasons: On this date, at approximately 0625 hours, you and your assigned cell mate, Inmate ▓▓▓▓▓▓▓▓▓ were observed battering Inmate ▓▓▓▓▓▓▓▓▓▓▓ near the weight pile on the East Side of the Recreation Yard during the AM chow release/return. You will be charged with a violation of CCR §3005(d)(1), for the specific act of BATTERY ON AN INMATE. Based on the aforementioned: your presence on Facility 'C' presents a threat to the safety and security of the institution, its staff and inmates. You will remain in the Administrative Segregation Unit pending Administrative Review of your future Program and Housing needs. As a result of your placement, your Custody Level, Privilege Group, Work and Visiting Status may be effected.

MSG: POP    TRS: 5.0    STAFF ASSISTANT: C/o Hodge

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)    [ ] IF CONFIDENTIAL INFORMATION USED. DATE OF DISCLOSURE:    /    /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 07/23/13 | A. Allanby | Lt. | Lieutenant |

| DATE OF NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 7/23/13 | 0830 | Hodge | | C/o |

[ ] INMATE REFUSED TO SIGN    INMATE SIGNATURE  X Romero Luis    CDC NUMBER  H-56733

## ADMINISTRATIVE REVIEW (PART B)

*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME  D. Landrum | TITLE  C/o | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

### IS THIS INMATE:

| | | | | | |
|---|---|---|---|---|---|
| LITERATE? | [X] YES | [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES | [ ] NO |
| FLUENT IN ENGLISH? | [X] YES | [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES | [X] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES | [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [X] YES | [ ] NO |
| FREE OF MENTAL HEALTH SERVICE DELIVERY SYSTEM NEEDS? | [ ] YES | [X] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | | | |

Any "NO" requires SA assignment                          Any "NO" requires IE assignment

[ ] NOT ASSIGNED                                          [ ] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[X] NO WITNESSES REQUESTED BY INMATE    INMATE SIGNATURE  X Romero Luis    DATE 7-24-13

### WITNESSES REQUESTED FOR HEARING

| WITNESS NAME | TITLE/CDC NUMBER | WITNESS NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS NAME | TITLE/CDC NUMBER | WITNESS NAME | TITLE/CDC NUMBER |

DECISION: [ ] RELEASE TO UNIT/FACILITY _____ [X] RETAIN PENDING ICC REVIEW   [ ] DOUBLE CELL   [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION: Retain Pending ICC Review - I/m Endangers Institution Security Due to a Battery. D/c CLR

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| E. Benyard | Capt | 7-24-13 | 1535 | |
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See Chronological Classification Review document (CDC 128-G) for specific hearing information

STATE OF CALIFORNIA
**INMATE SEGREGATION PROFILE**
CDC 114-A1 (10/98)

DEPARTMENT OF CORRECTIONS

Update information legibly and prepare a new CDC Form 114-A1 at least every 90 days or as required to maintain current information.

| DATE INITIATED | CDC NUMBER | INMATE'S NAME | | ETHNICITY | CELL |
|---|---|---|---|---|---|
| -6-14 | 456733 | ROMERO | | HIS | EIA 108 |
| DATE OF BIRTH | COUNTY OF LAST LEGAL RESIDENCE | | CONTROLLING COMMITMENT OFFENSE | CS | PRIOR HOUSING |
| | Los Angeles | | MURDER 2ND | | CSP-Cor |
| REASON FOR SEGREGATION | | DATE OF ASU PLACEMENT | CS | PRISON RELEASE DATE | EPRD |
| BATT ON IIM | | -6-14 | 77 | 7-17-04 | MEPD |

**SPECIAL INFORMATION**

*COMMENT WHEN ADDITIONAL INFORMATION WOULD HELP CLARIFY AN ISSUE*

MED / PSYCH ISSUE: ☒ EOP ☐ CCCMS ☐ DPP: ☐ HEARING ☐ SIGHT ☐ MOBILITY

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| | ☒ | STAFF THREATS / BATTERY | ☒ | | SAFETY CONCERNS (WHEN/WHERE?): 11/08/13 CSP-COR SNY-EOP |
| ☒ | | INMATE THREATS / BATTERY BATT ON IIM 12/14, 7/13 | | ☒ | PRIOR SUICIDE ATTEMPTS |
| | ☒ | SEX RELATED OFFENSES / DISCIPLINARIES | | ☒ | CELLING LIMITATION / RESTRICTIONS: |
| | ☒ | IN PRISON WEAPON OFFENSES | 4 | | PRIOR CELL FIGHTS: |
| ☒ | | GANG STATUS: Loco Trecas | ☒ | | DOUBLE CELL / AUTHORIZED BY: PER ICC Chid Johnson 12-18-14 |
| ☒ | | NICKNAME OR MONIKER: | | ☒ | PRIOR SINGLE CELL STATUS (WHEN/WHERE/REASON?): |
| | ☒ | ESCAPE RISK: | | | |

COMMENTS / OBSERVATIONS:

**ENEMIES / RIVAL GROUPS (LIST ALL ENEMIES HOUSED IN THIS INSTITUTION)**

| DATE ADDED | NAME AND CDC NUMBER | HOUSING / LOCATION | GANG STATUS / COMMENTS |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

☐ ADDITIONAL ENEMIES NOTED ON ATTACHED INMATE SEGREGATION PROFILE

| YARD ASSIGNMENT: ICC DATE: 1/14/15 | ☒ WALK ALONE ☐ CONTROLLED/COMPATIBLE ☐ REINTERGRATED/MIXED | |
|---|---|---|
| YARD ASSIGNMENT: ICC DATE: | ☐ WALK ALONE ☐ CONTROLLED/COMPATIBLE ☐ REINTERGRATED/MIXED | Reason for Change |
| YARD ASSIGNMENT: ICC DATE: | ☐ WALK ALONE ☐ CONTROLLED/COMPATIBLE ☐ REINTERGRATED/MIXED | Reason for Change |
| YARD ASSIGNMENT RESTRICTIONS/COMMENTS: | | |

| PRINTED NAME, TITLE, AND SIGNATURE OF PERSON INITIATING FORM | DATE |
|---|---|
| LT. A. GOMEZ | 1-6-14 |

HIGHLIGHT "CONFIDENTIAL" ENEMIES AND REDACT PRIOR TO SENDING TO RECORDS OFFICE FOR SLOUGH FILING

EXHIBIT 06

*guilty of LOC* X A

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| H56733 | ROMERO | | LIFE | CSP-COR | 3B01-103U | 3B-14-12-026 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| CCR§ 3005 (d) (1) | BATTERY ON AN INMATE | | 3B01 DAYROOM FLOOR | 12-10-2014 | 0841 HOURS |

CIRCUMSTANCES

On Wednesday, December 10, 2014, at approximately 0841 hours, I was standing at the podium in 3B01 observing the morning medication pass when I saw Inmate ROMERO, (H56733, 3B01-103U) commit an act of battery on Inmate ▓▓▓▓▓▓. Specifically I saw Romero strike ▓▓▓▓▓▓ with his right fist in ▓▓▓▓▓ facial area. Romero then assumed an aggressive stance and moved toward ▓▓▓▓▓. Romero then threw his state issued cup at ▓▓▓▓▓▓. ▓▓▓▓▓ crouched down in a defensive stance blocking his head and face. I was unable to determine if or where the cup hit ▓▓▓▓▓. Correctional Officer L. Gallardo then told the inmates to "Get Down" the prone position. Control Booth Officer E. Lozano then ordered both inmates to "get down" and prone out. I activated my Personal Alarm Device (P.A.D.) Romero continued to advance towards Harness trying to strike him with his fists.

Inmate ROMERO is a member of the Mental Health Delivery System at EOP Level of Care.
Inmate ROMERO'S TABE score is above 4.0 (5.0)

### (115 CIRCUMSTANCES CONTINUED ON PART C)

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ►A. DAVIS, CORRECTIONAL OFFICER | 12-10-14 | 3B01 FLOOR #1 | ▓▓▓ |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ►C. MORELOCK, CORRECTIONAL SERGEANT | 12/16/14 | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO |
|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒SERIOUS | D | 12/18/14 | ►JOVAZ ✗ CCH | | ☐ HO ☒SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | |
|---|---|---|---|---|---|
| | ►J. CABRERA | 12/20/14 | 1200 | 128-B 72279 SUM-DISC-PRO-SA | ENEMY-CHRONO |
| ☒ INCIDENT REPORT LOG NUMBER: COR-03B-14-12-0728 | ►J. CABRERA | 1-1-15 | 0800 | J. CABRERA | 12/20/14 1200 |
| HEARING | | | | J. CABRERA 115 MH | 1/1/15 0800 |

PLEA: *Guilty*

FINDINGS: *Guilty*

DIVISION / OFFENSE: *D*

FOC: *0*

LOP: *0*

### (HEARING CONTINUED ON PART-C)

| REFERRED TO ☒ CLASSIFICATION ☐ BPT/NAEA | | |
|---|---|---|
| ACTION BY: (TYPED NAME) | SIGNATURE | DATE / TIME |
| E. M. Bechtel, Correctional Lieutenant | ▓▓▓▓ | 2/4/15 0730 |
| REVIEWED BY: (SIGNATURE) G. R. Shirley ►M. GAMBOA, Facility Captain | DATE 3-4-15 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ►T. CISNEROS, AW W. M. VOONG | DATE / TIME 3/6/15 |
| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ►To K. Garcia | DATE / TIME 3/5/15 1300 |

CDC 115

EXHIBIT J

*Document 1*
*C 2. DEF*          *guilty & Loc*          *2A.*

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| H56733 | ROMERO | | LIFE | CSP-COR | 3B01-103U | 3B-14-12-026 |

| VIOLATED RULE NO(S). | | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| CCR§ 3005 (d) (1) | | BATTERY ON AN INMATE | 3B01 DAYROOM FLOOR | 12-10-2014 | 0841 HOURS |

CIRCUMSTANCES

On Wednesday, December 10, 2014, at approximately 0841 hours, I was standing at the podium in 3B01 observing the morning medication pass. When I saw Inmate ROMERO, (H56733, 3B01-103U) commit an act of battery on Inmate ▬▬▬▬▬ Specifically I saw Romero strike ▬▬▬▬ with his right fist in ▬▬▬▬ facial area. Romero then assumed an aggressive stance and moved toward ▬▬▬▬ Romero then threw his state issued cup at ▬▬▬▬ ▬▬▬▬ crouched down in a defensive stance blocking his head and face. I was unable to determine if or where the cup hit ▬▬▬▬ Correctional Officer L. Gallardo then told the inmates to "Get Down" the prone position. Control Booth Officer E. Lozano then ordered both inmates to "get down" and prone out. I activated my Personal Alarm Device (P.A.D.) Romero continued to advance towards Harness trying to strike him with his fists.

Inmate **ROMERO is** a member of the Mental Health Delivery System at **EOP** Level of Care.
Inmate **ROMERO'S** TABE score is **above 4.0 (5.0)**

## (115 CIRCUMSTANCES CONTINUED ON PART C)

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ► A. DAVIS, CORRECTIONAL OFFICER | | 12-16-14 | 3B01 FLOOR #1 | |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | INMATE SEGREGATED PENDING HEARING | LOC |
|---|---|---|---|---|
| ► C. MORELOCK, CORRECTIONAL SERGEANT | | 12/16/14 | | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | D | 12/18/14 | ► JOAZ OCH | ☐ HO ☒ HO ☐ SC ☐ FC |

| COPIES GIVEN INMATE BEFORE HEARING | | | | |
|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) J. CABRERA | DATE 12/20/14 | TIME 1200 | TITLE OF SUPPLEMENT 3B 7279 SUPPLM DISC PRO SA ENEMY-CHRON |
| ☒ INCIDENT REPORT LOG NUMBER: COR-03B-14-12-0728 | BY: (STAFF'S SIGNATURE) J. CABRERA | 1-1-15 0800 | BY: (STAFF'S SIGNATURE) J. CABRERA | DATE 12/20/14 1200 |
| HEARING | | | J. CABRERA 115 MH | 1/1/15 0800 |

PLEA: *Guilty*

FINDINGS: *Guilty*

DIVISION / OFFENSE: *D*

FOC: *0*

LOP: *0*

### (HEARING CONTINUED ON PART-C)

| REFERRED TO ☒ CLASSIFICATION ☐ BPT/NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) E. M. Bechtel Correctional Lieutenant | SIGNATURE | DATE 2/4/15 | TIME 0730 |
| REVIEWED BY: (SIGNATURE) A. Schrader | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | TIME |
| M. GAMBOA, Facility Captain | 2-4-15 | T. CISNEROS, AW | 2/4/15 |
| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) To K. Bedocio | DATE 3/5/15 | TIME 1300 |

CDC 115 (7/88)



STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE ___1___ OF ___1___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H56733 | ROMERO | 3B-14-12-026 | CSP-COR | 12-10-2014 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER_____

Lozano then fired a 40 MM direct impact sponge round at Romero. ▨▨▨ attempted to prone out, however Romero kept advancing towards ▨▨▨ Romero kicked ▨▨▨ while ▨▨▨ was in the seated position. ▨▨▨ was able to block the kick with his hands. Romero was again ordered to "get down" which he failed to comply. Responding staff entered 3B01 and formed a skirmish line in the dayroom. Romero was still refusing to comply with orders to "Get Down" and picked up the water cooler in "A" section dayroom. Not knowing his intentions, I dispersed a two (2) second burst to the facial area of Romero from approximately six (6) feet away. I was still giving Romero orders to "Get Down". Romero refused to comply. I aimed for the left side of Romero's facial and shoulder area but did not have the desired effect as Romero used the igloo cooler as a shield to deflect most of the spray. Romero placed the igloo cooler on the floor and continued to disregard orders to get down. Romero continued to advance towards ▨▨▨ Lozano fired a second direct impact sponge round from his departmental issued 40MM Launcher. Romero ran away from staff, running toward "A" section dayroom, before assuming a prone position in front of "A" section shower. Responding staff placed Romero in restraints. I provided coverage of "A" section Dayroom ensuring all non-involved inmates were complying with emergency procedures. This concludes my involvement in this incident.

| | SIGNATURE OF WRITER _(signature)_ | | DATE SIGNED |
|---|---|---|---|
| | ▶ A. DAVIS, CORRECTIONAL OFFICER | | 12-16-14 |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) _J CABRERA_ | DATE SIGNED 12/20/14 | TIME SIGNED 1200 |

CDC 115-C (5/95)



STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE __1__ OF __1__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H56733 | ROMERO | 3B-14-12-026 | CSP-COR | 12-10-2014 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER_____

Lozano then fired a 40 MM direct impact sponge round at Romero. ▮▮▮▮ attempted to prone out, however Romero kept advancing towards ▮▮▮▮ Romero kicked ▮▮▮▮ while ▮▮▮▮ was in the seated position. ▮▮▮▮ was able to block the kick with his hands. Romero was again ordered to "get down" which he failed to comply. Responding staff entered 3B01 and formed a skirmish line in the dayroom. Romero was still refusing to comply with orders to "Get Down" and picked up the water cooler in "A" section dayroom. Not knowing his intentions, I dispersed a two (2) second burst to the facial area of Romero from approximately six (6) feet away. I was still giving Romero orders to "Get Down". Romero refused to comply. I aimed for the left side of Romero's facial and shoulder area but did not have the desired effect as Romero used the igloo cooler as a shield to deflect most of the spray. Romero placed the igloo cooler on the floor and continued to disregard orders to get down. Romero continued to advance towards ▮▮▮▮ Lozano fired a second direct impact sponge round from his departmental issued 40MM Launcher. Romero ran away from staff, running toward "A" section dayroom, before assuming a prone position in front of "A" section shower. Responding staff placed Romero in restraints. I provided coverage of "A" section Dayroom ensuring all non-involved inmates were complying with emergency procedures. This concludes my involvement in this incident.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | ▶ A. DAVIS, CORRECTIONAL OFFICER | 12-16-14 |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J CABRERA | DATE SIGNED 12/20/14 | TIME SIGNED 1200 |

CDC 115-C (5/95)

EXHIBIT J8



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE

3A04-226LL

| INSTITUTION NAME COR-Facility 03B | INMATE'S NAME ROMERO, LUIS G. | CDC NUMBER H56733 |
|---|---|---|

**REASON(S) FOR PLACEMENT (PART A)**

☑ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☑ ENDANGERS INSTITUTION SECURITY    ☐ RETAINED IN ASU AS NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

On Wednesday, December 10, 2014, you, Inmate ROMERO, (H56733, 3B01-103U), are being removed from Facility 3B Sensitive Needs Yard (SNY), and being re-housed in the Administrative Segregation Unit (ASU) for BATTERY ON AN INMATE. Specifically on this date you battered inmate ████████████████████ inside of Building 3B01, (Log#COR-03B-14-12-0728). Based on the aforementioned, you are deemed a threat to the safety and security of the institution, its staff, and inmates. You will remain in ASU pending a review and approval of your appropriate program and housing needs. Based on these circumstances, your credit earnings, privilege group, visiting status and custody level is subject to change. Effective Communication was established by using simple English and having you explain in your own words the reason for ASU placement. Inmate Romero, is a participant in the Mental Health Services Delivery System at the EOP level of care and has a recorded TABE score above 4.0 (5.0).

☐ IF CONFIDENTIAL INFORMATION USED, DATE INFORMATION DISCLOSED:

| DATE OF ASU PLACEMENT 12/10/2014 | SEGREGATION AUTHORITY'S PRINTED NAME ███ Espinoza | SIGNATURE J. Espinoza | TITLE Lieutenant |
|---|---|---|---|

| DATE NOTICE SERVED 12/10/14 | TIME SERVED 1210 | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE J. Gamez | SIGNATURE | STAFF'S TITLE c/o |
|---|---|---|---|---|

| ☐ INMATE REFUSED TO SIGN | INMATE SIGNATURE Romero Luis | CDC NUMBER H56733 |
|---|---|---|

You were identified with a disability of:
☐ Hearing ☐ Vision ☐ Speech ☐ Learning Disability ☐ TABE under 4.0 / no TABE ☐ Developmental Disability ☐ CCCMS ☑ EOP ☐ Foreign Language Speaking

☑ ROMERO, LUIS GILBERTO reiterated in his own words, what was explained

☐ ROMERO, LUIS GILBERTO provided appropriate, substantive responses to questions asked

☑ ROMERO, LUIS GILBERTO asked appropriate questions regarding the information provided

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**



## CALIFORNIA DEPARTMENT of
## Corrections and Rehabilitation

# ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE

| INSTITUTION NAME<br>CHCF-Facility E | INMATE'S NAME<br>ROMERO, LUIS G. | CDC NUMBER<br>H56733 |
|---|---|---|

### REASON(S) FOR PLACEMENT (PART A)

☒ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☒ ENDANGERS INSTITUTION SECURITY    ☐ RETAINED IN ASU AS NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
On Tuesday January 06, 2015 you arrived at CHCF as a Maximum custody inmate from CSP-COR. Specifically on December 10, 2014 you, were placed in Administrative Segregation for Battery on an Inmate (Log# COR-03B-14-12-0728). Due to the aforementioned, your presence here at CHCF presents a threat to the safety and security of the institution, its staff and other inmates. You will remain in Administrative Segregation pending administrative review to determine appropriate housing and program needs. As a result of this placement, your custody level, privilege group, visiting, and credit earning status are subject to change. Inmate Romero is a participant in the Mental Health Service Delivery System at the EOP level of care and has a recorded TABE score above 4.0 (5.0)

☐ IF CONFIDENTIAL INFORMATION USED, DATE INFORMATION DISCLOSED:

| DATE OF ASU PLACEMENT<br>01/06/2015 | SEGREGATION AUTHORITY'S PRINTED NAME<br>Armando S Gomez | SIGNATURE<br>A. Gomez | TITLE<br>LT |
|---|---|---|---|

| DATE NOTICE<br>SERVED<br>1-6-2015 | TIME<br>SERVED<br>1550 | PRINTED NAME OF STAFF SERVING<br>ASU PLACEMENT NOTICE<br>E. Villar | SIGNATURE<br>E. Villar | STAFF'S<br>TITLE<br>c/o |
|---|---|---|---|---|

| ☐ INMATE REFUSED TO SIGN | INMATE SIGNATURE<br>Romero Luis | CDC NUMBER<br>H56733 |
|---|---|---|

You were identified with a disability of:
☐ Hearing ☒ Vision ☐ Speech ☒ Learning Disability ☒ TABE under 4.0 / no TABE ☐ Developmental Disability ☒ CCCMS ☒ EOP ☐ Foreign Language Speaking

**Method**
☐ ROMERO, LUIS GILBERTO reiterated in his own words, what was explained

☐ ROMERO, LUIS GILBERTO provided appropriate, substantive responses to questions asked

☐ ROMERO, LUIS GILBERTO asked appropriate questions regarding the information provided

☐ ROMERO, LUIS GILBERTO did not appear to understand the communication, even though the primary method of communication was used

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

EXHIBIT J9

☐ Other

**Assistance Provided**

☒ Use of Full Page Magnifier

☒ Read aloud Documents to ROMERO, LUIS GILBERTO

☒ Sign Language Interpreter

☒ Lip Reading (spoke facing the inmate)

☒ Written Notes

☐ Language Interpreter

☑ Simple English spoken slowly and clearly

☒ ROMERO, LUIS GILBERTO was wearing his/her hearing aid(s)

☑ ROMERO, LUIS GILBERTO stated he did not need any assistance for Effective Communication

☒ Gave additional time

☒ Rephrased sentence

☒ Other

**Provider**

Name:      Title:   E. Villar   C/o

---

## ADMINISTRATIVE REVIEW (PART B)
**The following to be completed during the administrative review by Captain or higher on the first working day following placement**

| STAFF ASSISTANT (SA) | | | INVESTIGATIVE EMPLOYEE (IE) | | |
|---|---|---|---|---|---|
| **IS THIS INMATE:** | | | | | |
| LITERATE? | ☒ YES | ☒ NO | ASU IS FOR DISCIPLINARY REASONS | ☒ YES | ☒ NO |
| FLUENT IN ENGLISH? | ☒ YES | ☒ NO | EVIDENCE COLLECTION BY IE IS UNNECESSARY | ☒ YES | ☒ NO |
| ABLE TO COMPREHEND ISSUES? | ☒ YES | ☒ NO | INMATE DECLINED ANY IE | ☒ YES | ☒ NO |
| FREE OF MHSDS NEEDS? | ☒ YES | ☒ NO | DECLINED FIRST IE ASSIGNED | ☒ YES | |
| DECLINED FIRST STAFF ASSISTANT ASSIGNED? | ☒ YES | | | | |
| Any "NO" requires SA assignment | ☒ NOT ASSIGNED | | Any "NO" may require IE assignment | ☒ NOT ASSIGNED | |
| STAFF ASSISTANT'S NAME | TITLE | | INVESTIGATIVE EMPLOYEE'S NAME | TITLE | |

---

**INMATE WAIVERS**

☒ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

☒ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER

---

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| CHCF | PMU | USE OF FORCE — INJURY / UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 1-6-15 |

| THIS SECTION FOR INMATE ONLY | NAME LAST Romero | FIRST Luis | CDC NUMBER H 56733 | HOUSING LOC. G/A/108L | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME LAST N/A | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME LAST N/A | FIRST N/A | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS N/A | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE NA | DATE/TIME OF OCCURRENCE NA | NAME OF WITNESS(ES) NA |
|---|---|---|

| TIME NOTIFIED 1515 | TIME SEEN 1515 | ESCORTED BY C.O. Cillm | MODE OF ARRIVAL (circle) AMBULATORY / LITTER / WHEELCHAIR / ON SITE | AGE 40 | RACE M | SEX M |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

" I'm okay " " I'm tired "

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| | YES / NO |
|---|---|
| O.C. SPRAY EXPOSURE? | YES / NO |
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME 1515 | PHYSICIAN NOTIFIED/TIME N/A |
|---|---|

TIME/DISPOSITION
1520  To adseg

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) Esperanza, RN | BADGE # NA | RDOs SSL |
|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)    DISTRIBUTION:    ORIGINAL - Custody    CANARY - Inmate/Employee    PINK - Health and Safety / RTW Coordinator (only work related injury)





*E1A-214*

*Transfered ON 3/20/15*

# ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE

| INSTITUTION NAME<br>CHCF-Facility E | INMATE'S NAME<br>ROMERO, LUIS G. | CDC NUMBER<br>H56733 |
|---|---|---|

### REASON(S) FOR PLACEMENT (PART A)

☒ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☒ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☒ ENDANGERS INSTITUTION SECURITY    ☒ RETAINED IN ASU AS NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
You inmate Romero H56733 were placed in ASU on 12/10/2014 for Battery on Inmate. ICC for 3/11/15 elected to assess and impose a 6 month aggravated SHU Term for RVR LOG# 3B-14-12-026. You are scheduled for the next available ICC for review of your case factors. Due to your current placement score and need for SNY housing you cannot be released to the general population at CHCF. ICC may elect to suspend the remainder of your current SHU Term and establish NDS and transfer you to an alternate institution. As a result of this placement your credit earning status, custody level, privilege group, and visiting status are subject to change. Inmate Romero is a participant in the MHSDS at the EOP LOC and has a TABE score of 5.6. No DDP or DPP issues are noted at this time.

☒ IF CONFIDENTIAL INFORMATION USED, DATE INFORMATION DISCLOSED:

| DATE OF ASU<br>PLACEMENT<br>03/17/2015 | SEGREGATION AUTHORITY'S PRINTED<br>NAME<br>Marcus Thomas | SIGNATURE<br>M. Thomas | TITLE<br>Lieutenant |
|---|---|---|---|

| DATE NOTICE<br>SERVED<br>03/17/2015 | TIME<br>SERVED<br>19:00:00 | PRINTED NAME OF STAFF<br>SERVING ASU PLACEMENT<br>NOTICE | SIGNATURE | STAFF'S TITLE<br>Correctional<br>Officer |
|---|---|---|---|---|

| ☒ INMATE REFUSED TO SIGN | INMATE SIGNATURE<br>X Romero | CDC NUMBER<br>H56733 |
|---|---|---|

You were identified with a disability of:
☒ Hearing ☒ Vision ☒ Speech ☒ Learning Disability ☒ TABE under 4.0 / no TABE ☒ Developmental Disability ☒ CCCMS ☒ EOP ☒ Foreign Language Speaking

Method
☒ ROMERO, LUIS GILBERTO reiterated in his own words, what was explained

☒ ROMERO, LUIS GILBERTO provided appropriate, substantive responses to questions asked

☒ ROMERO, LUIS GILBERTO asked appropriate questions regarding the information provided

☒ ROMERO, LUIS GILBERTO did not appear to understand the communication, even though the primary method of communication was used

☒ Other

__Assistance Provided__
☒ Use of Full Page Magnifier

☒ Read aloud Documents to ROMERO, LUIS GILBERTO

☒ Sign Language Interpreter

☒ Lip Reading (spoke facing the inmate)

☒ Written Notes

☐ Language Interpreter

☒ Simple English spoken slowly and clearly

☒ ROMERO, LUIS GILBERTO was wearing his/her hearing aid(s)

☒ ROMERO, LUIS GILBERTO stated he did not need any assistance for Effective Communication

☐ Gave additional time

☒ Rephrased sentence

☒ Other

__Provider__
Name: R. IRWIN    Title: Correctional Officer

## ADMINISTRATIVE REVIEW (PART B)
**The following to be completed during the administrative review by Captain or higher on the first working day following placement**

| STAFF ASSISTANT (SA) | | | INVESTIGATIVE EMPLOYEE (IE) | | |
|---|---|---|---|---|---|
| IS THIS INMATE: | | | | | |
| LITERATE? | ☒ YES | ☐ NO | ASU IS FOR DISCIPLINARY REASONS | ☒ YES | ☐ NO |
| FLUENT IN ENGLISH? | ☒ YES | ☐ NO | EVIDENCE COLLECTION BY IE IS UNNECESSARY | ☒ YES | ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☒ YES | ☐ NO | INMATE DECLINED ANY IE | ☐ YES | ☐ NO |
| FREE OF MHSDS NEEDS? *EOP* | ☐ YES | ☐ NO | DECLINED FIRST IE ASSIGNED | ☐ YES | |
| DECLINED FIRST STAFF ASSISTANT ASSIGNED? | ☐ YES | | | | |
| Any "NO" requires SA assignment | ☐ NOT ASSIGNED | | Any "NO" may require IE assignment | ☒ NOT ASSIGNED | |
| STAFF ASSISTANT'S NAME *Fschabels* TITLE *e/o* | | | INVESTIGATIVE EMPLOYEE'S NAME | TITLE | |

__INMATE WAIVERS__
☒ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME — *RL*

☒ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER — *RL*

1 ██████ FAGUNDES
District Attorney, County of Kings
2 Kings County Government Center
1400 West Lacey Boulevard
3 Hanford, California 93230
Telephone (559) 582-0326
4 D.A. # F-2015-611

5 Attorney for Plaintiff

6





**FILED**

APR 1 0 2015

JEFFREY E. LEWIS, CLERK OF COURT
THE STATE OF CALIFORNIA
█████████ DEPUTY
USTIN

7

8 **SUPERIOR COURT OF CALIFORNIA, COUNTY OF KINGS**

9

10 THE PEOPLE OF THE STATE OF CALIFORNIA
Plaintiff,

11

12 vs.

13 LUIS GILBERTO ROMERO H56733
DOB: ████████
14 Defendant(s)

15

No. 15CM-7121

**DECLARATION FOR RELEASE AND
TRANSPORTATION OF PRISONER
AND ORDER**

Date: **04/30/2015**

Dept: 10

16 ████████ D'MORIAS hereby declares:

17 That he/she is a duly appointed and acting Deputy District Attorney of the County of Kings,

18 State of California;

19 That a Complaint was filed in the Superior Court of California, County of Kings, on or about

20 April 30, 2015, charging said defendant with a criminal violation and proceedings are pending thereon;

21 That said defendant is presently incarcerated in the California State Prison, County of Kings, at

22 California Department of Corrections;

23 WHEREFORE, your declarant prays that an order issue from the Superior Court of California,

24 County of Kings, directing the authorities at California Department of Corrections, to transport said

25 defendant to and from the Superior Court of California, County of Kings, on each of those days when

26 said defendant has court appearances scheduled in said courts and to use reasonable force in carrying

27 out the above order as necessary.

28 Defendant's first appearance in said matter is for arraignment in the Superior Court of

-1-

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

64

EXHIBIT J12



The document to which this certificate is affixed is a full, true and correct copy of the original on file and of record in my office.

Attest _____ 4/30/15 _____

By _____ Deputy.

STATE OF CALIFORNIA
CDC FORM 128C

**MENTAL HEALTH PLACEMENT**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
MHPC v2.0 (5-1-97)
Effective 6-1-97

NAME: **ROMERO, LUIS**   CDC# **H56733**   INST: **CSP-LAC**   HOUSING: **C3-212**
     LAST   FIRST   MI                          X IF RC                      /IRC

**THIS INMATE HAS COMPLETED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS** (check box(d) below):

a) ☐ **Does Not Meet Criteria** for Inclusion in the Mental Health Treatment Population.

b) ☒ **Meets Inclusion Criteria** for the MH Treatment Population (Check Level of Care [LOC] Below)
   ☐No   ☒Yes   Inclusion is for of Medical Necessity (Obtain Chief Psychiatrist Signature Below).

c) ☐ **Presently included in MHSDS, new LOC below** (Check LOC Below).

LOC:   ☐Inpatient DMH   ☐Crisis Beds (MHCB)   ☐Enhanced Outpatient Program (EOP)/Cat /   ☒Clinical Case Management (CCCMS)/Cat /

Level of Functioning Assessment (GAF score): **60**     Psychotropic Medication Prescribed: ☒Yes ☐No

Behavioral Alerts:

**F. MORONG, M.D.**                _(signature)_          **5/8/06**
CLINICIAN'S LAST NAME (PRINT)   PHONE / EXTENSION **7038**   CLINICIAN'S SIGNATURE   DATE

                              _(signature)_
                              CHIEF PSYCHIATRIST or DESIGNEE SIGNATURE

Original to be placed in Central File within 48 Hrs.; Copies to:  Correctional Counselor I, Unit Health Record, C.C.C.M.S
                                                        CSP-LAC
                                                         (D.I)

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL



STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 2 OF 3

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H-56733 | ROMERO | FC-15-05-023 | CSP-COR | 06-04-15 |

☐ SUPPLEMENTAL    ☑ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☑ HEARING ☐ IE REPORT ☐ OTHER

the inmate's mental disorder did appear to contribute to the behavior that led to the RVR. The Clinician lastly notes that if the inmate is found guilty there are mental health factors that the hearing officer should consider when assessing penalty (see MH-115).

EFFECTIVE COMMUNICATION: The Senior Hearing Officer ensured the Disability Effective Communication (DECS) System and/or Central File were reviewed and the subject was queried for Effective Communication. The SHO notes the subject has a TABE score of above 4.0, and is a participant in the Mental Health Services Delivery System (MHSDS) at the Enhanced Out-Patient (EOP) level of care. Therefore, Correctional Officer B. Hackworth was assigned as the Staff Assistant and met with the subject more than 24 hours prior to this hearing. The inmate was informed of the disciplinary process and procedures. The Staff Assistant was present during the hearing and throughout the entire disciplinary process. However, the subject waived his right to attend the hearing; therefore, he shall be informed of the findings and decisions reached and effective communication will be established when final copy is issued.

INMATE PLEA: The subject waived his right to attend the hearing, therefore, a plea of "Not Guilty", was entered on his behalf by this SHO.

REQUEST FOR WITNESSES: Prior to the hearing the subject did not request the presence of any witnesses.

EVIDENCE PRESENTED AT THE HEARING:
The CDCR-115 Rules Violation Report, Log #FC-15-05-023, dated 05-22-15.
The CDCR-115A Serious Rules Violation Report, dated 05-22-15.
The CDCR-115 Mental Health Assessment Request, dated 06-01-15.
The 128B Written Waiver to Attend the Disciplinary Hearing, dated 06-04-15.

FINDINGS: Found Guilty of the Division "D" Offense "WILLFULLY DELAYING A PEACE OFFICER BY (REFUSING ASSIGNED HOUSING)" This finding was based upon the preponderance of evidence presented at the hearing, consisting of:

1) The CDCR-115 Rules Violation Report authored by Correctional Officer P. Cruz, which states in part, "...I was approached by inmate ROMERO (H-56733, FCB8-131U), who stated he was not able to live with his cellmate anymore. I asked ROMERO what was his problem with his cellmate. ROMERO stated, "My only problem with him is that we are two different types of people, I just can't live with a Black guy." I asked ROMERO of his cellmate threatened him and ROMERO stated, "No, I just can't live with a Black guy." I informed ROMERO if there is no problem with him and his cellmate and the sole purpose for this conversation was to manipulate a convenience move from staff, then he will be receiving a CDCR Rule Violation Report for Refusing Assigned Housing..."

2) The subject, waived his right to attend the hearing and signed a CDC-128B waiver and did not provide a written statement of defense to support the "Not Guilty" plea entered by the SHO on his behalf this constitutes a lack of defense.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| K.A. DICKS, Corr. Lieutenant (SHO) | 6-5-15 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☑ COPY OF CDC-115-C GIVEN TO INMATE | | 8-4-15 | 2000 |

EXHIBIT J14

⑦

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## RULES VIOLATION REPORT - PART C

PAGE __3__ OF __3__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H-56733 | ROMERO | FC-15-05-023 | CSP-COR | 06-04-15 |

☐ SUPPLEMENTAL  ☑ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☑ HEARING ☐ IE REPORT ☐ OTHER

Failure to comply with the CCR, coupled with the documented evidence presented at the hearing, substantiates the finding of Guilty for the charged Specific Act of "WILLFULLY DELAYING A PEACE OFFICER BY (REFUSING ASSIGNED HOUSING)."

SHO NOTES: The Senior Hearing Officer notes that it is the expert opinion of the mental health clinician that the inmate's mental disorder did not appear to contribute to the behavior that led to this RVR. The SHO took the clinician's findings into consideration. During the assessment of penalties mitigating circumstances were considered. The SHO assessed the subject NINETY (90) days forfeiture of credit, and the period of suspension of privileges was reduced from THIRTY (30) days to ZERO LOP days. In doing so none of the penalties assessed were harsh, nor were they meant to be, however, the purpose of the penalties are to help the subject understand cause and effect and these penalties will not impede the subject's ongoing therapy. Furthermore, the inmate's statement of, "I just can't live with a Black guy", which he stated twice is not inclusive of a Mental Health symptom. It is a personal preference the Subjects interaction with the Reporting Employee did not indicate any type of mental health issues occurring at the time of the incident.

APPEAL RIGHTS:   This is to notify the Inmate of his right to appeal, by submitting an appeal (CDCR-602) within THIRTY (30) days following receipt of the finalized copy of the CDCR-115. This is to including. Credit Restoration procedures as outline in CCR 3327, due to the inmate waived to attend the Hearing. The Inmate will receive a completed copy of this report upon final audit by the CDO

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| K.A. DICKS, Corr. Lieutenant (SHO) | | 6-5-15 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☑ COPY OF CDC-115-C GIVEN TO INMATE | | 8-4-15 | 2000 |

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, ████████ BOWEN, as the Official Transcriber,

hereby certify that the attached proceedings:

In the matter of the Life ) CDC Number: H-56733
Term Parole Consideration )
Hearing of: )
 )
LUIS ROMERO )
 )

KERN VALLEY STATE PRISON

DELANO, CALIFORNIA

JULY 9, 2015

8:39 A.M.

were held as herein appears.  Further, this transcript

is a true, complete, and accurate record, to the best of

my ability, of the recorded material provided for

transcription.

_Bowen_

Bowen
July 22, 2015
Northern California Court Reporters
Copyright 2015/All Rights Reserved by BPH

_Northern California Court Reporters_

1  **CALIFORNIA BOARD OF PAROLE HEARINGS**

2      **D E C I S I O N**

3      DEPUTY COMMISSIONER STANTON:  We're back on

4  record.

5      PRESIDING COMMISSIONER SINGH:  All right.  The

6  time is now approximately 10:24 a.m.  All of the parties

7  have returned to the Hearing Room that were present

8  before we recessed for deliberations.  For the record,

9  Mr. Romero was received by CDCR on December 23rd, 1992

10  from Los Angeles County.  The controlling offense in

11  this case is a violation of Penal Code Section 187,

12  Second-Degree Murder arising from a conviction in Case

13  Number ▇▇▇▇▇▇▇ resulting in a life sentence.  The

14  victim in this case is ▇▇▇▇▇▇▇▇▇  The Department

15  has determined that Mr. Romero does qualify as a

16  Youthful Offender pursuant to Penal Code 3051 as enacted

17  by Senate Bill 260.  And the Panel has taken into

18  consideration the Youth Offender factors, noting that

19  when Mr. Romero committed the life crime, he had not yet

20  attained 18 years of age and we gave great weight to the

21  diminished culpability of juveniles as compared to

22  adults, the hallmark features of youth, and any

23  subsequent growth and maturity in reviewing Mr. Romero's

24  parole suitability today.  The Panel read and considered

25  **LUIS ROMERO       H-56733       DECISION PAGE 1       7/9/15**

63

1   the written record that was before us, documentation in

2   the Central File.  We took into consideration the

3   testimony that was presented to us here today and any

4   written responses received from the public.  We did not

5   take into consideration the Comprehensive Risk

6   Assessment that was prepared by Dr. Carrera in June of

7   2015.  We did exclude that document today, only because

8   Mr. Romero had not gotten a copy timely and we felt that

9   it would not be fair to take that document into

10  consideration.  So we've relied on all the other

11  documents that were available to us but excluding

12  Dr. Carrera's Risk Assessment.  The Panel -- the

13  fundamental consideration for this Panel is basically to

14  determine are you still a threat to public safety.  So

15  we spent time this morning talking to you, we've gone

16  through the documents that were available to us today,

17  and we gave great weight to the Youth Offender factors.

18  And it is this Panel's conclusion, Mr. Romero, that you

19  still do pose an unreasonable risk of danger or a threat

20  to public safety and so we're finding to you to be not

21  suitable for parole.  Our decision is based on a number

22  of factors.  When we took into consideration the Youth

23  Offender factors, we give great weight to each of those

24  factors; you did commit the crime as a juvenile and

25  **LUIS ROMERO    H-56733    DECISION PAGE 2    7/9/15**

64

1  juveniles do have diminished culpability as compared to

2  adults.  We took into consideration the development of

3  the brain, the negative influences that you were

4  susceptible to, noting that as a juvenile you didn't

5  really have control over your environment.  We took note

6  and gave weight to the fact that you did have a very

7  unstable social history; unfortunately, your family --

8  your parents separated when you very young, you were

9  subjected to physical abuse at the hands of your mother,

10  you were a victim of a sex crime when you were very

11  young, and so we took all those factors into

12  consideration.  The instability that you had to face as

13  a young man is unfortunate.  We also gave great weight

14  to the second Youth Offender factors that the hallmark

15  features of youth as compared to adults, youths do lack

16  maturity, they act recklessly, impulsively, risk-taking,

17  inability to assess consequences; all of those were

18  exhibited by you when you were younger based on the

19  crime that you committed, demonstrated your impulsivity,

20  your transient rashness, your inability to assess the

21  consequences.  And then when we looked at the third

22  element, growth, maturity, and rehabilitation, we gave

23  great weight to that as well, and that's were you have

24  definitely fallen short.  You haven't demonstrated

25  LUIS ROMERO       H-56733     DECISION PAGE 3     7/9/15

1  growth or maturity or any measurable rehabilitation in

2  this Panel's opinion.  You have engaged in serious

3  misconduct since you have been incarcerated.  Your rules

4  violations are extensive and what's really troubling are

5  the most recent rules violations that you have from 2013

6  and 2014, both involve acts of violence.  You've

7  committed battery.  The Panel looked at the 2014 rules

8  violation and that was from December, so that's very

9  recent.  And you were 40 years old at the time.  So we

10  absolutely have to question your growth and maturity in

11  your behaviors.  You're still acting violently.  That

12  makes you a continued threat to public safety.  If you

13  can't follow rules in prison and if you can't stop being

14  violent in prison, there's no guarantee that you're

15  going not be violent when you're in the free community.

16  You haven't gained any type of tools that you can handle

17  your anger or your frustrations.  Whatever those things

18  are that are making you act out violently, you need to

19  figure that out and stop.  These rules violations are

20  serious.  You haven't engaged in institutional

21  activities, which indicate to this Panel that you'd be

22  able to function within the law upon release.  You have

23  been involved in minimal programming through EOP.

24  You've been doing some therapy groups.  But you weren't

25  **LUIS ROMERO      H-56733      DECISION PAGE 4      7/9/15**

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**                73
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

11 ϸ o 9

1 really able to demonstrate that you have gained anything

2 from those groups. Substance abuse is a critical risk

3 factor for you. Although, you've indicated that you've

4 been able to refrain from use of alcohol or drugs in

5 prison, you haven't really been able to gain greater

6 insight into your substance abuse issues. You

7 haven't -- relapse is possible and at this point the

8 Panel isn't convinced that you have the tools necessary

9 to prevent relapse if you're in the community and that's

10 going to be a significant issue. You were intoxicated

11 when you committed the life crime. You basically are

12 blaming your intoxication for the life crime. And so

13 your substance abuse is definitely a concern. You

14 haven't demonstrated any insight, in this Panel's

15 opinion, into the circumstances of the life crime. You

16 haven't demonstrated any remorse. Every time you are

17 asked about the impact that this crime has had you

18 always brought up the family -- your family. You were

19 impacted. You'd bring up Maggie Salinas' name but it

20 was almost like an afterthought. So you haven't really

21 demonstrated any remorse as far as this Panel is

22 concerned. You are currently EOP status, you are part

23 of the Mental Health System. We've gone through a

24 number of documents that are in your Central File, which

25 **LUIS ROMERO      H-56733      DECISION PAGE 5      7/9/15**

1   at some points question the veracity, basically your

2   symptoms.  The 2012 Risk Assessment, the evaluator noted

3   that it appeared as if you were exaggerating your

4   psychiatric symptoms.  And that was also noted in other

5   CDCR documents that are in your Central File.  So we

6   really question your credibility.  We question whether

7   you've involved yourself in any measureable

8   rehabilitation, in your groups that you're participating

9   in, and your serious misconduct is definitely a concern

10  of this Panel.  So the Panel believes that you still

11  remain an unreasonable risk of danger and that is why

12  we're finding you to be not suitable for parole.

13  Commissioner Stanton?

14          DEPUTY COMMISSIONER STANTON:  Commissioner, you

15  said it pretty much.  I mean, you came to prison for an

16  extremely violent crime.  You shot an innocent girl and

17  she pled for you to not to.  And instead of coming to

18  prison and trying to find out why you would do something

    like that and deal with those issues and improve

    yourself, you just continue to get in more trouble and

    get involved in more violence until even very recently.

    So obviously, that makes you an extreme risk to the

    community, and therefore you're not suitable for parole.

24  And I think, if you really want to get suitable for

25  LUIS ROMERO      H-56733      DECISION PAGE 6      7/9/15

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

75

1  parole, you need to do a complete change which is start

2  taking responsibility for what you've done.  You need to

3  find out what caused you to be that kind of person and

4  you need to stay out of trouble.  You do that through

5  taking programs and caring about other people, caring

6  about your own life.  And that's all I can tell you.  I

7  wish you the best of luck.

8      PRESIDING COMMISSIONER SINGH:  All right.

   Because you are a qualified Youth Offender, there is no

   term calculation that is required.)  The Panel then

11  determined the length of denial.  We did first consider

12  whether a 15-year denial was necessary but based on

13  clear and convincing evidence, determined a 15-year

14  denial is not appropriate.  The clear and convincing

15  evidence before the Panel that we did take into

16  consideration, you are involving yourself in some

17  self-help programs, albeit limited, and you are also a

18  Youth Offender so we did take into consideration the

19  fact that you were 17 at the time of the commission of

20  the life crime, we have determined that your next parole

21  suitability hearing will be set in ten years' years

22  time.  You can request an earlier hearing than the

23  denial length, provided there's a change of circumstance

24  or there is new information that establishes a

25  LUIS ROMERO      H-56733      DECISION PAGE 7      7/9/15

1  reasonable likelihood you do not require additional

2  incarceration and that's the Petition to Advance

3  process.  It's a Form 1045A.  Before your next hearing,

4  you need to remain disciplinary-free.  You can't get any

5  more write-ups.  You need to involve yourself in therapy

6  and self-help.  You need to get work on your GED.  You

7  need to work on learning a trade because you're very

8  young, so you need to have some skills that you can use

9  when you're in the community.  You need to really work

10  on your parole plans and not just having a place to live

11  and a home to go to but you need to be ready to be back

12  in the community.  You need to be ready for all the

13  stresses you're going to face and your parole plans are

14  lacking in that today.  So you have a lot of work ahead

15  of you, Mr. Romero.  And so with that, good luck.  That

16  does conclude today's hearing.

17      INMATE ROMERO:  Thank you.

18      PRESIDING COMMISSIONER SINGH:  The time is now

19  10:36 a.m.

20          A D J O U R N M E N T

21

22

23

24

25  LUIS ROMERO     H-56733     DECISION PAGE 8     7/9/15



**LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR MARCH 17-18, 2003**

**ROMERO, LUIS   H-56733**

## I.  COMMITMENT FACTORS:

A.  **Life Crime:**  Inmate Romero was committed to the California Youth Authority on December 23, 1992. His crime of commitment is Murder in the 2nd Degree with the Use of a Firearm (handgun), PC187(a) with allegations pursuant to PC12022.5(a) for a total sentence of 18 years to Life (Los Angeles County Superior Court Case #TA018615). Inmate Romero has a MEPD of April 16, 2004. Victim: ▮▮▮▮▮ Victim was not related to the defendant.

**Offense Summary:** According to the Probation Officer's Report dated August 11, 1992 and ▮▮▮▮▮▮▮ Inmate Romero stated he was drinking with friends on January 18, 1992. Inmate Romero stated he was walking with a girl, the victim, ▮▮▮▮▮ at 10:30 P.M. on the sidewalk at ▮▮▮ Piru Street in Compton, when he saw gang members. Inmate Romero stated he shot at the gang members and accidentally, shot the girl that he was walking with, twice. The victim sustained two gunshot wounds to her upper body. Los Angeles County Sheriff's Deputies Johnson and King responded to the call. While enroute, the deputies received a radio call from Deputy Schuessler requesting assistance in detaining two possible PC245 (Assault with a Deadly Weapon) suspects at Piru Street and ▮▮▮ Avenue in Compton. This location is less than two blocks from the original shooting incident. When deputies Johnson and King arrived at Deputy Schuessler's location, they observed the deputy detaining twon male Hispanics, later identified as Luis Romero and his companion, ▮▮▮▮▮ The deputies aided in safely detaining the two suspects and recovered a pistol from the bed of a truck that was parked at the location. Romero was detained in the back seat of the responding deputies' vehicle while ▮▮▮ was detained in the back seat of another Lynwood Unit.

When Deputies Johnson and King responded to 2149 Piru Street (the location of their original call), they observed a female Hispanic, later identified as the victim, Maggie Salinas, receiving emergency first aid from the Los Angeles County Fire Engine #41 Paramedics. The victim was subsequently transported by ambulance to Martin Luther King Hospital where at 2:11 a.m. on January 19, 1992, she expired as a result of her wounds.

Subsequent investigations revealed that two witnesses on the corner of the street heard a gunshot and observed a female fall backwards against a fence, and then fall to the ground. According to the witnesses, after the girl fell to the ground, the male stood over her and pointed the gun directly at her and fired one more time. The witnesses observed the muzzle blast of the gun as he fired the weapon.

The female companion ▮▮▮▮▮ of the victim was also interviewed by the Lynwood Sheriff's Deputies at the station. She stated, prior to the murder, at approximately 8:00 p.m. on 1/18/92, a gang-related individual, whom she knew as ▮▮▮▮▮ and another male with a female by the name of ▮▮▮ picked her up and two other friends, to go visit some guys at a residence on Piru Street in



BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12-23-05<br>to<br>02-16-06<br>(present)<br>(con't) | | | **Group Activities:** None noted this period.<br><br>**Mental Health:** Remained CCCMS level of care.<br><br>**Prison Behavior:** On 1-12-06, received a serious CDC 115 for Resisting Staff.<br><br>**Other:** None noted this period. |

**ORDER:**

☐ BPT date advanced by _____ months.          ☐ BPT date affirmed without change

☐ PBR date advanced by _____ months           ☐ PBR date affirmed without change

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| ROMERO, LUIS | H56733 | CSP-LAC | 04/2006 | |

BPT 1004 (REV. 7/86)                    PAGE __4__ of __4__                    *nb*          PERMANENT ADDENDA

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

79

Compton. The vehicle that ███████ was in was a 2 door gray Regal. She said they traveled to the residence and went inside the house. The witness stated that she only knew the house was on Piru Street, in the area of the shooting but did not know the address. According to the report, they were there for the purpose of partying.

While inside of the residence, the witness stated that she drank a few sips of St. Ives beer, from a 40 ounce size bottle, and engaged in general conservation with the residents. She said there were approximately five male Hispanics in the house but she only knew ████████████████ and two others whom she did not know. She stated she had never met the other two before.

About 9:00 p.m., ████████ stated that he wanted to be with her. She replied "No" that she was not interested. She said that during the evening, the males were drinking mixed drinks of St. Ives beer and Thunderbird wine. She stated that at approximately 10:15 p.m., the same evening, while in the kitchen, ██████ pulled out a gun and pointed it at her friend, ██████████ who was wearing a black jacket and said that he wanted her jacket. Just after this incident, his friends told him to quit and for the girls to ignore him because he was drunk.

The witness and another friend ██████████ became upset at this incident and started to leave the location. As they were walking away, the victim ████████ called out for them to come back but they wouldn't. The victim then started to follow them down the street and as the witness and her friend crossed the street, they looked back and saw the victim coming towards them. During this time, the witness indicated that someone else was walking behind the victim, and she yelled for her to run. The witness then turned in an eastbound direction and heard a shot, then immediately looked back and saw the victim sitting down and heard her plead out, "No, please." She then observed ██████ shoot the victim as she was lying on the ground.

The witness and her companion then turned and ran eastbound on Piru Street. They stated that ████████ started to run after them, but they ran through some backyards and didn't see what he did after that. The witness and her companion ran to an address on Hatchway Street, where they saw a lady who was outside and asked to use her phone to call her sister. The witness called her sister and asked for her to come to pick her up.

While the girls waited for the sister to show up, the lady at the location summoned help, called Lynwood Sheriff's Station and the Sheriff's arrived, picking up both witnesses and taking them to the location of the shooting where they saw the subject ██████ seated in the rear seat of a police vehicle. The witnesses positively identified the individual as the person that shot the victim.

2.  Prisoner's Version: When inmate Romero was interviewed, he indicated that he could not recall everything that happened that day because he suffered from blackouts due to his heavy drinking. When the details of the incident as told by ████████ to the police were read to him, he stated that was what occurred that day. Inmate Romero stated that on the night of the crime, he was at his home when his homeboys came by at about 6 or 7 p.m. with some girls.

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**



LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF MARCH 24, 2003
ROMERO, LUIS   H56733
PAGE 3

Romero stated that he had the gun, which was loaded, in the waistband of his pants. Romero also stated that he had traded a bicycle for the gun and had fired it earlier in that same day at his next door neighbor's house. Romero stated that he had been drinking heavily that night and that later in the evening, the guys began pairing up with the girls. He stated that he approached one of the girls███████ and told her that he wanted to be with her. She told him "No". Romero stated that he liked her black Raiders jacket, pulled out his handgun and pointed it at her indicating that he wanted it. Romero stated that his friends told him to leave the girl alone indicating that he was drunk. ████████ and one of the other girls decided to leave the party after the incident. The victim,████████heard the argument and came out of the bedroom just as the two girls were leaving. The victim got her things and began to follow her girlfriends. Romero said he followed the girls because he wanted the Raiders jacket. Romero stated that he thought the victim, was wearing the jacket and when he caught up with her he shot her once. The victim fell against a fence and then to the ground. Romero stated that he stood over her and shot her again. Romero said that he ran back to his home and told the guys what he had done. They told him to leave. Romero said that he began to run around the backside of the block and threw the gun into a vacant lot. Romero said he was arrested by the deputies after he tossed the gun into the vacant lot. The gun was recovered by the deputies who arrested him. Romero stated that he felt remorse for the victim. He also stated that he was young (17 yrs. old) when the incident occurred and was drinking heavily that night, a mixture of Olde English & Thunderbird. Romero stated that the incident was not planned and he never wanted the girl to die.

3.  **Aggravating Circumstances:**

    a) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness.
    b) The defendant was armed with or used a weapon at the time of the commission of the crime.

4.  **Mitigating Circumstances:**

    a) He has no prior record or an insignificant record of criminal conduct considering the recency and frequency of prior crimes.

## II. PRE-CONVICTION FACTORS:

A.  **Juvenile Record:** None.

B.  **Adult Convictions:** The Instant Offense is Inmate Romero's only adult conviction.

C.  **Personal Factors:** Inmate Romero is a 28 year old, first termer born on██████ ████████ Guatemala City, Guatemala, Central America. He is the oldest of three children. Romero was born from the union of █████████████and████████ ███████His biological parents are divorced and Romero indicated his father still lives



LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF MARCH 24, 2003
ROMERO, LUIS   H56733
PAGE 4

in Guatemala. Romero's mother married his step-father, ███████ and he has two half-sisters, ███████ as a result of their union. Prior to his incarceration, Romero was living in the city of Compton in the company of his biological mother and step-father. According to the Probation Officer's Report dated 3/17/92, Romero came to the United States in February, 1990. Romero has never been married and has never fathered a child.

## III. POST CONVICTION FACTORS:

### A. Institutional History:

| | | |
|---|---|---|
| 12/23/92 | received SRCC/CYA | |
| 5/23/96 | transferred to DVI/RC, CYA reject (adverse transfer) | |
| 5/23/96 | received RCC/CIM | |
| 8/19/96 | received CSP/LAC | CLO B |
| 3/14/01 | received CTF | MED A (Custody reduced on 2/9/99) |
| 6/7/02 | received CEN | MED A |

### B. Disciplinary History:

1. Reports of Disposition and Review (CYA)

| | | |
|---|---|---|
| 6/20/94 | Verbal Threats | Division F, 30 days credit loss |
| 8/24/94 | Fighting | Division F, 30 days credit loss |
| 6/15/95 | Failure to Meet Pre-established Program Goals, Division F offense, 10 days full room restriction suspended upon completion of 5 days on Phase A Work Crew | |
| 9/23/95 | Gang Activity | Division F, 30 days credit loss |

Per the Herman G. Stark Youth Training School Transfer Summary dated 5/21/96, Romero also received several Level A Behavior Reports for minor rule

violations including: 6/9/93 - Not Working in Class, and 11/4/93 - Failing Room Inspection.

2. CDC 115's:

| | | |
|---|---|---|
| 10/27/98 | Mutual Combat | Division D, 90 days credit loss |
| 12/27/00 | Willfully Resisting, Delaying or obstructing any Peace Officer in Performance of Duty, 90 days credit loss | |
| 3/31/02 | Mutual Combat | Division D, 90 days credit loss |
| 6/15/02 | Introduction of Contraband to an Ad-Seg Unit, Division F, 30 days credit loss | |

**EXHIBIT J5**

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF MARCH 24, 2003
ROMERO, LUIS   H56733
PAGE 5

3. CDC 128a's:

| | |
|---|---|
| 10/23/96 | Performance |
| 10/23/96 | Performance |
| 7/31/97 | Failure to Report |
| 3/31/00 | Participation |

C. Work History:

While at CYA, Romero completed 200 hours in Plastering and attended ESL classes. Romero's Central File reflects that he was assigned to ESL at CSP/LAC from September 13, 1996 to July 22, 1997. Romero was terminated from ESL due to Class closure with unsatisfactory and satisfactory grades. Romero was reassigned to ESL from January 24, 1998 through April 30, 2001 with unsatisfactory to satisfactory grades. Romero was transferred to CTF on 3/14/01 and assigned to Position No. RAS-N-502 from 3/22/01 to 3/30/01 with no evaluations noted. On April 1, 2001, Romero was assigned to Vocational Paint and Decoration on April 1, 2001 through March 31, 2002 with evaluations noted indicating "S" had an excellent attitude but much difficulty with written assignments due to his inability to read and write. Romero was assigned to ABE III on April 19, 2002 to May 7, 2002 with satisfactory grades. Romero was transferred to Centinela State Prison on June 7, 2002 and assigned to ABE I on July 9/2002 where he remains at present.

D. Treatment Programs:

Romero actively participated in the Alcoholics Anonymous/Narcotics Anonymous Meetings at CSP/Los Angeles during the following periods:

| | | | |
|---|---|---|---|
| 10/30/97 to 12/30/97 (AA) | | 7/1/00 to 9/30/00 | (NA) |
| 1/1/98 to 3/30/98 (AA) | | 7/8/00 to 9/23/00 | (AA & NA) |
| 4/30/98 to 6/30/98 (AA & NA) | | 10/15/00 to 12/31/00 (AA & NA) |
| E. to 3/31/00 (AA & NA) | | | |

E. Accomplishments in Work:

Romero's Central file reflects that he received a Certificate of Achievement/Vocational Paint and Decorating in Orientation dated 1/31/02. Romero also received a Certificate of Achievement dated 3/26/02 from Vocational Paint and Decorating in Shop Safety

F. BPT Recommendations:

Inmate Romero has appeared before the Board of Prison Terms for Documentation Hearings on 10/15/97 and 9/27/00. The Board of prison Terms recommended that Romero obtain his GED, Continue participation in AA and to become and remain disciplinary free.

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF MARCH 24, 2003
ROMERO, LUIS    H56733
PAGE 6

## IV. FUTURE PLANS:

If deported, Romero stated he would be residing in Guatemala City, Guatemala where he has a younger brother who he would be residing with. If not deported, Romero would be living in Compton with his mother, two sisters and step-father.

If deported, he would work as a painter. If not deported, Romero would enroll in a city program that trains employees in various fields in order to eventually obtain employment.

## V. USINS STATUS:

Inmate Romero was born in Guatemala City, Guatemala, Central America. He came to the United States in February of 1990. His mother came to the United States with her sister, Romero's aunt, in 1985 as an illegal alien. Romero has a current active USINS Hold #A73816424.

## VI. SUMMARY:

A. Considering his commitment offense, prior record, and prison adjustment, this writer believes the prisoner would probably pose a moderate degree of threat to the public, at this time, if released from prison.

B. Prior to release, Inmate Romero would benefit from:

1. Becoming and maintaining a disciplinary free record
2. Obtaining his GED.
3. Continuing to participate in any Self-help groups, such as, AA or NA.

C. This report is based upon approximately a three hour oral interview with Inmate Romero and approximately five hours of review of his Central file. Inmate Romero is aware of his Board Hearing and was given the opportunity to review his Central File.


Prepared by: S. VALENZUELA
Correctional Counselor I

Reviewed by: R. JOHNSON
Correctional Counselor II

EXHIBIT J

BOARD OF PRISON TERMS
LIFER PRISONER: POSTCONVICTION PROGRESS REPORT · STATE OF CALIFORNIA

☐ DOCUMENTATION HEARING
☒ PAROLE CONSIDERATION HEARING          *INITIAL*
☐ PROGRESS HEARING

**INSTRUCTIONS:**
TO CDC STAFF:   DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF:   FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
               ESTABLISHED, I.E., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE SS2290-2292-2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6/27/00 TO 12/22/00 | | | **PLACEMENT:** Remained at CSP/LAC. **CUSTODY:** Remained at MED A. **VOCATIONAL TRAINING:** None noted. **ACADEMICS:** Assigned to ESL. "S" received a CDC 128e dated 6/30/00 which reflected a satisfactory behavior assessment. **WORK RECORD:** None noted. **GROUP ACTIVITIES:** "S" received two CDC 128b's dated 9/30/00 for the quarter covering 7/8/00 through 9/23/00 for participating in Narcotics Anonymous and Alcohol Anonymous. Also noted was a CDC 128b dated 9/30/00 for the quarter covering 7/1/00 through 9/30/00 for participating in Narcotics Anonymous. None noted. **PSYCHIATRIC TREATMENT:** None noted. **PRISON BEHAVIOR:** "S" received a CDC 128a dated 3/31/00 for Participation which was not noted on the prior Documentation Report. **OTHER:** None noted. |
| 12/23/00 TO 12/22/01 | | | **PLACEMENT:** Remained at CSP/LAC until transferred to CTF on 3/14/01.. **CUSTODY:** Remained at MED A. **VOCATIONAL TRAINING:** Assigned to Vocational Paint and Decoration Program on 3/31/01. There were no Education Progress Reports noted for this period. **ACADEMICS:** Remained assigned to ESL until transferred to CTF on 3/14/01. However, "S" C-file noted time cards for the entire month of March, April and through the 12th of May, 2001. There was an Education Progress Report dated 6/30/00 for this period which reflected a satisfactory behavior assessment. **WORK RECORD:** Assigned to Pos. # RAS-N-502 on March 22, 2001 at CTF-N and unassigned on March 30, 2001. There were no Education Progress Reports noted for this assignment. **GROUP ACTIVITIES:** "S" received two CDC 128b's dated 12/31/00 for the quarter covering 10/15/00 through 12/31/00 for Participating in Narcotics Anonymous and Alcohol Anonymous. **PSYCHIATRIC TREATMENT:** None noted. **PRISON BEHAVIOR:** "S" received a CDC 115, Log No. FC-00-12-162 dated 12/27/00 for the specific offense of Obstruction of a Peace Officer. "S" was found guilty on 1/16/01 for Willfully Resisting, Delaying or Obstructing any Peace Officer in the Performance of Duty. Additionally, "S" was assessed 90 days loss of behavioral credits. **OTHER:** None noted. |

| S. VALENZUELA, CORRECTIONAL COUNSELOR I | R. JOHNSON, CORRECTIONAL COUNSELOR II | DATE 12/11/02 |
|---|---|---|

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| **ROMERO, LUIS** | **H-56733** | **CENTINELA** | | **MARCH, 2003** |

BPT 1004 (REV. 7/86)          PAGE 1 OF 2

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

85

EXHIBIT J15





*County of Los Angeles*
# Sheriff's Department Headquarters
*4700 Ramona Boulevard*
*Monterey Park, California 91754-2169*

(323) 890-5500

092-00842-2532-011

RECEIVED
JUL 2 1 2015
CORRESPONDENCE UNIT

July 9, 2015

Kern Valley State Prison
3000 West Cecil Avenue
Delano, California 93215-6000

### LUIS GILBERTO ROMERO
### CDC NO. H-56733

We received notification that Inmate Romero is scheduled to appear before the Board of Prison Terms for a hearing to be held on July 9, 2015. Unfortunately, the hearing has already passed, but we would like you to have the following information for your files. The following represents a summary of the facts as contained in the Homicide Bureau files and is submitted for your consideration.

*Please note: Due to the volume of hearing notices received by Homicide Bureau, we will no longer respond with updated letters merely due to the change of an inmate's hearing date. Once a letter is submitted, it should be considered the current response from this Bureau for the current review period, even if the originally scheduled hearing is postponed.*

On January 18, 1992, Suspect Luis Romero, and several other members of the "Locos Trece" street gang, were attending a party at a private residence in the city of Compton. While inside the party, Romero approached Victim ▇▇▇▇▇▇ under the impression she was from a rival gang, and asked her where she was from. When ▇▇▇ failed to answer him, he followed her outside where he produced a handgun and shot her.

▇▇▇▇ sustained three gunshot wounds. She was transported to a local hospital where efforts to save her life failed and she died while undergoing emergency surgery.

Based on the facts of this case, it is the opinion of this Department the parole of Inmate Romero is inappropriate and should be denied.

Sincerely,

JIM MCDONNELL, SHERIFF

▇▇▇▇▇▇ Kusch, Captain
Homicide Bureau

*A Tradition of Service Since 1850*

EXHIBIT J-5

12



BOARD OF PAROLE HEARINGS
P.O. BOX 4036
SACRAMENTO, CA 95812-4036
(916) 445-4072

**NOTICE OF HEARING**
Pursuant to Penal Code Section 3042

DATE:   May 4, 2015

REVISED
HEARING DATE & TIME
CHANGED

TO:     LOS ANGELES CO. SHERIFF
        12440 EAST IMPERIAL HIGHWAY, STE 400 WEST
        NORWALK, CA 90650

RE:     NAME:      ROMERO, LUIS, GILBERTO
        CDCR#:     H56733
        DOB:
        COURT CASE#:  TA018615

The above named inmate will appear for a hearing before the Board of Parole Hearings (Board). The hearing will be held on July  9, 2015 at 8:30 AM at

 KERN VALLEY STATE PRISON
3000 WEST CECIL AVENUE
DELANO, CA 93215-6000

Pursuant to Penal Code 3042, the Board shall send written notice of any hearing to review or consider the parole suitability or the setting of a parole date for any inmate to the law enforcement agency that investigated the case, and where the inmate was convicted of the murder of a peace officer, the law enforcement agency which had employed that peace officer at the time of the murder.

Your comments and recommendations regarding this case are respectfully invited for presentation to the Board. Please submit your written response attached to this notice no later than 10 days prior to the Monday of the hearing week. If you have documents or reports which include information about the inmate, the inmate's offense(s), or the inmate's prior criminal history, you are encouraged to submit those along with your comments and recommendations.

If you have any questions, you may contact the Board at (916) 445-4072 or by e-mail at BPHLiferAnalyst@cdcr.ca.gov.

**Please mail reply to:**
        BOARD OF PAROLE HEARINGS
        ATTN: PRE-HEARING CORRESPONDENCE
        P.O. BOX 4036
        SACRAMENTO, CA 95812-4036

BPH 1087(E) (Rev. 09/01/14)



# Certificate of Completion

## Kern Valley State Prison
### Department of Mental Health

Attest to the completion of the
twelve-week course of group instruction in:

## Beyond Anger: Connecting With Self & Others

To: ROMERO, LUIS

H56733

Presented on this 28th day of January, 2016

T. Taylor, Ph.D., Sr. Psychologist

J. Sagun, Ph.D., EOP Psychologist







CALIFORNIA DEPARTMENT OF
Corrections and Rehabilitation

KERN VALLEY
STATE PRISON
R & R DEPT.

2016 OCT 24

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | MEPD | FACILITY | HOUSING LOCATION |
|---|---|---|---|---|
| H56733 | ROMERO, LUIS G. | 10/11/2005 | KVSP-Facility C | KVSP-C - C 002 1 - 115001L |

| VIOLATION DATE | VIOLATION TIME | VIOLATION LOCATION | | WITH STG NEXUS |
|---|---|---|---|---|
| 10/01/2016 | 15:30:00 | KVSP-Facility C - RVR - CELL | | No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Saturday, October 01, 2016, at approximately 1530 hours while working as Facility C, Building 2, Floor Officer #1, I heard banging sounds coming from cell 115. Correctional O_____ n an I a roached cell 115. I observed Inmate Romero, H56733 (FCB2 cell 115U), and Inmate _____ tangled with each other wrestling around while standing up. I gave both Inmates an order to stop. Inmates ▮▮▮▮ and Romero complied with my orders and approached the cell door where I secured them both in handcuffs. I removed both Inmates from cell 115. Inmate Romero was escorted to Facility C Medical, and Inmate ▮▮▮▮▮▮ was escorted to the Facility C Program office. During the escort both Inmates made a spontaneous statement admitting to fighting each other over an argument. Inmate ▮▮▮▮▮ made a spontaneous statement regarding Inmate Romero getting crazy when he takes his medication. I informed my su ervisors of the situation.

| REPORTING EMPLOYEE | TITLE | ASSIGNMENT | RDO | DATE: |
|---|---|---|---|---|
| M. Wood | Officer | FCB2 Floor Officer#1 | ▮▮▮▮ | 10/01/2016 |

RVR LOG NUMBER: 000000000994525        VIOLATED RULE NUMBER: 3005(d)(1)

SPECIFIC ACT: Fighting

CLASSIFICATION

LEVEL: Serious                                          OFFENSE DIVISION: Division D

REFERRED TO: Senior Hearing Officer          FELONY PROSECUTION LIKELY: No

| REVIEWING SUPERVISOR | TITLE | DATE |
|---|---|---|
| L. Moore | Sergeant | 10/01/2016 |

CDC NUMBER: H56733 NAME: ROMERO, LUIS G. LOG#: 000000000994525          Page 1 of 4

Subject was found: [Guilty as Charged] based on a preponderance of evidence.

Lesser Included Charge:

Level:                                    Offense Division:

Offense Occurrence:

**Comments:**

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

## EVIDENCE

The following evidence was used to support the findings:

**Comments:**

1) The RVR authored by Officer Swarner which states in part, "On Saturday, December 8, 2018, at approximately 2000 hours while preforming my assigned duties as 'A' Facility Building 1 Floor 1 Officer I heard the sound of banging on the cell 118 door. Upon inspection of the door I observed two inmates, later identified by CDCR ID and housing roster as ▮▮▮▮▮▮▮ and ROMERO (H56733 ; A1-118L), on the ground with one mounted on top of the other swinging with his fist to the head of the other while the inmate on the ground was swinging his fist in an upward motion towards the inmate on top. I issued verbal commands for the inmates to separate and "Stop Fighting" with no compliance. I got on my state issued radio and notified "Main control, Building 1 has a one on one cell fight in cell 118, requesting a Code 1 response to building 1". As the fight continued and with not enough staff on site to open the cell door, I unlocked the cell food port and utilizing my state issued Saber MK9 Oleoresin Capsicum (OC Pepper Spray) delivered a two second burst from approximately 6 feet to the facial area of both inmates striking the inmate on top in the facial area. ▮▮▮▮ and ROMERO separated from their grapple as the spray had the desired effect."

2) The CDCR 7219's completed for ▮▮▮▮▮▮▮▮▮▮ and ROMERO (H56733 ; A1-118L), which depict injuries consistent with being involved in a fight.

## DISPOSITION

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 90 Days | [No] | ⬚ | ⬚ | ⬚ | ⬚ | | |
| Confined to Quarters Days | | | ⬚ | ⬚ | ⬚ | ⬚ | | |
| Confined to Quarters Weekends | | | ⬚ | ⬚ | ⬚ | ⬚ | | |
| Disciplinary Detention | | | ⬚ | ⬚ | ⬚ | ⬚ | | |

CDCR SOMS ISST126 - CDC NUMBER: H56733 NAME: ROMERO, LUIS G.                    Page 5 of 9

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C - STAFF REPORT**
CDCR 837-C (Rev. 10/15)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE 1 Of 1 | INCIDENT LOG NUMBER MCSP-AYD-19-01-0029 |
|---|---|

| NAME: LAST TEJEDA | FIRST | MI | DATE OF INCIDENT 1/18/2019 | TIME OF INCIDENT 0717 |
|---|---|---|---|---|

| POST # 211780 | POSITION A SEC PAT # 4 | YEARS OF SERVICE ▨ YRS. ▨ MO. | DATE OF REPORT 1/18/2019 | LOCATION OF INCIDENT FACILITY "A" YARD |
|---|---|---|---|---|

| RDO'S S/M | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT POSSESSION OF AN INMATE MANUFACTURED WEAPON | CCR SECTION / RULE 3006 (a)  ☐ N/A |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ Primary | (S) G. PEREZ | (S) ROMERO H56733 |
| ☒ Responder | (S) J VINA | ██████████ |
| ☐ Witness | | |
| ☐ Camera | | |
| ☐ Victim | | |
| ☐ Other: | | |

**☒ N/A    FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / NON-CONVENTIONAL FORCE**

| ☐ Physical: | Lethal Weapons: | Warning: | Effect: | Less Lethal Weapons: | # Effect: | Chemical Agent: | Projector: | #Deployed: |
|---|---|---|---|---|---|---|---|---|
| ☐ Hand-Held Baton | ☐ Mini 14 | | | ☐ 37 mm | | ☐ OC | | |
| ☐ X-10 BRD w/o OC | ☐ .38 Cal | | | ☐ 40 mm | | ☐ CN | | |
| | ☐ .40 Cal | | | ☐ L8 | | ☐ CS | | |
| | ☐ 9 mm | | | ☐ 40 mm Multi | | | | |
| ☐ X-10 BRD w/ OC | ☐ Shotgun | | | ☐ HFWRS | | | | |

☐ Non-Conventional or Force Not Listed Above:

| FORCE OBSERVED BY YOU | ☒ N/A | ☐ Physical | ☐ Hand-Held Baton | ☐ Chemical Agent | ☐ X-10 | ☐ Less Lethal | ☐ Lethal | ☐ Non-Conventional |
|---|---|---|---|---|---|---|---|---|

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ YES ☒ NO | ☒ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKOWN ☐ Other: | ☐ YES ☒ NO |

NARRATIVE: : On Friday, January 18, 2019 at approximately 0717 hours, while performing my duties as Facility "A" Security Patrol #4, I was standing near B-side dining ██████ monitoring the morning meal when I observed inmate ROMERO (H-56733, A1-118L) strike inmate ██████ ith his fist in the facial area. I utilized my institutional assigned radio and notified OBA to put the yard down and Main Control of a Code 1 fight in front of Alpha dining. I gave both inmates a direct order to "Get down" both of the inmates complied and assumed a prone position. I provided coverage for Officer G. PEREZ as he placed ROMERO in mechanical restraints (handcuffs) before conducting a clothed body search G. PEREZ asked ROMERO if he was in possession on any contraband. I then observed G. PEREZ reach into ROMEROS left pocket of his jacket retrieving a weapon and placing it on the ground. I stood by the weapon until an unidentified staff member handed me a sharps container. I placed the weapon into the sharps container. I relinquished custody of the weapon to Officer J. VINA. I witnessed as J. VINA read Inmate ROMERO his Miranda Rights. With these rights in mind, ROMERO invoked his right to remain silent and declined to make a statement and refused to sign the Statement of Miranda Rights Advisement. I returned to my assigned post.

☐ CHECK IF NARRATIVE IS CONTINUED ON CDCR 837-C1.

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | BADGE # / ID # ██████ | DATE 1/18/2019 |
|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED 1/18/19 | CLARIFICATION NEEDED ☐ YES ☐ NO | APPROVED ☐ YES ☐ NO | DATE 1/18/19 |
|---|---|---|---|---|

DISTRIBUTION: Original: Incident Package  Copy: Reporting Employee  Copy: Reviewing Supervisor



STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C - STAFF REPORT**
CDCR 837-C (Rev. 10/15)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE 1 Of 2 | INCIDENT LOG NUMBER MCSP-AYD-19-01-0029 |
|---|---|

| NAME: LAST VINA | FIRST | MI | DATE OF INCIDENT 1/18/2019 | TIME OF INCIDENT 0717 |
|---|---|---|---|---|

| POST # 211770 | POSITION A SEC PAT #2 | YEARS OF SERVICE ▓ RS. ▓ MO. | DATE OF REPORT 1/18/2019 | LOCATION OF INCIDENT ALPHA YARD |
|---|---|---|---|---|

| RDO'S | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Possession of an Inmate Manufactured Weapon | CCR SECTION / RULE 3006(a) | ☐ N/A |
|---|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ Primary | (S) C/O N. Tejeda | (S) ROMERO        (H-56733, A1-118L) |
| ☒ Responder | (S) C/O G. Perez | |
| ☐ Witness | (S) LVN M. Arellano | |
| ☐ Camera | | |
| ☐ Victim | | |
| ☐ Other: | | |

| ☒ N/A | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / NON-CONVENTIONAL FORCE |
|---|---|

| ☐ Physical | Lethal Weapons: | Warning: | Effect: | Less Lethal Weapons: | # Effect: | Chemical Agent: | Projector: | #Deployed: |
|---|---|---|---|---|---|---|---|---|
| ☐ Hand-Held Baton | ☐ Mini 14 | | | ☐ 37 mm | | | | |
| ☒ X-10 BRD w/o OC | ☐ .38 Cal | | | ☐ 40 mm | | ☐ OC | | |
| | ☐ .40 Cal | | | ☐ L8 | | ☐ CN | | |
| | ☐ 9 mm | | | ☐ 40 mm Multi | | ☐ CS | | |
| ☐ X-10 BRD w/ OC | ☐ Shotgun | | | ☐ HFWRS | | | | |

| ☐ Non-Conventional or Force Not Listed Above: |
|---|

| FORCE OBSERVED BY YOU | ☒ N/A ☐ Physical ☐ Hand-Held Baton ☐ Chemical Agent ☐ X-10 ☐ Less Lethal ☐ Lethal ☐ Non-Conventional |
|---|---|

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES ☐ NO | (1) Compact Disc containing (2) Photographs (1) I/M Manufactured Weapon ☐ N/A | Evidence Locker #12 ☐ N/A | ☐ YES ☒ NO | ☒ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☐ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKOWN ☐ Other: | ☐ YES ☒ NO |

NARRATIVE: On Friday, January 18, 2019, at approximately 0717 hours, while performing my duties as Facility 'A' Security Patrol Officer #2 and monitoring Building 1 enter the dining hall for morning meal, I observed inmate (later identified by his state issued ID) ROMERO (H-56733, A1-118L) walk up behind inmate (later identified by his state issued ID) ▓▓▓▓ in an aggressive manner and strike him ▓▓▓▓ in the right side of his facial area utilizing his right fist. ▓▓▓▓ immediately covered his head and stumbled approximately 10 feet away and assumed a prone position In front of the Alpha Dining Hall. I gained custody of ▓▓▓▓ and secured him in Mechanical Restraints (handcuffs) and observed Officer G. Perez securing ROMERO in Mechanical Restraints (handcuffs). I performed a clothed body search of ▓▓▓▓ for any contraband with negative results. I assisted ▓▓▓▓ to his feet and escorted him to the Alpha Clinic where he ▓▓▓▓ received a Medical Evaluation (7219) by LVN M. Arellano to document any injuries obtained during the incident. I escorted ▓▓▓▓ to the Facility 'A' Program Office where I visually searched Temporary Holding Cell #3 for contraband with negative results. I secured ▓▓▓▓ inside Temporary Holding Cell #3 and conducted an unclothed body search of ▓▓▓▓ for any contraband with negative results.

As I returned to my assigned duties, I went back to the incident area and I was informed there was a weapon found on ROMERO. I took custody of the Inmate manufactured weapon from Officer N. Tejeda and I secured it inside my empty left cargo pocket. I reported to the Mule Creek State Prison (MCSP) Evidence Room and I took two (2) Photographs of the Inmate Manufactured Weapon and placed them on a compact disc. The Inmate Manufactured Weapon appeared to be made from a green broken BIC razor handle with cloth and tape wrapped around holding two (2) separated razor blades at the tip. It is approximately 4 ½ inches in length with the razor blades sticking out approximately ⅛ an inch. I secured the weapon and the compact disc inside Evidence Locker #12.

☒ CHECK IF NARRATIVE IS CONTINUED ON CDCR 837-C.1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | BADGE # / ID # | DATE 1/18/2019 |
|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) SGT. S. Davis / S.Davis | DATE RECEIVED 1-18-19 | CLARIFICATION NEEDED ☐ YES ☒ NO | APPROVED ☒ YES ☐ NO | DATE 1-18-19 |
|---|---|---|---|---|

DISTRIBUTION: Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

EXHIBIT J9

○ Subject made a statement

**Comments:**

## FINDINGS

Subject was found: ⌈Guilty as Charged⌋ based on a preponderance of evidence.

Lesser Included Charge:

Level:                                    Offense Division:

Offense Occurrence:

**Comments:**

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

Psychologist Fred Martin conducted a mental health assessment and documented there is no evidence to suggest that (a) mental illness and / or (b) developmental disability / cognitive or adaptive functioning deficits contributed to the behavior that led to the RVR.

Provided rationale:

"No relevant developmental, cognitive, or functional impairment noted in this case."

## EVIDENCE

The following evidence was used to support the findings:

**Comments:**

Rules Violation Report (RVR) written by Officer J. Vina which states, "On Friday, January 18, 2019, at approximately 0717 hours, while performing my duties as Facility 'A' Security Patrol Officer #2 and monitoring Building 1 enter the dining hall for morning meal, I observed inmate (later identified by his state issued ID) ROMERO (H-56733, A1-118L) walk up behind inmate (later identified by his state issued ID) ▇▇▇▇▇ ▇▇ an aggressive manner and strike him (PEREZ) in the right side of his facial area utilizing his fist. ▇▇▇ immediately covered his head and stumbled approximately 10 feet away and assumed a prone position in front of the Alpha Dining Hall. I gained custody of PEREZ and secured him in Mechanical Restraints (handcuffs) and observed Officer G. Perez securing ROMERO in Mechanical Restraints (handcuffs). I performed a clothed body search of ▇▇▇ for any contraband with negative results. I assisted ▇▇▇ to his feet and escorted him to the Alpha Clinic where he ▇▇▇ received a Medical Evaluation (7219) by LVN M. Arellano to document any injuries obtained during the incident. I escorted ▇▇▇ to the Facility 'A' Program Office where I visually searched Temporary Holding Cell #3 for contraband with negative results. I secured ▇▇▇ inside Temporary Holding Cell #3 and conducted an unclothed body search of ▇▇▇ for any contraband with negative results.

As I returned to my assigned duties, I went back to the incident area and I was informed there was a weapon found on ROMERO. I took custody of the inmate manufactured weapon from Officer N. Tejeda and I secured it inside my empty left cargo pocket. I reported to the Mule Creek State Prison (MCSP) Evidence Room and I took two (2) Photographs of the Inmate Manufactured Weapon and placed them on a compact disc. The Inmate Manufactured Weapon appeared to be made from a green broken BIC razor handle with cloth and tape wrapped around holding two (2) separated razor blades at the tip. It is approximately 4 inches in length with the razor blades sticking out approximately an inch. I secured the weapon and the compact disc inside Evidence Locker #12.

I returned to the Facility 'A' Program Office and read ROMERO his Miranda Rights. ROMERO understood his

rights, chose to remain silent and refused to sign the Miranda Advisement Form. I returned to my assigned duties as Facility 'A' Security Patrol Officer #2.

I took two (2) Photographs that depict the following:
Photograph #1: Weapon on its side next to a ruler
Photograph #2: Weapon turned to the side to visibly see the razor blades

Two (2) pictures used as evidence which depict:
Photograph #1: Weapon on its side next to a ruler
Photograph #2: Weapon turned to the side to visibly see the razor blades

At the time of the hearing inmate Romero pled guilty to the charge

## DISPOSITION

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 360 Days | No | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Days | | | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Weekends | | | ☐ | ☐ | ☐ | ☐ | | |
| Disciplinary Detention | | | ☐ | ☐ | ☐ | ☐ | | |
| Privilege Group C | | | ☐ | ☐ | ☐ | ☐ | | |
| Loss of Pay | | | | | | | | |
| Canteen Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Phone Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Extra Duty | | | ☐ | ☐ | ☐ | ☐ | | |
| Yard Recreation Privileges | 10 Days | No | ☐ | ☐ | ☐ | ☐ | 02/04/2019 | 02/14/2019 |
| Day Room Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Packages Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Property | | | ☐ | ☐ | ☐ | ☐ | | |

CDCR SOMS ISST126 - CDC NUMBER: H56733 NAME: ROMERO, LUIS G.          Page 6 of 10

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

94



**COR - California State Prison, Corcoran**

Patient: **OSUNA, JAIME** 
DOB/Age/Sex: ▮ ▮ / Male        CDCR: BD0868

## Admit/Transfer/Discharge Information

**Visit Information**

| Recorded Date | 9/26/2018 | 9/24/2018 | | |
|---|---|---|---|---|
| Recorded Time | 12:00 PDT | 13:08 PDT | | |
| Recorded By | Depovic,Jasminka Psychiatrist | Wilson,Janet Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Chief Complaint | - | Battery on staff | | |
| Pregnancy Status | N/A | - | | |

| Recorded Date | 9/18/2018 | 9/13/2018 | | |
|---|---|---|---|---|
| Recorded Time | 16:35 PDT | 13:03 PDT | | |
| Recorded By | Vu,Thayin Social Worker | Hernandez,Victoria RN | | |
| Procedure | | | Units | Reference Range |
| Pregnancy Status | N/A | - | | |
| Nur-Primary Language | - | English | | |

**Details of Transfer**

| Recorded Date | 3/10/2019 | | |
|---|---|---|---|
| Recorded Time | 11:37 PDT | | |
| Recorded By | Balaba-Gallagher,Neriza RN | | |
| Procedure | | Units | Reference Range |
| Mode of Transfer | State vehicle | | |
| Accompanied By Staff | Custody Staff | | |

**Discharge Information**

| Recorded Date | 3/10/2019 | | |
|---|---|---|---|
| Recorded Time | 11:37 PDT | | |
| Recorded By | Balaba-Gallagher,Neriza RN | | |
| Procedure | | Units | Reference Range |
| Healthcare Appliances/Devices/Equipment | Glasses | | |

| Recorded Date | 3/9/2019 | | |
|---|---|---|---|
| Recorded Time | 21:10 PST | | |
| Recorded By | Cacao,Sarah RN | | |
| Procedure | | Units | Reference Range |
| TTA-Disposition To: | Other: Admitted to AHU @ 1957 | | |

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 18475359        Print Date/Time: 6/5/2019 08:41 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**



**COR - California State Prison, Corcoran**

Patient: **OSUNA, JAIME** 
DOB/Age/Sex: ██████ █ ████ / Male          CDCR: BD0868

| *Nutritional* |
|:---:|

### General Nutrition Information

| Recorded Date | 9/30/2018 | 9/29/2018 | | |
|---|---|---|---|---|
| Recorded Time | 08:00 PDT | 07:45 PDT | | |
| Recorded By | Wilson, Janet Psych Tech | Hernandez, Jose Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Good (75% or Greater) | Good (75% or Greater) | | |

| Recorded Date | 9/28/2018 | 9/27/2018 | | |
|---|---|---|---|---|
| Recorded Time | 08:20 PDT | 07:00 PDT | | |
| Recorded By | Claudia Guzman, Psych Tech | Lewis, Walter Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Fair (50-74%) | Other: refused to interview | | |

| Recorded Date | 9/26/2018 | 9/25/2018 | | |
|---|---|---|---|---|
| Recorded Time | 07:00 PDT | 07:00 PDT | | |
| Recorded By | Lewis, Walter Psych Tech | Lewis, Walter Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Other: refused to interview | Other: refused to interview | | |

| Recorded Date | 9/24/2018 | 9/23/2018 | | |
|---|---|---|---|---|
| Recorded Time | 07:00 PDT | 08:00 PDT | | |
| Recorded By | Lewis, Walter Psych Tech | Lewis, Walter Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Good (75% or Greater) | Good (75% or Greater) | | |

| Recorded Date | 9/22/2018 | 9/21/2018 | | |
|---|---|---|---|---|
| Recorded Time | 07:25 PDT | 10:05 PDT | | |
| Recorded By | Claudia Guzman, Psych Tech | Claudia Guzman, Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Good (75% or Greater) | Good (75% or Greater) | | |

| Recorded Date | 9/20/2018 | 9/19/2018 | | |
|---|---|---|---|---|
| Recorded Time | 08:00 PDT | 08:15 PDT | | |
| Recorded By | Lewis, Walter Psych Tech | Orduno, Ramona Psych Tech | | |
| Procedure | | | Units | Reference Range |
| Appetite | Good (75% or Greater) | Good (75% or Greater) | | |

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID: 18475359                    Print Date/Time: 6/5/2019 08:41 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

Osuna Scanned Sheets 1-61

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

**EXHIBIT K5**

**COR - California State Prison, Corcoran**

| | |
|---|---|
| Patient: | **OSUNA, JAIME** |
| DOB/Age/Sex: | [redacted]    [redacted]    / Male    CDCR: BD0868 |

---

### *Psychosocial*

**Psychiatric Technician**

| | | |
|---|---|---|
| Recorded Date | 5/31/2019 | 3/8/2019 |
| Recorded Time | 06:00 PDT | 10:42 PST |
| Recorded By | Duggan,Hollie Psych Tech | Claudia Guzman,Psych Tech |

| Procedure | | | Units | Reference Range |
|---|---|---|---|---|
| PTR-Signs of Decompensation | - | No | | |
| PTR-Referral To: | - | Not applicable | | |
| PTR-Comments | - | See Below ^T18 | | |

**Textual Results**
T18:    3/8/2019 10:42 PST (PTR-Comments)
        No mental health issues reported.

| | | |
|---|---|---|
| Recorded Date | 3/7/2019 | 3/6/2019 |
| Recorded Time | 08:00 PST | 10:00 PST |
| Recorded By | Lewis,Walter Psych Tech | Lewis,Walter Psych Tech |

| Procedure | | | Units | Reference Range |
|---|---|---|---|---|
| PTR-Mental Health Concerns | No | No | | |
| PTR-Prescribed Medications | Yes | Yes | | |
| PTR-Psych Meds | Yes | Yes | | |
| PTR-Medication Side Effects | No | No | | |
| PTR-Mood | Pleasant | Pleasant | | |
| PTR-Affect | WNL | Blunted | | |
| PTR-Grooming/Hygiene | Good | Fair | | |
| PTR-Med Compliance per MAR | Yes | Yes | | |
| PTR-Participates in Program | Yes | Yes | | |
| PTR-Signs of Decompensation | No | No | | |
| PTR-Referral To: | Not applicable | Not applicable | | |

| | | |
|---|---|---|
| Recorded Date | 3/5/2019 | 3/4/2019 |
| Recorded Time | 09:00 PST | 09:00 PST |
| Recorded By | Lewis,Walter Psych Tech | Lewis,Walter Psych Tech |

| Procedure | | | Units | Reference Range |
|---|---|---|---|---|
| PTR-Mental Health Concerns | No | No | | |
| PTR-Prescribed Medications | Yes | Yes | | |
| PTR-Psych Meds | Yes | Yes | | |
| PTR-Medication Side Effects | No | No | | |
| PTR-Mood | Other: refused to interview | Other: refused to interview | | |
| PTR-Affect | Other: refused to interview | Other: refused to interview | | |
| PTR-Med Compliance per MAR | No | No | | |
| PTR-Participates in Program | No | No | | |

---

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  18475359                                    Print Date/Time:  6/5/2019 08:41 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged information intended for the recipient only.

**PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**
**OSUNA V. BURNES, KYLE-MAYTUBBY, ET AL**

97