

FILED

AUG 19 2024

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Jamie Osuna, CDCR #BD0868<br>Pl., | Docket No.: 1:24-cv-00793-KES-SAB<br>**CIVIL RIGHTS COMPLAINT UNDER**<br>42 U.S.C. § 1983<br>State Prisoner |
| against | |
| J. Burnes, K. Kyle,<br>W. Lewis, A. Loza,<br>A. Encinas, V. Pena<br>C. Navarro, S. Babb,<br>J. Cerda, E. Moreno, et al,<br>Defs. | **IMMINENT DANGER OF SERIOUS<br>PHYSICAL INJURY/DEATH**<br><br>**COMPLAINT FOR DECLARATORY AND<br>INJUNCTIVE RELIEF,<br>COMPENSATORY AND PUNITIVE<br>DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & § 1343 (a)(3) in that this is a civil action arising under 42 U.S.C. § 1983. Pl. seeks declaratory, injunctive, punitive, and compensatory judgments pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201 & § 1346. Venue is proper pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of events and omissions giving rise to Pl.'s claims occurred at CSP-COR, Corcoran, CA, which is within this Court's judicial district.

## II.   INTRODUCTION

2. This is a civil rights action brought forth by Jamie Osuna, a state prisoner, alleging violations of the First and Eighth Amdts. to the U.S. Constitution for retaliation and deliberate indifference.

3. The acts described herein follow years of alleged misconduct (retaliation) in CSP-COR by the same Defs., over which Pl. sought redress without relief through administrative remedies ("602s"), complaints, correspondence with oversight agencies.

4. 02/20/19, Pl. filed § 1983 1:19-cv-00554-AWI-EPG alleging retaliation over Pl.'s administrative remedies.

5. Defs. allegedly retaliated on Pl. for filing 1:19-cv-00554-AWI-EPG, including knowingly putting Pl. in imminent danger. As described in section V, Def. J. Burnes, and others, allegedly conspired to cell Pl. with several inmates incompatible with Pl. by CDCR policies, gave inmates false, inflammatory information regarding Pl.'s conviction which could incite violence. Later, a known-violent, predatory inmate, L. (Luis Gilberto) Romero, was celled with Pl., resulting in Pl.'s current open case 19CM-1882 with the death of L. Romero.

6. On 09/24/22, Pl. filed a 602 # 315792 over his endorsement and later transfer back to CSP-COR, where he continues to experience retaliation and threats over his 602s and complaints filed against Defs. These Defs. continue to intervene in Pl.'s due process and continue to assign themselves to manage every aspect of Pl.'s life when, by CDCR policy for grievance investigations, there should have been a staff separation enforced. Defs. continue to investigate themselves for Pl.'s allegations. 315792 appended around ninety-seven supporting documents to map the consistent pattern of the same Defs. continuing to deter Pl. from filing 602s/contacting oversight agencies. This alleged deterrence includes threats.

7. Pl. takes all threats as credible due to the actions described in Section V of this complaint and due to around twenty 42 U.S.C. § 1983 and 28 U.S.C. § 2254 cases being filed yearly by CSP-COR inmates against many of the same staff/Defs., for similar incidents, every year for several years, with injuries or harm allegedly done to those plaintiffs by some/same Defs.

8. Due to Pl.'s intellectual hardship of being under a continual PC 2602 order, schizophrenic-type mental illness, SHU/RHU housing, alleged ongoing retaliation, Pl. requested and received help in the transcribing/writing of this complaint.

### III. PARTIES

9. Pl. Jamie Osuna is a state prisoner incarcerated at CSP-COR, Corcoran, CA.

10. Def. J. (Joseph A.) Burnes is a Sgt. and is being sued in his individual, official capacities; PERN # 18566; badge # 69436.

11. Def. K. (Kristin) Kyle(-Maytubby) was a Mental Health Supervisor and is being sued in her individual, official capacities. Def. is now working as a faculty member at Bakersfield College, Bakersfield, CA; and as co-owner of Tranquility Valley Wellness, Bakersfield, CA; CA license # 26467.

12. W. (Walter) Lewis is a Psychiatric Technician and is being sued in his individual, official capacities; CA license # 31438.

13. Def. A. (Arnoldo) Loza is a CO and is being sued in his individual, official capacities; badge # 91237.

14. Def. V. (Vicente Rodriguez) Pena is an ISU/IGI (Investigative Services Unit/Institution Gang Investigator) Officer and is being sued in his individual, official capacities; badge # 84731.

15. Def. A. (Arturo) Encinas was a Sgt. and is being sued in his individual, official capacities; PERN #17963. Def. is now a Lt.

16. Def. S. (Stephen) Babb was yard 4A Associate Warden (AW.) S. Babb is being sued in his individual, official capacities. Def. is now a Cpt.

17. Def. J. (Javier) Cerda is an ISU/IGI Officer and is being sued in his individual, official capacities.

18. Def. E. (Eric C.) Sanchez is an ISU/IGI Officer and is being sued in his individual, official capacities.

19. Def. E. (Enrique) Moreno is a Lt. and is being sued in his individual, official capacities.

20. Def. C. (Carlos) Navarro is an ISU/IGI Sgt. and is being sued in his individual, official capacities; badge # 80707.

21. Def. J. Garcia is a CO and being sued in his individual, official capacities; badge # 60476.

22. Def. E. Romero is a CO and is being sued in his individual, official capacities; badge # 92906.

23. Def. M. (Miguel) Rodriguez is a CO and is being sued in his individual, official capacities.

24. Def. S. (Sara) Gates is CDCR's Chief for medical/mental health care in Elk Grove, CA, and is being sued in her individual, official capacities.

25. Def. K. (Ken A.) Clark was Warden and is being sued in his individual, official capacities. Def. is now retired.

26. Def. T. (Tammy L.) Campbell is Warden and is being sued in her individual, official capacities.

27. Defs. (John/Jane) Does, 1-TBD, were/are prison personnel, Office of Internal Affairs (OIA) agents, and are being sued in their individual, official capacities.

## IV.    ADMINISTRATIVE REMEDIES

28. Grievance (602) log 315792 was filed 09/24/22 and exhausted in 07/2023 at all levels in the California Department of Corrections and Rehabilitation (CDCR) for violations of Pl.'s rights under the First and Eighth Amendments to the U.S. Constitution. CDCR/CSP-COR misclassified this grievance as an excessive force 602.

## V.    FACTUAL ALLEGATIONS

29. On 12/16/18, Pl. wrote a letter to Def. OIA Does about the alleged retaliation Pl. suffered and witnessed in 4A by Def. J. Burnes, others, including staff-on-inmate assaults, set ups. Pl.

alleged CSP-COR's management, which included Defs. K. Kyle and K. Clark, were acting in deliberate indifference. Pl. stated he would file a § 1983. Pl. asked Def. OIA Does to not refer their investigation back to CSP-COR to handle due to ISU Officers being involved and would investigate themselves. Pl. requested Def. OIA Does to not forward his letter due to likely retaliation. Def. OIA Does forwarded Pl.'s letter to CSP-COR/Def. S. Babb around mid-January 2019.

30. On or around 01/18/19, Defs. J. Burnes under/with E. Romero and K. Kyle produced an inaccurate 128-G Chrono falsely listing Pl. as an active Southerners/Sureños gang member.

31. An accurate 128-G Chrono was already on Pl.'s file, so another Chrono was not needed. Defs. knew or it is reasonable that Defs. should have known this was not Pl.'s affiliation due to this other 128-G record and the reviews required for inmate placement/housing decisions pursuant to CA Title 15 § 3269.1; CA Title 15 § 3269. The inaccurate 128-G Chrono met the criteria for Pl. to be double-cell cleared. It met the criteria for the celling of Pl. with specific inmates not otherwise possible under CDCR/state policies. Def. J. Burnes also recommended for Pl. to be sent to a 270 yard, against Pl.'s actual case-factors.

32. Defs. J. Burnes and K. Kyle held a special committee with only Defs. J. Burnes and K. Kyle in attendance for the purpose of clearing Pl.'s mental health status, which enabled Pl. to meet the criteria for double-cell clearance.

33. 01/18/19, the same day of the 128-G chrono signing, another committee was held without Pl. present when committee meetings usually include the affected inmate. The committee summary report shows participants included Def. K. Kyle. Def. S. Babb, as AW, and or Def. K. Clark, signed off on the report as a job duty.

34. It was brought to Pl.'s attention that Def. K. Kyle, as Mental Health Supervisor, had the authority to draft reporting/advocate for Pl. to be on temporary single-cell status but chose to not do so. Def. K. Kyle had before/during that time placed Pl. under extreme mental health restrictions—Pl. was not allowed to have razors, containers due to Pl.'s CDCR-documented, ongoing self-mutilations. Def. had Pl. on restrictions to not be around other inmates, even for/in work or educational settings. Previously, Def. had rebuffed, mocked to Pl. RBGG's letter to CSP-COR regarding a necessary but withheld elevation of mental health care/transfer of Pl. Def. would express her anger at Pl.'s 602 being added to her permanent record, and for Pl. contacting Def.'s supervisors over Def. K. Kyle's misconduct, including Def. K. Kyle's alleged cover-up/complicity with Def. J. Burnes.

35. Pl. disagreed with the decision to double cell clear him. Pl. requested other staff make housing decisions for Pl. due to the conflict of interest in Defs. K. Kyle, J. Burnes deciding to double cell clear and recommend/decide what yards to send Pl. to when Pl. had around more than a dozen 602s and complaints against these Defs. Pl.'s request was denied, and Pl. was threatened by staff with disciplinary action if Pl. were to refuse any cellmate.

36. Within two days of the above committee, on 01/20/19, Def. S. Babb sent Pl. a memo to inform Pl. of Def. OIA Does having forwarded Pl.'s letter to CSP-COR/Def. S. Babb.

37. Def. S. Babb's memo stated Def. S. Babb had addressed Pl.'s allegations made to the OIA, that "All information pertaining to the allegation has been reviewed and all issues were adequately addressed." Def. S. Babb found staff "not in violation" of policies.

38. 01/23/19, Def. J. Burnes, Def. A. Loza, and Vallejo (CO) escorted Pl. from his cell. Once in the rotunda, Def. J. Burnes unprovoked bashed Plaintiff's head into the wall. CO Vallejo

stated to Plaintiff, "Are you gonna keep writing 602s?" and upon returning to the cell, Pl. was told, "We'll stop when you stop [with 602s]."

39. On 01/24/19, 01/27/19, other near dates, Pl. filed 602s, sent letters to RBGG, OIA, OIG that Def. K. Clark was aware of 4A staff's threats, retaliation, uses of force. There was no intervention after these actions. When coming back from a mental health appointment, Def. J. Burnes bashed Pl.'s head into the wall and warned Pl. against what Def. called "snitching," which included 602s, complaints, letters to oversight agencies.

40. On or around 01/27/19, Def. J. Burnes came to Pl.'s cell and said, "So, you're writing 602s again?" and that, "That's the word. I got ears everywhere." Pl. asked, "Is that what Kyle [Def. K. Kyle] told you after my one-on-one? 'Cause she's the only one I told."

41. Def. J. Burnes said, "Do you think your clinician's going to believe anything you have to say, huh? She knows you're a long-hair, faggot, son of a bitch. You don't want to get fucked up like last time."

42. Throughout 2019, Pl. gave approx. three letters addressed to Def. OIA Does to Def. Does (unit COs) to mail out. These letters never made it to Def. OIA Does or Pl. received no reply.

43. On or around 02/05/19, Pl.'s 602 # CSPC-5-19-01003 was denied because Pl. had made "a general allegation" about use of force/retaliation when he actually been detailed and provided supporting paperwork. Pl. replied on the form's response section that Pl. had a paper trail of evidence against Defs. J. Burnes, A. Encinas, ISU Officers.

44. By 02/10/19, (former) inmate, A. (Anthony) Turner G27511 had been witness to various assaults/misconduct from some Defs. against Pl. A. Turner learned Pl. was unable to get mail out and or was not receiving responses to his 602s. A. Turner previously recommended that Pl. contact Def. S. Gates who had hired Def. K. Kyle and who reviewed/issued final

decisions on mental health/medical 602 appeals. A. Turner now offered to send any documents on Pl.'s behalf under A. Turner's address/envelopes in order to get it out of CSP-COR.

45. 02/10/19, on behalf of Pl., A. Turner transcribed, sent 1:19-cv-00554-AWI-EPG to the Court. A. Turner sent the filing under his own return address envelope in order to get it out of CSP-COR (see Document 1-1 of that filing.) Pl.'s name "Osuna" was misspelled as "Asuna" on/in the complaint, and the filing was sent to the wrong district.

46. 02/11/19, A. Turner mailed an envelope under his address on behalf of Pl. to Def. S. Gates, which CDCR stamped as received. On 02/11/19, through a CDCR *Form 22 Inmate Request for Interview, Item or Service*, Pl. reported, "Sara Gates, my name is Jamie Osuna. I had a credible friend send you documents to Sacramento due to so much going on and my mail being tampered with. I have made serious allegations against [Defs. K. Kyle, J. Burnes], 2nd watch, in which I've made a paper trail, have evidence. I wish to correspond with you to show you [Def. K. Kyle's] involvement in what's going on."

47. 02/20/19, the Eastern District Deputy Clerk mailed notice (see Document 4 of that filing) to Pl. regarding his incomplete in forma pauperis application. The arrival of this mail piece alerted CSP-COR about Pl.'s § 1983.

48. After Pl.'s double cell clearance and 602s/§ 1983, inmates reported to Pl. that Defs. V. Pena, E. Sanchez, J. Burnes made inflammatory, false statements about Pl. to inmates that could incite attacks, including that Pl. had sex crime charges, that Pl. tried to attack those inmates' homeboys, that Pl. was not to be trusted.

49. Def. J. Burnes sought to cell inmates with Pl. who were not allowed (not compatible) with Pl. under CDCR/state policies. A few inmates refused based on these

policies/incompatibilities. Inmate Rodriguez was written up for that refusal. After Def. A. Loza wrote up inmate Richardson for his refusal to cell with Pl., inmate Richardson showed Pl. the paperwork. Inmate Ortega told Pl. that Def. J. Burnes stated Pl. was not to be trusted and Def. J. Burnes would allow inmate Ortega to bring a knife into the cell if he would cell up with Pl.

50. Pl. discussed, agreed to cell up with one man. Pl. and this man were case-factors-wise deemed compatible under CDCR/state policies. Pl./the inmate then notified staff that they would be paired.

51. Pl. was notified this pairing was canceled. Pl. asked Def. E. Romero what happened. Def. E. Romero stated to Pl. that Def. J. Burnes "didn't want to do it" and had said "no" to the pairing. The inmate stated to Pl., that the inmate had been told "no" to their pairing.

52. Pl. was instead celled with L. Romero—an inmate incompatible with Pl. by CDCR/state policies. L. Romero had a CDCR-documented history of in-cell violence. L. Romero's CDCR-documented prison nickname was "Rocky" due to a love for physical fighting. Def. A. Loza signed the cell chrono after a CDCR-documented history of Def. allegedly retaliating on Pl. with Def. J. Burnes, including repeated cell searches, assault.

53. Pl. was surprised that Def. J. Burnes (with or without others), chose this inmate because CDCR's IHP policy is to review inmate histories, and hold a double-cell clearance hearing. L. Romero was also not on restrictions when Pl. was, which should have barred the pairing.

54. Once within the cell with Pl., Def. J. Burnes stated to L. Romero, "You're letting me down."

55. L. Romero was the only one to go out to shower and was unusually allowed to keep his razor afterward. Def. J. Cerda had been L. Romero's shower escort.

56. Later, in or around 2020, Pl. learned through his former investigator that L. Romero allegedly had previous homosexual contact with Def. J. Burnes. CDCR documented L. Romero's following incidents (inexhausted list), which records were available to Defs. who/when Defs. had reviewed, or arranged, and or approved the cell pairing:

57. 07/23/13, *CDC 114-A1* (battering an inmate); 12/10/14, RVR log # *3B-14-12-026/COR-03B-14-12-072B* (unprovoked attacked inmate from behind); 04/10/15, Kings County Superior Court felony *15cm-7121*; 06/04/15, CSP-COR RVR log # *FC-15-05-023* (refused a cellmate because inmate was "a Black guy.") 05/20/15, CDCR *128-MH3 Mental Health Placement Chrono* notated L. Romero's "history of fighting," "batteries on inmates," and "making pruno" (prison moonshine.) 10/01/16, RVR log # *994525* (attacked his cellmate.) 07/09/15, L. Romero's parole was denied because he was "still acting violently," was a "continued threat to public safety." His recent RVRs were related to violence. The Parole Board considered L. Romero "an extreme risk to the community, and therefore [he was] not suitable for parole," with the next hearing not for at least a decade. The Parole Board noted L. Romero was "impulsive," "unstable," was the product of a bad childhood with an "abusive mother." L. Romero had to provide a potential job/location if he were to be deported. 12/08/18, L. Romero was found guilty of attacking his cellmate and not stopping his attack at the CO's commands to stop, having to be chemically sprayed in the face. 01/18/19, *MCSP-AYD-19-01-0029* (unprovoked attack on an inmate from behind and L. Romero was found with an inmate-manufactured weapon/BIC razor handle with cloth and tape around it holding two razor blades.)

58. On or around the first week of 03/2019, Pl.'s current open felony case 19CM-1882 occurred with the death of L. Romero. Pl. was escorted from his cell sometime in the early morning

after that event and put into a rotunda holding cage, where Pl. repeatedly asked for medical/mental health help, but no care was provided.

59. Nearby were a group of management level staff, and or Def. K. Clark, and or others. Pl. overheard the group stating that they had to get an interview with Pl. before anything else, to do whatever it takes to get an interview out of Pl.

60. Def. Sgt. C. Navarro and T. Brazelton (ISU) informed Pl. that they were going to do a video-recorded interview with Pl. over the incident, and that Pl. was going to cooperate for the interview. Def. C. Navarro at that time reminded Pl. what had happened to Pl. before (i.e. the chair assault and battery covered in Pl.'s first § 1983) and told Pl. that this was "nothing compared" to what they could do if Pl. were to refuse to do the interview. Pl. again asked for medical treatment/clinician; no treatment/help was given to Pl. Def. Does (ISU Officers) also informed Pl. that he would do their video interview.

61. Pl. again stated that he had not wanted to do the interview or be recorded. Pl. was intimidated to do the interview, and it was made it clear that Pl. could not receive any medical attention, water/food, until Pl. complied. Under unlawful coercion, Pl. completed the interview. Then Plaintiff was put back into the rotunda cage until around midnight when Defs. P. Ricablanca and E. Romero approached Pl., and Def. P. Ricablanca took Pl.'s blood pressure. Def. P. Ricablanca had not otherwise provided Pl. medical attention/assessment, had not done this at the documented time of 0745, and had not actually spoken with Pl. as was otherwise documented on Def.'s CDCR *Form 7219 Medical Report of Injury ("7219.")* This was done after Def. V. Pena had instructed the RN/medical staff not to conduct a *7219* on Pl. and provided such statements for Pl. to Def. P. Ricablanca. An emergency committee ordered Pl. under an emergency mental health hold.

62. On or around 03/09/19, A. Arisco, J. Fugate, R. Rubio, T. Brazelton (ISU officers) processed the crime scene. Pl.'s legal materials in a protective bag for 1:19-cv-00554-AWI-EPG/602s were removed from Pl.'s cell and never returned. The bag was shown uncontaminated on a counter in the crime scene photographs. ISU had not accounted for/itemized the uncontaminated bag/contents. Over the next few months, Pl. first had no writing tools (only crayons) allowed for months, and Pl. was not allowed to respond to the Court for 1:19-cv-00554-AWI-EPG. On 8/23/19, the Court dismissed that case for no response.

63. Around 03/21/2019, the false allegation by Def. J. Burnes against Pl. that was then used by the Kings County DA in a charge. Def. J. Burnes had made the same allegation of other inmates "lunging" trying to "bite" Def. when justifying Def.'s use of force. (*C-COR-083-20-A*, OIA Investigative Report; OIA found J. Burnes' statements uncorroborated.)

64. Def. M. Rodriguez, who was involved in the incident and named in Pl.'s related 602, then acted as Pl.'s staff assistant for the hearing. Pl's hearing statements/602s were omitted from the report as if Pl. said nothing when he had explained his side and emphasized Def. M. Rodriguez's involvement in the incident. Pl. was found guilty, punished with SHU.

65. 03/27/19, Pl.'s 602 regarding retaliation, excessive use of force repeatedly by the same Defs. was partially granted. Investigator D. Lopez's interview included Pl.'s allegations from when two sgts. Does came to Pl.'s cell-front to conduct a video interview for Pl.'s 602 against Def. J. Burnes. Def. J. Burnes was with the sgts., and Def. threatened Pl., "You better not say nothing." At that time, Pl. had told the sgts. Def.'s presence was against CDCR DOM 51020.17.3—Def. J. Burnes was behind the video camera in intimidation. Pl. stated Pl. would not come out for the video until Def. was not there. The two sgts. Does

conducted a summary video cell-front stating Pl. refused the interview. Pl. can be heard in the background shouting that Def. J. Burnes was behind the camera and was threatening Pl. Pl. was not granted a second use of force interview/video despite that Pl. put Def. K. Clark and the Deputy Associate Warden Doe on notice in writing about the above incident.

66. Def. W. Lewis' false allegation against Pl. for making a death threat was later picked up by the Kings County DA on or around 06/28/2021 as charge 21CM-4750. Def. W. Lewis made his allegation after Pl. mentioned Pl. had evidence of PT rounds logs. These logs supported Pl.'s claims that Def. was present to aid and abet Def. J. Burnes in an assault/misconduct against Pl. Previously, Def. W. Lewis had stated he had not worked on those dates/shifts. Because of Def. W. Lewis' allegation, Pl. was also punished with an extended SHU term. On or around 07/2021, Def. T. Campbell, C. Love (ISU) filled out a CDC 128-B. They gave Def. W. Lewis an opportunity to move to a new post away from Pl. Def. W. Lewis declined. Pl. filed a 602 on Def. W. Lewis for continuing to be around Pl. and writing up Pl. for a false allegation. Def. W. Lewis never reported abuses/misconduct by Def. J. Burnes, others.

67. Around 2020 or 2021, Pl.'s (former) Investigator told Pl. a complaint had been filed with CDCR because 4A inmates wrote Investigator letters stating Def. Does threatened the inmates to not cooperate or talk with Investigator. These inmates had previously refused to come out for their scheduled interviews with Investigator. An external agency was handling the complaint due to ISU's alleged involvement with the threats. Pl. was also being threatened—Def. Sgt. A. Encinas multiple times threatened Pl. to "keep his mouth shut." Def. C. Navarro came to Pl.'s cell-front and stated to Pl. the reason nothing had yet happened to Pl. was that there was a "lot of eyes" on Pl./Def., and Def. was "under investigation."

68. End of 2019/early 2020, Defs. J. Burnes and A. Loza moved from 4A to R&R, through where Pl. is escorted for every court date transportation. Def. C. Navarro (with other ISU officers), would drive to/around the back fence of R&R. During one incident, when Def. J. Burnes came outside, Pl.'s window was rolled down, and Def. J. Burnes stated to Pl., "So, you're fighting your case, huh? We'll see. You think you're going to win? We'll see about that. You're not going to make it that far—remember what happened last time."

69. From 2020, some of Pl.'s legal properties (processed through R&R) that regards Defs. J. Burnes, A. Loza, K. Kyle has gone missing from Pl.'s property.

70. Instead of investigating Pl.'s complaints of threats, intimidation, retaliation, J. Fugate (ISU), others, indicated to Pl. to plead guilty (in 19CM-1882) to make the retaliation stop. On or around 05/13/20, Pl. announced in Kings County Superior Court that he wanted to plead guilty and waive his preliminary hearing, but the retaliation had not stopped.

71. 01/01/20, Pl. sent a letter to Def. S. Gates alleging retaliation in 4A. The letter was CDCR stamped as received on 01/06/20. There was no intervention upon receipt of that letter.

72. On or around 07/20/20, Pl. had a one-on-one with Def. K. Kyle. She asked Pl. if he had any remorse for "what he did to his first victim," expressed her dislike for his conviction, the sister of which victim, Danielle Peña Gonzales, is a CDCR employee. Both Def. K. Kyle, J. Burnes previously indicated to Pl. that they were retaliating on Pl. in part or had personal dislike of Pl. over Danielle Peña Gonzales/Pl.'s first case.

73. Pl. asked Def. what if the law were to come after her (regarding 19CM-1882) and Def. rolled her eyes and stated, "I'll just say I raised my hand and opposed, while the Cpt. said if [Pl.] doesn't like being double-cell cleared, he can 602 it." Def. told Pl. that she was on a

"first name basis" with the Warden "if you know what I mean," and that "we'll just settle out of court like we always do."

74. 08/04/20, Pl.'s letter to Def. S. Gates alleging retaliation against Pl. was stamped received. Def. provided no adequate intervention after that time, which resulted in alleged continued misconduct with threats/assaults, other acts as herein described.

75. On or around 08/03/20, Kings County Superior Court heard Pl.'s former counsel state she sent Pl. "about a dozen boxes" of legal records. This had been kept from Pl. and Pl. stated this in the court at that time. Defs. J. Cerda and A. Encinas eventually delivered this legal mail to Pl. without the CDCR-required signature process and opened/reviewed outside of Pl.'s presence, against CDCR/state regulations, with documents missing.

76. In 2020, each time Def. E. Moreno passed Pl.'s cell during Def.'s tier walk, Def. smashed his beeper into Pl.'s window. After around four days of this, Pl./his friend confronted Def. on yard, asking what was Def.'s problem. Def. E. Moreno stated, "I'm not going to apologize to [Pl.], but it's strictly business."

77. In 2020, Def. Sgt. C. Navarro, Def. J. Burnes (and others), continued to intervene in 19CM-1882. Pl.'s former counsel filed a complaint with CDCR legal affairs.

78. Def. C. Navarro and C. Love (ISU) came with a recorder to interview Pl. for the complaint, and Pl. in fear of retaliation had to deny what was happening.

79. In or around that September, Defs. E. Moreno, J. Fugate, others, pulled Pl. from his cell and left Pl. in the 4A1R front office, where Def. C. Navarro stood behind the desk. Def. had taken out a mace can, placed it down facing towards Pl. Def. then bragged to Pl. that the Warden had put Def. in the unit "to put out fires," that it had taken Def. a long time to get

the respect Def. has now—that it took Def. to "break a lot of ribs" to get where it/he is now. Def. then told Pl. to "stay out the way" from then on.

## VI. CLAIMS FOR RELIEF

### A. First Amdt; Retaliation

80. The actions of Def. J. Burnes by assaulting and threatening Pl. over 602s/reporting misconduct and making it known this abuse would not stop unless Pl. stopped 602s constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

81. The actions of Def. J. Burnes, after being named in Pl.'s ligation, in canceling a safe inmate cell pairing and choosing L. Romero as Pl.'s cellmate, was maliciously and sadistically done and constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

82. The actions of Def. A. Loza, after Def.'s documented history of alleged misconduct with Def. J. Burnes against Pl., and after being named in Pl.'s 602s/complaints/litigation, in signing Pl.'s cellmate pairing chrono was maliciously and sadistically done and constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

83. The actions of Def. J. Burnes in making false allegations against Pl. after Pl.'s 602s and complaints against Def., and which allegation was used in a DA charge against Pl., constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

84. The actions of Def. W. Lewis making false allegation against Pl. that were picked up as a DA charge after Pl. mentioned having Def.'s shift logs as evidence for Pl.'s allegations constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

85. The actions of M. Rodriguez in acting as staff assistant for a disciplinary hearing when being involved/named in Pl.'s related 602s, and then omitting Pl.'s statements and 602s regarding the matter constituted retaliation and was in violation of First Amdt. rights.

86. The actions of Def. J. Cerda, after Pl.'s 602s/complaints/litigation, in not following legal mail procedures when he delivered without the CDCR-required signature process, opened/reviewed outside of Pl.'s presence, boxes of Pl.'s legal mail with documents missing, constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

87. The actions of Def. A. Encinas, after Pl.'s 602s/complaints/litigation, in not following legal mail procedures when he delivered without the CDCR-required signature process, opened/reviewed outside of Pl.'s presence, boxes of Pl.'s legal mail with documents missing, constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

88. The actions of E. Moreno, after Pl.'s multiple 602s and complaints, by smashing his beeper into Pl.'s window each time he passed and stating this was "strictly business" when confronted constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

89. The actions of J. Burnes, after Pl.'s 602s/OIA contact, in producing/forcing Pl. to sign an inaccurate 128-G Chrono so that Pl. then met the criteria for double-cell clearance was unfavorable classification, constituted retaliation, and violated Pl.'s First Amdt. rights.

90. The actions of E. Romero, after Pl.'s complaints/602s, in producing/signing off on an unneeded, inaccurate new 128-G Chrono so that Pl. then met the criteria for double-cell clearance was unfavorable classification, constituted retaliation, violated Pl.'s First Amdt. rights.

91. The actions of K. Kyle, after Pl.'s 602s/complaints and having contacted Def.'s supervisor, in producing/signing the inaccurate new 128-G Chrono so that Pl. then met the criteria for double-cell clearance was unfavorable classification, constituted retaliation, violated Pl.'s First Amdt. rights.

92. The actions of Def. J. Burnes holding a private committee with Def. K. Kyle to clear Pl.'s mental health status for double-cell clearance, after Pl.'s history of 602s and complaints alleging conspiracy/misconduct between these Defs., was done maliciously and sadistically, constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

93. The actions of K. Kyle, after Pl. filed multiple 602s/complaints on Def., in holding a private committee to clear Pl.'s mental health status for double-cell clearance, when Def. also had Pl. on extreme restrictions to not be around others, was done maliciously and sadistically, constituted retaliation and was in violation of Pl.'s rights under the First Amdt.

94. The actions of Def. C. Navarro, after Pl.'s history of 602s/complaints/litigation, in threatening and intimidating Pl. over multiple dates, as described herein, constituted retaliation and violated Pl.'s rights under the First Amdt.

95. The failure of Def. S. Gates to adequately act to provide protection when put on notice about Pl. being allegedly retaliated on/assaulted and Def.'s medical/mental health employees alleged to be in complicity/cover-up, contributed to and proximately caused the above-described violations of the First Amdt.

96. The failure of Def. K. Clark, after being put on notice over years via at least the 602 process, to curb the known, documented misconduct of his staff contributed to and proximately caused the above-described violations of Pl.'s rights under the First Amdt.

97. The failure of Def. T. Campbell, after being put on notice over years via at least the 602 process, to curb the known, documented misconduct of her staff contributed to and proximately caused the above-described violations of Pl.'s rights under the First Amdt.

98. The failure of Def. S. Babb, after being put on notice via at least 602s/OIA outreach, to curb the known, documented misconduct by his staff contributed to and proximately caused the above-described violations of Pl.'s rights under the First Amdt.

99. The failure of Def. OIA Does, after being put on notice over years via 602s/letters, to curb the known, documented retaliation of the same CSP-COR employees contributed to and proximately caused the above-described violations of First Amdt. rights.

### B. Eighth Amdt.; Deliberate Indifference

100. The action of Def. J. Burnes, after Pl. was double cell cleared, and after Pl.'s history of 602s against Def., in making inflammatory statements to inmates when it was reasonable for Def. to have known this could incite attacks against Pl. was maliciously and sadistically done, constituted deliberate indifference, and violated Pl.'s rights under the Eighth Amdt.

101. The actions of Def. V. Pena, after Pl. was double cell cleared, and after Pl.'s history of 602s/complaints, in making inflammatory statements to inmates when it was reasonable for Def. to have known this could incite attacks against Pl. was maliciously and sadistically done, constituted deliberate indifference, and violated Pl.'s rights under the Eighth Amdt.

102. The actions of Def. E. Sanchez, after Pl. was double cell cleared, and after Pl.'s history of 602s/complaints, in making inflammatory statements to inmates when it was reasonable for Def. to have known this could incite attacks against Pl. was maliciously and sadistically done, constituted deliberate indifference, and violated Pl.'s rights under the Eighth Amdt.

103. The actions of Def. K. Kyle, after Pl.'s history of 602s and complaints against Def., in not submitting/drafting opposition in the committee that double cell cleared Pl. was done maliciously and sadistically, constituted deliberate indifference to Pl.'s safety and violated Pl.'s rights under the Eighth Amdt.

104. The actions of Def. S. Babb for allowing Pl.'s double cell clearance to go through at committee after OIA forwarded Pl.'s letter regarding those same committee Defs. allegedly retaliating against Pl., constituted deliberate indifference to Pl.'s safety and violated Pl.'s rights under the Eighth Amdt.

105. The actions of Def. P. Ricablanca upon not completing an adequate medical examination of Pl., and, upon ISU instruction, recorded statements not made by Pl. to Def., constituted deliberate indifference and was in violation of Pl.'s rights under the Eighth Amdt.

106. The actions of Def. J. Garcia, after being named in Pl.'s 602s/complaints/litigation, in monitoring as tower officer during misconduct incidents (CDCR-documented in investigation/other records), but not reporting/intervening, as required by CDCR policy, constituted deliberate indifference and violated Pl.'s rights under the Eighth Amdt.

107. The actions of Def. K. Kyle, after Pl. told her in confidential mental health sessions that he was filing 602s against J. Burnes/others, in not reporting Pl.'s allegations to known proper CDCR authorities and instead informed Def. J. Burnes/other known-violent, yard-4A staff, which disclosure resulted in Pl. being assaulted, was maliciously and sadistically done, constituted deliberate indifference and violated Pl.'s rights under the Eighth Amdt.

108. The failure of Def. S. Gates, by not removing Def. K. Kyle from her post/assignment over Pl. after Pl.'s multiple 602s/complaints on Def. K. Kyle constituted deliberate indifference and violated Pl.'s rights under the Eighth Amdt.

109. The failure of Def. K. Clark, after being put on notice multiple times over the years via at least 602s and complaints, to take adequate action to curb his staff's misconduct contributed to and proximately caused the above-described violations of Pl.'s rights under the Eighth Amdt.

110. The failure of Def. T. Campbell, after being put on notice multiple times over the years via at least 602s and complaints, to take adequate action to curb her staff's misconduct contributed to and proximately caused the above-described violations of Pl.'s rights under the Eighth Amdt

111. The failure of Def. OIA Does to curb the known, documented misconduct of the same CSP-COR Defs., over years, contributed to and proximately caused the above-described violations of Pl.'s rights under the Eighth Amdt.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Pl. respectfully requests that the Court grant the following relief:

**A. Issue declaratory judgments stating:**

112. Declare Def. K. Clark violated Pl.'s First and Eighth Amdt. rights when he failed to protect Pl. from alleged retaliation, and, pursuant to CA GOV § 815.2, as liable for injuries proximately caused by acts/omissions of his employees within the scope of their employment. Defs. acted under Def. K. Clark's direction/control when engaging in the above-alleged misconduct.

113. Declare Def. T. Campbell violated Pl.'s First and Eighth Amdt. rights when she failed to protect Pl. from alleged retaliation, and, pursuant to CA GOV § 815.2, as liable for injuries proximately caused by acts/omissions of her employees within the scope of their employment. Defs. acted under Def. T. Campbell's direction/control when engaging in the above-alleged misconduct.

114. Declare Def. S. Babb violated Pl.'s First and Eighth Amdt. rights when he failed to protect Pl. from retaliation and assaults.

115. Declare Def. OIA Does violated Pl.'s First and Eighth Amdt. rights when they failed to protect Pl. over years from retaliation and assaults.

116. Declare Def. P. Ricablanca violated Pl.'s Eighth Amdt rights when he failed to provide adequate medical/mental health assessment of Pl.

117. Declare Def. J. Garcia violated Pl.'s Eighth Amdt. rights when against CDCR/state policies he failed to report/intervene for any misconduct despite being present/monitoring as tower officer.

118. Declare Def. J. Burnes violated Pl.'s First Amdt. rights when he threatened, harassed, assaulted Pl. for filing 602s/litigation/letters to oversight agencies, and violated CA CCP § 1732, CA Title 15 § 3160, CA PC § 136.1, CA PC § 422, and 18 U.S.C. § 1512, which regulations support Pl.'s First Amdt. rights.

119. Declare Def. A. Encinas violated Pl.'s First Amdt. rights when he threatened, harassed, assaulted Pl. for filing 602s/litigation/letters to oversight agencies, and violated CA CCP § 1732, CA Title 15 § 3160, CA PC § 136.1, CA PC § 422, and 18 U.S.C. § 1512, which regulations support Pl.'s First Amdt. rights.

120. Declare Def. C. Navarro violated Pl.'s First Amdt. rights when he threatened, intimidated Pl. for filing 602s/litigation/letters to oversight agencies, and violated CA CCP § 1732, CA Title 15 § 3160, CA PC § 136.1, CA PC § 422, and 18 U.S.C. § 1512, which regulations support Pl.'s First Amdt. rights.

121. Declare Def. E. Moreno violated Pl.'s First Amdt. rights when he harassed/intimidated Pl. over Pl.'s filing 602s/litigation/letters to oversight agencies, and violated CA CCP § 1732, CA Title 15 § 3160, CA PC § 136.1, CA PC § 422, and 18 U.S.C. § 1512, which regulations support Pl.'s First Amdt. rights.

122. Declare Def. J. Burnes violated Pl.'s First Amdt. rights when after Pl.'s § 1983 was filed, Def. cancelled an in-progress, safe cellmate pairing and chose a known violent, predatory inmate as Pl.'s cellmate.

123. Declare Def. Does threatening Pl.'s potential witnesses to not speak with Pl.'s investigator violated Pl.'s rights under the First Amdt., and violated CA CCP § 1732, CA Title 15 § 3160, CA PC § 136.1, CA PC § 422, and 18 U.S.C. § 1512.

124. Declare Def. J. Cerda, after Pl.'s 602s, complaints, litigation, in reviewing/destroying, not following CDCR policy for handling boxes of Pl.'s legal mail, constituted retaliation violated Pl.'s rights under the First Amdt., and violated CA Title 15 § 3143, § 3160, CA PC 530.5 (e), 18 U.S.C § 1708, which regulations support Pl.'s First Amdt. rights.

125. Declare Def. A. Encinas, after Pl.'s 602s, complaints, litigation, in reviewing/destroying, not following CDCR policy for handling boxes of Pl.'s legal mail, constituted retaliation violated Pl.'s rights under the First Amdt., and violated CA Title 15 § 3143, § 3160, CA PC 530.5 (e), 18 U.S.C § 1708, which regulations support Pl.'s First Amdt. rights.

126. Declare S. Babb for allowing Pl.'s double-cell clearance to go through at committee after Def. received OIA's/Pl.'s forwarded letter alleging retaliation by these same Defs. constituted deliberate indifference and violated Pl.'s Eighth Amdt. rights.

127. Declare Def. S. Gates by failing to take adequate action, over years, after being put on notice of the danger/pattern of yard-4A abuse via issuing Headquarters' final decisions on mental health/medical 602s, constituted deliberate indifference and violated Pl.'s rights under the Eighth Amdt. And pursuant to CA GOV § 815.2, declare Def. S. Gates as liable for injuries proximately caused by acts/omissions of her medical/mental health employees

within the scope of their employment. Defs. acted under Def. S. Gates' direction and control when engaging in the above-described misconduct.

128. Declare Def. K. Kyle by informing known-violent staff of Pl.'s reports made against them, but not referring such allegations to the known proper reporting authority, violated Pl.'s Eighth Amdt. rights, and violated CA Title 16 § 1881, CA WIC § 15630.

129. Declare Def. W. Lewis, upon Pl. producing Def.'s work logs as supporting evidence for 602s/complaints/litigation, in filing a false allegation/charge against Pl., and not reporting to the known proper reporting authority alleged misconduct of colleagues as required by CDCR/state regulations, constituted retaliation and violated Pl.'s rights under the Eighth Amdt., and violated CA Title 16 § 1881, CA WIC § 15630.

130. Declare Def. J. Burnes, in committing the acts alleged herein, as guilty of oppression, fraud, and/or malice within the definition of CA CC § 3294, which entitles Pl. to punitive or exemplary damages in an amount appropriate to punish Def. and make an example of Def. to the community.

131. Declare Def. M. Rodriguez, in committing the acts alleged herein, as guilty of oppression, fraud, and/or malice within the definition of CA CC § 3294, which entitles Pl. to punitive or exemplary damages in an amount appropriate to punish Def. and make an example of Def. to the community.

B. **Issue compensatory damages:**

    a.  For compensatory damages in an amount to be proven at trial.

    b.  For all nominal damages.

    c.  For any additional general and or specific, consequential and or incidental damages in an amount to be proven at trial.

d.  For all punitive damages in an amount appropriate to punish the Def. and make

an example of the Defs. to the community.

e.  For all interests, where/as permitted by law.

**C. Issue injunctions ordering:**

132. Transfer Pl. from CSP-COR without delay, with all of his legal/regular properties, to a

prison of his choice. This is to exclude Kings and Kern County-based prisons where Defs.

work, where Danielle Peña Gonzalez who Pl. has been retaliated on because of/for works.

133. Prohibit CSP-COR, Kings County-based or Kern County-based prisons from housing Pl.

again for any duration of time for any reason—even for court attendance/hold overs.

134. Allow Pl. to determine the final choice in what yard/facilities he will be housed in any

future transfers/cellmates, so that transfers/housing cannot be maliciously used as

retaliation or as a set up against Pl.

135. Permanent keep away from Defs.

136. False charges against Pl. to be withdrawn, and any loss of credits restored, fines

reimbursed, privileges reinstated, statuses restored; for it to be documented in Pl.'s C-

File/records that these were false allegations and or charges now exonerated.

137. The CA licenses of Defs. K. Kyle and W. Lewis to be immediately suspended without stay.

**D. Grant any such other relief as it may appear that Pl. is entitled.**

Respectfully submitted on August 15, 2024,

*[signature]*

p.p. Jamie Osuna, CDCR # BD0868

CSP-Corcoran PO Box 3476

CA 93212

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna
  Pl.,

       against

J. Burnes, K. Kyle,
W. Lewis, A. Loza,
A. Encinas, V. Pena
C. Navarro, S. Babb,
J. Cerda, E. Moreno, et al,
  Defs.

Docket No.: 1:24-cv-00793-KES-SAB (PC)
**CIVIL RIGHTS COMPLAINT UNDER**
42 U.S.C. § 1983
State Prisoner

**LETTER TO CLERK**

---

**TO THE CLERK OF THE EASTERN DISTRICT OF CALIFORNIA, CIVIL DIVISION:**

  Pl. encloses amended complaint 1:24-cv-00793-KES-SAB (PC) in response to the screening

order issued July 23, 2024. Pl. has only one prior § 1983 1:19-cv-00554-AWI-EPG; filed 2/10/19,

in the Northern District, which Hon. A. Ishii dismissed without prejudice 8/23/19.


Respectfully submitted on August 15, 2024,

*[signature]*

p.p. Jamie Osuna, CDCR # BD0868

CSP-Corcoran PO Box 3476

CA 93212

RECEIVED

AUG 19 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____DEPUTY CLERK