**FILED**

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

NOV 14 2024

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

| | |
|---|---|
| Jamie Osuna, CDCR #BD0868<br>PO Box 3476<br>Corcoran, CA 93212<br>    Pl.,<br><br>    against<br><br>J. Burnes, K. Kyle, W. Lewis, A. Loza, V. Pena, A. Encinas, J. Alejo, J. Fugate, R. Rubio, T. Brazelton, A. Arisco, F. Munoz, E. Sanchez, E. Moreno, C. Navarro, J. Garcia. E. Romero, S. Gates, P, Ricablanca, L. Vasquez, K. Clark, T. Campbell, et al Defs. | Docket No.: 1:24-cv-00793-KES-SAB<br>**CIVIL RIGHTS COMPLAINT UNDER**<br>42 U.S.C. § 1983<br>State Prisoner<br>Amended Complaint<br><br>**IMMINENT DANGER OF SERIOUS PHYSICAL INJURY/DEATH**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## I.  JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & § 1343 (a)(3) in that this is a civil action arising under 42 U.S.C. § 1983. Pl. seeks declaratory, injunctive, punitive, and compensatory judgments pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, and is empowered to grant injunctive, declaratory relief 2202 & § 1346, Fed. R. Civ. P. Rule 57 and is empowered to grant injunctive relief pursuant to Federal Rules of Civil Procedure, Rule 65. Venue is proper pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of events and omissions giving rise to Pl.'s claims occurred at CSP-COR, Corcoran, CA, which is within this Court's judicial district.

## II.  INTRODUCTION

2. This is a civil rights action brought forth by Jamie Osuna, a state prisoner, alleging violations of the First and Eighth Amdts. to the U.S. Constitution for retaliation and deliberate indifference to health and safety.

3. The acts described herein follow years of alleged misconduct (retaliation) at CSP-COR by the

**RECEIVED**

NOV 14 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

1   same Defs., over which Pl. sought redress without relief through administrative

2   remedies, complaints, correspondence with oversight agencies.

3   4. 02/20/19, Pl. filed § 1983 1:19-cv-00554-AWI-EPG alleging retaliation over Pl.'s

4   administrative remedies.

5   5. Defs. allegedly retaliated on Pl. for filing 1:19-cv-00554-AWI-EPG, including knowingly

6   Defs. allegedly retaliated on Pl. for filing 1:19-cv-00554-AWI-EPG, including knowingly

7   putting Pl. in imminent danger. As described in section V, Def. J. Burnes, and others, allegedly

8   conspired to cell Pl. with several inmates incompatible with Pl. by CDCR policies, gave

9   inmates false, inflammatory information regarding Pl.'s conviction which could incite

10   violence. Later, a known-violent, predatory inmate, L. (Luis Gilberto) Romero, was celled with

11   Pl., resulting in Pl.'s current open case 19CM-1882 with the death of L. Romero.

12   6. On 09/24/22, Pl. filed grievance # 315792 over his endorsement and later transferred back to

13   CSP-COR, where he continues to experience retaliation and threats over his grievances and

14   complaints filed against Defs. These Defs. continue to intervene in Pl.'s due process and

15   continue to assign themselves to manage every aspect of Pl.'s life when, by CDCR policy for

16   grievance investigations, there should have been a staff separation enforced. Defs. continue to

17   investigate themselves for Pl.'s allegations. 315792 appended around ninety-seven supporting

18   documents to map the consistent pattern of the same Defs. continuing to deter Pl. from filing

19   grievances/contacting oversight agencies. This alleged deterrence includes threats.

20   7. Pl. takes all threats as credible due to the actions described in Section V of this complaint and

21   due to around twenty 42 U.S.C. § 1983 and 28 U.S.C. § 2254 cases being filed yearly by CSP-

22   COR inmates against many of the same staff/Defs., for similar incidents, every year for several

23   years, with injuries or harm allegedly done to those plaintiffs by some/same Defs.

24   8. Due to Pl.'s intellectual hardship of being under a continual PC 2602 grievance order,

25   schizophrenic-type mental illness, SHU/RHU housing, alleging ongoing retaliation, Pl.

26   requested and

27   received help in the transcribing/writing of this complaint.

28                              **III.   PARTIES**

9. Pl. Jamie Osuna is a state prisoner incarcerated at CSP-COR, Corcoran, CA.

10. Def. J. (Joseph A.) Burnes, a Sgt., is being sued in his individual, official capacities; PERN # 18566; badge # 69436.

11. Def. K. (Kristin) Kyle(-Maytubby) was a Mental Health Supervisor and is being sued in her individual, official capacities. Def. is now working as a faculty member at Bakersfield College, Bakersfield, CA; and as co-owner of Tranquility Valley Wellness, Bakersfield, CA; CA license # 26467.

12. W. (Walter) Lewis, Psychiatric Technician, is being sued in his individual, official capacities; CA license # 31438.

13. Def. A. (Arnoldo) Loza, CO, is being sued in his individual, official capacities; badge # 91237.

14. Def. V. (Vicente Rodriguez) Pena, an ISU CO, is sued in his individual, official capacities; badge # 84731.

15. Def. A. (Arturo) Encinas, Sgt./Lt., is sued in his individual, official capacities; PERN #17963.

16. Def. J. (Jaime) Alejo, CO, is sued in his individual, official capacities.

17. Def. J. (John) Fugate, ISU CO, is sued in his individual, official capacities.

18. Def. R. (Richard) Rubio, ISU CO, is sued in his individual, official capacities.

19. Def. T. (Trevor) Brazelton, ISU CO, is sued in his individual, official capacities.

20. Def. A. (Alonzo) Arisco, ISU CO, is sued in his individual, official capacities.

21. Def. F. Munoz, Lt., is sued in his individual, official capacities

22. Def. E. (Eric C.) Sanchez, an ISU CO, is being sued in his individual, official capacities.

23. Def. E. (Enrique) Moreno, Lt., is being sued in his individual, official capacities.

24. Def. C. (Carlos) Navarro, ISU Sgt., is sued in his individual, official capacities; badge # 80707.

25. Def. J. Garcia, CO, is being sued in his individual, official capacities; badge # 60476.

26. Def. E. Romero, CO, is being sued in his individual, official capacities.

27. Def. S. Gates, is Chief of Health, is sued in her individual, official capacities.

28. Def. P. Ricablanca, Psychiatric Technician, is sued in his individual, official capacities.

29. Def. L. Vasquez, Mailroom Supervisor, is sued in her individual, official capacities.

30. Def. K. (Ken A.) Clark was Warden and is being sued in his individual, official capacities.

3

1  31. Def. T. (Tammy L.) Campbell, Warden, is being sued in her individual, official capacities.

2  32. Defs. (John/Jane) Does were/are prison personnel, are sued in individual, official capacities.

3  ### IV.  ADMINISTRATIVE REMEDIES

4  33. Grievance (grievance) log <u>315792</u> was filed 09/24/22 and exhausted in 07/2023 at all levels in

5  the California Department of Corrections and Rehabilitation (CDCR) for violations of Pl.'s

6  rights under the First and Eighth Amendments to the U.S. Constitution. CDCR/CSP-COR

7  misclassified this grievance as an excessive force grievance.

8  ### V.  FACTUAL ALLEGATIONS

9  34. On 12/16/18, Pl. wrote a letter to Def. OIA Does about the alleged retaliation Pl. suffered and

10  witnessed in 4A by Def. J. Burnes, others, including staff-on-inmate assaults, set ups. Pl.

11  alleged CSP-COR's management, which included Defs. K. Kyle and K. Clark were acting in

12  deliberate indifference. Pl. stated he would file a § 1983. Pl. asked Def. OIA Does to not refer

13  their investigation back to CSP-COR to handle due to ISU Officers being involved and would

14  investigate themselves. Pl. requested Def. OIA Does to not forward his letter due to likely

15  retaliation. Def. OIA Does forwarded Pl.'s letter to CSP-COR/S. Babb around mid-January

16  2019.

17  35. On or around 01/18/19, Defs. J. Burnes under/with E. Romero and K. Kyle produced an

18  inaccurate 128-G Chrono falsely listing Pl. as an active Southerners/Sureños gang member.

19  36. An accurate 128-G Chrono was already on Pl.'s file, so another Chrono was not needed. Defs.

20  knew or it is reasonable that Defs. should have known this was not Pl.'s affiliation due to this

21  other 128-G record and the reviews required for inmate placement/housing decisions pursuant

22  to CA Title 15 <u>§ 3269.1</u>; CA Title 15 <u>§ 3269.</u> The inaccurate 128-G Chrono met the criteria for

23  Pl. to be double-cell cleared. It met the criteria for the celling of Pl. with specific inmates not

24  otherwise possible under CDCR/state policies. Def. J. Burnes also recommended for Pl. to be

25  sent to a 270 yard, against Pl.'s actual case-factors.

26  37. Defs. J. Burnes and K. Kyle held a special committee with only Defs. J. Burnes and K. Kyle in

27  attendance for the purpose of clearing Pl.'s mental health status, which enabled Pl. to meet the

28  criteria for double-cell clearance.

4

38. 01/18/19, the same day of the 128-G chrono signing, another committee was held without Pl. present when committee meetings usually include the affected inmate. The committee summary report shows participants included Def. K. Kyle. S. Babb, as AW, and or Def. K. Clark, signed off on the report as a job duty.

39. It was brought to Pl.'s attention that Def. K. Kyle, as Mental Health Supervisor, had the authority to draft reporting/advocate for Pl. to be on temporary single-cell status but chose to not do so. Def. K. Kyle had before/during that time placed Pl. under extreme mental health restrictions—Pl. was not allowed to have razors, containers due to Pl.'s CDCR-documented, ongoing self-mutilations. Def. had Pl. on restrictions to not be around other inmates, even for/in work or educational settings. Previously, Def. had rebuffed, mocked to Pl. RBGG's letter to CSP-COR regarding a necessary but withheld elevation of mental health care/transfer of Pl. Def. would express her anger at Pl.'s grievance being added to her permanent record, and for Pl. contacting Def.'s supervisors over Def. K. Kyle's misconduct, including Def. K. Kyle's alleged cover-up/complicity with Def. J. Burnes.

40. Pl. disagreed with the decision to double cell clear him. Pl. requested other staff make housing decisions for Pl. due to the conflict of interest in Defs. K. Kyle, J. Burnes deciding to double cell clear and recommend/decide what yards to send Pl. to when Pl. had around more than a dozen grievances and complaints against these Defs. Pl.'s request was denied, and Pl. was threatened by staff with disciplinary action if Pl. were to refuse any cellmate.

41. Within two days of the above committee, on 01/20/19, S. Babb sent Pl. a memo to inform Pl. of Def. OIA Does having forwarded Pl.'s letter to CSP-COR/S. Babb.

42. S. Babb's memo stated S. Babb had addressed Pl.'s allegations made to the OIA, that "All information pertaining to the allegation has been reviewed and all issues were adequately addressed." S. Babb found staff "not in violation" of policies.

43. 01/23/19, Defs. J. Burnes, A. Loza, and J. Alejo (CO) escorted Pl. from his cell. Once in the rotunda, Def. J. Burnes unprovoked bashed Plaintiff's head into the wall. Def. J Alejo stated to Plaintiff, "Are you gonna keep writing grievances?" and upon returning to the cell, Pl. was told, "We'll stop when you stop [with grievances]."

5

1    44. On 01/24/19, 01/27/19, other near dates, Pl. filed grievances, sent letters to RBGG, OIA, OIG

2        that Def. K. Clark was aware of 4A staff's threats, retaliation, uses of force. There was no

3        intervention after these actions. When coming back from a mental health appointment, Def. J.

4        Burnes bashed Pl.'s head into the wall and warned Pl. against what Def. called "snitching,"

5        which included grievances, complaints, letters to oversight agencies.

6    45. On or around 01/27/19, Def. J. Burnes came to Pl.'s cell and said, "So, you're writing

7        grievances again?" and that, "That's the word. I got ears everywhere." Pl. asked, "Is that what

8        Kyle [Def. K. Kyle] told you after my one-on-one? 'Cause she's the only one I told."

9    46. Def. J. Burnes said, "Do you think your clinician's going to believe anything you have to say,

10       huh? She knows you're a long-hair, faggot, son of a bitch. You don't want to get fucked up

11       like last time."

12   47. Throughout 2019, Pl. gave approx. three letters addressed to Def. OIA Does to Def. Does (unit

13       COs) to mail out. These letters never made it to Def. OIA Does or Pl. received no reply.

14   48. On or around 02/05/19, Pl.'s grievance # CSPC-5-19-01003 was denied because Pl. had made

15       "a general allegation" about use of force/retaliation when he actually been detailed and

16       provided supporting paperwork. Pl. replied on the form's response section that Pl. had a paper

17       trail of evidence against Defs. J. Burnes, A. Encinas, ISU Officers.

18   49. By 02/10/19, (former) inmate, A. (Anthony) Turner G27511 had been witness to various

19       assaults/misconduct from some Defs. against Pl. A. Turner learned Pl. was unable to get mail

20       out and or was not receiving responses to his grievances. A. Turner previously recommended

21       that Pl. contact Def. S. Gates who had hired Def. K. Kyle and who reviewed/issued final

22       decisions on mental health/medical grievance appeals. A. Turner now offered to send any

23       documents on Pl.'s behalf under A. Turner's address/envelopes in order to get it out of COR.

24   50. 02/10/19, on behalf of Pl., A. Turner transcribed, sent 1:19-cv-00554-AWI-EPG to the Court.

25       A. Turner sent the filing under his own return address envelope in order to get it out of CSP-

26       COR (see Document 1-1 of that filing.) Pl.'s name "Osuna" was misspelled as "Asuna" on/in

27       the complaint, and the filing was sent to the wrong district.

28   51. 02/11/19, A. Turner mailed an envelope under his address on behalf of Pl. to Def. S. Gates,

6

1    which CDCR stamped as received. On 02/11/19, through a CDCR *Form 22 Inmate Request for*

2    *Interview, Item or Service*, Pl. reported, "Sara Gates, my name is Jamie Osuna. I had a credible

3    friend send you documents to Sacramento due to so much going on and my mail being

4    tampered with. I have made serious allegations against [Defs. K. Kyle, J. Burnes], 2nd watch, in

5    which I've made a paper trail, have evidence. I wish to correspond with you to show you [Def.

6    K. Kyle's] involvement in what's going on."

7    52. 02/20/19, the Eastern District Deputy Clerk mailed notice (see Document 4 of that filing) to Pl.

8    regarding his incomplete in forma pauperis application. The arrival of this mail piece alerted

9    CSP-COR about Pl.'s § 1983.

10   53. After Pl.'s double cell clearance and grievances/§ 1983, inmates reported to Pl. that Defs. V.

11   Pena, E. Sanchez, J. Burnes made inflammatory, false statements about Pl. to inmates that

12   could incite attacks, including that Pl. had sex crime charges, that Pl. tried to attack those

13   inmates' homeboys, that Pl. was not to be trusted.

14   54. Def. J. Burnes sought to cell inmates with Pl. who were not allowed (not compatible) with Pl.

15   under CDCR/state policies. A few inmates refused based on these policies/incompatibilities.

16   Inmate Rodriguez was written up for that refusal. After Def. A. Loza wrote up inmate

17   Richardson for his refusal to cell with Pl., inmate Richardson showed Pl. the paperwork.

18   Inmate Ortega told Pl. that Def. J. Burnes stated Pl. was not to be trusted and Def. J. Burnes

19   would allow inmate Ortega to bring a knife into the cell if he would cell up with Pl.

20   55. Pl. discussed, agreed to cell up with one man. Pl./this man was case-factors-wise deemed

21   compatible under CDCR/state policies. Pl./man then notified staff that they would be paired.

22   56. Pl. was notified this pairing was canceled. Pl. asked Def. E. Romero what happened. Def. E.

23   Romero stated to Pl. that Def. J. Burnes "didn't want to do it" and had said "no" to the pairing.

24   The inmate stated to Pl., that the inmate had been told "no" to their pairing.

25   57. Pl. was instead celled with L. Romero—an inmate incompatible with Pl. by CDCR/state

26   policies. L. Romero had a CDCR-documented history of in-cell violence. L. Romero's CDCR-

27   documented prison nickname was "Rocky" due to a love for physical fighting. Def. A. Loza

28   signed the cell chrono after a CDCR-documented history of Def. allegedly retaliating on Pl.

1    with Def. J. Burnes, including repeated cell searches, assault.

2    58. Pl. was surprised that Def. J. Burnes (with or without others), chose this inmate because

3    CDCR's IHP policy is to review inmate histories, and hold a double-cell clearance hearing. L.

4    Romero was also not on restrictions when Pl. was, which should have barred the pairing.

5    59. Once within the cell with Pl., Def. J. Burnes stated to L. Romero, "You're letting me down."

6    60. L. Romero was the only one to go out to shower and was unusually allowed to keep his razor

7    afterward. Def. J. Cerda had been L. Romero's shower escort.

8    61. Later, in or around 2020, Pl. learned through his former investigator that L. Romero allegedly

9    had previous homosexual contact with Def. J. Burnes. CDCR documented L. Romero's

10    following incidents (inexhausted list), which records were available to Defs. who/ when Defs.

11    had reviewed, or arranged, and or approved the cell pairing:

12    62. 07/23/13, *CDC 114-A1* (battering an inmate); 12/10/14, RVR log # *3B-14-12-026/COR-03B-*

13    *14-12-072B* (unprovoked attacked inmate from behind); 04/10/15, Kings County Superior

14    Court felony *15cm-7121*; 06/04/15, CSP-COR RVR log # *FC-15-05-023* (refused a cellmate

15    because inmate was "a Black guy.") 05/20/15, CDCR *128-MH3 Mental Health Placement*

16    *Chrono* notated L. Romero's "history of fighting," "batteries on inmates," and "making pruno"

17    (prison moonshine.) 10/01/16, RVR log # *994525* (attacked his cellmate.) 07/09/15, L.

18    Romero's parole was denied because he was "still acting violently," was a "continued threat to

19    public safety." His recent RVRs were related to violence. The Parole Board considered L.

20    Romero "an extreme risk to the community, and therefore [he was] not suitable for parole,"

21    with the next hearing not for at least a decade. The Parole Board noted L. Romero was

22    "impulsive," "unstable," was the product of a bad childhood with an "abusive mother." L.

23    Romero had to provide a potential job/location if he were to be deported. 12/08/18, L. Romero

24    was found guilty of attacking his cellmate and not stopping his attack at the CO's commands to

25    stop, having to be chemically sprayed in the face. 01/18/19, *MCSP-AYD-19-01-0029*

26    (unprovoked attack on an inmate from behind and L. Romero was found with an inmate-

27    manufactured weapon/BIC razor handle with cloth and tape around it holding two razor

28    blades.)

8

63. On or around the first week of 03/2019, Pl.'s current open felony case 19CM-1882 occurred with the death of L. Romero. Pl. was escorted from his cell sometime in the early morning after that event and put into a rotunda holding cage, where Pl. repeatedly asked for medical/mental health help, but no care was provided.

64. Nearby were a group of management level staff, and or Def. K. Clark, and or others. Pl. overheard the group stating that they had to get an interview with Pl. before anything else, to do whatever it takes to get an interview out of Pl.

65. Defs. Sgt. C. Navarro and T. Brazelton (ISU) informed Pl. that they were going to do a video-recorded interview with Pl. over the incident, and that Pl. was going to cooperate for the interview. Def. C. Navarro at that time reminded Pl. what had happened to Pl. before (i.e. the chair assault and battery covered in Pl.'s first § 1983) and told Pl. that this was "nothing compared" to what they could do if Pl. were to refuse to do the interview. Pl. again asked for medical treatment/clinician; no treatment/help was given to Pl. Def. Does (ISU Officers) also informed Pl. that he would do their video interview.

66. Pl. again stated that he had not wanted to do the interview or be recorded. Pl. was intimidated to do the interview, and it was made it clear that Pl. could not receive any medical attention, water/food, until Pl. complied. Under unlawful coercion, Pl. completed the interview. Then Plaintiff was put back into the rotunda cage until around midnight when Defs. P. Ricablanca and E. Romero approached Pl., and Def. P. Ricablanca took Pl.'s blood pressure. Def. P. Ricablanca had not otherwise provided Pl. medical attention/assessment, had not done this at the documented time of 0745, and had not actually spoken with Pl. as was otherwise documented on Def.'s CDCR *Form 7219 Medical Report of Injury* ("*7219.*") This was done after Def. V. Pena had instructed the RN/medical staff not to conduct a *7219* on Pl. and provided such statements for Pl. to Def. P. Ricablanca. An emergency committee ordered Pl. under an emergency mental health hold.

67. On or around 03/09/19, Defs. A. Arisco, J. Fugate, R. Rubio, T. Brazelton processed the crime scene. Pl.'s legal materials in a protective bag for 1:19-cv-00554-AWI-EPG/grievances were removed from Pl.'s cell and never returned. The bag was shown uncontaminated on a counter

1    in the crime scene photographs. ISU had not accounted for/itemized the uncontaminated

2    bag/contents. Over the next few months, Pl. first had no writing tools (only crayons) allowed

3    for months, and Pl. was not allowed to respond to the Court for 1:19-cv-00554-AWI-EPG. On

4    8/23/19, the Court dismissed that case for no response.

5    68. Around 03/21/2019, the false allegation by Def. J. Burnes against Pl. that was then used by the

6    Kings County DA in a charge. Def. J. Burnes had made the same allegation of other inmates

7    "lunging" trying to "bite" Def. when justifying Def.'s use of force. (*C-COR-083-20-A*, OIA

8    Investigative Report; OIA found J. Burnes' statements uncorroborated.)

9    69. 03/27/19, Pl.'s grievance regarding retaliation, excessive use of force repeatedly by the same

10    Defs. was partially granted. Investigator D. Lopez's interview included Pl.'s allegations from

11    when two sgts. Does came to Pl.'s cell-front to conduct a video interview for Pl.'s grievance

12    against Def. J. Burnes. Def. J. Burnes was with the sgts., and Def. threatened Pl., "You better

13    not say nothing." At that time, Pl. had told the sgts. Def.'s presence was against CDCR DOM

14    51020.17.3—Def. J. Burnes was behind the video camera in intimidation. Pl. stated Pl. would

15    not come out for the video until Def. was not there. The two sgts. Does conducted a summary

16    video cell-front stating Pl. refused the interview. Pl. can be heard in the background shouting

17    that Def. J. Burnes was behind the camera and was threatening Pl. Pl. was not granted a second

18    use of force interview/video despite that Pl. put Def. K. Clark and the Deputy Associate

19    Warden Doe on notice in writing about the above incident.

20    70. Def. W. Lewis' false allegation against Pl. for making a death threat was later picked up by the

21    Kings County DA on or around 06/28/2021 as charge 21CM-4750. Def. W. Lewis made his

22    allegation after Pl. mentioned Pl. had evidence of PT rounds logs. These logs supported Pl.'s

23    claims that Def. was present to aid and abet Def. J. Burnes in an assault/misconduct against Pl.

24    Previously, Def. W. Lewis had stated he had not worked on those dates/shifts. Because of Def.

25    W. Lewis' allegation, Pl. was also punished with an extended SHU term. On or around

26    07/2021, Def. T. Campbell, C. Love (ISU) filled out a CDC 128-B. They gave Def. W. Lewis

27    an opportunity to move to a new post away from Pl. Def. W. Lewis declined. Pl. filed a

28    grievance on Def. W. Lewis for continuing to be around Pl. and writing up Pl. for a false

1   allegation. Def. W. Lewis never reported abuses/misconduct by Def. J. Burnes, others.

2   71. Around 2020 or 2021, Pl.'s (former) Investigator told Pl. a complaint had been filed with

3   CDCR because 4A inmates wrote Investigator letters stating Def. Does threatened the inmates

4   to not cooperate or talk with Investigator. These inmates had previously refused to come out

5   for their scheduled interviews with Investigator. An external agency was handling the

6   complaint due to ISU's alleged involvement with the threats. Pl. was also being threatened—

7   Def. Sgt. A. Encinas multiple times threatened Pl. to "keep his mouth shut." Def. C. Navarro

8   came to Pl.'s cell-front and stated to Pl. the reason nothing had yet happened to Pl. was that

9   there was a "lot of eyes" on Pl./Def., and Def. was "under investigation."

10  72. End of 2019/early 2020, Defs. J. Burnes and A. Loza moved from 4A to R&R, through where

11  Pl. is escorted for every court date transportation. Def. C. Navarro (with other ISU officers),

12  would drive to/around the back fence of R&R. During one incident, when Def. J. Burnes came

13  outside, Pl.'s window was rolled down, and Def. J. Burnes stated to Pl., "So, you're fighting

14  your case, huh? We'll see. You think you're going to win? We'll see about that. You're not

15  going to make it that far—remember what happened last time."

16  73. From 2020, some of Pl.'s legal properties (processed through R&R) that regards Defs. J.

17  Burnes, A. Loza, K. Kyle has gone missing from Pl.'s property.

18  74. Instead of investigating Pl.'s complaints of threats, intimidation, retaliation, J. Fugate (ISU),

19  others, indicated to Pl. to plead guilty (in 19CM-1882) to make the retaliation stop. On or

20  around 05/13/20, Pl. announced in Kings County Superior Court that he wanted to plead guilty

21  and waive his preliminary hearing, but the retaliation had not stopped.

22  75. 01/01/20, Pl. sent a letter to Def. S. Gates alleging retaliation in 4A. The letter was CDCR

23  stamped as received on 01/06/20. There was no intervention upon receipt of that letter.

24  76. On or around 07/20/20, Pl. had a one-on-one with Def. K. Kyle. She asked Pl. if he had any

25  remorse for "what he did to his first victim," expressed her dislike for his conviction, the sister

26  of which victim, Danielle Peña Gonzales Baltierra, is a CDCR employee. Both Defs. K. Kyle,

27  J. Burnes previously indicated to Pl. that they were retaliating on Pl. in part or had personal

28  dislike of Pl. over Danielle Peña Gonzales Baltierra/Pl.'s first case.

11

1    77. Pl. asked Def. what if the law were to come after her (regarding 19CM-1882) and Def. rolled

2    her eyes and stated, "I'll just say I raised my hand and opposed, while the Cpt. said if [Pl.]

3    doesn't like being double-cell cleared, he can grievance it." Def. told Pl. that she was on a

4    "first name basis" with the Warden "if you know what I mean," and that "we'll just settle out

5    of court like we always do."

6    78. 08/04/20, Pl.'s letter to Def. S. Gates alleging retaliation against Pl. was stamped received.

7    Def. provided no adequate intervention after that time, which resulted in alleged continued

8    misconduct with threats/assaults, other acts as herein described.

9    79. In 2020, each time Def. E. Moreno passed Pl.'s cell during Def.'s tier walk, Def. smashed his

10    beeper into Pl.'s window. After around four days of this, Pl./his friend confronted Def. on

11    yard, asking what was Def.'s problem. Def. E. Moreno stated, "I'm not going to apologize to

12    [Pl.], but it's strictly business."

13    80. In 2020, Def. Sgt. C. Navarro, Def. J. Burnes (and others), continued to intervene in 19CM-

14    1882. Pl.'s former counsel filed a complaint with CDCR legal affairs.

15    81. Def. C. Navarro and C. Love (ISU) came with a recorder to interview Pl. for the complaint,

16    and Pl. in fear of retaliation had to deny what was happening.

17    82. In or around that September, Defs. E. Moreno, J. Fugate, others, pulled Pl. from his cell and

18    left Pl. in the 4A1R front office, where Def. C. Navarro stood behind the desk. Def. had taken

19    out a mace can, placed it down facing towards Pl. Def. then bragged to Pl. that the Warden had

20    put Def. in the unit "to put out fires," that it had taken Def. a long time to get the respect Def.

21    has now—that it took Def. to "break a lot of ribs" to get where it/he is now. Def. then told Pl.

22    to "stay out the way" from then on.

23    ## VI.   CLAIMS FOR RELIEF

24    ### A.  FIRST AMDT TO THE US CONSTIT.; RETALIATION

25    83. The actions of Def. A. Loza, in retaliating against Pl. for and right after Pl. exercised Pl.'s

26    protected Constitutional conduct of filing grievances/complaints, civil litigation against Def.,

27    Def. took adverse action when he personally chose a known/CDCR-documented violent

28    cellmate for Pl., threatened Pl. with RVRs/loss of privileges if Pl. refused, failed to properly

1   classify or screen/failed to ensure the cellmate was properly classified/screened, resulting in Pl.

2   suffering unnecessary, wanton infliction of pain. These actions, conduct, omissions

3   demonstrated deliberate indifferent to Pl.'s safety, constituted retaliation, contributed to

4   injuries Pl. suffered, violated Pl.'s First Amdt. rights.

5   84. The actions of Def. A. Loza, in retaliating against Pl. for and right after Pl. filed

6   grievances/oral complaints to the OIA/RBGG in regards to Def./others regarding Defs. abusing

7   and setting up Pl./other inmates, Def. took adverse action when he continued to commit a

8   consistent pattern of onerous cell searches and expressing it would continue if Pl. continued

9   with grievances/litigation, accompanied by the confiscation of Pl.'s legal materials related to

10  Def. departing from the usual prison procedures in acting against Pl. As a result of these

11  actions, Pl.'s civil case 1:19-cv-00554-AWI-EPG against Defs. for excessive use of

12  force/staging assaults was dismissed for failure to prosecute/failure to response to make IFP

13  corrections. Def. J Burnes/A. Loza informed Pl. that warden Def. K. Clark permitted these

14  searches and Def. K. Clark refused/denied return these documents to Pl. Def.'s actions

15  constituted retaliation, violated Pl.'s First Amdt. rights.

16  85. The actions of Def. J. Burnes, in retaliating against Pl. for and right after Pl. filed

17  grievances/oral complaints to the OIA/RBGG in regards to Def./others regarding Defs. abusing

18  and setting up Pl./other inmates, Def. took adverse action when he continued to commit a

19  consistent pattern of onerous cell searches and expressing it would continue if Pl. continued

20  with grievances/litigation, accompanied by the confiscation of Pl.'s legal materials related to

21  Def. departing from the usual prison procedures in acting against Pl. As a result of these

22  actions, Pl.'s civil case 1:19-cv-00554-AWI-EPG against Defs. for excessive use of

23  force/staging assaults was dismissed for failure to prosecute/failure to response to make IFP

24  corrections. Def. J Burnes/A. Loza informed Pl. that warden Def. K. Clark permitted these

25  searches and Def. K. Clark refused/denied return these documents to Pl. Def.'s actions

26  constituted retaliation, violated Pl.'s First Amdt. rights.

27  86. The actions, omissions of Def. K. Clark, for and right after Pl. exercised his protected activities

28  and after Pl. sent Def. multiple institutional letters about Pl.'s legal mail being stolen and Def.

13

1   J. Burnes threatening Pl. over the use of force video and after Pl.'s complaint appeal CSPC-5-

2   18-05371 was **partially granted by Lt. D. Lopez, L. C. Hence** via **Staff Complaint**

3   **Response appeal # CSPC-5-19-00645/COR-2140-021 with the issue**: "You alleged Warden

4   K. Clark condones Staff misconduct with regards to unnecessary/excessive force and sexual

5   misconduct [against] inmates." Def. K. Clark took adverse action with permitting,

6   encouraging, ordering Defs. J. Burnes, A. Loza, C. Navarro to conduct back-to-back cell

7   searches to confiscate/destroy outgoing legal forms essential, crucial to Pl.'s civil case 1:19-cv-

8   00554-AWI-EPG (filed over excessive use of force/staging assaults.) As a result, 1:19-cv-

9   00554-AWI-EPG was dismissed for failure to prosecute/failure to response to make IFP

10  corrections. Def. J. Burnes/A. Loza had informed Pl. that Def. K. Clark permitted these

11  searches and Def. K. Clark refused/denied returning these documents to Pl. These actions

12  constituted retaliation, violated Pl.'s First Amdt. rights.

13  87. The actions of Def. J. Burnes in retaliating against Pl. for and right after Pl. filed grievances

14  against Def./others regarding retaliatory conduct: harassment, cell searches, use of force,

15  interfering with medical treatment, etc. Def. took retaliatory adverse conduct when he

16  committed a pattern of consistent, onerous cell searches, resulting in confiscation/destruction

17  of essential, crucial legal materials, constituted retaliation, violated Pl.'s First Amdt. rights.

18  88. The actions of Def. J. Burnes, in retaliating against Pl. for and right after Pl. voiced complaints

19  to OIA/filed grievances/civil case 1:19-cv-00554-AWI-EPG regarding beatings/staged assaults

20  of Pl./prisoners, Def. took adverse action when he double cell cleared L. Romero/Pl.,

21  threatened Pl. with a RVR if refused, expressed this was for Pl.'s complaints, resulting in

22  unnecessary, wanton infliction of pain/injury, had constituted retaliation, violated Pl.'s First

23  Amdt. rights.

24  89. The actions of E. Romero, in retaliation against for and right after Pl.'s filed

25  grievances/complaints, in producing/signing off on an unneeded, inaccurate new 128-G

26  Chrono so that Pl. then met the criteria for double cell clearing, was unfavorable classification,

27  resulting in unnecessary, wanton infliction of pain/injury, loss of privileges, increased security

28  threat, longer segregation time, had constituted retaliation, violated Pl.'s First Amdt rights.

14

1  90. The actions of K. Kyle, after Pl. filed grievances/complaints against Def. and having contacted

2      Def.'s supervisor, in producing/signing the inaccurate new 128-G Chrono so that Pl. then met

3      the criteria for double-cell clearance was unfavorable classification, resulted in unnecessary,

4      wanton infliction of pain/injury, had constituted retaliation, violated Pl.'s First Amdt. rights.

5  91. The actions of Def. S. Gates in retaliating against Pl. for filing grievances, civil complaint,

6      notices to and about Def. regarding extreme, consistent physical abuses of Pl./inmates in her

7      mental health segregation facility. Def. took adverse action when she contacted Def. K. Kyle

8      regarding blocking Pl.'s reclassification opportunities, worsening living/program conditions,

9      and excluding Pl. from recommended/required rehabilitative treatment classification lifting

10     Pl.'s mental health safety precautions (no cups, no razors, no access to inmates). The actions of

11     Def. resulted in the double cell assignment of Pl. receiving unnecessary, wanton infliction of

12     pain/injury, constituted retaliation, violated Pl.'s First Amdt. rights.

13 92. The actions of Def. W. Lewis, in retaliating against Pl. for and right after Pl. filed

14     grievances/complaints/civil litigation against Def. for participating in excessive use of force,

15     Def. expressed to Pl. Def.'s dislike that Pl. filed a grievance on Def. and took adverse action

16     for Pl.'s protected Constituional activities by filling false retaliatory RVR against Pl.

17     Complaint appeal CSPC-5-18-05371, that covered Def. W. Lewis' actions/involvement, **was**

18     **partially granted by Lt. D. Lopez, L. C. Hence through Staff Complaint Response appeal**

19     **# CSPC-5-19-00645/COR-2140-021.** Def.'s actions resulted in extended confinement in

20     isolation and loss of privileges. Def.'s actions constituted retaliation and violated Pl.'s First

21     Amdt. rights.

22 93. The actions of Def. J. Burnes, in taking retaliatory adverse conduct against Pl. for and right

23     after Pl. filed grievances/voiced complaints against Def./others for excessive use of force/death

24     threats, Def. took retaliatory adverse action in filing false disciplinary charges against Pl. Def.

25     falsely stated Pl. had lunged at Def. with his mouth open/to bite and Def. slammed Pl. on floor

26     in justifying the documented injuries on Def.'s knuckles/knees when Def had used excessive

27     use of force by beating punching/kneeing Pl.'s head and torso when Pl. restrained in chair.

28     Def. had a history of making such claims that inmates "lunged" at and tried to "bite" Def. in

15

1    justifying beating and breaking/shattering inmates' bones, for example: OIA investigative

2    report *C-COR-083-20-A*. Def.'s actions resulted in a loss of privileges, long-term isolative

3    confinement, and  contributed to/continues to contribute to unnecessary, wanton infliction of

4    pain, injuries/damages, had constituted retaliation, and violated Pl.'s First Amdt. rights

5    94. The actions of Def. A. Encinas, in taking retaliatory adverse conduct against Pl. for and right

6    after Pl. voiced complaints against Def./others for excessive use of force/death threats, Def.

7    took retaliatory adverse action when he filed false discipline charges Pl. for voice complaints

8    by stating Pl. lunged at him with his mouth open and slammed Pl. on floor to justify his

9    injuries on his knuckles/knees when he used excessive use of force by beating the Pl. in chair,

10    punching/kneeing to Pl.'s head and torso. These actions resulted in loss of privileges: long

11    term isolative confinement; contributed to/continues to contribute to unnecessary, wanton

12    infliction of pain, and contributed to injuries/damages, constituted retaliation, and violated

13    Pl.'s First Amdt. rights.

14    95. The actions of Def. C. Navarro, in retaliating against Pl. for and right after Pl. filed

15    grievances/complaints, Def. took adverse action when he deterred Pl./made Pl. give up Pl.'s

16    access to courts in exchange for Pl. to be free from serious risks/threats of harm. When Def.

17    pulled Pl. into an office and faced a mace can towards Pl., Def informed Pl. the warden called

18    Def. to gain control of the units, that Def. had to "break a lot of ribs" to get the respect he has

19    now to gain control, that no harm would come to Pl. if Pl. gave up Pl.'s access to

20    grievances/complaints. Def. continued to conduct consistent pattern of onerous cell searches

21    with no correctional goal only to confiscate Pl.'s outgoing legal mail/responses to the Eastern

22    District's orders and other crucial, essential evidence and documentation relevant to Pl.'s civil

23    case # 1:19-cv-00554-AWI-EPG, resulting in Pl. no longer being able to file grievances to

24    challenge unsafe conditions of confinement, etc., the entire time Pl. was there with Defs., had

25    constituted retaliation, contributed to damages/injuries, violated Pl.'s First Amdt. rights.

26    96. The actions of Def. E. Moreno took retaliatory action against Pl. for attempting to/accessing

27    civil courts to respond to Magistrate and Senior District Judges' orders/judgements for civil

28    case 1:19-cv-00554-AWI-EPG filed against Defs. for excessive use of force/staging

1    assaults/serious injury. Def. took adverse action when he deterred/made Pl. give up his

2    protected activities/conduct, access to courts in exchange to be free of use of force, inter alia.

3    Def. informed Pl. if Pl. did not stop/"stay out the way" that what had happened to Pl. before

4    (being beaten in the rotunda chair) would happen again. Def. would continue smashing Pl.'s

5    window with Def.'s beeper every day Def. worked. Def. expressed to an inmate that this

6    behavior/action wasn't personal towards to Pl. just "strictly business." Def.'s actions resulted

7    in dismissal of Pl.'s civil case for failure to prosecute/failure to respond to order to fix

8    incomplete IFP application, which Pl. had tried sending out but was frustrated/deterred until

9    years later to seek remedy for serious injury/imminent danger to safety. As a result, Pl.

10    continued/continues to suffer unnecessary, wanton infliction of pain/injury. These actions

11    constituted retaliation, had interfered with court access, contributed to dismissal of Pl.'s civil

12    case, deterred Pl.'s pending appeals/contemplated complaints, and prevented Pl. from refiling

13    within the 6-month deadline period due to Def.'s actions. These actions constituted retaliation,

14    violated Pl.'s First Amdt. rights.

15    97. The actions of Def. A. Encinas took retaliatory action against Pl. for attempting to/accessing

16    the Eastern District and to respond to Magistrate and Senior District Judges' orders/judgements

17    for 1:19-cv-00554-AWI-EPG as filed against Def. for excessive use of force/staging

18    assaults/serious injury. Def. took adverse action when he deterred/made Pl. give up his

19    protected activities/conduct, access to courts in exchange to be free of assaults, etc. Def.

20    informed Pl. if Pl. did not stop and stay out the way that what happened to Pl. before (being

21    beaten in the rotunda chair) would happen again. The actions of Def. resulted in dismissal of

22    Pl.'s civil case for failure to prosecute/failure to respond to order to fix incomplete IFP

23    application, which Pl. tried sending out but was frustrated/impeded, deterred until years later to

24    seek remedy for serious injury/imminent danger to safety. Pl. continued/continues to suffer

25    unnecessary, wanton infliction of pain. These actions constituted retaliation, interfered with

26    court access, contributed to dismissal of Pl.'s civil case, deterred Pl.'s pending

27    appeals/contemplated complaints, prevented Pl. from refiling within the 6-month deadline

28    period due to Def.'s actions. Def.'s actions constituted retaliation, violated Pl.'s First Amdt.

1    rights.

2    98. The actions of Def. A. Arisco, in retaliating against Pl. for accessing the courts/filing

3    grievances against Def., Def. took retaliatory adverse action by depriving, destroying,

4    confiscating crucial, essential legal documents/outgoing legal mail related to Pl.'s pending

5    civil case 1:19-cv-00554-AWI-EPG, Def. stated he entered cell #46 where he

6    photographed/processed materials/evidence, returned with confiscated items to his ISU office.

7    Documents show destroyed legal materials mentioned were in a clear, protective plastic trash

8    bag on a shelf and not contaminated. Def.'s retaliatory conduct in depriving Pl. of crucial,

9    essential documents by destruction, resulting in the dismissal of Pl.'s civil case 1:19-cv-00554-

10   AWI-EPG, against Def./others for excessive use of force/staging assaults, injury for failure to

11   respond, constituted retaliation and violated Pl.'s First Amdt. rights.

12   99. The actions of Def. T. Brazelton, in retaliating against Pl. for accessing the courts/filing

13   grievances against Def., Def. took retaliatory adverse action by depriving, destroying,

14   confiscating crucial, essential legal documents/outgoing legal mail related to Pl.'s pending

15   civil case 1:19-cv-00554-AWI-EPG, Def. stated he entered cell #46 where he

16   photographed/processed materials/evidence, returned with confiscated items to his ISU office.

17   Documents show destroyed legal materials mentioned were in a clear, protective plastic trash

18   bag on a shelf and not contaminated. Def.'s retaliatory conduct in depriving Pl. of crucial,

19   essential documents by destruction, resulting in the dismissal of Pl.'s civil case 1:19-cv-00554

20   against Def./others for excessive use of force/staging assaults, injury for failure to respond,

21   constituted retaliation and violated Pl.'s First Amdt. rights.

22   100. The actions of Def. R. Rubio, in retaliating against Pl. for accessing the courts/filing

23        grievances against Def., Def. took retaliatory adverse action by depriving, destroying,

24        confiscating crucial, essential legal documents/outgoing legal mail related to Pl.'s pending

25        civil case 1:19-cv-00554-AWI-EPG, Def. stated he entered cell #46 where he

26        photographed/processed materials/evidence, returned with confiscated items to his ISU

27        office. Documents show destroyed legal materials mentioned were in a clear, protective

28        plastic trash bag on a shelf and not contaminated. Def.'s retaliatory conduct in depriving Pl.

18

1    of crucial, essential documents by destruction, resulting in the dismissal of Pl.'s civil case

2    1:19-cv-00554 against Def./others for excessive use of force/staging assaults, injury for

3    failure to respond, constituted retaliation and violated Pl.'s First Amdt. rights.

4    101. The actions of Def. J. Fugate, in retaliating against Pl. for accessing the courts/filing

5    grievances against Def., Def. took retaliatory adverse action by depriving, destroying,

6    confiscating crucial, essential legal documents/outgoing legal mail related to Pl.'s pending

7    civil case 1:19-cv-00554-AWI-EPG, Def. stated he entered cell #46 where he

8    photographed/processed materials/evidence, returned with confiscated items to his ISU

9    office. Documents show destroyed legal materials mentioned were in a clear, protective

10   plastic trash bag on a shelf and not contaminated. Def.'s retaliatory conduct in depriving Pl.

11   of crucial, essential documents by destruction, resulting in the dismissal of Pl.'s civil case

12   1:19-cv-00554 against Def./others for excessive use of force/staging assaults, injury for

13   failure to respond, constituted retaliation and violated Pl.'s First Amdt. rights.

14   102. The actions of Def. Mailroom Supervisor L. Vasquez in retaliating against Pl. for and right

15   after Pl. filed a civil complaint 1:19-cv-00554-AWI-EPG for excessive use of force, staging

16   assaults, interference with access to courts. Def. took retaliatory adverse action when she

17   interfered, impeded, frustrated and retaliated against Pl. for accessing the courts by

18   destroying Pl.'s essential, crucial, outgoing privileged legal mail on three separate occasions

19   that was in response to the Magistrate Judge's court order/judgement for civil case regarding

20   Pl. to make corrections. The adverse actions of Def. of interfering and not sending Pl.'s

21   privileged legal mail on several separate occasions to the Courts and after. The actions of

22   Def. resulted in Pl.'s civil case 1:19-cv-00554-AWI-EPG for excessive use of force/staging

23   assaults and imminent danger against Defs. Defs. J. Burnes, A. Encinas, V. Pena, M.

24   Rodriguez, J. Fugate, T. Brazelton being dismissed for failure for Pl. not responding to the

25   Magistrate Judge's court order to fix deficiencies in IFP application, dismissal for failure to

26   prosecute. Pl.'s inability to seek remedy from the courts, Pl. continued Pl.'s attempt to

27   further access courts continued to be interfered with via stolen outgoing privileged mail to

28   the courts and suffer injury, constituted retaliation/interference with for access to courts,

19

1    violating Pl.'s First Amdt. rights.

2    103. The actions of Def. Doe (unit officer) in retaliating, interfering, impeding and frustrating

3    access to courts against Pl. for Pl. attempting to refile a failure to prosecute case within the 6-

4    month statute of limitations given by a Senior District Judge from the dismissal for failure to

5    prosecute/failure to respond to courts to make corrections. Def. took adverse action when

6    Def. failed to turn in Pl.'s outgoing privileged legal mail response to the courts' 6-month

7    deadline to prosecute civil case 1:19-cv-00554-AWI-EPG. Def. destroyed and failed to turn

8    in mail piece to mail receptacle and Pl.'s legal mail was not logged with the mailroom sheet

9    and was gone from his possession and no others had it. The actions of Def. resulted in Pl. for

10   civil case 1:19-cv-00554-AWI-EPG can no longer seek remedy through the courts because

11   after the failure to prosecute order, the courts gave Pl. 6 months to refile. Due to every time

12   Pl. sent out his privileged legal mail to courts, Pl.'s legal mail was impeded, frustrated, and

13   interfered with to seek remedy for excessive use of force by Defs. J. Burnes, A. Encinas, V.

14   Pena, M. Rodriguez, constituted retaliation for and interference with access to courts, and

15   impeding and frustrating, violating Pl.'s First Amdt. rights.

16   **B. EIGHTH AMDT. TO US CONSTIT; DELIBERATE INDIFFERENCE TO SAFETY**

17   104. The actions of Def. V. Pena, after Pl. was double cell cleared, and after Pl.'s history of

18   grievances/litigation against Def., in falsely stating to inmates that Pl. was a rapist/"snitch"

19   for his grievances, when it was reasonable for Def. to know this could invite violence/attacks

20   against Pl., constituted deliberate indifference to safety, violated Pl.'s Eighth Amdt. rights.

21   105. The actions of Def. E. Sanchez, after Pl. was double cell cleared, and after Pl.'s history of

22   grievances/litigation against Def., in falsely stating to inmates that Pl. was a rapist/"snitch"

23   for his grievances, when it was reasonable for Def. to know this could invite violence/attacks

24   against Pl., constituted deliberate indifference to safety, violated Pl.'s Eighth Amdt. rights.

25   106. The actions of Def. J. Alejo, in acting with deliberate indifference to Pl.'s safety, encouraged/

26   permitted harm towards Pl. when Def. approached three inmates, falsely informing them Pl.

27   was a rapist/snitch and would allow these inmates to go into Pl.'s cell with a knife, that if they

28   refused, they would be issued an RVR with loss of privileges and confinement. Def.'s actions

1    resulted in a double celling where Pl. received unnecessary, wanton infliction of pain,

2    violating his Eighth Amdt. Rights.

3  107. The actions of Def. J. Burnes, in acting with deliberate indifference to Pl.'s safety,

4    encouraged/permitted harm towards Pl. when Def. approached three separate inmates

5    informing them Pl. was a rapist and snitch and would allow these inmates to go into Pl.'s cell

6    with a knife and that if they refused, they would be issued an RVR with loss of privileges and

7    confinement. Def.'s actions resulted in a double celling where Pl. received unnecessary,

8    wanton infliction of pain, violating his Eighth Amdt. Rights.

9  108. The actions of Def. J. Garcia in acting with deliberate indifference to Pl.'s safety and reckless

10    disregard when Def. orchestrated/permitted Pl. to be assaulted multiple times when Def. was

11    assigned as tower officer, watching Defs./J. Burnes assault Pl./bashing Pl.'s head against the

12    wall/choke Pl. in the cell. Def. J. Garcia took orders from Def. J. Burnes as lookout by

13    closing doors on witnesses, failed to take some reasonable action on witnessing assaults. Def.

14    took no action. The actions/omissions of Def. resulted in Pl. suffering unnecessary, wanton

15    infliction of pain/injuries, contributed to injuries, violating Pl.'s Eighth Amdt. rights.

16  109. The actions of Def. T. Campbell (AW; then Warden) in acting against Pl. with deliberate

17    indifference to safety, reckless disregard to foreseeable events when Def. knew of the danger

18    Pl. was in, that the threat of violence which was so substantial and pervasive and which yet

19    Def. failed to embrace policy/take any or other reasonable steps which may have prevented

20    harm. Def. in overriding policies/memos through the CSP-COR Operations Manual went

21    against existing Court orders, which resulted in Def. personally involving herself in the safety

22    assessments for Pl./other Defs. and allowed Defs. to be posted to/over Pl. regardless of

23    excessive use of force and injuries Pl. sustained. Def.'s actions resulted in unnecessary,

24    wanton infliction of pain/other damages, constituted deliberate indifference to Pl.'s safety,

25    contributed to unsafe conditions of confinement, violated Pl.'s Eight Amdt. rights.

26  110. The actions of Def. K. Kyle, for and right after Pl.'s consistent, recent complaints/litigation

27    against Def., took adverse action against Pl. by not submitting or drafting opposition in

28    committee, even recommending double cell clearance for Pl., which resulted in the

1    unnecessary, wanton infliction of pain against Pl. for Pl. exercising his First Amdt. Right to

2    petition the government for redress of grievances, constituted deliberate indifference to

3    safety, violated Pl.'s Eighth Amdt rights.

4  111. The actions of Def. Lt. F. Munoz in acting against Pl. with deliberate indifference to his

5    personal safety with reckless disregard to a known risk when Def. failed to enjoin

6    officials/himself to use classification/screening processes in assigning cellmates. Def. was

7    aware L. Romero recently attacked his cellmate/posed a substantial risk, serious harm to Pl. if

8    assigned as cellmates. Def. knew Pl./L. Romero's identifiable groups did not belong paired.

9    Def. knew of the danger, failed to embrace policy or take reasonable steps which may have

10   prevented harm. Def.'s actions demonstrated deliberate indifference, reckless disregard to

11   Pl.'s safety, resulting in unnecessary, wanton pain, violated Pl.'s Eighth Amdt. rights.

12 112. The actions of Def. A. Loza in acting against Pl. with deliberate indifference to his personal

13   safety with reckless disregard when Def. failed to enjoin officials/himself to use

14   classification/screening processes in assigning cellmates but was aware L. Romero had just

15   attacked his cellmate/posed a substantial risk, serious harm to Pl. if assigned as cellmates.

16   Def. knew Pl. and L. Romero's identifiable groups did not belong paired together. Def. knew

17   of the danger, failed to embrace policy or take reasonable steps which may have prevented the

18   harm. Def.'s actions demonstrated deliberate indifference and reckless disregard to Pl.'s

19   safety, resulting in unnecessary, wanton pain, violated Pl.'s Eighth Amdt. rights.

20 113. The actions of Def. A. Loza in acting against the Pl. with deliberate indifference to safety,

21   reckless disregard to a known risk when the Def. orchestrated an attack/invited assault against

22   Pl. by falsely informing an inmate that Pl. was a rapist/snitch with this event. With

23   cellmate/dangerous remarks, Def. failed to monitor/screen prisoner L. Romero who had a

24   record of "violent schizophrenic outbursts." CDCR records showed L. Romero when

25   previously housed at CSP-COR randomly assaulted an inmate without provoking. CSP-COR

26   officials dismissed his RVR due to a mental health assessment, noting L. Romero "when feels

27   unsafe, he hears voices and attacks people." L. Romero was then transferred to a hospital

28   setting. Def. knew of known risk that prisoner L. Romero had two previous assaults on

22

1    inmates—his previous cellmate two months prior, and three months prior to the event of this

2    complaint. Def.'s actions resulted in Pl. being put in harm's way and receiving unnecessary,

3    wanton infliction of pain/injury, and violated Pl.'s eighth Amdt. Rights.

4    114. The actions of Def. F. Munoz in acting against the Pl. with deliberate indifference to safety,

5    reckless disregard to a known risk when the Def. orchestrated on attack against Pl. by inviting

6    the assault by falsely informing an inmate that Pl. was a rapist/snitch with this event, with

7    cellmate/dangerous remarks, Def. also failed to monitor/screen prisoner L. Romero who and

8    with a record of "violent schizophrenic outbursts" which on record showed that Pl.'s cellmate

9    L. Romero  was housed at CSP-COR he randomly assaulted an inmate without provoking or

10    reason. CSP-COR officials dismissed RVR due to a mental health assessment stating inmate

11    L. Romero "when feels unsafe, he hears voices and attacks people." L. Romero was then

12    transferred to a hospital setting. Def. known of known risk that prisoner L. Romero had two

13    previous assaults on inmates—his previous cellmate two months prior, and three months prior

14    to the event of this complaint. Def.'s actions resulted in Pl. being put in harm's way, receiving

15    unnecessary, wanton infliction of pain/injury, and violated Pl.'s eighth Amdt. Rights.

16    115. The actions of Def. K. Clark in acting with deliberate indifference to Pl.'s safety, reckless

17    disregard to a known risk when the Def. failed to monitor/screen inmate L. Romero who had a

18    record of "violent schizophrenic outbursts." Def. assigned cellmates at CSP-COR using Def.'s

19    own customs/practices that departed from the usual prison procedures. Def. knew by studies

20    and by the CA OIG monitor reports regarding cellmate assignments of high violence and

21    assault rates when officials double celled segregation prisoners when failing to first screen,

22    infringing on inmates' Constituional rights. Records show when L. Romero was previously at

23    CSP-COR he randomly assaulted another inmate without provoking/reason. Officials

24    dismissed the RVR due to mental health assessment noted when L. Romero feels "unsafe he

25    hears voices and attacks" inmates. He also assaulted his previous cellmate/others two months

26    prior before Def. K. Clark made the decision to double cell clear Pl., that if Pl. "could 602 it"

27    and if refusing it, then Pl. was to receive an RVR. These actions resulted in Pl. receiving

28    unnecessary, wanton infliction of pain/injury, violating Pl.'s Eighth Amdt. rights.

116. The actions of Def. K. Clark in acting with deliberate indifferent to Pl.'s safety with reckless
disregard to a serious, known risk/injury when Def. was provided/on notice/permitted
evidence of the history of the widespread abuses/injuries of Pl. and others suffered but Def.
chose to weaken protective measures by and creating his own practices/customs that created
unsafe conditions of confinement that were unconstitutional and which Def. was proud of,
stating, "This is the Corcoran way," and "This is how we do it in Corcoran." Def. set in
motion the series of events of subordinates who assaulted and injured Pl. and intervened in the
grievance process and other protected conduct. Def. was aware and a part of several
grievances, one of which was partially granted complaint appeal CSP-5-19-00645/COR-2140-
19-021 for appeal issue alleging warden K. Clark condones staff misconduct with regards **to**
**"unnecessary/excessive force and sexual misconduct of inmates" documents**
**reviewed/partially granted grievance COR-04A-18-09- 940, CSP-5-18-05371** for:
excessive use of force, threats of further harm if Pl. doesn't stop grievances/voicing
complaints, confiscation of crucial, essential legal materials to pending/contemplated appeals,
sexual battery (Def. J. Burnes against Pl.), Def. K. Clark overriding CSP-COR policies,
decisions, customs, practices, encouragement implemented it and monitored its progress and
permitted the abuses/injuries/damages. Def.'s actions/omissions contributed to Pl.'s
unnecessary, wanton infliction of pain/injuries (fractured ribs, concussions, thumb/bending of
fingers by Defs. A. Encinas, J. Burnes; etc.), violated Pl.'s Eighth Amdt. rights.

**C: EIGHT AMDT. TO U.S. CONSTIT.; DELIBERATE INDIFFERENCE TO HEALTH**

117. The actions of Def. P. Ricablanca in denying Pl. medical care on 03/09/2019 when Def. was
ordered to evaluate Pl. in the rotunda when Def. was not there/later found to have falsified
documents that Pl. was seen at 0745 am, resulting in Pl. suffering pain, constituted deliberate
indifference to health, failed to provide reasonable care, violated Pl.'s Eighth Amdt. rights

## VII.   PRAYER FOR RELIEF

WHEREFORE, Pl. respectfully requests that the Court grant the following relief:

**A. Issue declaratory judgments;**

**B. Issue compensatory damages:**

a. For compensatory damages in an amount to be proven at trial.

b. For all nominal damages.

c. For any additional general and or specific, consequential and or incidental damages in an amount to be proven at trial.

d. For all punitive damages in an amount appropriate to punish the Def. and make an example of the Defs. to the community.

e. For all interests, where/as permitted by law.

**C. Issue injunctions ordering:**

118. Transfer Pl. from CSP-COR without delay, with all his legal/regular properties, to a prison of his choice; to exclude Kings/Kern County-based prisons where Defs. work, where Danielle Peña Gonzalez Baltierra works.

119. Prohibit CSP-COR, Kings and Kern County-based prisons from housing Pl. again for any duration of time for any reason—even for court attendance/hold overs.

120. Allow Pl. to determine the final choice in what yard/facilities he will be housed in any future transfers/cellmates, so that transfers/housing cannot be maliciously used as retaliation or as a set up against Pl.

121. Permanent keep away from Defs.

122. False charges against Pl. to be withdrawn, and any loss of credits restored, fines reimbursed, privileges reinstated, statuses restored; for it to be documented in Pl.'s C-File/records that these were false allegations and or charges now exonerated.

123. The CA licenses of Defs. K. Kyle and W. Lewis to be immediately suspended without stay.

**D. Grant any such other relief as it may appear that Pl. is entitled.**

Respectfully submitted on November 12, 2024,

p.p. Jamie Osuna, CDCR # BD0868