UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE OSUNA,<br><br>            Plaintiff,<br><br>    v.<br><br>J. BURNES, et al.,<br><br>            Defendants. | No.  1:24-cv-00793-KES-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS<br><br>(ECF No. 22) |

      Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

      Currently before the Court is Plaintiff's second amended complaint, filed November 14, 2024.

**I.**

**SCREENING REQUIREMENT**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1

1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**FACTUAL ALLEGATIONS**

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915. Plaintiff is and was at all times relative to the complaint incarcerated at California State Prison, Corcoran.

On December 16, 2018, Plaintiff wrote a letter to Defendant Office of Internal Affairs (OIA) agents about the alleged retaliation Plaintiff suffered and witnessed by Defendant Burnes, including staff on inmate assaults. Plaintiff alleged that Corcoran prison's management, which included Defendants K. Kyle and K. Clark, were acting in deliberate indifference. Plaintiff asked the OIA agents to not refer the investigation back to Corcoran to handle because the Investigative Services Unit (ISU) officers were involved and would have to investigate themselves. OIA Doe

Defendants forwarded Plaintiff's letter to Defendant S. Babb, Associate Warden at Corcoran in January 2019.

On or around January 18, 2019, Defendant J. Burnes, along with Defendants E. Romero and K. Kyle produced an inaccurate 128-G chrono falsely listing Plaintiff as an active Southerners/Surenos gang member.

An accurate 128-G chrono was already in Plaintiff's file, so another chrono was not necessary. Defendants knew or should have known this was not Plaintiff's affiliation due to the other 128-G record and reviews required housing decisions pursuant to Title 15 of the California Code of Regulations section 3269. The inaccurate chrono met the criteria for Plaintiff to be double-cell cleared. It also met the criteria for the celling of Plaintiff with specific inmates not otherwise possible under CDCR/state policies. Defendant J. Burnes also recommended for Plaintiff to be sent to a 270 yard, against Plaintiff's actual case-factors.

Defendants J. Burnes and K. Kyle held a special committee with only them in attendance for the purpose of clearing Plaintiff's mental health status, which enabled Plaintiff to meet the criteria to be double-celled.

On January 18, 2019, the same day of the 128-G chrono signing, another committee hearing was held consisting of Defendants K. Kyle, S. Babb, and K. Clark, without Plaintiff's presence.

It was brought to Plaintiff's attention that Defendant K. Kyle, as mental health supervisor, had the authority to draft reporting/advocate for Plaintiff to be on temporary single-cell status but chose not to do so. Defendant Kyle had before/during that time placed Plaintiff under extreme mental health restrictions—Plaintiff was not allowed to have razors or containers due to documented ongoing self-mutilations. Defendant had restricted Plaintiff to not be around other inmates for work or education. Defendant would express her anger at Plaintiff's inmate grievance being added to her permanent record and for Plaintiff contacting Defendant Kyle's supervisors in attempting to cover-up the misconduct by Defendant J. Burnes.

Plaintiff disagreed with the decision to double cell him. Plaintiff requested that other staff make housing decisions for him due to the conflict of interest with Defendants K. Kyle and J.

Burnes. Plaintiff's request was denied, and he was threatened by staff with disciplinary action if Plaintiff refused any cellmate.

On January 20, 2019, Defendants S. Babb sent Plaintiff a memo to inform him that the OIA Does forwarded Plaintiff's letter to him who determined that staff had not violated any policies.

On January 23, 2019, Defendants A. Loza and Vallejo escorted Plaintiff from his cell. Once in the rotunda, Defendant J. Burnes bashed Plaintiff's head into the wall. Vallejo told Plaintiff, "Are you gonna keep writing 602s?" Plaintiff was then told, "We'll stop when you stop [with 602s]."

On January 24 and 27, 2019, Plaintiff filed inmate grievances, sent letters to outside agencies that Defendant K. Clark was aware of staff's threats, retaliation, and use of force. Defendant J. Burnes bashed Plaintiff's head into the wall and warned Plaintiff against "snitching" by filing inmate grievances, complaints, or letters to oversight agencies.

On or around January 27, 2019, Defendant J. Burnes went to Plaintiff's cell and stated, "So, you're writing 602s again?" and "That's the word. I got ears everywhere." Plaintiff asked, "Is that what Kyle [Def. K. Kyle] told you after my one-on-one? Cause she's the only one I told." Defendant Burnes stated, "Do you think your clinician's going to believe anything you have to say, huh? She knows you're a long-hair, faggot, son of a bitch. You don't want to get fucked up like last time."

Throughout 2019, Plaintiff gave approximately three letters to Defendant OIA to mail out. These letters never made it to the OIA or Plaintiff received no reply.

On or around February 5, 2019, Plaintiff's inmate grievance was denied because he made a general allegation about use of force/retaliation.

On February 10, 2019, former inmate A. Turner was a witness to various assaults/misconduct by some Defendants. Turner learned Plaintiff was unable to mail out and was not receiving responses to his inmate grievances. Turner previously recommended that Plaintiff contact Defendant S. Gates who hired Defendant K. Kyle who reviewed/issued final decisions on mental/medical health appeals.

On this same date, Turner transcribed and sent a complaint in case number 1:19-cv00554-AWI-EPG. However, Plaintiff's name was misspelled as "Asuna" and the complaint was filed in the wrong district court.

On February 11, 2019, Turner mailed an envelope under his address on behalf of Plaintiff to Defendant S. Gates, which was stamped received. On this same date, Plaintiff sent an inmate request for interview form.

On February 20, 2019, an order was mailed from this Court regarding Plaintiff's incomplete in forma pauperis application. The arrival of this order in the mail altered Corcoran officials about Plaintiff's section 1983 action.

Defendants retaliated against Plaintiff for filing case number 1:19-cv-00554-AWI-EPG and knowingly put Plaintiff in imminent danger. After Plaintiff's double cell clearance and complaint filings, inmates reported that Defendants V. Pena, E. Sanchez, and J. Burnes made inflammatory and false statements that could incite inmates to attack Plaintiff, including that Plaintiff had been charged with sex crimes. Defendant Burnes sought to house inmates with Plaintiff were not compatible with Plaintiff under CDCR policies. Inmate Rodriguez was written up for refusing to cell with Plaintiff. Inmate Ortega told Plaintiff that Defendant J. Burnes said Plaintiff was not to be trusted and he would allow Ortega to bring a knife into the cell if housed with Plaintiff.

Plaintiff agreed to cell with one man who case factors were deemed compatible under CDCR policies and Plaintiff notified staff that they would be paired together. Plaintiff was notified this pairing was cancelled. Defendant Romero told Plaintiff that Defendant Burnes "didn't want to do it" and said "no" to the pairing. The inmate told Plaintiff that he told them "no" to the pairing.

Plaintiff was instead celled with inmate L. Romero who was incompatible with Plaintiff. L. Romero had a documented history of in-cell violence, and his nickname was "Rocky" because he loved to physically fight. Defendant A. Loza signed the cell chrono after he had a documented history of retaliating with Burnes against Plaintiff. Once within the cell, Defendant Burnes told inmate L. Romero, "You're letting me down." L. Romero was the only one to go out to shower

1  and was unusually allowed to keep his razor afterward.  Defendant J. Cerda was inmate L.
2  Romero's shower escort.

3  In or around 2020, Plaintiff learned through his former investigator that inmate L. Romero
4  alleged had previous homosexual contact with Defendant J. Burnes.  Inmate Romero's
5  disciplinary records, which included several prior instances of violence, were available to
6  Defendants who arranged and approve the cell pairing.

7  On or around the first week of March 2019, Plaintiff's current open felony case 19CM-
8  1882 occurred with the death of inmate L. Romero.  Plaintiff was escorted from his cell sometime
9  in the early morning after that event and put into a rotunda holding cage, where Plaintiff
10 repeatedly asked for medical/mental health, but no care was provided.

11 Defendants Navarro and Brazelton informed Plaintiff they were going to do a
12 videorecorded interview regarding the incident, and threatened to harm him if he refused the
13 interview.  Plaintiff participated in the interview after it became clear that he would not receive
14 any medication attention, water or food unless he complied with the interview.  Thereafter
15 Plaintiff was placed back in the rotunda cage until around midnight when Defendants Ricablanca
16 and E. Romero approached him, and Ricablanca took Plaintiff's blood pressure.  Ricablanca had
17 not otherwise provided treatment to Plaintiff and did not speak with Plaintiff as stated in the
18 medical report of injury.

19 On or around March 9, 2019, officers A Arisco, J. Fugate, R. Rubio, and T. Brazelton
20 processed the crime scene.  Plaintiff's legal materials in 1:19-cv-00554-AWI-EPG/602s were
21 removed from his cell and never returned.  The bag was shown uncontaminated on a counter in
22 the crime scene photographs.  Over the next few months, Plaintiff had no writing tools and was
23 not allowed to respond to orders in 1:19-cv-00554-AWI-EPG which resulted in the case being
24 dismissed.

25 On or around March 21, 2019, the false allegation by Defendant J. Burnes was used by the
26 King County District Attorney.  Burnes made the same allegations of other inmates "lunging"
27 trying to "bite" him to justify the use of force.  Burnes statements were found to be
28 uncorroborated.

6

Defendant M. Rodriguez, who was involved in the incident and named in Plaintiff's grievance, acted as Plaintiff's staff assistant for the hearing. Plaintiff's hearing statements were omitted from the report as if he said nothing when he had explained his side and emphasized Rodriguez's involvement in the incident. Plaintiff was found guilty, and punished with placement in the security housing unit.

On March 27, 2019, Plaintiff's inmate grievance regarding retaliation and excessive use of force was partially granted. D. Lopez's interview included Plaintiff's allegations from the two unknown sergeants went to Plaintiff's cell front to conduct a video interview for the grievance against Defendant J. Burnes. Defendant Burnes was with the two sergeants and threatened, "you better not stay nothing." Plaintiff stated that he would not participate in the video unless Defendant Burnes was not there. The two unknown sergeants conducted a summary video cell-front stating Plaintiff refused the interview. Plaintiff can be heard in the background shouting that Defendant J. Burnes was behind the camera and was threatening Plaintiff. Plaintiff was not granted a second use of force interview/video even though Defendant K. Clark and the associate warden were given written notice of the incident.

Defendant W. Lewis's false allegation that Plaintiff was making a death threat was later picked up by the Kings County District Attorney on or around June 28, 2021, and charged in 21CM-4750. Defendant Lewis alleged that Plaintiff mentioned evidence of PT rounds logs. The logs supported Plaintiff's claim that Defendant was present to aid and abet Defendant J. Burnes in an assault against Plaintiff. Because of Defendant Lewis's allegations, Plaintiff was punished with placement in the security housing unit.

Around July 2021, Defendants T. Campbell and C. Love filled out a CDC 128-B, and gave Defendant W. Lewis an opportunity to move to a new post away from Plaintiff, but Lewis declined. Plaintiff filed an inmate grievance on Defendant Lewis.

Around 2020 or 2021, Plaintiff's former investigator said a complaint had been filed with CDCR because 4A inmates wrote letters stating that prison officials threatened inmates if they cooperated or talked with investigators. An outside agency was handling the complaint, and Plaintiff was threatened by Defendant sergeant A. Encinas and told to "keep his mouth shut."

Defendant Navarro told Plaintiff the reason nothing happened to him yet was because a "lot of eyes" were on them.

At the end of 2019/early 2020, Defendants Burnes and Loza moved from 4A to R&R, where Plaintiff is escorted for court transportation. On one occasion, Defendant Burnes told Plaintiff, "So, you're fighting your case, huh? We'll see. You think you're going to win? We'll see about that. You're not going to make it that far—remember what happened last time."

From 2020, some of Plaintiff's legal property regarding Defendants J. Burnes, A. Loza, and K. Kyle has gone missing from his belongings. Instead of investigating Plaintiff's complaints of threats, intimidation, and retaliation, Defendant J. Fugate and others told Plaintiff to plead guilty in 19CM-1882 to make the retaliation stop.

On or about May 13, 2020, Plaintiff announced in Kings County Superior Court that he wanted to plead guilty and waive his preliminary hearing, but the retaliation did not stop.

On or around July 20, 2020, Plaintiff had a one-on-one conversation with Defendant K. Kyle who asked if he felt "remorse for 'what he did to his first victim,' expressed her dislike for his conviction, the sister of which victim, Danielle Pena Gonzales, is a CDCR employee." Both Defendants K. Kyle and J. Burnes previously indicated to Plaintiff that they were retaliating against him because of the victim's sister.

On August 4, 2020, Plaintiff's letter to Defendant S. Gates alleging retaliation was stamped received. However, Defendant provided no intervention after that time which resulted in alleged continued misconduct of threats and assaults.

On or around August 3, 2020, Plaintiff's former counsel advised that she sent him "about a dozen boxes" of legal records, but Plaintiff did not receive it until a later time with documents missing.

In or around September 2020, Defendants E. Moreno, J. Fugate and others pulled Plaintiff from his cell and left him in the 4A1R front office, where Defendant Navarro stood behind the desk. Defendant had taken out a mace can, placed it down facing towards Plaintiff. Defendant then bragged to Plaintiff that the Warden had put Defendant in the unit "to put out fires."

8

**III.**

**DISCUSSION**

**A.     False Allegations/Due Process**

Plaintiff claims false allegations and disciplinary reports were filed against him. This allegation, even if true, does not raise a constitutional claim because there is no due process right to be free from false charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see, e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012).  There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 1:14-cv-2084-SAB (PC), 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff fails to state a due process claim for the alleged false disciplinary actions against him.

Further, the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.' " Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000) (quoting Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing Wolff v.

9

McDonnell, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." Id. These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Prisoners bear the burden to demonstrate that they did not receive due process during their disciplinary hearing. See Parnell v. Martinez, 821 Fed. Appx. 866, 866-867 (9th Cir. 2020).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n Sandin's wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," Wilkinson v. Austin, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Ramirez, 334 F.3d at 861 (quoting Sandin, 515 U.S. at 486-87); see also Chappell v. Mandeville, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." Ramirez, 334 F.3d at 860. Where no protected liberty interest is at stake, the minimum requirements of due process apply, which require only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985).

Here, it is unclear whether Plaintiff is serving an indeterminate or determinate sentence. Nonetheless, Plaintiff fails to set forth facts sufficient to demonstrate that the deprivations he suffered because of the alleged false allegations imposed the type of "atypical and significant hardships" required by Sandin to invoke liberty interests entitled to Wolff's procedural safeguards

1    as he simply alleges he was placed in the security housing unit. In addition, Plaintiff contends
2    that Defendant Burnes' false allegations were found to be uncorroborated. Accordingly, Plaintiff
3    fails to state a cognizable due process claim.

       **B.**       **Deliberate Indifference**

          1.       <u>Double-Celling</u>

Prisoners do not have an Eighth Amendment right to be housed in a single cell. See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347-48 (1981) (double-celling does not violate Eighth Amendment unless it amounts to the unnecessary and wanton infliction of pain); <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' ") (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984)). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society', only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992), quoting <u>Rhodes</u>, 452 U.S. at 347 and <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.' " <u>Farmer</u>, 511 U.S. at 834, quoting <u>Wilson</u>, 501 U.S. at 298. Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." <u>Id.</u>, quoting <u>Wilson</u>, 501 U.S. at 302-03. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, Plaintiff states a cognizable claim for deliberate indifference to his safety based on Plaintiff's allegations that Defendants J. Burnes, E. Romero, K. Kyle, Loma, issued a false chrono listing Plaintiff as an active Southerner/Sureno gang member to improperly subjected him to double-celling.

        2.        Denial of Medical/Mental Health Treatment

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs. A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. Estelle, 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "should have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. Sandoval v. Cnty. of San Diego, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or

treat a condition generally reflects such differences of opinion and not deliberate indifference. Estelle, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, Estelle, 429 U.S. at 105, or even gross negligence, Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment, without more, is likewise insufficient to state a claim. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both recognizes and disregards a risk of substantial harm that a claim for deliberate indifference exists. Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm from the official's conduct. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. Lemire, 726 F.3d at 1074.

Although Plaintiff makes vague reference to the failure to provide medical and/or mental health treatment, Plaintiff has failed to set forth sufficient factual details to support a claim that any Defendant acted with deliberate indifference to his health. Further, Plaintiff's conclusory claim that a medical injury report contained false statements is not sufficient to state a claim under the Eighth Amendment. See, e.g., Sanford v. Eaton, No. 1:20-CV-00792 BAM(PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021) (denying a claim alleging falsified medical report and statements made by Plaintiff). Accordingly, Plaintiff fails to state a cognizable claim for relief.

**C.   Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a

viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Here, liberally construed, Plaintiff's allegations that after he filed case number 1:19-cv-00554-AWI-EPG, Defendants V. Pena, E. Sanchez, and J. Burnes made inflammatory and false statements that could incite inmates to attack Plaintiff, including that Plaintiff had been charged with sex crimes, and Defendants Loza and Burnes housed him with an incompatible inmate after he filed the lawsuit, are sufficient to state a cognizable claim for retaliation.[1]

### D.   Supervisory Liability

A supervisory official is liable under section 1983 if (1) the official is personally involved in the constitutional deprivation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Keates v. Koile, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established … by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr, 652 F.3d at 1207–08 (internal quotation marks and citations omitted) (alterations in original). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional

---

[1] In the claims for relief section of the second amended complaint, Plaintiff presents several vague and conclusory allegations of retaliation that are not sufficiently supported by the 9-page recitation of factual allegations complaint that precedes the listing of his claims, and do not give rise to a cognizable claim for relief.

deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Keates, 883 F.3d at 1243 (quoting Starr, 652 F.3d at 1208).

"Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983." Sullivan v. Biter, No. 15-cv-00243, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) and Starr, 652 F.3d at 1207). In other words, to state a claim against any individual defendant based on supervisory liability, Plaintiff "must allege facts showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it." Richard v. Holtrop, No. 15-cv-5632, 2016 WL 11520620, at *5 (C.D. Cal. May 12, 2016) (emphasis in original) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

With respect to Defendants Wardens Clark and Campbell, supervisory liability is not an independent cause of action under § 1983, and Plaintiff must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' "), quoting Hansen v. Black, 855 F.2d 642, 646 (9th Cir. 1989); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976). Plaintiff may not simply attempt to hold the supervisory Defendants liable without any factual allegations regarding their personal involvement in the alleged constitutional violation or a causal connection between their wrongful conduct and the violation. Further, simply stating (without factual support) that these supervisor individuals knew or should have known of the alleged misconduct based on prior complaints or

written letters is likewise insufficient to state a cognizable claim for relief. See, e.g., Rivera v. Fischer, 655 F.Supp.2d 235, 238 (W.D.N.Y.2009) ("Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.") (quoting Candelaria v. Higley, No. 04–CV–277, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (gathering cases)); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received inmate's letter but forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); Jones v. Fischer, No. 9:11–cv–774 (GLS/CFH), 2013 WL 4039377, at *10 (N.D.N.Y. Aug. 7, 2013) ("receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement"); Smart v. Goord, 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006) (failure of supervisory prison official to take action in response to letters complaining of unconstitutional conduct is insufficient to demonstrate personal involvement). Accordingly, Plaintiff fails to state a cognizable claim against Wardens Clark and Campbell.

### E. Denial of Access to the Court

Prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other grounds by Lewis, 518 U.S. at 354. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. See Lewis, 518 U.S. at 353 n.3, 354-55. In order to frame a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (citing Lewis, 518 U.S. at 353 & n.4).

To the extent Plaintiff contends that he was denied access to the court when property was

1  removed from his cell, Plaintiff fails to state a cognizable claim for relief. Plaintiff simply alleges
2  that after the crime scene was processed, his property was removed, and he was without writing
3  tools to respond to orders in 1:19-cv-00554-AWI-EPG, which resulted in the case being
4  dismissed. Plaintiff fails to demonstrate that any specific action on the part of any named
5  Defendant that actually caused his pending civil rights action to be dismissed. Simply stating he
6  did not have access to writing tools is insufficient factually to state a cognizable claim for relief.
7  Accordingly, Plaintiff fails to state a cognizable claim for denial of access to the courts.

### F. Declaratory Judgment

Plaintiff's complaint seeks a declaratory judgment. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

### G. Transfer to Different Prison

It is well-established that prisoners have no constitutional right to incarceration in any particular institution. See Olim v. Wakinekona, 461 U.S. 238, 244–48(1983); Meachum v. Fano, 427 U.S. 215, 224 (1976); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985). Prison officials have broad authority to transfer prisoners from one facility to another. See Olim, 461 U.S. at, 245-46; see also Meachum, 427 U.S. at 225.

### H. Further Leave to Amend

Given that Plaintiff has twice amended the complaint, the Court finds further leave to amend would be futile. See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where the plaintiff failed to correct deficiencies in

complaint after the court had afforded opportunities to do so and had discussed with plaintiff the substantive problems with his claims).

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's deliberate indifference to safety claim against Defendants J. Burnes, E. Romero, K. Kyle, V. Pena, and E. Sanchez, and retaliation claim against Defendants V. Pena, E. Sanchez, J. Burnes, and Loza; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 7, 2025**

STANLEY A. BOONE
United States Magistrate Judge

18