FILED

1    pUNITED STATES DISTRICT COURT FOR THE    APR 14 2025
2              EASTERN DISTRICT OF CALIFORNIA
                                          CLERK, U.S. DISTRICT COURT
                                          EASTERN DISTRICT OF CALIFORNIA

3    Jamie Osuna, CDCR #BD0868         Docket No.: 1:24-cv-00793-KES-SAB    DEPUTY CLERK
     PO Box 3476                       CIVIL RIGHTS COMPLAINT UNDER
4    Corcoran, CA 93212
5      Pl.,                            MOTION: TO GRANT WRITTEN
                                       OBJECTIONS TO MAGISTRATE JUDGE'S
6           against                    RECOMMENDATION OF DENIAL OF SOME
                                       CLAIMS
7    J. Burnes, K. Kyle, W. Lewis, et al
                                                 (Doc 24)
8

9       **Objection 1 to False Allegations/Due Process (ECF, Section III, A.):** In Pl.'s retaliation claims

10   against Defendants for Pl. filing grievances and voicing complaints against Defendants and other

11   issues, Pl. was issued a false disciplinary action in which the Magistrate denied Pl.'s claim and

12   erroneously categorized the retaliation claim as Pl.'s due process was violated by receiving a false

13   RVR/disciplinary report, which is governed under the Fourteenth Amdt. Grievances, protests,

14   complaints, and speech are constitutionally protected/protected conduct. The First Amdt. protects the

15   right of the people peacefully to assemble and to petition the government for a redress of grievances.

16   Grievances filed through an official grievance procedure are constitutionally protected. Hoskins v.

17   Lenear, 395 F.3d 372, 375 (7th Cir. 2005). (Gayle v. Gonyea, 313 F.3d 677, 682 2d Cir. 2002;

18   Williams v. Meese, 926 F.2d 994, 998 10th Cir. 1991.)

19       No prison rule or notice was given to Pl.'s/of activities to be forbidden, that would subject him to a

20   rule's violation. Farid v. Goord, 200 F.supp.2d 220, 236. (Petition was constitutionally protected where

21   no rule forbade it.) The first Amdt. also protects communication with official agencies. Brown v.

22   Crowley, 312, F.3d 782, 789-91 (6th Cir. 2002) Cornell v. Woods, 1383, 1388, 8th Cir. 1995.

23   (Cooperation with internal affairs investigation.) Franco v. Kelly, 584, 589-90 2.d Cir. 1998

24   cooperation with inspector general investigation staff misconduct.

25       The Magistrate categorized Pl.'s damages as the claim. In a retaliation claim, an adverse action need

26   not independently violate the Constitution to support a retaliation claim. Hoskins v. Lenear, Cody v.

27   Weber. Nor need it impose atypical and significant hardship on the inmate in relation to the ordinary

28   incidences of prison life, as is required to support a claim of deprivation of liberty denying due

                                      1         *Pl.'s Objections to Recommendations*

1    process. Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004.) Hines v. Gomez, 108 F.3d 265,

2    269, 9th Cir. 1997) Williams v. Manternach. (Dismissing due process claim under Sandin, holding

3    retaliation claim could go forward.) See Gil v. Pidlypchak. Pl.'s voiced complaints and filed grievances

4    which is protected conduct for which Pl. was retaliated on by Defs. In Crawford v. Britton, the reason

5    why such retaliation offends the constitution is that it threatens to inhibit exercise of a protected right.

6    Also see Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005.) (Prisoners are entitled to utilize

7    available grievance procedures without threat of recrimination.) Cruz v Betto, Maurer v. Patterson.

8    (Upholding jury verdict for plaintiff who was subjected to retaliatory disciplinary charge for

9    complaining about operation of grievance program.) Gatson v. Coughlin. (Awarding damages for

10   trumped up disciplinary charge made in retaliation for prisoners complaining about state law violations

11   in mess hall work hours.) Pl. has also met for his retaliation claim the five basic elements set out in

12   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005.) ("Retaliation claims require five basic

13   elements: (1) an assertion that a state actor took some adverse action against an inmate. (2) because of

14   (3) that prisoners protected conduct, and that such action (4) chilled the inmate's exercise of his first

15   amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.) Pl.

16   has shown that he has met all five basic elements and established "a chronology of events from which

17   retaliation may possibly be inferred as set forth in Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir.

18   2004.) (Plaintiff must show (1) he engaged in protected activity; (2) a government official took adverse

19   action against him that would chill a person of ordinary firmness form continuing in this activity, and;

20   (3) the adverse action was motivated at least in part by the exercise of the protected activity.) Pl. has

21   shown that the Defs. took adverse actions against Pl. for voicing and filing complaints that were the

22   motivating factor of the false, trumped-up charges against him.) Pl. has shown 1.) that although other

23   courts have disagreed that this is a pleading requirement at all, as set forth in Mclery v. Lopac, 855,

24   858 (7th Cir. 2005.) (For pleading purposes, it was sufficient to state the retaliatory conduct and the

25   allegedly constitutionally protected activity that motivated it.) Pl. has satisfied this even though the 9th

26   Cir. (2004) in Austin v. Terhune, 1167, have held that if you are pleading a First Amdt. retaliation

27   claim obviously you should mention the First Amdt. However, courts have held that this is not legally

28   necessary as long as you plead facts showing that you were subjected to adverse action as a result of

2    *Pl.'s Objections to Recommendations*

1    engaging in protected speech. Pl.'s retaliation claim and adverse action was sufficient to deter or chill a

2    person of ordinary firmness in the exercise of constitutional right as set forth in <u>Morris v. Powel</u> 449

3    F.3d 682, 685-86 (6th Cir. 2006.) (Describing ordinary firmness.) <u>Rhodes v. Robinson</u>, 408 F.3d 559,

4    568-69 9th Cir. 2005); <u>Davis v. Goord</u>. This claim should not have been categorized and screened as a

5    due process claim and is an error. Pl. is requesting this Court to please review and reassess the proper

6    claim in its proper element and adverse action.

7    **Objection 2 to Retaliation (ECF, Section III, C.):** The Magistrate also erroneously confuses the

8    damages for adverse action allegation as the claim but among retaliation claims, the courts have found

9    sufficiently adverse to support a retaliation claim are assaults, and threats. <u>Burgess v. Moore</u>, <u>Wilson v.</u>

10    <u>Silcox</u>, <u>Carter v. Newburgh Police Dept</u>. (Placement in segregated confinement.) See <u>Trobaugh v.</u>

11    <u>Hall</u>, (8th Cir. 1999.) (Three days of isolation for persisting in pursuing grievances conceded to violate

12    the First Amdt. filing false disciplinary charges.) <u>Austin v. Terhune</u>, 1167, 1170-71 (9th Cir. 2004).

13    <u>Hart v. Hairston</u>, 762, 764 (5th Cir. 2003.) (Discipline resulting in 27 days loss of privileges was

14    adverse.) <u>Milhouse v. Carlson</u>, (3rd Cir. 1981) (Conspiratorially planned disciplinary actions; also,

15    confiscation or destruction of property.) <u>Allen v. Thomas</u>. <u>Bell v. Johnson</u>, <u>Thomas v. Evans</u> (5th, 6th,

16    11th Cir.) (Confiscation of legal materials.) <u>Wright v. Newsom</u>, <u>Collins v. Gord</u>. (Denial of or

17    interference with medical care.) <u>Davis v. Gord</u>. (Transfer or denial of transfer.) See <u>Morris v. Powell</u>,

18    <u>Price v. Wall</u>, <u>Gomez v. Vernon</u> (9th Cir.) (Placement in a psychiatric facility termination from or

19    denial or jobs or programs, unfavorable classification, and others. for adverse action and termination of

20    jobs or programs as set forth.) <u>Harris V. Fleming</u>, 1232, 1236-37 (7th Cir. 1988.) (Discrimination in

21    job and cell assignments.) Although the adverse action was discrimination, it is not a Fourteenth Amdt.

22    discrimination claim—it's the adverse action that was taken as the motivating factor for retaliation for

23    the inmate exercising his First Amdt. protected conduct and activities. Pl. objects to the Magistrate's

24    denial of retaliation for exercise of First Amdt. rights, unfavorable classification decisions that were

25    done for unconstitutional reasons for Pl. exercising his protected conduct, and termination from

26    programs and exclusion for Pl. exercising his First Amdt. rights. The adverse action caused damages

27    and physical injuries to Pl., such as decompensation, psychotic episodes with self-injurious behavior,

28    which if the Magistrate would have allowed Pl. the space to attach exhibits, the evidence would have

3    *Pl.'s Objections to Recommendations*

1  been shown of the injuries that were hundreds of cut wounds on Pl.'s arms, legs, so much the clinician

2  couldn't count them all. Cell search receipts by the same Defs. who came up with no contraband, but

3  only bloody rags, bloody milk cartons. Supporting exhibits could have helped the Magistrate and

4  supported understanding the claims

5  **Objection 3 to Denial of Medical/Mental Health Treatment (ECF, Section III, B, 2.):** Pl.

6  objects to the Magistrate's denial of Pl.'s deliberate indifference to a medical need claim for his

7  reasons set forth. He stated Pl. was "vague," and he outlined the basic elements (which Pl. met), and

8  had miscategorized it. Under the Constitution, prison officials need to provide care only for serious

9  medical needs. Estelle v. Gamble. Many courts have held that a serious medical need is "one that has

10  been diagnoses by a physician as mandating treatment or one that is so obvious that even a lay person

11  would easily recognize the necessity of a doctor's attention. See Brown v. Johnson. Also Mcguckin v.

12  Smith, (9th Cir. 1992.) However, the Eighth Amdt. prohibits the "unnecessary and wanton infliction of

13  pain." *See* Estelle v. Gamble, 429 US at 104. In cases where inmates are not completely denied

14  treatment but experience a temporary delay or interruption of treatment, the court may focus on the

15  seriousness of the particular delay or interruption "rather than the severity of the prisoner's underlying

16  medical condition considered in the abstract." See Kikumure v. Osagie, 461 F.3d 1269, 1291, 1296

17  (10th Cir. 2006.) (Holding delay must be shown to have caused substantial harm including pain

18  suffered while awaiting treatment 2 to 3 and half hours delay in treating painful condition stated a

19  claim.) Pl. has met this obligation in his complaint but has also set other damages that he suffered in

20  harm. Pl. established the delay and the cover-up by Defs. that was deliberately done and although the

21  Magistrate believed Pl.'s complaint was vague regarding the injuries, Pl. still established the pain and

22  Pl. reaching out to staff requesting medical attention where the correctional officers were aware Pl.

23  was on antipsychotic/psychotropic medications and Pl. suffered tardive dyskinesia, tremors, other

24  serious side effects from either taking or not taking the medications and going through withdrawals

25  that are life-threatening, and that withdrawals can cause death and irreversible side effects.

26  Furthermore, Pl. is an epileptic that has seizures. Pl. has established the serious medical need

27  requirement as set forth in Hudson v. McHugh for seizure disorders and mental illness. Defs. knew Pl.

28  suffered a head injury and failed to give Pl. attention until properly diagnosed as to the severity as set

*Pl.'s Objections to Recommendations*

1    forth in <u>Brown v. Hughs</u>, as any injury to the head, unless obviously superficial, should ordinarily be

2    considered serious and merit attention until properly diagnosed as to severity. Defs. knew that Pl. also

3    suffers from asthma and suffers severe breathing problems, and when Pl. brought his medical needs to

4    Defs. attention, ranging from not feeling well, chest pain, to head injury, blurriness, possible

5    concussion and not feeling well from side effects of mediation/withdrawal, and Defs. refusing to give

6    Pl. his medication, classified as a serious medical need. Pl. was also temporarily delayed and

7    interrupted in his treatment, which criteria Pl. satisfied. Defs. were aware of Pl.'s serious mental

8    illness, and the side effects of his antipsychotic/psychotropic medications, and Pl.'s mental illness that

9    disrupts his daily living activities. Recent decisions emphasized whether a medical condition disables a

10   prisoner or interrupts with daily activities. <u>Tillery v. Owens</u> cited the definition of serious mental

11   illness as one that has caused significant disruption in an inmate's everyday life and which prevents his

12   functioning in the general population without disturbing or endangering others or himself. Pl. was on

13   razor restriction, container restriction and other restrictions due to Pl.'s continuing to self-injure

14   himself due to his mental illness symptoms. (Damages awarded for 3-day denial of medical care with

15   no permanent injury resulting) Pl. made Defs. aware of Pl.'s delirium symptoms of Pl. being denied

16   medication, which Defs. should have contacted medical for Pl. within that instant as set out in <u>Foelker</u>

17   <u>v. Outagamie County</u>. (Prisoner suffering from acute delirium resulting from drug withdrawal,

18   hallucinating and defecating on the floor had a serious medical need even though he was not in

19   distress.)

20        **Objection 4 to Denial of Pl.'s Deliberate Indifference to Safety Claims (ECF, Section III)**: Pl.

21   objects to the Magistrate's errors and decision in denying Pl.'s deliberate indifference to safety claims

22   brought under the Eighth Amdt. Pl. brought proper claims that met all the elements to support

23   deliberate indifference and the requirements governing it regarding officers telling inmates

24   inflammatory comments about Pl., stating Pl. was a rapist when Pl. does not have sex crimes and those

25   Defs. knowing that such statements would put Pl. at risk and cause injury, supports a deliberate

26   indifference claim. The Supreme Court has said that it does not matter if the risk is from a single

27   source or multiple sources any more than it matters whether a prisoner faces an excessive risk of attack

28   for reasons personal to him or because all prisoners in a situation face such risk. <u>Farmer v. Brennan</u>.

*Pl.'s Objections to Recommendations*

1   Thus, there are two types of facts, situations that can establish deliberate indifferent in a prisoner

2   assault case. We can show that prison officials failed to response to a particular threat or danger to the

3   inmate or can show that the inmate was assaulted as result of conditions or practices that are dangerous

4   to all prisoners or to an identifiable group of them. Farmer, 511 US at 843. It is possible for both kinds

5   of facts to be present in the same case. For risks to a particular prisoner, prisoner officials or employees

6   may obviously be held liable for an inmate assault if they actively permit or encourage it. See Larry v.

7   Livingston County Jail, 528 F.3d 438, 442 (7th Cir. 2008.) (Telling other prisoners that the plaintiff

8   was charged with raping a child, support a deliberate indifference claim.) Cantu v. Jones, 844-45 (5th

9   Cir. 2002.) (Defendants were liable and not entitled to immunity where they essentially orchestrated

10  the attack.) Snyder v. Delag, 188 F.3d 51, 55 (2d Cir. 1999.) (Assault invited by staff members

11  statements to other inmates is actionable); and Fischal v. Armitage, 128 F.3d 50, 56-59 2d (SIR 1997.)

12  (Assaults made possible by officer's action is actionable.) Defs. in Pl.'s case deliberately orchestrated

13  an attack against the Pl., putting Pl. in danger with telling inmates that Pl. committed acts of rape

14  knowing Pl. was not charged or ever accused of that, which supports deliberate indifference that

15  resulted in Pl. suffering injuries and affecting other inmates, as well. Prison officials may be found

16  deliberately indifferent if they fail to protect inmates who are obvious victims or have been identified

17  as at risk or if they place an inmate in danger from others who are known to be aggressive and violent.

18  Hearns v. Terhune, (9th Cir. 2005); Cotten v. Jeane (11th Cir.)  Courts have also held that prison staff

19  disclosing information or making accusations about a prisoner that might lead other prisoners to attack

20  that prisoner can be deliberate indifference. Monterro v. Crusie, 153, F supp 368, 377 (S.D.N.Y 2001.)

21  (Plaintiff alleged that officers spread rumors that Plaintiff was gay, a child molester, and a rapist

22  resulting in threats, harm to him.) Hearns v. Terhune, (9th Cir. 2005.)  (Chaplain allegedly told other

23  prisoners that plaintiff held heretical beliefs and must be killed.) Flint v. Kentucky Department of

24  Corrections, 270 F.3d 340 344, 353 (6th Cir. 2001.) (Accusing prisoner of "ratting" on inmate staff

25  misconduct constituted deliberate indifference.) Defs. committed this action as well in Pl.'s case. Pl.

26  did not just rely on mere negligence for carelessness in which they violated the Constitution. Pl.

27  showed that prison officials displayed "deliberate indifference" and "reckless disregard" for safety and

28  failed to act reasonably in response to danger, as set forth in Farmer v. Brennan and Goka v. Bobbitt,

1    which states the constitution is violated where defendants know of the danger or where the threat of

2    violence is so substantial or pervasive that their knowledge could be inferred yet defendants failed to

3    embrace policy or take other reasonable steps which may have prevented the harm. This means in

4    Eighth Amdt. cases, Pl. must show that prison personnel knew of and disregarded an excessive risk to

5    inmates' health/safety. The official must both be aware of the facts from which the inference could be

6    drawn that a substantial risk of serious harm exists. And he must also draw the inference as set forth in

7    Farmer v. Brennan. Taylor v. the Michigan Department of Corrections 69, F.3d 76, 84, (6th Cir. 1995.)

8    (Obvious risk of placing small vulnerable prisoner in an open unstructured camp setting in a system

9    pervasive problem of sexual assault could support an inference of knowledge.) Defs. in Pl.'s case knew

10   that inmate L. Romero had just attacked two inmates/cellmates—and by informing the inmates that Pl.

11   was a sex offender and a snitch for filing complaints, and other inflammatory remarks that the threat of

12   Pl. being assaulted existed. Where inference can be drawn: Defs. had knowledge that inmates in prison

13   who are accused of sex crimes and snitching are attacked in prison—and this draws inference of

14   knowledge. The Constitution requires prison and jail officials to provide reasonable safety for

15   prisoners (Farmer v. Brennan), that in which Defs. failed to do so.

16       **Objection 5 to Supervisory Liability (ECF, Section III, D):** Pl. objects to denial of Pl.'s

17   deliberate indifference to safety claim that the Magistrate Judge made in error and had turned Pl.'s

18   deliberate indifference to safety claims into supervisory liability claims. Depending on how a claim is

19   brought, the way it's screened or classified is going to be based on that categorization of the claim.

20   Defs. had direct participation in the actions of deliberation indifference to safety—they participated,

21   ordered the Defs. and had encouraged and permitted them to do the actions they were doing and caused

22   the damages giving rise to the complaint. The Defs. were personally involved. Claims of supervisor or

23   municipal liability are generally governed by the deliberate indifference standard rather than the

24   malicious and sadistic standard. White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994.) (Claim against

25   supervisor in use of force case decided under deliberate indifference standard.) In Merriwether v.

26   Coughlin, 879 F.2d at 1048, supervisory liability of prison beatings is the reason the "malicious and

27   sadistic" standard was adopted is that decisions concerning use of force are often made "in haste under

28   pressure and frequently without the luxury of a second chance." The failure to train or to discipline

*Pl.'s Objections to Recommendations*

1    officers, to investigate complaints, or to have an appropriate written use of force policy generally

2    involves long-term practices and not split-second decisions. Claims based on such policies or practices

3    are similar to prisons conditions of confinement cases in which the prisoner need only prove

4    "deliberate indifference." Concerning the beating against Pl. on 3 occasions, and other access/Pl. trying

5    to access the courts and file complaints, and Pl. writing the OIA and OIG, Pl.'s complaint was partially

6    granted as that the Defs. were committing wrongful actions and were interfering with and causing

7    damages to Pl. The supervisory Defs. when it was brought to their attention that the allegations were

8    true, and even when the Pl. with numerous other complaints, the Defs. were aware of Def. J. Burnes

9    wass beating inmates in a chair in the 4A rotunda and jumping on inmates in the cell on a daily basis—

10   with at least 10 inmates getting beaten/assaulted a day, and Defs J. Burnes and Sgt. Navarro told Pl.

11   that the Warden and the Associate Warden put these Defs. over there to put out fires and basically get

12   everything under control by any means necessary. The Warden and the Associate Warden created this

13   "cleanup crew" to beat on the inmates in the unit, including Pl. The supervisory Defs. had direct

14   involvement in the deliberate indifference. Defs. had a history of legitimate complaints and cases, and

15   litigation—Def. J. Burnes settled out of court for beating on an inmate and knocking out that inmate's

16   tooth and dragging that inmate down the 4A stairs. And yet the supervisor Defs. continued to allow

17   and ordered Def. J. Burnes to continue with this behavior and assaults and batteries on inmates in a

18   mental health unit. Even by the supervisory liability standard, the Def. is still liable and Pl. met the

19   elements. Even if supervisory officials were not present at the beating, they may sometimes be held

20   liable if plaintiffs can show that the defendant's actions/inactions, such as failure to act against officers

21   with records of misusing force that led to excessive force against the plaintiff. Even second higher-

22   ranking officials who supervised officials they know regularly use excessive use of force may also be

23   held liable for those violations and can be held liable if they were personally involved in the violation,

24   established a policy that led to the violation, or was deliberately indifferent to the risk that the officials

25   they supervise would commit such a violation. See <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2nd Cir.

26   1999.) ("Just as prison officials may be liable for their deliberate indifference to protecting inmates

27   from violence at the hands of fellow inmates then they may be also liable for their deliberate

28   indifference to violence by subordinates.") <u>Burgess v. Moore</u>, (9th Cir. 1988.) See <u>Camilo Robles v.</u>

8

*Pl.'s Objections to Recommendations*

1   <u>Hoyof</u>, 151 F.3d 1, 6-7 (1st Cir. 1998.) (Supervisor may be held liable under § 1983 if he formulates a

2   policy or engages in a practice that leads to a civil rights violation committed by another. Supervisory

3   liability does not require a showing that the supervisor had actual knowledge of the offending

4   behavior, he may be liable for the foreseeable consequences of such conduct if he would have known

5   of it but for his deliberate indifference or willful blindness.) <u>Blyden v. Manchusi</u>. (A supervisor may be

6   found personally involved in a deprivation of rights in several ways. He may have directly participated

7   in the infarction, he after learning of the violation through an report or an appeal may have failed to

8   remedy the wrong. He may be liable because he created a policy or custom under which

9   unconstitutional practiced occurred or allowed such a policy or custom to continue. Lastly, he may be

10   personally liable if he is grossly negligent in managing subordinates who caused the unlawful

11   condition or event.) Also in <u>Danley v. Allen</u>, 540 F.3d 298, 1315 (11th Cir. 2008.) (Allegations that

12   defendants through force reports and similar documents, inmate complaints, jailor complaints, attorney

13   complaints, judicial officer complaints, personal observation knew that jailors regularly used pepper

14   spray excessively as a means for punishment and not legitimate reasons adequately stated supervisory

15   liability claim.) Pl. in his factual allegation outlined the majority of these reasons, from Pl.'s attorney

16   filing a complaint against Defs. for threatening Pl. and threatening witnesses, and for retaliating on Pl.,

17   over which there was an investigation conducted, a criminal court complaint filed, and  inmates wrote

18   Pl.'s private investigator stating that Defs. were threatening those inmates/their lives in warning them

19   to not to talk to that private investigator. There have been hundreds of other inmate complaints against

20   Defs., hundreds of excessive use of force reports against Defs. Reports/history of all the inmates

21   receiving the same injuries to their hands/fingers, and broken ribs and swelled up/beaten faces from

22   being forced into a chair in a spit mask and beaten. And through the supervisor's personal observation

23   and refusing to discipline and curb their subordinates or at least enforce a staff separation when the

24   inmate/Pl. is beaten during the investigation. The supervisor continued to allow the Defs. to continue

25   with the beatings and interference with the investigations of use of force and grievance process. As Pl.

26   mentioned in his complaint, there are some practices and customs that CSP-COR practice such as the

27   code of silence about staff misconduct and supervisors can be liable if Pl. can show that the beating

28   was caused by policy of failing to adequately to train and supervisor staff and investigate use of force

1   complaints, <u>Beck v. City Pittsburgh</u>, and defendants continued maintaining and tolerating the code of

2   silence. <u>Murray v. Kohler</u>, 734 F.Supp 605, 607 (S.D.N.Y. 1990.) (Warden could be held liable based

3   on officers' history of retaliatory beatings.) <u>Haynes v. Marshall</u> 704 F.Supp 788, 793-94. (Warden

4   could be held liable for giving guards unsupervised authority to use force to enforce rules and punish

5   inmates.) Supervisory officials cannot be held liable, the defendant failed to adequately train

6   supervisor staff and investigate use of force complaints and discipline as set forth in <u>Harvey v. City of</u>

7   <u>Chicago;</u> (failure to discipline police officer that resulted in further abusive behavior by them.)

8   Supervisory official cannot be held liable for use of force "solely" on their failure adequately to

9   investigate that same incident. <u>Williams v. Omodt</u>, 120, 123-24 (D. Minn 1986.); however, their failure

10   to investigate the current incident has probative value in establishing post-investigative policies and

11   practices. The failure to investigate may also be relevant to other issues such as malicious intent and

12   appropriateness of punitive damages. The Magistrate erroneously confuses Defs.' actions that Pl.

13   relates to draw inference or inference of knowledge or to support malicious intention that when the

14   Magistrate makes mistakenly makes it as the constitutional claim, which is an error.

15      **Objection 6 (ECF, Section III):** Pl. objects to the Magistrate's denial for not screening or

16   accepting Pl.'s claim for deliberate indifference to safety. The Constitution requires prison and jail

17   officials to provide reasonable safety for prisoners. They must protect them from assault from other

18   inmates and from unreasonably hazardous living and working conditions and must refrain from

19   subjecting them to the unnecessary and excessive use of force. In. Pl.'s claim, Pl. laid out various legal

20   theories to the claim for and has met the elements of the deliberate indifference standard. Pl.

21   understands that officials are not automatically liable for all inmate assaults and mere negligence, or

22   carelessness do not violate the Constitution. <u>Davidson v. Cannon;</u> and <u>Tucker v. Evans;</u> (which only

23   showed negligence); <u>Lewis v. Richard;</u> (that fall short of meeting the standard of consciously

24   disregarding a known risk regarding a prisoner's safety, and others'.)  But Pl. has instead showed that

25   Defs. displayed deliberate indifference and reckless disregard for his safety by failing to act reasonably

26   in response to danger, as set forth in <u>Farmer v. Brennan,</u> and <u>Goka v. Bobbitt</u>, 862 F.2d 646, 651 (7th

27   Cir. 1988.) (The Constitution is violated where the defendants know of the danger or where the threat

28   of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants

10

*Pl.'s Objections to Recommendations*

1  failed to embrace a policy or take other reasonable steps which may have prevented the harm.) *See*

2  Clem v. Lomeli, 566 F.3d 1177, 1181-82 (9th Cir. 2009.) (Jury in assault case should be instructed that

3  defendants' failure to act as well as acting could support a finding of deliberate indifference.) Pl. has

4  shown that Defs. knew of and disregarded an excessive risk to the Pl.'s health or safety, and that the

5  Defs. were both aware of acts from which the inference was drawn that a substantial risk of serious

6  harm existed against Pl., and Pl. drew the inference as set forth in Farmer v. Brennan and Taylor v. the

7  Michigan Department of Corrections. Defs. must take responsible measures to protect prisoners from

8  assaults by other inmates, including sexual assault. *See* Farmer v. Brennan. If they fail to do so, courts

9  may award damages to injured prisoners. *See* Cantu v. Jones; Newman v. Holmes; Wright v. Jones;

10  Walsh v. Mellas; Hutchinson v. McCabee. Or provide injunctions to prisoners who are in danger,

11  Farmer v. Brennan, 511 U.S. at 845-46, *See* e.g., Jensen v. Clarke, 94, F.3d 1191, 1200-01 (9th Cir.

12  1996.) (Enjoining officials to use classification process in assigning cellmates.) Pl. mentioned in his

13  claim, the actions and omissions that Defs. took, created, and knew of the danger. In Farmer v.

14  Brennan, Doe v. Lallay, a prisoner need not wait until an assault has occurred before obtaining

15  injunctive relief. Defs. who assaulted Pl. and who Pl. had grievances on and an active § 1983 civil

16  action against for staging assaults and being assaulted, orchestrated putting Pl. in an existing, known

17  dangerous situation and created the situation, and were biased and impartial in doing so—they were

18  deliberately indifferent to Pl.'s safety and chose not to screen and monitor a known violent inmate

19  upon his arrival at the prison—an inmate who they knew just attack two inmates around 1-2 months

20  prior and 90 days prior to them celling him up with Pl. They knew L. Romero had previously attacked

21  cellmates for reasons such as the race of the inmate and just because he wanted a cell move. On one

22  occasion, his social worker was noted after L. Romero spontaneously attacked an inmate that when L.

23  Romero feels unsafe, he hears voices and harms people. A CSP-COR Cpt. dropped L. Romero's RVR

24  for that, and which makes the inmate unpredictable even if not provoked, which they knew would put

25  Pl. in harm's way. As set forth in Cottone v. Jenne, 326 F.3d 1352, 1358-59 (11th Cir. 2003), staff's

26  failure to monitor prisoner with a record of "violent schizophrenic outbursts" stated a deliberate

27  indifference claim. Redman v. City of San Diego, 942 F.2d 1435, 1444 (9th Cir. 1991.) (En Banc)

28  (Double celling an aggressive homosexual with another inmate.) Frett v. the Government of the Virgin

*Pl.'s Objections to Recommendations*

1    Islands; Saunders v. Chatham County BD. of Commrs., 728 F.2d 1367, 1368 (11th Cir. 1984.) (Failure

2    to segregate an inmate who displayed a "violent pattern of behavior.") Wade v. Haynes, (8th Cir. 1981.)

3    (Putting a violent inmate in a segregation cell with a young and small inmate.) Pl. understands that

4    many prisoners have engaged in aggressive or violent behavior, but if the assailant has an unusually

5    violent history, then prison officials must be required to treat him specially as set forth in Estate of

6    Ford v. Ramirez Palmer. Defendants were deliberately indifferent for also failing to protect plaintiff

7    who was an obvious victim of outlaying in Farmer v. Brennan and in Wiess v. Cooley. Defs. can be

8    held liable for placing a prisoner such as the Pl. in a situation of danger from others who are known to

9    be aggressive and violent. See Hearns v. Terhune; and Cottone v. Jenne. Pl. also holds Defs. liable for

10   deliberate indifference to Pl.'s safety for disclosing information and making accusations about Pl. that

11   led and could have led other prisoners to attack Pl. can be deliberate indifference. Hearns v. Terhune

12   (9th Cir. 2005.) Montero v. Cruise, 153 F.Supp. 368, 377 (S.D.N.Y. 2001.) (Plaintiff alleged that

13   officers spread rumors that plaintiff was gay, a child molester, and a rapist resulting in threats of harm

14   to him.) Defs., such as the supervisors, and Defs. themselves, when Pl. was beaten by CO Defs., and

15   Pl. requested a keep away, the request was denied and Defs. continued to assault Pl. It was a

16   supervisor's decision to assign the assailant Defs. to have charge over Pl., meaning that after Pl. was

17   assaulted, then Pl. reported it, Defs. J. Burnes and Encinas, others, continued to escort Pl. while these

18   Defs. were under investigation. The supervisors and officers stated that it was "the Corcoran way."

19   Def. J. Burnes interfered with Pl.'s use of force documentation interview. This Def., and others, were

20   found partially guilty for multiple grievances Pl. had filed, which is not "speculative" or

21   "conclusionary," but facts.

22        **Objection 7 (ECF, Section III):** : Pl. objects to the denial of Pl.'s First Amdt. retaliation, access to

23   court claims concerning stolen legal mail with supporting injury. Interference claim and retaliation

24   claims for using the court system. Pl. established in his claim and factual allegation, that Pl. had filed a

25   § 1983 civil action in the E.D. in 2019 for excessive use of force, staging assaults, and other claims

26   against Defs. The Court ordered Pl. to respond to an order and was given 30 days. Pl. was not able to

27   respond because the Defs. beaten, threatened Pl.'s life, threatened and continued assault on Pl. if Pl.

28   continued to access the courts, had made threats of disciplinary charges against Pl. for accessing the

1   courts, repeated unnecessary cell searches with no correctional goal and destroyed Pl.'s crucial,

2   essential legal documents related to Pl.'s pending litigation for accessing the courts. For the claim

3   regarding legal mail being stolen, Pl. responded to the Court by answering the Court's judgement.

4   Defs. did not send it out on several occasions. When Pl. tried to send it out, Defs. would come back

5   and threaten Pl. When Pl.'s legal mail was stolen, there was an actual injury. Pl. showed that Pl. was

6   exercising protected conduct guaranteed by the First Amdt. —the right to petition the government for

7   redress of grievances and the right of access to courts, and Defs.' adverse action by stealing the legal

8   mail. That infringement caused the actual injury where the mail did not make it and the consequences

9   were that Pl.'s civil case was dismissed on grounds of not responding to the Court. The Magistrate is

10  incorrect by asserting no actual injury and that Pl. had access to legal materials and pencils/crayons.

11  For this claim of retaliation for Pl.'s interference claim, the Defs. interfered with Pl.'s attempt to bring

12  or pursue legal actions, and that infringement caused actual injury to the assertion of a legal claim pled

13  under the First Amdt. for Fourth Amdt. claims instead. *See* <u>Simkins v. Bruce</u>, 406 F.2d 1239, 1242-44

14  (10th Cir. 2005.) (Holding that failure to forward mail as prison procedure required to a prisoner

15  temporarily held in a county jail resulting in his failing to receive notice and to respond to a summary

16  judgement motion denied the right of access to courts.) Pl.'s mail was privileged because it was mail to

17  the courts. *See* <u>Sallier v. Brooks,</u> (6th Cir. 2003.) (Mail from the court constitutes legal mail, so does

18  attorney correspondence.) Pl.'s case was also frustrated and impeded; whereas in <u>Lewis</u> and <u>Simkins v.</u>

19  <u>Bruce</u> (10th Cir.) (Plaintiff was actually injured where failure to forward his legal mail prevented his

20  receiving notice of a summary judgement motion resulting in the dismissal of his case and loss of the

21  right to appeal.) For retaliation, Pl. was retaliated on for filing grievances. Pl.'s listing of adverse

22  action that Defs. took against Pl. satisfies the retaliation elements, adverse action rulings, and drawing

23  inference. Defs.' action had chilled Pl.'s exercise of his First Amdt. rights, and Def.'s action did not

24  reasonably advance a legitimate correctional goal. After Pl. filed grievance, the same Defs. in the

25  grievance took adverse action by continued repeated cell searches and confiscating legal crucial,

26  essential documents to pending litigation and also beat the Pl. <u>Muhammed v. Elose,</u> (6th Cir. 2004.)

27  (Stating that temporal proximity alone may be significant enough to constitute direct evidence of

28  retaliatory motive.) Mays v. SpringBorn, 575, F.3d At 650. (Commencement of more erroneous

1   searches immediately after plaintiff of searches.) Espinale v. Goord (2ⁿᵈ Cir. 2009) (passage of 6

2   months between lawsuit and beating by officers including one of the defendants supported an inference

3   of causation.) Allen v. Thomas, (5ᵗʰ Cir. 2004.) (Confiscation of property shortly after the prisoner sent

4   letters critical of the prison to the mailroom) Gayle v. Gonyea, (2ⁿᵈ Cir. 2002.) (Disciplinary charge

5   filed 6 days after plaintiff filed a grievance.) Rodriguez v. McClenning. (Disciplinary charge following

6   a grievance and other adverse action for filing a grievance supported.) Thomas v. Evans, (11ᵗʰ Cir.

7   1989.) (Confiscation of legal materials.) Pl. suffered retaliation for filing grievances and voicing

8   complaints with unfavorable classification and being excluded from jobs and programs. Rizzo v.

9   Dawson, (9ᵗʰ Cir. 1985.) (Exclusion from programs.) Harris v. Fleming, (7ᵗʰ Cir. 1988) (Discrimination

10  in job and cell assignments.) Madwell v. Roberts, (8ᵗʰ Cir.) (Blocking reclassification opportunities,

11  worsening living and working conditions.) Dace v. Solem, (8ᵗʰ Cir. 1988.) (Reclassification.) Purkey v.

12  CCA Detention Center. (Harassment, threats, placement in segregation, scattering and disassembling

13  of papers, denial of visits with wife, confiscation of legal materials.) Martin v. Ezeagu. (Ongoing

14  pattern of harassment and habitual exclusion of law library, actions that courts have found sufficiently

15  adverse to support a retaliation claim.) The Magistrate confuses the adverse action with the claim,

16  which it is not. There are many forms of access to courts, which are each held by different standards

17  and elements which the Magistrate Judge has not held Pl.'s claims in their proper elements. He has

18  mixed up retaliation claims or exercising protected conduct with access to court claims, such as right to

19  assistance claims, which are held by different stands from Bound v. Smith. However, in Lewis v.

20  Casey, the Supreme Court imposed several restrictions on prisoners' ability to enforce the Bounds v.

21  Smith obligation. Lewis held that a prisoner complaining of *Bounds* must show three things 1) he was

22  or is suffering actual injury by being frustrated or impeded; 2) in bringing a non-frivolous claim, and;

23  3) about his criminal conviction sentence for conditions of confinement—and Pl. has satisfied these.

24  Pl. has brought claims for the right to be free from retaliation for using the court system. The Supreme

25  Court has explained the reason why such retaliation offends the constitution is that it threatens to

26  inhibit exercise of the protected right. Retaliation is thus akin to an unconstitutional condition

27  demanded for the receipt of a government provided benefit. Unconstitutional retaliation may be

28  remedied by an injunction or by an award of damages. Claims of retaliation for exercising the right to

*Pl.'s Objections to Recommendations*

court access are generally governed by the same rules as claims of retaliation for other forms of speech, letters, grievances, and others.

**Objection 8 (ECF, Section III):** Pl. objects to Magistrate's declaratory and injunctive relief response. There are several kinds of injunctive reliefs, mandatory injunction, prohibitory injunction, and permanent injunction, which is granted only after there has been a final decision on the merits of a case. Pl. is requesting an injunction relief which is a court order that directs a Def. to do/not do something, unlike damages, which can be awarded by either a jury or judge. Injunction relief is sometimes called equitable relief. Judges use principals of equity or fairness to decide what kind of injunction, unlike damages which are designed to remedy violations that occurred in the past. Injunction relief is awarded to prevent violations from the occurring in the future. Declaratory relief is a statement by the court that what the Defs. are doing/have done violates the law. Pl. in civil rights lawsuits may ask for a declaratory judgement whenever they ask for injunction relief. A declaratory judgement is a milder form of relief than an injunction. <u>Steffel v. Thomas</u>. <u>Perez v. Ledzema</u>. It is something that a court may issue by itself if the court believes that the defendants are making good faith efforts to correct a violation. It can be followed up by an injunction if the violation continues. Pl. further disagrees with Magistrate's explanation for Pl. being vague in footnote 1. Pl.'s first complaint, Pl. gave a detailed account of the omissions, events and even added exhibits but the Magistrate exercised Rule 8 and subjected Pl. to a 25-page limit, including exhibits. Rule 8 does not specify a page limit but requires a short, plain comprehensive explanation. E-filing is limited to 25-pages which Pl. did not e-file. Magistrate asserted and contends in his requests that Pl.'s complaint no more than 25 pages to be less confusing, and any exhibits were subjected to be included within that limit. Pl. submitted a 25-page complaint to satisfy the Magistrate's interpretation of Rule 8 but could not add exhibits with such a page limit interpretation of Rule 8 that could have helped to support Pl.'s retaliation claims and medical conditions.

Respectfully submitted April 10, 2025,

_(signature)_

p.p. Jamie Osuna, CDCR # BD0868

15                          *Pl.'s Objections to Recommendations*