UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna BD0868
PO Box 3476,
Corcoran, CA 93212,

    Plaintiff,

v.

J. Burnes, et al,

    Defendants.

No. 1:24-cv-00793-KES-SAB

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRESERVATION ORDER WITH [PROPOSED] ORDER

## I. INTRODUCTION

Defendants oppose a preservation order by asserting (1) Plaintiff has not shown a concrete risk of evidence loss, and (2) the Court "lacks jurisdiction" because relevant materials are held by CDCR/CCHCS or other non-parties. See Defs.' Opp'n, ECF No. 37. Those arguments fail for two reasons.

First, the Second Amended Complaint ("SAC") expressly alleges loss/missing/never-returned legal materials—not speculation. SAC, ECF No. 22 at ¶¶ 47, 49, 67, 73. Second, Plaintiff does not seek an injunction adjudicating the rights of unrelated strangers. The requested relief below can—and should—be entered as a narrow preservation directive running to Defendants (and those acting on their behalf or in active concert for purposes of custody and preservation), so relevant evidence is not overwritten, altered, or destroyed while this case proceeds.

## II. THE SAC *DOES* SPECIFY LOSS / MISSING / NEVER-RETURNED MATERIALS

Defendants characterize Plaintiff's showing as insufficient. But the operative pleading alleges specific losses and missing legal property, including:

The SAC alleges that during processing of the incident scene, Plaintiff's legal materials in a protective bag "were removed from [his] cell and never returned." (*Id.* at ¶ 67.) Also: "…legal properties (processed through R&R) that regards Defs. J. Burnes, A. Loza, K. Kyle has gone missing from [Plaintiff's] property." (*Id.* at ¶ 73.)

These are concrete allegations of missing evidence and missing legal property, supporting good cause for a preservation order targeted to the custodians and systems Defendants rely upon. Defendants also argue that Plaintiff's involvement in "multiple ongoing judicial proceedings," including an "active writ proceeding" in the California Supreme Court, shows evidence "is already being preserved." Defs.' Opp'n, ECF No. 37 at 3. That inference is unsupported. The existence of other litigation does not establish that Defendants have implemented adequate preservation steps for the evidence at issue here, particularly where the operative pleading alleges legal materials were missing and never returned. SAC, ECF No. 22 at ¶¶ 47, 49, 67, 73. The requested relief is forward-looking and narrow: it directs Defendants to take reasonable steps to prevent overwriting, alteration, or destruction while this case proceeds.

### III. DEFENDANTS' "CDCR HAS THE RECORDS / NOT A PARTY" FRAMING DOES NOT DEFEAT A PRESERVATION ORDER

Defendants argue that "documents relevant to this litigation are in the possession of CDCR, not Defendants," and that CDCR is not a party. Defs.' Opp'n, ECF No. 37 3:2-3. That does not defeat preservation relief. If anything, it reinforces the need for a clear directive that Defendants must take reasonable steps to preserve evidence within institutional systems and through custodians they rely upon.

Plaintiff submits Exhibit 1 solely to identify custodianship and institutional channels relevant to preservation. Exhibit 1 reflects that Defendant Loza has been assigned to Receiving & Release ("R&R") since February 2020 and that Defendant Burnes served as Loza's sergeant. (Ex. 1.) Exhibit 2 is submitted for the limited purpose of showing the institutional handling pathway for inmate paperwork during movement processing. In an OIA interview, Defendant Burnes described that when screening activates, he removes paperwork from envelopes and reviews documents piece-by-piece. (Ex. 2.) This supports that preservation must cover the R&R movement/property-processing pathway and related records/communications.

Defendants concede that, "as in all matters where CDCR staff is represented by the Attorney General's Office," defense counsel issued "litigation preservation letters" to CDCR identifying what should be preserved in this case. Defs.' Opp'n, ECF No. 37 at 3:6–9. If

preservation letters were warranted, a short confirmatory preservation order is warranted—particularly where Plaintiff alleges missing/never-returned legal materials in the operative pleading. SAC, ECF No. 22 at ¶¶ 47, 49, 67, 73.

Federal courts have inherent authority to manage proceedings and prevent spoliation, including ordering preservation and imposing sanctions where evidence is destroyed or lost. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958–59 (9th Cir. 2006). To the extent relevant evidence is electronically stored information, Rule 37(e) confirms a party must take reasonable steps to preserve it and authorizes remedial measures if such steps are not taken. Fed. R. Civ. P. 37(e).

Defendants also conflate Plaintiff's preservation request with discovery. (Defs.' Opp'n, ECF No. 37 at 4.) Their argument that discovery "has not yet commenced" under the First Informational Order does not defeat a preservation order. A preservation directive does not "initiate discovery," does not require Plaintiff to serve non-party subpoenas, and does not seek production. It simply requires Defendants to take reasonable steps to prevent loss or alteration of relevant evidence while the case is pending. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); Fed. R. Civ. P. 37(e).

## IV. REQUESTED PRESERVATION RELIEF (NARROWED)

Plaintiff requests that the Court grant a narrow preservation order directed to Defendants requiring reasonable steps to preserve evidence reasonably relevant to the claims and defenses in this action, including electronically stored information ("ESI"). Fed. R. Civ. P. 37(e). Consistent with Defendants' representation that litigation preservation letters have issued through the Attorney General's Office, Defs.' Opp'n, ECF No. 37 at 3:6–9, Plaintiff requests the following limited relief:

1. **Preservation Duty.** Defendants shall take reasonable steps to preserve all documents, ESI, recordings, logs, and tangible evidence reasonably relevant to the claims and defenses in this action, consistent with Fed. R. Civ. P. 26(b)(1).

2. **Communications / ESI (Emails, Messages, and Messaging Apps).** Defendants shall preserve ESI including emails and message communications reasonably relevant to this action, including communications using work systems and to the extent any Defendant used a personal account/device to communicate about Plaintiff or the events at issue (e.g., text/SMS and messaging applications), together with any available associated metadata.

3. **Litigation Holds/Suspension of Auto-Deletion.** Defendants shall take reasonable steps to prevent loss of responsive ESI, including implementing and enforcing litigation holds and suspending auto-deletion or retention policies to the extent they would result in deletion or overwriting of relevant ESI. Fed. R. Civ. P. 37(e).

4. **Institutional Systems and Custodians Relied Upon for Defense.** Defendants shall take reasonable steps to ensure preservation through the institutional systems and custodians they rely upon for defense (including confirming and enforcing litigation holds as necessary). Defs.' Opp'n, ECF No. 37 at 3:6–9.

5. **Confirmation.** If the Court deems it appropriate, within 21 days, Defendants shall file a short declaration confirming that preservation steps have been implemented consistent with their representation that preservation letters issued, and identifying the general categories of evidence and ESI subject to the hold. Defs.' Opp'n, ECF No. 37 at 3:6–9.

## V. CONCLUSION

The SAC alleges specific missing/never-returned legal materials. SAC, ECF No. 22 at ¶¶ 47, 49, 67, 73. Defendants concede they issued preservation letters identifying what must be preserved. Defs.' Opp'n, ECF No. 37 at 3:6–9. Plaintiff seeks only a narrow preservation directive requiring Defendants to take reasonable steps to preserve relevant evidence and ESI while this action proceeds. Fed. R. Civ. P. 37(e). The Court should grant Plaintiff's motion and enter the narrowed preservation relief set forth above.

1  January 05, 2026

3  *[signature]*

4  p.p. Jamie Osuna BD0868

5  Plaintiff, Pro Se

**EXHIBIT 1**

OIA Report excerpt reflecting Defendant Loza's assignment to Receiving & Release ("R&R") since February 2020 and noting Defendant Burnes as Loza's sergeant.

Internal Affairs Administrative Investigation Report Number C-COR-083-20-A        Page 18

**CONFIDENTIAL**

of Rights-Administrative Inquiry admonishment form, CDCR 989-C **(Exhibit 18)**. LOZA was represented by Staff Legal Counsel Brad Stevens, CCPOA. Also present were Mack, OLA, and Danville, OIG. The following is a synopsis of the information provided during the interview:

> LOZA has been employed with CDCR for about three years. Upon graduation from the academy, LOZA reported to Pelican Bay State Prison (PBSP). After working at PBSP for one year, LOZA transferred to COR. LOZA is current on his IST training **(Exhibit 19)** and last attended block training in October 2019. LOZA last received training on Use of Force during his annual block training and indicated Use of Force is taught yearly at block training. LOZA is currently assigned to R&R and has been in that assignment since February 2020.
>
> Prior to his assignment in R&R, LOZA was assigned to ▇▇▇, as Floor Officer #1 **(Exhibit 20)**. His duties involved completing security checks, cell feeding, escorts, facilitating programming, and supervising yard. During a normal shift, there are four floor officers and one control booth officer assigned to work in the building. On June 13, 2019, LOZA remembered working with Sanchez, BURNES, and Rodriguez. He did not recall who else worked that day. LOZA explained in ▇▇▇ there are three housing sections. Two sections house CCCMS inmates and the third section houses General Population (GP) inmates. LOZA stated the CCCMS inmates require a higher level of care and attention due to their mental health issues.
>
> BURNES had been LOZA'S sergeant for about two years. LOZA described BURNES as hard working and very thorough. With respect to RODRIGUEZ, although they have not worked together for a long time, LOZA indicated they get along and RODRIGUEZ was a hard worker as well. He does not spend time with his co-workers off duty. LOZA stated they all got along well and there were no issues with either RODRIGUEZ or BURNES.
>
> LOZA remembered Serrano and stated they never had any conflict during the time Serrano was housed in ▇▇▇ LOZA'S interaction with Serrano typically consisted of brief conversations during feeding. At the time of the incident, Serrano had security precautions which required the application of a security lanyard as well as two officers and one sergeant for escorts. LOZA did not know why Serrano had been assigned those precautions.
>
> On June 13, 2019 **(Exhibit 21)**, LOZA recalled receiving a call from R&R. LOZA was advised Serrano had court and was needed in R&R. Sanchez, LOZA, and BURNES went to Serrano's cell. LOZA recalled that he conducted an unclothed body search of Serrano. LOZA indicated he did not specifically recall this particular search of Serrano, but explained his process for searching and escorting inmates. The unclothed body search consisted of initially having the inmate turn on the interior cell lights, which would help him see. Then LOZA orders the inmate to step to the back of the cell. LOZA will then conduct a visual search of the unclothed inmate. Once they are satisfied with the search and feel safe, LOZA orders the

Revised 7/2019                        **CONFIDENTIAL**

# EXHIBIT 2

OIA Report excerpt reflecting Defendant Burnes' description of handling paperwork removed from envelopes during screening when the wand activates.

Internal Affairs Administrative Investigation Report Number C-COR-083-20-A        Page 25

**CONFIDENTIAL**

Serrano. BURNES never told Serrano, "This is for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

BURNES did not remember being interviewed regarding Serrano's CDCR 602. He stated it is common to find weapons on inmates and estimated one can be found once a week.

If the wand activates, he will remove paperwork from their envelopes and go through each paper, piece by piece. Oftentimes, the inmates get metal clips from their attorney or while in court and they are not allowed to have those items. He was not sure, but believed the metal weapon located in the legal paperwork was taped to a piece of paper. Once he found it, he believed he "let it lay" with the crime scene and would wait for ISU to seize it. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ He did not move the weapon that had been in Serrano's mouth.

During the incident, BURNES did not observe any of his staff use unreasonable or unnecessary force on Serrano. Had BURNES witnessed unnecessary force on Serrano, he would have adhered to policy and addressed it. Everything documented in staff reports was consistent with what he observed while on the scene.

BURNES had nothing further to add and was ordered not to discuss the case.

For complete details, review the entire recorded interview (**Exhibit 36**).

**JULY 21, 2020, INTERVIEW WITH CORRECTIONAL SERGEANT MARCELINO MUNIZ:**

On July 21, 2020, Adams and I conducted a digitally recorded interview of Muniz in the ERO Conference Room at COR (**Exhibit 36**). On June 29, 2020, Muniz signed and dated the Notice of Interview Administrative Witness memorandum. Muniz was read a CDCR 989-F, Witness Peace Officer Administrative Inquiry admonishment form, to which he stated he understood. Muniz was represented by Vannorsdall, CCPOA. Also present were Mack, OLA, and Danville, OIG. The following is a synopsis of the information provided during the interview:

Muniz has been employed with CDCR since 2006. Upon graduation from the academy, Muniz reported to COR where he has remained. Muniz promoted to Correctional Sergeant in July 2017. Muniz is current on his IST training and last attended block training in February 2020. Muniz is currently assigned as a Training Relief Sergeant and has been in that assignment since March 2020. In June 2019, Muniz was assigned as Coverage Relief.

Muniz was familiar with Serrano and had prior interactions with Serrano. Muniz was aware Serrano had a history of assaultive behavior towards staff. He described Serrano as "bipolarish" and often took staff comments out of context

Revised 7/2019               **CONFIDENTIAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamie Osuna BD0868<br>PO Box 3476,<br>Corcoran, CA 93212,<br><br>        Plaintiff,<br>v.<br><br>J. Burnes, et al,<br><br>        Defendants. | No. 1:24-cv-00793-KES-SAB<br><br>**[PROPOSED] ORDER RE PLAINTIFF'S MOTION FOR PRESERVATION ORDER** |

Upon consideration of Plaintiff's Motion for Preservation Order and the parties' submissions, and for good cause shown, IT IS ORDERED that:

1. **Preservation Duty.** Defendants shall take reasonable steps to preserve documents, electronically stored information ("ESI"), recordings, logs, and tangible items reasonably relevant to the claims and defenses in this action.

2. **Communications/ESI.** Defendants shall take reasonable steps to preserve reasonably relevant communications, including emails and messages. This includes communications on work systems and, to the extent any Defendant used a personal account or personal device to communicate about Plaintiff or the events at issue, communications on such personal accounts/devices, together with any reasonably available associated metadata.

3. **Litigation Holds/Auto-Deletion.** Defendants shall take reasonable steps to prevent loss of reasonably relevant ESI, including implementing and enforcing litigation holds and suspending auto-deletion or retention policies to the extent they would result in deletion or overwriting of reasonably relevant ESI.

4. **Institutional Systems.** Defendants shall take reasonable steps to ensure preservation through the institutional systems and custodians they rely upon for purposes of preserving and defending this action.

IT IS SO ORDERED.

Dated: _____    _____

UNITED STATES MAGISTRATE JUDGE

1

**PROOF OF SERVICE / CERTIFICATE OF SUBMISSION FOR FILING AND NOTICE REGARDING CM/ECF/NEF SERVICE**
(Fed. R. Civ. P. 5; E.D. Cal. L.R. 135; 28 U.S.C. § 1746)
Case No. 1:24-cv-00793-KES-SAB (PC)

I, Jamie Osuna, declare:

1. I am Plaintiff in this action and am incarcerated at California State Prison–Corcoran. I am proceeding pro se and am not a CM/ECF user. I submit documents to the Clerk by mail for filing.
2. On January 05, 2026, the following document was sent through he U.S. Mail, properly addressed to the Clerk of the Court, United States District Court, Eastern District of California, for filing in Case No. 1:24-cv-00793-KES-SAB (PC):
**Plaintiff's Reply in Support of Motion for Preservation Order (including [Proposed] Order).**
3. I understand that upon docketing by the Clerk, CM/ECF will transmit the Notice of Electronic Filing ("NEF") to CM/ECF-registered counsel, and that such transmission constitutes service of Rule 5 papers on those registered users. (Fed. R. Civ. P. 5(b)(2)(E); E.D. Cal. L.R. 135.)

I declare under penalty of perjury that the foregoing is true and correct.

January 05, 2024

*[signature]*

p.p. Jamie Osuna BD0868

Plaintiff, Pro Se